**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>Kal Freight, Inc., et al.,<br><br>            Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Joint Administration Requested) |

**DECLARATION OF BRADLEY D. SHARP IN SUPPORT
OF DEBTORS' CHAPTER 11 PETITIONS AND FIRST DAY RELIEF**

I, Bradley D. Sharp, pursuant to section 1726 of title 28 of the United States Code, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Chief Restructuring Officer (the "CRO") of Kal Freight, Inc. ("Kal Freight"), Kal Aviation LLC ("Kal Aviation"), Kal Partz Inc. ("Kal Partz"), Kal Trailers & Leasing Inc. ("Kal Trailers"), and KVL Tires Inc. ("KVL Tires" and, collectively, the "Company" or "KAL Group") and am the President and Chief Executive Officer of Development Specialists, Inc. ("DSI"). Prior to being named CRO of the Company on the Petition Date (as defined below), I led DSI's engagement as the Company's financial advisor since DSI was engaged by the Company on or about September 5, 2024.

2. DSI is a restructuring and turnaround management firm whose professionals have a wealth of experience in providing financial advisory services and enjoy an excellent reputation for services they have rendered on behalf of debtors throughout the United States. DSI has substantial experience in matters of this size and complexity and has acted as Chief Restructuring

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Kal Freight Inc. (0249); Kal Aviation LLC (2600); Kal Partz Inc. (0139); Kal Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 Cases is 10156 Live Oak Ave., Fontana, CA 92335.

Officer in many large bankruptcy cases nationwide, including in *In re Oceanwide Plaza LLC*; *In re Woodbridge Group of Companies LLC*; *In re Highland Capital Management L.P*; *In re 1 Global Capital LLC*; *In re Variant Holding Company, LLC*; *In re Beverly Hills Bancorp, Inc.*; *In re WL Homes LLC*, and *In re BankUnited Financial Corporation*.  DSI personnel have also served as Chapter 11 Trustee in cases such as *In re C.M. Meiers Company, Inc.*, *In re Estate Financial Group*, *In re Namco Capital Group, Inc.*, *In re Reynaldo's Mexican Food Co., In re SK Foods L.P.*, *In re 3dfx Interactive, Inc.*, and *In re GFG Peru Investments Pte Ltd.* and as a Federal Receiver for Direct Lending Investments, Inc., Blue Stream Farms, LLC, and Pandya Restaurants LLC.

3.      I have more than 30 years' experience providing crisis management, financial advisory, and third-party fiduciary services.  I have advised and operated companies in numerous industries including consumer finance, real estate development, high tech, manufacturing, food, and agriculture.  I have previously served as Chief Restructuring Officer as well as Trustee under Chapter 7, Chapter 11, and post-confirmation in other cases.  I have operated and sold publicly- and privately-held troubled companies in and out of bankruptcy.  I have also served as an expert witness with respect to fiduciary duties, banking, finance, and securitizations.

4.      Prior to joining Development Specialists, Inc., I was a Vice President and Senior Commercial Loan Collection Officer with Bank of America, NT&SA.  I have a Bachelor of Science in Accounting, with an emphasis in business computer information systems, from Mesa College in Grand Junction, Colorado.  I am a Fellow of the American College of Bankruptcy, the Vice President-Development of the American Bankruptcy Institute, and a Member of the International Insolvency Institute.

DE:4854-4078-4095.15 47520.00001

5.     On the date hereof (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") each commenced a voluntary case (collectively, the "Chapter 11 Cases") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"), and they will continue to operate their business and manage their properties as debtors in possession.

6.     I am generally familiar with the Debtors' day-to-day operations, business affairs, books and records, and restructuring efforts.  Except as otherwise indicated herein, the facts set forth in this declaration (this "Declaration") are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of or advisors to the Debtors, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

7.     To minimize any adverse effects of filing the bankruptcy petitions (the "Petitions") and to preserve value for the benefit of all stakeholders, the Debtors have filed a number of motions requesting various forms of "first day" relief (collectively, the "First Day Pleadings").  I submit, and am authorized by the Debtors to submit, this Declaration in support of the Petitions and the First Day Pleadings.  The relief requested in the First Day Pleadings is necessary to preserve and maximize the value of the Debtors' estates and allow them to sustain their current operations in chapter 11.

8.     This Declaration is intended to provide a summary overview of the Debtors' businesses and the circumstances leading to the commencement of these Chapter 11 Cases, and

DE:4854-4078-4095.15 47520.00001

support the relief the Debtors seek in the First Day Pleadings.  I have organized this Declaration as follows:

- **Part II** provides a general overview of the Company's history and business operations.

- **Part III** describes the Company's corporate and capital structure.

- **Part IV** describes the circumstances leading to the commencement of these Chapter 11 Cases.

- **Part V** sets forth the evidentiary basis for the relief requested in each of the First Day Pleadings.

