IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| KAL FREIGHT, INC., *et al.,* | § | CASE NO. 24-90614 (CML) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**JOINT MOTION OF WELL FARGO EQUIPMENT FINANCE, INC. AND
WELLS FARGO BANK, N.A. FOR RELIEF FROM THE AUTOMATIC STAY**

**This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule. Represented parties should act through their attorney. There will be a hearing on this matter on January 7, 2025 at 10:00 AM in courtroom 401, 515 Rusk, Houston, Texas 77002.**

COME NOW Wells Fargo Equipment Finance, Inc. ("***WFEF***") and Wells Fargo Bank, National Association ("***WFB***") (collectively, "***Wells Fargo***"), and jointly move for relief from the automatic stay and for adequate protection of their respective equipment collateral in the Chapter 11 bankruptcy case of Kal Freight, Inc. (the "***Debtor***", and with its co-debtor affiliates, collectively the "***Debtors***").

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Kal Freight Inc. (0249); Kal Partz Inc. (0139); Kal Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320).  The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA  02335.

**Joint Motion – Page 1**

## Summary

Wells Fargo provided secured purchase money financing to the Debtor for its acquisition of tractors, trailers, and related equipment used in its trucking/logistics business and are owed nearly $8 million.  Wells Fargo requests relief from the automatic stay to recover possession of its equipment collateral or, alternatively, requests that continuation of the automatic stay be conditioned upon adequate protection in the form of lower-deductible casualty insurance and monthly cash payments to Wells Fargo equal to the diminution in value of such equipment. Wells Fargo is similarly situated with TBK Bank, SSB ("TBK") and Daimler Truck Financial Services ("Daimler"), which were granted continuing cash payments and other adequate protection accommodations under emergency motions on the first day of the case.

## Jurisdiction, Venue, and Authority

1.     The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.

2.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G).  Wells Fargo consents, pursuant to Bankruptcy Rule 7008 and Rule 7008-1 of the Bankruptcy Local Rules for this district, to the entry of a final order by the Court in connection with this Motion.  Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.     On December 5, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their property and have continued to operate and manage their

2

businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   The Debtors' Chapter 11 cases are being jointly administered.

4.      The subject Debtor, Kal Freight, Inc., operates the fleet of trucks, trailers, and related equipment utilized by the Debtors for product transportation.   Prior to the Petition Date, Wells Fargo provided purchase money financing to the Debtor, on a secured basis, for Debtor's acquisition of certain trucks and trailers, pursuant to the following loan agreements:

a.      Combination Loan and Security Agreement no. XXX8375-000 dated 9/22/21 between WFEF, as lender, and the Debtor, as borrower, with an original principal amount of $1,234,161.04 to be repaid with interest in 48 monthly installments of $27,099.69 each, and which loan enabled the Debtor's acquisition of 10 new 2022 Freightliner Cascadia tractors;

b.      Master Loan and Security Agreement no. XXX-XXX0940 dated 4/22/22 between WFEF, as lender, and the Debtor, as borrower, including the following schedules (each constituting a separate loan funding):

- Equipment Schedule no. 000 dated 4/22/22 with an original principal balance of $2,678,348.00 to be repaid with interest in 48 monthly installments of $61,413.90 each, and which loan enabled the Debtor's acquisition of 16 new 2023 Peterbilt model 579 tractors;

- Equipment Schedule no. 001 dated 4/26/22 with an original principal balance of $2,098,100.00 to be repaid with interest in 48 monthly installments of $48,108.95 each, and which loan enabled the Debtor's acquisition of 46 new 2023 Vanguard dry van trailers;

- Equipment Schedule no. 002 dated 7/7/22 with an original principal balance of $1,654,160.00 to be repaid with interest in 48 monthly installments of $38,402.12 each, and which loan enabled the Debtor's acquisition of 30 new 2023 Utility dry van trailers;

- Equipment Schedule no. 003 dated 8/30/22 with an original principal balance of $1,102,940.00 to be repaid with interest in 48 monthly installments of $25,530.04 each, and which loan enabled the Debtor's acquisition of 20 new 2023 Utility dry van trailers;

- Equipment Schedule no. 004 dated 9/1/22 with an original principal balance of $1,102,940.00 to be repaid with interest in 48 monthly installments of $25,530.04 each, and which loan enabled the Debtor's acquisition of 20 new 2023 Utility dry van trailers; and

c.      Master Loan and Security Agreement no. XXX-XXX0940 dated 12/6/22 between WFB, as lender, and Debtor, as borrower, including the following schedules (each constituting a separate loan funding):

