United States Bankruptcy Court
Southern District of Texas
**ENTERED**
January 29, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**STIPULATED ORDER (A) PROVIDING ADEQUATE PROTECTION TO WELLS FARGO EQUIPMENT FINANCE, INC. AND WELLS FARGO BANK, N.A., (B) MODIFYING THE AUTOMATIC STAY, AND (C) GRANTING RELATED RELIEF**

(Related Docket No. 138)

Upon the motion, dated December 12, 2024 (as modified hereby, the "Motion")[2] filed by Wells Fargo Equipment Finance, Inc. ("WFEF") and Wells Fargo Bank, N.A. ("WFB" and collectively, with WFEF, "Wells Fargo") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") of Kal Freight Inc. and its affiliated debtors and debtors in possession (each a "Debtor" and collectively the "Debtors"), seeking entry of an order (this "Order"), *inter alia*:

(i) authorizing the Debtors to remit the Cash Collateral (as defined below) of Wells Fargo, and for Wells Fargo to apply Wells Fargo's Cash Collateral to permanently reduce the Wells Fargo Obligations, as set forth herein;

(ii) authorizing the Debtors to provide adequate protection payments to Wells Fargo for the diminution in value of Wells Fargo's interests in the Wells Fargo Retained Collateral and Leased Collateral (as defined below), resulting from (a) the imposition of the automatic stay, (b) the Debtors' use, sale, or lease of certain of the Wells Fargo Collateral, or (c) any reason provided for in or pursuant to the Bankruptcy Code ("Diminution in Value");

(iii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to (a) implement and effectuate the terms

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Kal Freight Inc. (0249); Kal Aviation LLC (2600); Kal Partz Inc. (0139); Kal Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

4929-8224-1039.6 47520.00002

and provisions of this Order, (b) allow Wells Fargo to take possession of and to foreclose its liens on all of the Wells Fargo Collateral, other than Retained Collateral and Performing Leased Collateral (as defined below), and (c) allow Wells Fargo to exercise its rights and remedies to the Retained Collateral and Performing Leased Collateral upon the Termination Date; and

(iv)  waiving any applicable stay (including under Bankruptcy Rules 4001(a)(3) and 6004) and providing for immediate effectiveness of this Order.

and the Court having considered the Motion, the exhibits attached thereto, and the evidence submitted and arguments made in support of the Motion; and notice of the Motion having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Bankruptcy Local Rules; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their estates, and all parties-in-interest; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED IN SUPPORT OF THE MOTION, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.  **Petition Date**.  On December 5, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

B.  **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. **Jurisdiction and Venue**. This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6, of the United States District Court for the Southern District of Texas. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings with respect to the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Bankruptcy Local Rules 2002-1, 4001-1(b), 4002-1 and 9013-1.

D. **Committee Formation**. On December 18, 2024, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code.

E. **Notice**. Notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice of the Motion with respect to the relief requested therein or the entry of this Order shall be required.

F. **The Wells Fargo Debt and Collateral**. Wells Fargo asserts that, prior to the Petition Date, Debtor Kal Freight, Inc. ("Kal Freight") executed:

1. Combination Loan and Security Agreement no. XXX8375-000 dated 9/22/21 between WFEF, as lender, and Kal Freight, as borrower, with an original principal amount of $1,234,161.04 to be repaid with interest in 48 monthly installments of $27,099.69 each, and which loan enabled Kal Freight's acquisition of 10 new 2022 Freightliner Cascadia tractors;

2. Master Loan and Security Agreement no. XXX-XXX0940 dated 4/22/22 between WFEF, as lender, and Kal Freight, as borrower, including the following schedules (each constituting a separate loan funding):

- Equipment Schedule no. 000 dated 4/22/22 with an original principal balance of $2,678,348.00 to be repaid with interest in 48 monthly installments of $61,413.90 each, and which loan enabled Kal Freight's acquisition of 16 new 2023 Peterbilt model 579 tractors;

- Equipment Schedule no. 001 dated 4/26/22 with an original principal balance of $2,098,100.00 to be repaid with interest in 48 monthly installments of $48,108.95 each, and which loan enabled Kal Freight's acquisition of 46 new 2023 Vanguard dry van trailers;

- Equipment Schedule no. 002 dated 7/7/22 with an original principal balance of $1,654,160.00 to be repaid with interest in 48 monthly installments of $38,402.12 each, and which loan enabled Kal Freight's acquisition of 30 new 2023 Utility dry van trailers;