## I.

## <u>PRELIMINARY STATEMENT</u>[2]

9.      Founded in 2014 and headquartered in the Inland Empire of Southern California, KAL Freight has grown into a transportation and logistics industry leader, providing its customers with cost-effective and reliable trucking and shipping services.  After several years of successful operations the Company joined with other trucking operators in 2020 to create additional related Business Lines—including KAL Partz, KVL Tires, and KAL Trailers.  Notwithstanding their best efforts, the Debtors were unable to operate these new "verticals" successfully.  This failure led to disputes with the Company's new business associates – discussed further below – and ultimately to a substantial drain on the Company's profitability.  At the same time, during the recent COVID-generated pandemic, the Company's core trucking business flourished due to an increase in trucking demand nationwide.  The Company invested heavily in the acquisition of trucks and trailers (for use by KAL Freight and as inventory for sale or lease by KAL Trailers) during the pandemic to meet increased customer demand. Once the pandemic came to an end and customer demand trailed off, however, the Company found itself severely overleveraged and unable to meet

---

[2]      Capitalized terms used but not defined in this Preliminary Statement are intended to have the meanings ascribed *infra*.

its obligations absent substantial additional financing.  As a result, as of November 10, 2024, KAL Freight is now party to Prepetition Vehicle Financing Facilities with at least 19 lenders (including assignees) for a total of $260,029,903, of which approximately 62.2% is held by two Prepetition Secured Parties—Daimler ($134,540,303) and TBK ($27,305,980).  Moreover, the Debtors' operations are sustained by critical ongoing funding provided by Triumph, an affiliate of TBK, in the form of factoring (or purchase) of accounts receivable on a daily basis.  In total, the amounts outstanding under the Debtors' Prepetition Financing Facilities (including the Prepetition Vehicle Financing Facilities but excluding the Prepetition Factoring Agreements) exceed $313 million.

10.     Aside from the foregoing debt obligations, the Debtors have been the subject of various allegations of malfeasance, including that certain of the Debtors' personnel improperly moved trucks and trailers from the United States to Canada, improperly titled vehicles, and engaged in inappropriate accounting practices.  These allegations, some of which were made public in a pending lawsuit, along with the Debtors' financial difficulties and payment defaults, have caused certain of the Prepetition Secured Parties to take legal action against the Debtors, including noticing defaults, and initiating foreclosure proceedings.

11.     Since their retention in September 2024, the Debtors' counsel (Pachulski Stang Ziehl & Jones LLP) and DSI have taken action to ensure that none of the alleged past misconduct continues to occur and have taken initial steps to understand what has taken place.  Under my leadership as CRO and with the oversight of two well-respected Independent Directors, the Debtors intend to work with all stakeholders, utilizing the chapter 11 process, to transparently restructure KAL Group and maximize the going-concern value of the Debtors' operations.  To that end, the Debtors have filed these Chapter 11 Cases with the support of their two largest Prepetition Secured Parties—Daimler and TBK/Triumph—with the goal of winding down KAL Partz and

KVL Tires while continuing to work with the Debtors' stakeholders on a path forward with respect to the remaining Business Lines.

## II.

## THE COMPANY'S HISTORY AND BUSINESS OPERATIONS

12.     The KAL Group, which began in 2014 with just six trucks, has grown into an integrated transportation and logistics business which provides exceptional and cost-effective hauling and other logistics solutions to its customers and serves as a "one-stop shop" for independent owner-operators in the trucking industry.  The KAL Group is engaged in four primary business lines (each, a "Business Line") focused on the United States trucking and logistics industries, generally organized into (i) KAL Freight; (ii) KAL Partz; (iii) KAL Trailers; and (iv) KVL Tires.[3]

a.  *Kal Freight*

13.     As the KAL Group's flagship Business Line founded in 2014, Kal Freight offers a complete range of transportation and logistics solutions to businesses throughout the United States. With approximately 800 drivers and a fleet of over 800 trucks and more than 2,200 trailers as of the Petition Date, Kal Freight offers its customers cost-effective, technology-driven, and reliable transportation and logistics solutions backed by the KAL Group's decades of industry experience. As of the Petition Date, Kal Freight operates through a network of seven strategically-located terminals in seven states.

---

[3]     Each of the Business Lines generally operates through a different Debtor.

DE:4854-4078-4095.15 47520.00001

b. *Kal Partz*

14.     Kal Partz, which was founded in 2021, specializes in supplying heavy-duty aftermarket truck and trailer parts, backed by expert advice and exceptional customer service.  Kal Partz carries over 150,000 SKUs, which it sells both online and at one brick-and-mortar location.[4]

c. *Kal Trailers*

15.     Kal Trailers is a large distributor and retailer of major brand heavy-goods vehicles that opened for business in June 2020.  KAL Group is party to over 300 agreements (specifically *Loan and Security Agreements* and *Equipment Lease Agreements*) pursuant to which Kal Trailers sells or leases (as applicable) heavy-goods vehicles to independent owner-operators and small trucking companies.  In 2023, Kal Trailers leased and sold approximately 85 trucks and 79 trailers through its network of six dealerships across the United States.

d. *KVL Tires*

16.     Founded in 2021, KVL Tires is a full-service commercial tire dealer, offering high-quality, name brand products to fleet owners, owner-operators, and repair shops across the United States.  As of the Petition Date, KVL Tires does not operate any brick-and-mortar locations and does not have any employees.