- Equipment Schedule 001 dated 12/6/22 with an original principal balance of $2,944,190.00 to be repaid with interest in 48 monthly installments of $69,943.60 each, and which loan enabled the Debtor's acquisition of 30 new 2023 CIMC trailers, 16 new Carrier refrigeration units, and 14 new Thermo King refrigeration units;

- Equipment Schedule 002 dated 12/19/22 with an original principal balance of $1,962,960.00 to be repaid with interest in 48 monthly installments of $46,343.56 each, and which loan enabled the Debtor's acquisition of 20

4

new 2023 CIMC trailers, 18 new Carrier refrigeration units, and 2 new Thermo King refrigeration units; and

- Equipment Schedule no. 003 dated 2/2/23 with an original principal balance of $2,943,536.00 to be repaid with interest in 48 monthly installments of $69,674.60 each, and which loan enabled the Debtor's acquisition of 29 new 2023 CIMC trailers and 29 Thermo King refrigeration units;

(the aforedescribed loan agreements and equipment schedules being collectively referred to hereinafter as the "**Loan Agreements**") and the aforedescribed equipment, as more particularly described in the exhibits hereto, being collectively referred to as the "**Equipment**").  True and correct copies of the Loan Agreements are attached hereto as **Exhibit "A**."  Wells Fargo holds security interests in the Equipment and in the proceeds thereof.  A listing of the trucks and trailers constituting the Equipment is attached hereto as **Exhibit "B**."

5.      In order to perfect its security interests in the Equipment, Wells Fargo's liens were noted on the certificates of title and/or manufacturer's statements of origin (MSOs) for the Equipment subject to state title registration laws and, out of an abundance of caution, by filing UCC-1 financing statements with the Secretary of State of Texas (wherein the Debtor was incorporated) as certain refrigeration units and other collateral that might not be covered by vehicle title liens.  The certificates of title for the Equipment are voluminous and are in the process of being gathered by Wells Fargo, however a copy of one of Wells Fargo's UCC-1 financing statements filed with the Texas Secretary of State is attached hereto as **Exhibit "C**."

6.     As of the Petition Date, the Debtor owed Wells Fargo at least the amount of **$7,853,318.82** pursuant to the Loan Agreements.

7.     Unfortunately, periodic casualty losses are a constant reality in the daily operation of rolling stock on public roads.  Each of the Loan Agreements requires the Debtor to keep the Equipment insured against all risks of physical loss or damage for its full replacement value, with Wells Fargo to be named as loss payee.  Wells Fargo has been furnished with a certificate of insurance reflecting physical damage coverage on the Debtor's equipment issued by Lexington Ins. Co., but such certificate (attached hereto as **Exhibit "D"**) indicates that the deductible for any Equipment is $150,000.00 – which is more than the value of any individual truck or trailer unit.  Therefore, Wells Fargo is effectively left uninsured in this case for the inevitable rolling stock collision/road hazard losses.  Section 361 of the Code specifies that Wells Fargo is entitled to receive the indubitable equivalent of its interest in the Equipment – which may not merely be an administrative claim.

8.     Post-petition, the Debtor continues to operate its trucking logistics business which includes its ongoing use of the Equipment.  Wells Fargo has received no payments from the Debtor since August 2024.  The Debtor has not offered Wells Fargo adequate protection in the form of cash payments and suitable full-coverage casualty insurance.

9.     Pursuant to emergency motions by the Debtor filed on the first day of the case, two other rolling stock secured creditors, TBK and Daimler, were granted weekly cash adequate protection payments, liens upon and payment of rental proceeds derived from their respective collateral, superpriority claims for any diminution in value suffered post-petition, and other adequate protection arrangements.  *See* interim orders at dkt. nos.

51 and 52. Wells Fargo is similarly situated with TBK and Daimler and is entitled to no less favorable treatment for its interest in the Equipment on a post-petition basis. An interim adequate protection order [dkt. no. 51] entered on December 6, 2024 that purportedly covered Wells Fargo did not provide for any cash diminution payments to Wells Fargo nor address the casualty insurance deficiency in this case, and was primarily focused on providing adequate protection to TBK.