- Equipment Schedule no. 003 dated 8/30/22 with an original principal balance of $1,102,940.00 to be repaid with interest in 48 monthly installments of $25,530.04 each, and which loan enabled Kal Freight's acquisition of 20 new 2023 Utility dry van trailers;

- Equipment Schedule no. 004 dated 9/1/22 with an original principal balance of $1,102,940.00 to be repaid with interest in 48 monthly installments of $25,530.04 each, and which loan enabled Kal Freight's acquisition of 20 new 2023 Utility dry van trailers; and

3. Master Loan and Security Agreement no. XXX-XXX0940 dated 12/6/22 between WFB, as lender, and Kal Freight, as borrower, including the following schedules (each constituting a separate loan funding):

- Equipment Schedule 001 dated 12/6/22 with an original principal balance of $2,944,190.00 to be repaid with interest in 48 monthly installments of $69,943.60 each, and which loan enabled Kal Freight's acquisition of 30 new 2023 CIMC trailers, 16 new Carrier refrigeration units, and 14 new Thermo King refrigeration units;

- Equipment Schedule 002 dated 12/19/22 with an original principal balance of $1,962,960.00 to be repaid with interest in 48 monthly installments of $46,343.56 each, and which loan enabled Kal Freight's acquisition of 20 new 2023 CIMC trailers, 18 new Carrier refrigeration units, and 2 new Thermo King refrigeration units; and

- Equipment Schedule no. 003 dated 2/2/23 with an original principal balance of $2,943,536.00 to be repaid with interest in 48 monthly installments of $69,674.60 each, and which loan enabled Kal Freight's acquisition of 29 new 2023 CIMC trailers and 29 Thermo King refrigeration units;

(together with the other documents and instruments executed and delivered in connection therewith, the "Loan Documents")[4] in the aforestated loan amounts (the "Wells Fargo Obligations") that, among other things, financed the purchase and acquisition by Debtors of certain equipment (as evidenced by the Loan Documents, the "Loans"), primarily trucks/tractors and

---

[4] Wells Fargo assigned certain equipment schedules of the two described Master Loan and Security Agreements to EverBank and Fifth Third Bank, and this Order is not intended to affect or prejudice such assigned schedules in any way. Furthermore, this Order is not intended to address any Wells Fargo loans made to Debtors other than Kal Freight.

trailers, which secure the obligations of the Loan Documents. Wells Fargo asserts that the obligations under the Loan Documents are secured by liens and security interests in approximately 193 items of collateral as described in the Loan Documents (the "Wells Fargo Collateral"), some of which are unaccounted for. Wells Fargo asserts that the Loans are in default as of the Petition Date, and are fully due and payable. Wells Fargo asserts that the Loans evidenced by the respective Loan Documents are cross-defaulted and cross-collateralized to the extent set forth in the Loan Documents.

    G.  **Use and/or Disposition of Wells Fargo Collateral**. The Debtors propose the following use and/or disposition of Wells Fargo Collateral:

    1.  "**Retained Collateral**": The Debtors propose to retain 83 trailers for their use in their post-petition business operations in exchange for adequate protection payments of $ $106,451.00 per month (the "Adequate Protection Payments"). A list of the Retained Collateral is attached to this Order as **Exhibit A**. The Debtors reserve the right to surrender possession of certain Retained Collateral to Wells Fargo, in which case the Adequate Protection Payments shall be reduced accordingly.

    2.  "**Leased Collateral**": The Debtors lease approximately 7 trucks/tractors and 40 trailers that constitute Wells Fargo Collateral to third parties and owner/operators in exchange for aggregate monthly contractual lease payments anticipated to be a maximum of $17,250.00. Some of the leases are performing and some are in default as of the Petition Date. The Debtors will cooperate with Wells Fargo to turn over all leases and Leased Collateral which are in default on the Petition Date (the "Defaulted Leases") to Wells Fargo for termination, repossession, and foreclosure of its liens (with the automatic stay modified pursuant to this Order to allow such repossession and foreclosure). The leases of Wells Fargo Collateral which are not

in default (the "**Performing Leases**") shall be retained, and the Debtors agree to segregate and to remit, on a weekly basis, 100% of the lease proceeds received to Wells Fargo, along with an accounting of lease payments.  A list of the Leased Collateral is attached to this Order as **Exhibit B**.