### III.

### THE DEBTORS' CORPORATE AND CAPITAL STRUCTURE

A.     **Corporate Structure**

17.     The Debtors do not have a holding company or other ultimate corporate parent.  Rather, each Debtor is a separate legal entity that is wholly-owned by Kalvinder Singh.  As of the Petition Date, Debtor Kal Aviation, a Delaware limited liability company, has no assets or

---

[4]     Prior to the Petition Date, the Debtors exited ten brick-and-mortar Kal Partz locations.

operations.  A diagram of the Company's organizational structure, including certain non-Debtors, is attached hereto as **Exhibit 3**.

18.      ***Related Non-Debtor Companies***.  In addition to the Debtors, Kalvinder Singh also owns Tires & Parts of America ("TPA") and KALWAY Inc. ("Kalway").  TPA is a tire wholesaler which, in the ordinary course of its business prior to the Petition Date, sold tires and other products that KVL Tires was not able to sell through its retail operations.  Historically, KVL Tires transferred its excess inventory to TPA for no consideration, and TPA would use the proceeds from the sale of its inventory, including that received from KVL Tires, to fund its own operations. The Debtors have ceased making transfers to TPA.  Prior to the Petition Date, Kalway was the KAL Group's in-house freight brokerage solution, serving as the intermediary between customers and carriers.  KAL Group is in the process of winding down Kalway's operations.

19.      Debtor Kal Freight is the sole member of non-Debtors Exeter 23606 WY LLC ("Exeter"), a Wyoming limited liability company, and 3393 Jonesboro LLC ("Jonesboro" and, together with Exeter, the "Property SPVs"), a Georgia limited liability company.  The Property SPVs hold the Company's ownership interest in certain parcels of real property located in Texas and California (Exeter) and Georgia (Jonesboro).

20.      Kal Freight also works closely with SPG Transportation, Inc. ("SPG"), and Pro Tec Inc. ("Protec" and, together with SPG, the "Servicing Companies") owned, respectively, by Mr. Singh's father and a former KVL Tires employee . The Servicing Companies have used Debtor trucks and trailers (the "Servicing Assets") to service their own customers and, when the Debtors have insufficient capacity, Debtor customers. Historically, the Debtors and the Servicing Companies would transfer cash and other assets to each other to support their respective operations.

21.    Kal Freight and the Servicing Companies were parties to written agreements pursuant to which the Servicing Companies were required to pay the Debtors for the use of the Servicing Assets (the "Servicing Agreements"). However, because the cash transferred from the Servicing Companies to the Debtors historically exceeded the amounts due to the Debtors under the Servicing Agreements, the Servicing Agreements were replaced by certain Business Services Agreements between the Servicing Companies and Kal Freight (the "Replacement Agreements") in December 2024.  Through the Replacement Agreements, Kal Freight manages the Servicing Companies, provides certain other back and middle-office services, and allows the Servicing Companies to use the Servicing Assets. In exchange, the Servicing Companies pay Kal Freight 98% of their cash collections from all gross load revenue net of factoring escrow reserves and fees and interest expenses.

22.    I also understand that Kalvinder Singh owns 100% of the equity in each of three Canadian corporations: Big Rig Trailers & Leasing, Inc. ("Big Rig Trailers"); Big Rig Tires & Services Inc. ("Big Rig Tires"); and Big Rig Partz Inc. ("Big Rig Partz" and, collectively, the "Big Rig Entities").  However, as addressed below, Mr. Singh no longer has any control or influence over the Big Rig Entities due to the appointment of GT as the receiver of the Big Rig Entities.

**B.    Corporate Governance**

23.    Historically, Mr. Singh has served as the sole director of each of Kal Freight, Kal Partz, Kal Trailers, and KVL Tires, as the managing member of Kal Aviation, and as the sole executive officer for each Debtor.

24.    Prior to the Petition Date, the Debtors took steps to ensure that experienced and qualified independent managers would control the Debtors and ensure that the Debtors fulfill their obligations to stakeholders.  To that end, Mr. Singh, as sole member, caused Kal Aviation to amend its operating agreement to create a board of managers tasked with overseeing Kal Aviation's

business and operations.  Thereafter, Mr. Singh appointed Robert H. Warshauer and John T. Young, Jr., as independent directors (the "Independent Directors") to the boards of each Debtor (collectively, the "Boards") effective as of December 4, 2024 (the "Board Actions").  Both of the Independent Directors are experienced restructuring professionals with decades of experience as reflected on their *curriculum vitae* attached hereto as **Exhibit 1**.  I understand that, prior to their appointment to the Boards, neither of the Independent Directors had any relationship or affiliation with any Debtor or with any Debtor's officers, directors, or affiliates.