### Basis for Relief

10.     Wells Fargo is entitled to relief from the automatic stay under § 362(d)(1) for cause, including the lack of adequate protection in the Equipment, as required by §§ 361 and 363(e), which the Debtor has neither offered nor provided. Adequate protection is required due to the continuing diminution in value of the Equipment from wear and tear, weathering, depreciation from use, and technological obsolescence with passage of time and rollout of new year models. Such adequate protection should be at least symmetric with, and proportional to, that granted by the Court at Debtor's request to TBK and Daimler. It is appropriate and necessary for the Court to condition the continuation of the automatic stay upon the Debtor adequately protecting Wells Fargo' interest in the Equipment by making monthly cash payments equal to the amount of its diminution in value and rental proceeds, and maintaining *adequate* loss insurance on the Equipment.

11.     Alternatively, Wells Fargo is entitled to relief from the automatic stay under § 362(d)(2) because the Debtor has no equity in the Equipment, and the Equipment is not necessary to an effective reorganization by the Debtor, the prospects for which are dim in view of the prepetition malfeasance and misconduct that has become apparent.

7

12.     In the event that the Court determines that the automatic stay should be modified in favor of Wells Fargo, there is cause for waiver of the 14-day stay period of Rule 4001(a)(3) because Wells Fargo is in a better financial position than the Debtor to insure, maintain, protect, and preserve the Equipment during such period, and because the Debtor effectively has no insurance on any particular unit due to the high-deductible policy it holds.

## Authorities

Section 362(d) of the Bankruptcy Code provides that "the court shall grant relief from the stay provided under [Section 362(a)] . . . by terminating, annulling, modifying, or conditioning such stay" (1) "for cause, including the lack of adequate protection of an interest in property" or (2) "if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d).

Section 363(e) expressly requires that, upon request of an entity with an interest in property to be used, sold, or leased, the Court prohibit or condition the use of such property as necessary to provide adequate protection of such interest. "[T]he requirement of adequate protection in section 363(e) is mandatory. If adequate protection cannot be offered, such use, sale or lease of the collateral must be prohibited." 3 COLLIER ON BANKRUPTCY ¶ 363.05[2] (16th ed. 2024); *In re First South Sav. Assoc.*, 820 F.2d 700, 710 (5th Cir. 1987) (the focus of adequate protection "is protection of the secured creditor from diminution in the value of its collateral during the reorganization process"); *In re Bufford*, 343 B.R. 827, 838 (Bankr. N.D.Tex. 2006) ("adequate protection must be given to secured creditors, or they may ask that the automatic stay imposed by § 362(a) be lifted"). "[A]n interest is not adequately protected if the security is depreciating during the term of the

8

stay." *United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 369 (1988). "[I]n a proceeding arising under § 362(d)(1), the debtor must prove that the secured creditor's interest is adequately protected, or the automatic stay will lift." *In re Timbers of Inwood Forest Assoc., Ltd.*, 793 F.2d 1380, 1388 (5th Cir. 1986), *affirmed*, 484 U.S. 365 (1988).

In *In re Geijsel*, 480 B.R. 238 (Bankr. N.D. Tex. 2012), a dairy reorganization case, the Court likewise observed that "[t]he purpose of adequate protection is to adequately protect creditors from the diminution of value in a creditor's collateral." Id. at 265, n. 19. In *Chase Manhattan Bank U.S.A. v. Stembridge (In re Stembridge)*, 394 F.3d 383 (5th Cir. 2004), the Fifth Circuit observed:

> The automatic stay is instituted at the filing of the petition. See id. at § 362(a). It is at that point that the protection of secured creditors' assets begins with the provision of adequate protection: section 362 connects the continuation of the automatic stay to the provision of adequate protection, which may be provided by "requiring the trustee to make a cash payment or periodic cash payments . . . to the extent that the stay under section 362 . . . results in a decrease in the value of such entity's interest in such property." Id. at § 361(1) (emphasis added). Therefore, the code specifically ensures the protection of a secured creditor's assets against any decrease in value from the beginning of the automatic stay, and, because the stay is instituted the moment the petition is filed, the protection from depreciation also begins at that moment. This is the tradeoff the automatic stay creates for creditors and debtors: creditors are prevented from seizing their secured assets in order to provide debtors with "breathing room" to reorganize; in return, the creditors' present value is preserved throughout the reorganization through adequate protection (and priority of its claim). 394 F.3d at 387 (emphasis in original); *accord Bank of N.Y. Trust Co. NA v. Pac. Lumber Co. (In re Scopac)*, 624 F.3d 274, 282 (5th Cir. 2010).