3. "**Returned Collateral**": By Stipulation dated December 19, 2024 [dkt. no. 194] (the "**Stipulation**"), Debtors consented to relief from the automatic stay in favor of Wells Fargo as to nine (9) surrendered units of Wells Fargo Collateral that the Debtors determined to be not necessary to an effective reorganization.  Such Stipulation is incorporated herein and ratified in all respects, and, subject to the terms of this Order and the Committee's rights set forth herein below, Wells Fargo shall be permitted to exercise its available rights and remedies, including foreclosure sale, of such surrendered units.

4. "**Other Collateral**".  In addition to the Retained Collateral, Leased Collateral, and Returned Collateral, there may be Wells Fargo Collateral which are improperly in the possession of third parties in violation of the Loan Documents.  The Debtors consent to the termination of the automatic stay to allow Wells Fargo to pursue possession and control of the "Other Collateral" from the third parties in possession of such Collateral, and to foreclose its liens on such Other Collateral when it is able to take possession of such other Collateral.

H. **Cash Collateral**.  As used herein, the term "**Cash Collateral**" shall mean, to the extent such cash constitutes Wells Fargo Collateral, all of the Debtors' cash, wherever located and held, and all cash equivalents, including any cash in deposit accounts, that constitutes or will constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code.

I. **Adequate Protection**. Wells Fargo is entitled to Adequate Protection against any Diminution in Value of its interests in the Wells Fargo Collateral, as and to the extent set forth herein pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code.

J. **Good Cause**. Good cause has been shown for the entry of this Order. The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates.

Based upon the foregoing findings and conclusions, the Motion, and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1. The Motion is granted solely pursuant to the terms and conditions specifically set forth in this Order. All objections to this Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits. This Order shall become effective immediately upon its entry.

2. <u>Wells Fargo's Cash Collateral</u>. The Debtors shall segregate and remit to Wells Fargo 100% of the lease payments received on the Performing Leased Collateral, beginning as of the date of entry of this Order. The Debtors shall remit said payments and provide an accounting of lease payments to Wells Fargo, on the fifth business day of each week for the previous week.

3. <u>Adequate Protection</u>. Wells Fargo is entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, to adequate protection of its interests in the Wells Fargo Collateral, to the extent of any Diminution in Value of its interests in the Wells Fargo Collateral (the "<u>Adequate Protection Obligations</u>"). As adequate protection, Wells Fargo is hereby granted the following:

(a) <u>Adequate Protection Payments</u>.  The Debtors shall pay to Wells Fargo, as adequate protection for the Diminution in Value of the Retained Collateral, in cash or cash equivalents, the sum of $24,756.00 per week, each Friday beginning as of the date of entry of this Order, subject to reduction as any additional Retained Collateral is surrendered (with the first such payment to include payments retroactive to the week ending Wednesday, December 18, 2024).

(b) <u>Returned Collateral and Stay Relief</u>.  The Debtors shall promptly turn over possession and control of all Wells Fargo Collateral in their possession, other than the Retained Collateral and Performing Leased Collateral (the "<u>Returned Collateral</u>") to Wells Fargo and the automatic stay is hereby terminated as to said Returned Collateral such that Wells Fargo may exercise any and all of its rights and remedies under the Loan Documents and applicable non-bankruptcy law as to the Returned Collateral.  The Stipulation is hereby ratified and approved.

4. <u>Stay Relief as to "Other Collateral"</u>.  The automatic stay is hereby terminated as to Wells Fargo's "Other Collateral" in the possession of third parties in violation of Wells Fargo's Loan Documents such that Wells Fargo may exercise any and all of its rights and remedies under the Loan Documents and applicable non-bankruptcy law as to the Other Collateral.  The automatic stay is also terminated to permit any party-in-interest to exercise any and all of rights and remedies with respect to the Other Collateral.