25.     The Board Actions made clear that Mr. Singh no longer serves as a director or manager of any Debtor and that Mr. Singh can neither remove the Independent Directors nor appoint additional directors to the Boards without the Independent Directors' consent.  As of the Petition Date, each Board consists solely of the Independent Directors.

26.     Immediately after their appointment, the Independent Directors appointed me as the CRO for each Debtor.  Mr. Singh remains an officer of the Debtors to ensure continued operational stability in light of Mr. Singh's relationships with the Debtors' stakeholders, including customers and truck drivers.  However, Mr. Singh and all other Debtor employees report to me in my capacity as CRO, and, in the unlikely event that it becomes necessary, I can terminate Mr. Singh as an officer of any or all Debtors.

## C.     Prepetition Financing Facilities[5]

27.     Certain of the Debtors are party to various types of financing arrangements (collectively, the "Prepetition Financing Facilities") with approximately 23 different parties (each, a "Prepetition Secured Party") that can be generally (though not exclusively) categorized as vehicle

---

[5]     The following summary of the Prepetition Financing Facilities (as defined below) is qualified in in its entirety by reference to the relevant documentation with respect to each such facility.  Nothing herein is intended to, or should be construed as, an admission as to the nature, extent, or priority of any of the Prepetition Financing Facilities.

DE:4854-4078-4095.15 47520.00001

financing, equipment financing, real property financing, and factoring.  Certain of the Prepetition

Financing Facilities are guaranteed by other Debtors and, in some instances, non-Debtors.[6]  In

total, the Debtors have nearly $325 million of outstanding funded indebtedness.

28. ***Prepetition Term Facility***.  Kal Freight, as borrower, and TBK Bank, SSB

("TBK"), as lender (in such capacity, the "Prepetition Term Lender") are parties to a *Loan and

Security Agreement*, dated as of December 14, 2020, as amended (along with any ancillary

documents thereto, the "Prepetition Term Loan Agreement"), designated as a "$50,000,000 Main

Street Priority Term Loan."  As of the Petition Date, the outstanding principal obligations under

the Prepetition Term Loan Agreement total approximately $38.1 million.  The obligations under

the Prepetition Term Loan Agreement are secured, subject to certain exceptions, by first priority

liens on substantially all of Kal Freight's personal property assets, including, but not limited to,

equipment, accounts, inventory, investment property, general intangibles, cash, and deposit

accounts, all as set forth in the Prepetition Term Loan Agreement, as well as a first-priority lien

on certain real estate located in Fontana, California, as set forth in the *Deed of Trust, Assignment

of Rents and Leases, Security Agreement and Fixture Filing* as of December 14, 2020.

29. ***Vehicle Financing Facilities***.  The majority of the Debtors' Prepetition Financing

Facilities are purchase-money loans utilized to purchase trucks, trailers, and other vehicles

(collectively, the "Prepetition Vehicle Financing Facilities") and, generally speaking, are

collateralized by specifically-identified trucks, trailers, or vehicles.[7]  The Prepetition Secured

Parties under the Prepetition Vehicle Financing Facilities are:  (a) Banc of America Leasing &

Capital, LLC ("BALC"); (b) BMO Bank N.A. (f/k/a BMO Harris Bank N.A.) ("BMO"); (c)

---

[6]   Specifically, certain of the Prepetition Financing Facilities are guaranteed by non-Debtors Kalway, SPG, and/or
      Protec and/or personally guaranteed by Kalvinder Singh.

[7]   As noted in the Debt Summary Chart, however, certain of the Prepetition Secured Parties under the Prepetition
      Vehicle Financing Facilities assert liens on substantially all of the Debtors' assets.

Daimler Truck Financial Services USA LLC and Mercedes-Benz Financial Services USA, LLC (collectively, "Daimler"); (d) De Lage Landen Financial Services, Inc.; (e) Flushing Bank (as assignee of BALC) ("Flushing"); (f) Ford Motor Credit Company LLC; (g) M&T Capital and Leasing Corp. (f/k/a People's Capital and Leasing Corp.); (h) PACCAR Financial Corp. (as assignee of Rush Truck Centers of California, Inc.); (i) TBK; (j) Transportation Alliance Bank, Inc.; (k) Truist Equipment Finance Corp. (as assignee of BALC) ("Truist"); (l) U.S. Bank Equipment Finance (as assignee of BALC) ("UBEF"); (m) Wallwork Financial Corporation ("Wallwork"); (n) Webster Capital Finance (as assignee of JPMorgan Chase Bank, N.A.); and (o) Wells Fargo Equipment Finance, Inc. and Wells Fargo Bank, N.A. ("Wells Fargo").