Here, Wells Fargo' interest in the Equipment will diminish while it awaits the plan confirmation process. But secured creditors aren't supposed to bear the risk that the debtor's reorganization efforts might fail. See *In re Swedeland Dev't Group, Inc.*, 16 F.3d 552 (3rd Cir. 1994) ("Congress did not contemplate that a [secured] creditor could find its

9

priority position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects"); *In re Futures Equity L.L.C.*, Case No. 00-33682-BJH-11, 2001 Bankr. LEXIS 2229, at *16 (Bankr. N.D. Tex. Apr. 11, 2001) ("A creditor is not protected by projections of future success, particularly if those projections are themselves risky or contain speculation about successful future operations.") (*citing Swedeland*, 16 F.3d at 565-566).

"Cause" for relief from the stay under §362(d)(1) is not limited to lack of adequate protection, but is a discretionary determination made on a case-by-case basis by the bankruptcy judge. *E Livestock, Inc. v. Wells Fargo Bank, N.A. (In re E Livestock, Inc.)*, 375 B.R. 892, 897 (B.A.P. 10th Cir. 2007). In determining whether cause exists, the court may weigh factors such as the good or bad faith of the debtor and the injury to the movant if the stay is not modified, based on an examination of the totality of circumstances in the case. *Id.*

Here, adequate protection is necessary to protect Wells Fargo' interest in the Equipment from diminution in value, but it has neither been offered nor provided by the Debtor, thereby constituting "cause" to lift the stay. As over-the-highway freight transport equipment, the Equipment is subject to significant deterioration, depreciation, obsolescence, wear and tear, road hazards, and breakage with its continued use. Wells Fargo is prepared to show that every month that passes, and every time the Equipment is used, its value deteriorates. The Debtor must provide Wells Fargo with continued insurance and cash payments to cover this loss in value, replacement liens to protect its interest, or the "indubitable equivalent" of the value lost over time.

10

Further, relief from the automatic stay must be granted here because the Debtor has no equity in the Equipment, and it is not necessary for an effective reorganization. Section 362(g) allocates to the movant the burden of proving lack of debtor's equity in property, while the trustee (or debtor-in-possession) carries the burden of proving all other issues.

WHEREFORE, PREMISES CONSIDERED, Wells Fargo respectfully requests that this Court (i) grant the Motion, (ii) terminate the automatic stay in favor of Wells Fargo so that it may exercise its contractual and legal remedies against the Equipment and its proceeds (including insurance proceeds), or alternatively, condition the continuation of the automatic stay upon the Debtor adequately protecting Wells Fargo 's interest in the Equipment, as set forth above, and (iii) grant Wells Fargo any further relief to which it may be justly entitled.

Respectfully submitted

**Palmer Lehman Sandberg, PLLC**

/s/ Larry Chek
Larry Chek
State Bar No. 04174650
8350 N. Central Expressway,
Suite 1111
Dallas, Texas 75206
Telephone: (214) 242-6444
Facsimile: (214) 265-1950

ATTORNEYS FOR WELLS
FARGO EQUIPMENT FINANCE,
INC. AND WELLS FARGO BANK,
NATIONAL ASSOCIATION

11

**Certificate of Conference**

On December 9, 2024, I conferred by telephone with debtor's counsel Teddy Kapur about Wells Fargo' request for adequate protection or stay relief with respect to the Equipment.  No agreement could be reached at that time, although the parties expressed an intention to continue discussions in that regard.

*/s/  Larry Chek*
Larry Chek

**Certificate of Service**

The undersigned attorney for Wells Fargo hereby certifies that a copy of the foregoing has been served via the Court's CM/ECF system on the date of filing the Motion **(12/12/24**) on debtor's attorney, parties requesting notice, counsel for known parties with an interest in collateral that is the subject of the foregoing motion, and the U.S. trustee.  In addition, a copy of the motion was served by first class U.S. mail, postage prepaid, upon the 20 largest creditors as set forth in the Debtor's petition for relief [dkt. no. 1] and upon the Debtor at the following address:

Kal Freight Inc.
10156 Live Oak Ave.
Fontana, CA  02335

*Larry Chek*