5. <u>Termination Events</u>.  Upon the occurrence and continuance of any of the below listed events (each, a "<u>Termination Event</u>"), Wells Fargo, on not less than five (5) business days' notice to lead restructuring counsel to the Debtors, lead counsel to the Committee and the U.S. Trustee (the "<u>Remedies Notice Parties</u>") (such five (5) business day period, the "<u>Wells Fargo</u>

Remedies Notice Period"), may file a motion with the Court seeking entry of an order allowing Wells Fargo to exercise remedies against the Retained Collateral and Performing Leased Collateral after the expiration of the Wells Fargo Remedies Notice Period (the date of such order, the "Termination Date").  The Termination Events are (a) the filing of any motion or pleading by the Debtors, or the entry of an order on account of a motion filed by any other party, to stay, vacate, reverse, amend or modify this Order in a manner adverse to Wells Fargo without the consent of Wells Fargo; (b) the dismissal of any of the Chapter 11 Cases; (c) the conversion of any of the Chapter 11 Cases to a case under chapter 7; (d) the failure of the Debtors to make any Adequate Protection Payment as and when required under this Order; (e) the failure of Debtors to segregate or remit the Lease Proceeds or failure to provide an accounting of Lease Proceeds; (f) the failure to turn over the Returned Collateral; and (g) any material breach by any of the Debtors of any of the other provisions of this Order.  Notwithstanding anything to the contrary in this Order, in the event that the Debtors do not timely make the initial Adequate Protection Payment set forth in paragraph 3(a) of this Order, Wells Fargo can immediately file an emergency motion on shortened notice seeking to terminate the automatic stay as to the Wells Fargo Collateral, so that Wells Fargo may repossess and dispose of same or exercise its other contractual or legal in rem remedies.

6.     Modification of Automatic Stay.  The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified (a) to the extent necessary to implement and effectuate the terms and provisions of this Order, (b) allowing Wells Fargo to take possession of and to foreclose its liens on all of the Wells Fargo Collateral, other than Retained Collateral and Performing Leased Collateral, and (c) allowing Wells Fargo to exercise its rights and remedies to the Retained Collateral and Performing Leased Collateral, on the Termination Date following a Termination Event.

7. <u>Insurance on Wells Fargo Collateral</u>.  The Debtors shall maintain, or cause to be maintained, casualty and comprehensive insurance on all Retained Collateral and Performing Leased Collateral and shall provide Wells Fargo and the U.S. Trustee with proof of insurance on all Collateral reflecting Wells Fargo as additional loss payee within ten (10) days of the entry of this Order.  With respect to any uninsured casualty loss of Wells Fargo Collateral that falls within the insurance deductible, the Debtors shall provide Wells Fargo with written notice of such casualty loss within seven (7) days of its occurrence and shall promptly pay for the repair of the damaged unit or, if deemed a total loss, shall promptly reimburse Wells Fargo for the unpaid loan amount allocable to such unit.

8. <u>Joint and Several Liability</u>.  Nothing in this Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and all Adequate Protection Payments.

9. <u>Binding Effect of Order</u>.  Immediately upon entry on the docket of this Court, the terms and provisions of this Order shall become binding upon the Debtors, Wells Fargo, all other creditors of any of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases; provided, however, that this Order shall not be binding upon any chapter 7 trustee except to the extent that the automatic stay has already terminated as to Wells Fargo Collateral that has been physically surrendered to Wells Fargo.

10. <u>Effectiveness</u>.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Bankruptcy Local Rule, or Rule 62(a) of the Federal

Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

11. <u>Bankruptcy Rules</u>. The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

12. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

13. <u>Necessary Action</u>. The Debtors and Wells Fargo are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Order. The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this Order.

14. <u>Survival</u>.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) dismissing any of the Chapter 11 Cases; or (c) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases.  The terms and provisions of this Order shall continue in the Chapter 11 Cases or following dismissal of the Chapter 11 Cases notwithstanding the entry of any orders described in clauses (a)-(c) above.  The provisions of this Order shall not survive the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code except to the extent that the automatic stay has already terminated as to Wells Fargo Collateral that has been physically surrendered to Wells Fargo.

15. <u>Reservation of Committee's Rights</u>.  This Order is without prejudice to, and shall not have any effect on, any of the Committee's rights, claims, or remedies with respect to Wells Fargo or the Wells Fargo Collateral—including, without limitation, the right to challenge any liens

asserted on the Wells Fargo Collateral and contest any claims asserted by Wells Fargo—all of which the Committee expressly reserves.  Wells Fargo shall maintain an accounting of all proceeds received and costs incurred for each item of Wells Fargo Collateral that it liquidates pursuant to this Order and shall provide such accountings to the Committee within five (5) business days following Wells Fargo's receipt of the auctioneer's report of any such sale.  Wells Fargo acknowledges and agrees that all the Wells Fargo Collateral and any proceeds thereof remain subject to potential avoidance and recovery under Chapter 5 of the Bankruptcy Code (subject to Wells Fargo's applicable defenses thereto), notwithstanding Wells Fargo's repossession or exercise of other remedies under this Order. Furthermore, this Order is without prejudice to any rights that MODE Transportation, LLC may have with respect to the Wells Fargo Collateral.