30.     *Equipment Financing Facilities*.  Certain of the Debtors are party to equipment finance agreements (collectively, the "Prepetition Equipment Financing Facilities") related to the purchase of, and collateralized by, specific pieces of equipment, such as forklifts.  The Prepetition Secured Parties under the Prepetition Equipment Financing Facilities are: (a) BALC; (b) Byline Bank; (c) First Western Equipment Finance, a division of First Western Bank & Trust; and (d) Wells Fargo.

31.     *Real Property Financing Facilities*.  As of the Petition Date, the Debtors (through both Debtors and the non-Debtor Property SPVs) own 20 parcels of real property, which include trucking terminals, trucking repair and storage yards, brick and mortar locations, warehouses, and unimproved land.  The acquisition of certain such real property was financed or refinanced (each, a "Real Property Financing Facility"), as follows:

> a.   *Term Note*, dated February 4, 2022, between Kal Freight and JPMorgan Chase Bank, N.A. in the principal amount of $3,500,000, related to the refinancing of Kal Freight's purchase of real property located at 14765 Valley Blvd., Fontana, CA 92335;

DE:4854-4078-4095.15 47520.00001

b. *Promissory Note*, dated August 5, 2022 and as amended and modified, between Kal Freight and First Security Bank in the original principal amount of $2,483,948, related to the purchase of real property in Springdale, AR;

c. *Loan Agreement*, dated July 10, 2023, between Kal Freight and TBK in the principal amount of $2,925,000 related to the purchase of 825 Navy Drive, Stockton, CA 95206; and

d. *Third Amended and Restated Promissory Note*, dated October 27, 2023, between Kal Freight and TBK in the principal amount of $10,362,000 related to the purchase of certain real property located in Atlanta, GA, Union Township, NJ, and Laredo, TX.

32.     ***Factoring Agreements***.  Debtors Kal Freight, Kal Partz Inc. ("Kal Partz"), and KVL Tires Inc. ("KVL") are each party to a factoring agreement (the "Prepetition Factoring Agreements") pursuant to which each applicable Debtor sold certain accounts receivable. Specifically, (i) Kal Freight is party to that certain *Factoring and Security Agreement*, dated April 25, 2017 (as amended), with Advance Business Capital LLC d/b/a Triumph Business Capital ("Triumph");[8] (ii) KVL Tires is party to that certain *Accounts Purchase Agreement*, dated July 17, 2024, with WEX Bank ("WEX"); and (iii) Kal Partz is party to that certain *Accounts Purchase Agreement*, dated July 17, 2024, with WEX.[9]  Advances under the Prepetition Factoring Agreements with WEX will not be available to the Debtors on a postpetition basis.  However, as reflected in the Debtors' motion to approve the postpetition factoring and financing relationship with Triumph, Kal Freight seeks to continue to factor its accounts through Triumph on a postpetition basis.  Because a substantial portion of the Debtors' accounts receivable have already been factored, the Debtors require continuing and uninterrupted access to Triumph's factoring

---

[8]     Triumph is an affiliate of TBK.  As noted above, Triumph is addressed in a separate motion.

[9]     "First Corporation Solutions, as representative" and "Corporation Service Company, as representative" have filed UCC-1 financing statements against certain of the Debtors.  The Debtors believe that these financing statements are related to the Prepetition Factoring Agreements.

facility on a postpetition basis to generate sufficient cash to maintain the Debtors' operations and satisfy other administrative expenses.

33.     *Other*.   In addition to the foregoing general categories of Prepetition Financing Facilities, certain parties assert or may assert liens against certain of the Debtors' assets. Specifically:

    a.   Kal Freight is party to a *Loan Authorization and Agreement*, *Note (Secured Disaster Loans)*, and *Security Agreement* (collectively, the "SBA Loan Documents"), each with the United States Small Business Administration (the "SBA") and dated June 7, 2020 in connection with a $150,000 COVID-19 Economic Injury Disaster Loan;

    b.   in connection with that certain *Forbearance Agreement* executed by and among non-Debtor Big Rig Trailers as Borrower; Mitsubishi HC Capital Canada Inc. ("Mitsubishi Canada") as Lender; Kal Freight, Kal Trailers, Kal Partz, KVL Tires, and Kal Aviation as Guarantors; and Kalvinder Singh as Personal Guarantor, dated May 30, 2024, Kal Freight executed that certain *Security Agreement* dated May 30, 2024 (the "Mitsubishi Security Agreement") pursuant to which Kal Freight granted Mitsubishi Canada a security interest in the Additional Collateral (as defined in the Mitsubishi Security Agreement);

    c.   pursuant to a UCC-1 financing statement filed by Vanguard National Trailer Corporation ("Vanguard") against Kal Trailers with the Texas Secretary of State on August 26, 2024, Vanguard asserts a security interest in identified vehicles;

    d.   pursuant to a UCC-1 financing statement filed by Royal Bank of Canada ("RBC") against Kal Trailers with the California Secretary of State on June 12, 2024, RBC asserts that "[a]ll indebtedness and liability" that Kal Trailers owes to any Big Rig Entity "shall be (i) deferred and postponed to the debts and liabilities of [the Big Rig Entities] to [RBC] and (ii) assigned to [RBC]"; and

    e.   pursuant to a UCC-1 financing statement filed by Sumitomo Rubber North America, Inc. ("Sumitomo") against KVL Tires with the California Secretary of State on June 19, 2023, Sumitomo asserts a security interest in "all inventory, equipment, and goods" distributed by Sumitomo and all proceeds thereof.