16. Notwithstanding anything to the contrary herein, all rights of the Committee to contest the amount of the Adequate Protection Payments and the Adequate Protection Obligations accruing from and after the date of this Order, and any relief from stay sought or obtained by Wells Fargo under this Order, are fully preserved and the Committee also reserves all rights to seek relief from this Court to reimpose the automatic stay with respect to any Wells Fargo Collateral notwithstanding the terms of this Order.  All rights of the Debtors and Wells Fargo are preserved to contest any relief that may be sought by the Committee consistent with the foregoing.

17. <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

18. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction to enforce the provisions of this Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

Signed: January 28, 2025

_____
Christopher Lopez
United States Bankruptcy Judge

Exhibit A
Retained Collateral

| VIN | Type | Monthly Loan Pmts | Weekly Loan Pmts |
|---|---|---|---|
| 5V8VC5324NT206349 | Dry Van | 1,498.83 | 348.57 |
| 5V8VC5327NT206247 | Dry Van | 1,498.83 | 348.57 |
| 5V8VC5322NT206365 | Dry Van | 1,498.83 | 348.57 |
| 5V8VC5326NT206370 | Dry Van | 1,498.83 | 348.57 |
| 5V8VC5328NT206371 | Dry Van | 1,498.83 | 348.57 |
| 5V8VC5324NT206397 | Dry Van | 1,498.83 | 348.57 |
| 5V8VC5328NT206404 | Dry Van | 1,498.83 | 348.57 |
| 5V8VC5324NT206240 | Dry Van | 1,498.83 | 348.57 |
| 5V8VC5327PM307110 | Dry Van | 1,045.85 | 243.22 |
| 5V8VC5320PM307112 | Dry Van | 1,045.85 | 243.22 |
| 5V8VC5324PM307307 | Dry Van | 1,045.85 | 243.22 |
| 5V8VC5326PM307311 | Dry Van | 1,045.85 | 243.22 |
| 5V8VC5326PT304964 | Dry Van | 1,045.85 | 243.22 |
| 5V8VC5329PM307304 | Dry Van | 1,045.85 | 243.22 |
| 1UYVS2533P3648103 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2534P3818808 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2532P3818824 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2534P3818825 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2538P3818827 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS253XP3818828 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2531P3818829 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2533P3818833 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2535P3818834 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2537P3818835 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2539P3818836 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2532P3818838 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2534P3818839 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2530P3818840 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2532P3818841 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2534P3818842 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2536P3818843 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2538P3818844 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS253XP3818845 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2531P3818846 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2533P3818847 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2535P3818848 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2537P3818849 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2530P3823407 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2534P3823409 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2530P3823410 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2534P3823412 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2532P7665435 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2538P7665536 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2539P7665545 | Dry Van | 1,280.07 | 297.69 |
| 1UYVS2533P3823322 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2533P3823336 | Dry Van | 1,276.50 | 296.86 |

Exhibit A
Retained Collateral

| VIN | Type | Monthly Loan Pmts | Weekly Loan Pmts |
|---|---|---:|---:|
| 1UYVS2531P3823402 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2533P3823403 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2533P3823417 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2537P3823419 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2533P3823420 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2535P3823421 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2530P3823424 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2538P3823428 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS253XP3823429 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2536P3823430 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS253XP3823432 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2533P3823434 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2537P3823436 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2530P3823438 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2532P3823439 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2539P3823440 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2530P3913110 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2531P3823321 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2534P3823314 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS253XP3823317 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2535P3823323 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2539P3823325 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2536P3823329 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2532P3823330 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2534P3823331 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2538P3823333 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2535P3823337 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2537P3823338 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2539P3823339 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2535P3823340 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2531P3823433 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2537P3913119 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2535P3913121 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2532P3913125 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2534P3913126 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2535P3913135 | Dry Van | 1,276.50 | 296.86 |
| 1UYVS2537P3913136 | Dry Van | 1,276.50 | 296.86 |
| | | 106,451.43 | 24,756.12 |