34.     A chart summarizing the secured obligations asserted against the Debtors (as of November 10, 2024) is attached hereto as **Exhibit 2** (the "Debt Summary Chart").

DE:4854-4078-4095.15 47520.00001

# IV.

## EVENTS LEADING TO THE PETITION DATE

### A.    Macroeconomic Trends in the Trucking Industry and Other Business Difficulties

35.    The North American commercial transportation business is in the midst of a pronounced downturn, the impact of which has resulted in numerous trucking-related bankruptcy proceedings in recent months throughout the nation.[10]  The COVID-19 pandemic was initially a boon to the transportation industry as freight rates dramatically increased amidst a labor shortage, lower diesel prices, and reduced truck and trailer depreciation.  As demand for trucking services waned, however, once stay-at-home orders dissipated diesel prices soared, interest rates rose, and there was a sudden glut of trucks and drivers throughout the United States.

36.    As a result of the Company having purchased trucks and trailers at higher prices that more rapidly depreciated during the industry downturn, the Company began to experience decreased margins in its usually profitable Kal Trailers' Business Line, particularly in 2024.

37.    The Company's rapid expansion of its brick-and-mortar Kal Partz and KVL Tires Business Lines across the United States through 2022 and 2023 was not accompanied by corresponding profitability and, as a result, the Company began downsizing its physical footprint in 2024.

38.    Compounding the macroeconomic and business-specific issues, the Company, Mr. Singh and his brother Sukhvinder Singh (collectively, the "Singh Brothers"), have been embroiled in a dispute with two brothers (the "Randhawa Brothers") that I understand stems from prior

---

[10]    *See, e.g. In re DRF Logistics, LLC*, Case No. 24-90447 (CML) (Bankr. S.D. Tex.); *In re US Logistics Solutions Inc.*, Case No. 24-32884 (EVR) (Bankr. S.D. Tex.); *In re Pride Group Holdings Inc.*, Case No. 24-10632 (CTG) (Bankr. D. Del.); *In re Newsome Trucking, Inc.*, Case No. 24-20109 (JCS) (Bankr. N.D. Ga.); *In re APL Cargo, Inc.*, Case No. 24-40136 (REG) (Bankr. N.D. Ind.); *In re TBL Logistics LLC*, Case No. 24-60193 (RBC) (Bankr. W.D. Va.); *In re Expeditor Systems, Inc.*, Case No. 24-07413 (TAB) (Bankr. N.D. Ill.); *In re Yellow Corp.*, Case No. 23-11069 (CTG) (Bankr. D. Del.).

DE:4854-4078-4095.15 47520.00001

business dealings among the parties, including the Randhawa Brothers' roles with the Company. On September 11, 2024, the Randhawa Brothers filed an action (the "Randhawa Action") against the "Singh Brothers"), naming Kal Freight, Kal Partz, KVL Tires, Kal Trailers, and Big Rig Trailers as nominal defendants (collectively, the "Corporate Defendants"), in the Superior Court of California, County of San Bernardino (the "California State Court"). On October 18, 2024, the Randhawa Brothers amended the complaint underlying the Randhawa Action to, among other things, remove the Corporate Defendants. I understand that the complaint underlying the Randhawa Action was recently served on the Singh Brothers. In the Randhawa Action, the Randhawa Brothers assert claims against the Singh Brothers, including alleged fraud, breach of fiduciary duty, and breach of contract. I understand that the Singh Brothers deny the allegations and claims made in the Randhawa Action and may assert counterclaims against the Randhawa Brothers.

39.     Moreover, in the months leading to the Petition Date, the Debtors received several notices from Prepetition Secured Parties and other parties asserting defaults under certain agreements with the Debtors, including certain Prepetition Financing Facilities. Specifically, the Debtors received notices of default and/or demand letters from Mitsubishi Canada, BALC, UBEF, BMO, Wells Fargo, Truist, Daimler, Wallwork, Vanguard, and TBK. As a result, outside of bankruptcy, such Prepetition Secured Parties may attempt to exercise remedies against the Debtors, including foreclosure proceedings against the Debtors' property.

40.     Leading up to the Petition Date, the Debtors have attempted to work with as many Prepetition Secured Parties as possible, focusing their efforts on reaching consensus with the Prepetition Secured Parties that assert the largest amounts due by the Debtors. To that end, the Debtors have worked transparently with each of Daimler (the largest lender under the Prepetition

Vehicle Financing Facilities), TBK (the second largest lender under the Prepetition Vehicle Financing Facilities, the lender under two Real Property Financing Facilities, and the agent under the Prepetition Term Loan Agreement), and Triumph (the Debtors' primary factoring counterparty), and have reached agreements with each of the foregoing to the form of financing and/or cash collateral orders.