Exhibit B
Leased Collateral

| VIN | Type | Monthly Lease Pmt | Weekly Lease Pmt |
|---|---|---|---|
| 527SR5321PL029663 | Reefer Trailer | 1,071.41 | 249.16 |
| 527SR532XPL029662 | Reefer Trailer | 1,071.41 | 249.16 |
| 527SR5322PM029133 | Reefer Trailer | 1,756.23 | 408.43 |
| 527SR5324PM029134 | Reefer Trailer | 1,669.23 | 388.19 |
| 527SR5326PM029135 | Reefer Trailer | 1,756.23 | 408.43 |
| 527SR5328PM029136 | Reefer Trailer | 1,756.23 | 408.43 |
| 5V8VC5326PM307308 | Dry Van | 750.00 | 174.42 |
| 5V8VC5328PM307309 | Dry Van | 750.00 | 174.42 |
| 5V8VC5325PM307509 | Dry Van | 750.00 | 174.42 |
| 5V8VC5321PM307510 | Dry Van | 750.00 | 174.42 |
| 5V8VC5323PM307511 | Dry Van | 750.00 | 174.42 |
| 5V8VC5327PM307513 | Dry Van | 750.00 | 174.42 |
| 5V8VC5329PM307514 | Dry Van | 750.00 | 174.42 |
| 5V8VC5320PM307515 | Dry Van | 750.00 | 174.42 |
| 5V8VC5329PT306742 | Dry Van | 750.00 | 174.42 |
| 5V8VC5320PT306743 | Dry Van | 750.00 | 174.42 |
| 5V8VC5322PT306744 | Dry Van | 750.00 | 174.42 |
| 5V8VC5324PT306745 | Dry Van | 750.00 | 174.42 |
| 5V8VC5326PT306746 | Dry Van | 750.00 | 174.42 |
| 5V8VC5328PT306747 | Dry Van | 750.00 | 174.42 |
| 5V8VC5327PT306738 | Dry Van | 750.00 | 174.42 |
| 5V8VC5328PT306733 | Dry Van | 750.00 | 174.42 |
| 5V8VC532XPT306734 | Dry Van | 750.00 | 174.42 |
| 5V8VC5321PT306735 | Dry Van | 750.00 | 174.42 |
| 5V8VC5323PT306736 | Dry Van | 750.00 | 174.42 |
| 5V8VC5325PT306737 | Dry Van | 750.00 | 174.42 |
| 5V8VC5329PT306739 | Dry Van | 750.00 | 174.42 |
| 5V8VC5325PT306740 | Dry Van | 750.00 | 174.42 |
| 5V8VC5320PM307305 | Dry Van | 750.00 | 174.42 |
| 3AKJHHDR5NSNF1561 | Truck | 3,400.48 | 790.81 |
| 5V8VC5324PM307310 | Dry Van | 700.00 | 162.79 |
| 527SR5324PM028971 | Reefer Trailer | 1,499.00 | 348.60 |
| 3AKJHHDR3NSNF1557 | Truck | 3,834.42 | 891.73 |
| 3AKJHHDR3NSNF1560 | Truck | 3,875.78 | 901.34 |
| 3AKJHHDR7NSNF1531 | Truck | 2,647.27 | 615.64 |
| 3AKJHHDR7NSNF1559 | Truck | 3,875.78 | 901.34 |
| 527SR5320PL029668 | Reefer Trailer | 1,071.41 | 249.16 |
| 527SR5322PL029669 | Reefer Trailer | 1,071.41 | 249.16 |
| 527SR5323PL029664 | Reefer Trailer | 1,071.41 | 249.16 |
| 527SR5325PL029665 | Reefer Trailer | 1,071.41 | 249.16 |
| 527SR5327PL029666 | Reefer Trailer | 1,071.41 | 249.16 |
| 527SR5329PL029667 | Reefer Trailer | 1,071.41 | 249.16 |
| 527SR5321RM035623 | Reefer Trailer | 1,071.41 | 249.16 |
| 527SR5323RM035624 | Reefer Trailer | 1,071.41 | 249.16 |
| 5V8VC532XPM307487 | Dry Van | 1,347.12 | 313.28 |
| 5V8VC5322PM307306 | Dry Van | 1,156.27 | 268.90 |
| 1XPBD49X3PD804119 | Truck | 4,003.78 | 931.11 |
| 3AKJHHDR7NSNF1562 | Truck | 3,396.42 | 789.87 |
| | | 64,638.29 | 15,032.15 |