**B.      Uncertainty Over Priority of Certain Collateral**

41.      Prior to the Petition Date, the Debtors' business required the frequent transfer of trucks among different Business Lines.  For example, Kal Trailers may have purchased numerous new trucks in a single transaction (financed through a Prepetition Financing Facility), but certain of those trucks may have been transferred to and then utilized by Kal Freight.  I understand, based on discussions with the Debtors' management and employees, that while lenders may expect first-priority security over vehicles that are financed by them, it is uncommon for lenders to register financing statements against the specific vehicles that serve as loan collateral.  Instead, I understand that periodic audit checks are conducted by such lenders to verify that their collateral is not subject to other asserted interests.

42.      I have been made aware that more than one Prepetition Secured Party may claim a security interest in certain vehicles.  The Debtors have been working with me, as financial advisor prior to the Petition Date and as CRO from and after the Petition Date, my colleagues from DSI, and the Debtors' proposed counsel (Pachulski Stang Ziehl & Jones LLP), and will continue to work with the Independent Directors to implement strict internal governance programs and controls to ensure that security interests in vehicles are properly tracked and recorded.  During the pendency of these Chapter 11 Cases, the Debtors—under my management as CRO and with the oversight and direction of the Independent Directors—will prepare a comprehensive database of

vehicles that serve as collateral for Prepetition Vehicle Financing Facilities, which database will specify the current use, locations, and security interests asserted against each vehicle.

C.     **Big Rig Receivership and Chapter 15 Proceeding**

43.     As noted above, each of the Big Rig Entities are owned by Kalvinder Singh.  On June 21, 2024, upon an application of Royal Bank of Canada ("RBC"), the Supreme Court of British Columbia (the "Canadian Court") entered an order (the "Interim Receivership Order") appointing Grant Thornton Limited ("GT") as the interim receiver of the Big Rig Entities, commencing a proceeding entitled *Royal Bank of Canada v. Big Rig Trailers & Leasing Inc.*, Supreme Court of British Columbia, Vancouver Registry, Case No. S244137 (the "Canadian Big Rig Receivership") under the *Bankruptcy and Insolvency Act*, RSC 1985 c. B-3, as amended (the "BIA").

44.     On July 5, 2024, upon RBC's application, the Canadian Court entered an order (the "Receivership Order") appointing GT as the receiver of all of the assets, undertakings, and property of the Big Rig Entities.  GT, as receiver, filed an assignment of the Big Rig Entities into bankruptcy (which is roughly the Canadian equivalent of chapter 7 of the Bankruptcy Code) under the BIA on September 10, 2024 and GT was appointed as the licensed insolvency trustee.  The Receiver, on behalf of the Big Rig Entities' creditors, asserts claims against the Debtors and the Debtors assert claims against the Big Rig Entities.

45.     On September 6, 2024, GT, as the foreign representative of Big Rig Trailers, commenced a proceeding (the "Big Rig Chapter 15 Proceeding"), captioned as *In re Big Rig Trailers & Leasing Inc.*, Case No. 6:24-15309-WJ, seeking recognition of the Canadian Big Rig Receivership under chapter 15 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "Chapter 15 Court").  On October 17, 2024, the Chapter 15 Court entered an order recognizing the Canadian Big Rig Receivership as a foreign main

DE:4854-4078-4095.15 47520.00001

proceeding pursuant to section 1517 of the Bankruptcy Code.  Neither the Debtors nor the Receiver

believe that the Big Rig Chapter 15 Proceeding or the Canadian Big Rig Receivership will interfere

with these Chapter 11 Cases.

**V.**

**<u>FIRST DAY PLEADINGS</u>**

46.     Contemporaneously herewith, the Debtors have filed a number of First Day

Pleadings seeking orders granting various forms of relief intended to stabilize the Debtors'

business operations and facilitate the efficient administration of these Chapter 11 Cases, including

the following:

    a.  Debtors' Emergency Motion for Order Directing Joint Administration of Related Chapter 11 Cases.

    b.  Emergency *Ex Parte* Application for Entry of an Order Authorizing the Employment and Retention of Stretto, Inc. as Claims, Noticing, and Solicitation Agent.

    c.  Debtors' Emergency Motion for Entry of An order Authorizing the Debtors to (I) Pay and/or Honor Prepetition Wages, Salaries, Employee Benefits, and Other Compensation; (II) Remit Withholding Obligations and Deductions; (III) Maintain Employee Compensation and Benefits Programs and Pay Related Administrative Obligations; and (IV) Have Applicable Banks and Other Financial Institutions Receive, Process, Honor, and Pay Certain Checks Presented for Payment and Honor Certain Fund Transfer Requests.

    d.  Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing.

    e.  Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Providing Adequate Protection to Daimler Truck Financial Services USA Inc, (B) Modifying the Automatic Stay, (C) Scheduling a Final Hearing, and (D) Granting Related Relief.

    f.  Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Maintenance of Existing Bank Accounts; (II) Authorizing Continuance of Existing Cash Management System; (III) Granting Limited Waiver of Section 345(b) Deposit Requirements; (IV) Authorizing Continued

19

Performance of Intercompany Transfers and Funding; and (V) Granting Related Relief.

g. Debtors' Emergency Motion For Entry of Interim and Final Authorizing Debtors to (I) Maintain and Continue to Operate Under Factoring and Security Agreement in Order to Sell Accounts Post-Petition to Triumph Pursuant to 11 U.S.C. Section 363(b), (c), (f), and (m); (II) Obtain Credit From Triumph Pursuant to 11 U.S.C. Sections 364(c)(1), (c)(2), and (d)(1); (III) Grant Adequate Protection in the Form of First Priority Liens and Security Interests on Property of Debtors' Estates Pursuant to 11 U.S.C. Sections 361 and 363(e); (IV) Amend the Factoring and Security Agreement and Grant Triumph Business Capital Additional Liens; (V) Authorize the Debtors to Use Cash Collateral and Grant Triumph Adequate Protection; (VI) Annul and Modify the Automatic Stay; and (VII) Grant Related Relief all Retroactively to the Petition Date.

h. Debtors' Emergency Motion for Entry of Order (I) Ratifying the Appointment of Independent Directors Effective as of the Petition Date; and (II) Authorizing the Payment of Director Fees.

i. Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Payment of Certain Taxes and Fees and (II) Granting Related Relief.

j. Debtors' Emergency Motion for the Entry of an Order(I) Approving the Proposed Adequate Assurance Deposit for Future Utility Services, (II) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Services, (III) Approving the Proposed Adequate Assurance Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief.

k. Debtors' Emergency Motion for Entry of Interim and Final orders (I) Authorizing the Debtors to (A) Continue Insurance Coverage Entered Into Prepetition and Satisfy Prepetition Obligations Related Thereto, (B) Honor and Renew the Premium Financing Agreements Entered Into Prepetition and Satisfy Obligations Related Thereto, and (C) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies; (II) Approving Continuation of the Surety Bond Program; (III) Assuming the Collateral Agreement; and (IV) Granting Related Relief.

l. Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Redact Certain Personally Identifiable Information, (II) Approving the Form and Manner of Notifying Creditors of the Commencement of the Chapter 11 Cases and Other Information, and (III) Granting Related Relief.

m. Debtors' Emergency Motion for Entry of an Order (I) Extending Time to File (A) Schedules of Assets and Liabilities, (B) Schedules of Current Income and Expenditures, (C) Schedules of Executory Contracts and Unexpired Leases, (D)

DE:4854-4078-4095.15 47520.00001

Statements of Financial Affairs, and (E) Rule 2015.3 Financial Reports, and (II) Granting Related Relief.

47.     I am familiar with the contents of each First Day Pleading (including the exhibits and other attachments thereto) and, to the best of my knowledge, after reasonable inquiry, believe the relief sought in each First Day Pleading: (a) will enable the Debtors to sustain operations while in chapter 11; (b) is critical to the Debtors' ability to maximize the value of their estates; and (c) serves the best interests of the Debtors' estates and creditors. Further, it is my belief that the relief sought in the First Day Pleadings is in each case narrowly-tailored and necessary to achieve the goals identified above.

48.     Several of the First Day Pleadings request authority to pay certain prepetition claims. I understand that Federal Rule of Bankruptcy Procedure 6003 provides, in relevant part, that the Court shall not consider motions to pay prepetition claims during the first 21 days following the filing of a chapter 11 petition, "except to the extent relief is necessary to avoid immediate and irreparable harm." In light of this requirement, the Debtors have narrowly tailored its requests for immediate authority to pay certain prepetition claims to those circumstances where the failure to pay such claims would cause immediate and irreparable harm to the Debtors and their estates. I believe such circumstances exist with the Debtors' requests herein for immediate authority. Other relief will be deferred for consideration at a later hearing.

49.     I have consulted with the Debtors' advisors regarding the relief requested in the First Day Pleadings. To the best of my knowledge and belief, the factual statements contained in each of the First Day Pleadings are true and accurate, and each such factual statement is incorporated herein by reference.

50.     I believe that the relief requested in the First Day Pleadings is necessary, in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and will allow the

Debtors to operate with minimal disruption and maximize value preservation during the pendency of these Chapter 11 Cases. Failure to grant the relief requested in any of the First Day Pleadings may result in immediate and irreparable harm to the Debtors, their businesses, and their estates. Accordingly, for the reasons set forth herein and in each respective First Day Pleading, the Court should grant the relief requested in each of the First Day Pleadings.

51.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: December 4, 2024

> */s/ Bradley D. Sharp*
> Bradley D. Sharp
> Chief Restructuring Officer

DE:4854-4078-4095.15 47520.00001