IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**DEBTORS' OBJECTION TO PACCAR FINANCIAL CORP.'S MOTION
FOR RELIEF FROM AUTOMATIC STAY REGARDING VEHICLES, OR
IN THE ALTERNATIVE, MOTION FOR ADEQUATE PROTECTION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby object (this "Objection") to *PACCAR Financial Corp.'s Motion for Relief from Automatic Stay Regarding Vehicles, or in the Alternative, Motion for Adequate Protection* [Docket No. 332] (the "Motion"),[2] filed on January 10, 2025 by PACCAR Financial Corp. ("Movant" or "PACCAR"). In support of this Objection, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Bankruptcy Code provides debtors with the benefit of the automatic stay and a "breathing spell" from the repossession or surrender of estate property. This breathing spell allows debtors time to develop and finalize a plan of reorganization or other restructuring strategy. Here, like they did with many of their other secured creditors, the Debtors offered PACCAR reasonable adequate protection payments (nearly $32,000 per week) for the 39 Vehicles at issue that are necessary for the Debtors' ongoing operations. In addition, the Debtors proposed to turnover to

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

PACCAR any actual proceeds received for the four Vehicles that have been leased to third party lessees. The Debtors also expect to surrender seven Vehicles to PACCAR. These proposed terms have not been accepted by Movant.

2.  Rather than challenging the amount of the adequate protection offered by the Debtors, Movant has asserted that the Debtors do not have sufficient insurance for the Vehicles. The Debtors have the same insurance now that they had prepetition. In order to keep costs down, the Debtors maintain insurance that has a high deductible ($150,000 per Vehicle). However, there is no requirement in Movant's prepetition agreement with Kal Trailers & Leasing Inc. ("Kal Trailers") that Kal Trailers maintain insurance with any particular deductible. No deductible is even mentioned. Kal Trailers is merely required to fully insure the value of the Vehicles. The Debtors have up to $1.5 million in insurance coverage per occurrence. The Debtors also have budgeted $130,000 per month for losses payable by the Debtors, which is consistent with the Debtors' ordinary course of business. In fact, the Debtors have incurred less than $130,000 per month for postpetition losses not covered by insurance and have been paying all such expenses as they come due in the ordinary course on a postpetition basis. Given that Kal Trailers has satisfied its obligations under the parties' prepetition agreement and the Debtors have provided for the payment of any claims below the deductible, insufficiency of insurance does not constitute cause for Movant to obtain relief from stay and prejudice the Debtors' operations and restructuring efforts.

3.  The Debtors have offered PACCAR the same treatment as the Debtors' other lenders – adequate protection payments that are equivalent to the debt service on the Vehicles at issue. Movant will suffer no harm if the Motion is denied, whereas the estates would be severely prejudiced if nearly forty Vehicles are removed from the Debtors' business.

4. The Debtors will continue their efforts to reach a consensual resolution with Movant pending the hearing on the Motion. If no resolution is reached and for the reasons set forth herein, the Motion should be denied for lack of cause to lift the automatic stay.

### RELEVANT BACKGROUND

**A** **General Background**

5. On December 5, 2024 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with this Court. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Bradley D. Sharp in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 5].

**B.** **The Debtors' Relationship with Movant**

7. Solely for purposes of this Objection and without prejudice to any of the estates' rights, the Debtors do not take issue with the liens and claims asserted by Movant against the Debtors or their assets, as set forth in the Motion.

8. The Debtors have proposed nearly $32,000 per week in adequate protection payments to PACCAR for 39 Vehicles that the Debtors seek to retain, plus turnover of any lease receipts for the four Vehicles that are on lease to third parties. The Debtors also propose to return seven Vehicles to PACCAR.

C.      **The Debtors' Chapter 11 Proceedings and Insurance Coverage**

9.      The Debtors' bankruptcy cases commenced last month.  The Debtors have been focusing their efforts on selling or otherwise restructuring their business and obtaining final approval of several first day motions, including, but not limited to, debtor-in-possession financing and use of cash collateral with respect to over a dozen lenders, while continuing to operate their core trucking operations.  The Debtors have reached adequate protection stipulations with certain of their lenders and made a proposal to Movant.

10.     Kal Trailers' prepetition agreement with Movant includes the following insurance provision, which does not impose any requirement with respect to the minimum amount of a deductible:

> **3. INSURANCE.** Buyer agrees to keep the Collateral continuously insured against fire, theft, collision, and any other hazard Seller specifies by an insurance company Seller has approved. The amount of insurance shall be the full insurable value of the Collateral or the full amount of all obligations this Contract secures, whichever is greater. The insurance policy shall provide, in a form acceptable to Seller, for payment of any loss to Seller. Buyer shall deliver promptly to Seller certificates or, if requested, policies of insurance satisfactory to Seller, each with a loss-payable endorsement naming Seller or its assigns as loss- payee as their interests may appear. The insurance policy shall provide that it can be canceled only after written notice of intention to cancel has been delivered to Seller at least ten (10) days before the cancellation date. If the Collateral is lost or damaged, Seller shall have full power to collect any or all insurance proceeds and to apply them as Seller chooses either to satisfy any obligation secured by this Contract (whether or not due or otherwise matured), or to repair the Collateral. If Buyer obtains insurance from a company Seller has not approved, or fails to obtain any insurance, Seller may (but does not have to) obtain any insurance Seller desires to protect its interests. If Seller does so, Buyer shall reimburse Seller upon demand for its expenses. Seller shall have no liability at all for any losses which occur because no

insurance has been obtained or the coverage of the insurance which has been obtained is incomplete.[3]

11. The Debtors insure their fleet of trucks and trailers with the same insurance that they had prepetition. The Debtors' insurance covers up to $1.5 million per occurrence.[4] Although the Debtors' insurance has a high deductible ($150,000 per vehicle) in order to keep costs down, the Debtors have budgeted $130,000 per month for losses payable by the Debtors, which is consistent with the Debtors' ordinary course of business. As projected, the Debtors have incurred less than $130,000 per month for losses not covered by insurance on a postpetition basis. The Debtors have been satisfying all such expenses as they come due.

12. The Debtors are in the process of selling or otherwise restructuring their business. The Debtors are drafting a chapter 11 plan and are in negotiations with a prospective buyer of the Debtors' operating assets. This is not the time, at this relatively early stage of these cases, to grant Movant relief from stay to recover the Vehicles that are important to the Debtors' estates and their ongoing restructuring efforts.

13. The Debtors requested an initial extension of the objection deadline for the filing of Objection from Movant and received an extension through Friday, January 31, 2025, at 12:00 p.m. Central time. The extended deadline is imminent, and no further extension has been obtained. Accordingly, the Debtors file this Objection.

---

[3] *See* Exhibits A, D, E, and I to Motion (Security Agreement Retail Installment Contract)

[4] *See* PACCAR Witness and Exhibit List, Exhibits O and P (Docket No. 441-15, 441-16).

**OBJECTION**

**A.    The Automatic Stay is a Fundamental Protection and Exceptions are Narrow**

14.    "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws."[5] The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor."[6] In short, its purpose is to "give the business a breathing spell… as well as to prevent creditors from obtaining preferential treatment by quick action."[7] "The automatic stay is critical to a debtor because it allows a debtor to focus on its reorganization instead of ligation."[8]

15.    "The stay insures that the debtor's affairs will be centralized, initially in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another."[9] Accordingly, the scope of the automatic stay is interpreted broadly, and exceptions narrowly drawn.[10]

**B.    Movant Has Not Established Cause to Lift the Stay**

16.    Section 362(d)(1) of the Bankruptcy Code provides that a court shall grant relief from the automatic stay "for cause."[11] "Cause is not defined in the Bankruptcy Code, and must be

---

[5]   *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1409 (5th Cir 1986), *on reh'g,* 808 F.2d 363 (5th Cir. 1987), *aff'd sub nom.* 484 U.S. 365 (1988).

[6]   *In re Aleris Int'l. Inc.*, 456 B.R. 35, 46 (Bankr. D. Del. 2011).

[7]   *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d at 1387.

[8]   *See In re Residential Capital, LLC*, 2012 WL 3249641, at *4 (Bankr. S.D.N.Y. Aug. 7, 2012).

[9]   *Fid. Mortg. Inv'rs v. Camelia Builders, Inc.*, *(In re Fidelity Mortg. Inv'rs)* 550 F.2d 47, 55 (2d Cir. 1976).

[10]  *Gasprom, Inc. v. Fateh (In re Gasprom, Inc.)*, 500 B.R. 598, 606 (B.A.P. 9th Cir. 2013).

[11]  11 U.S.C. § 362(d)(1).

determined on a case-by-case basis based on an examination of the totality of circumstances."[12] In making this determination, a court should "balance the inherent hardships on all parties and base its decision upon the degree of hardship and the overall goals of the Bankruptcy Code."[13] "Cause to lift the stay exists when the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors."[14] As part of this balancing, courts have considered "whether lifting the stay will result in any great prejudice to the debtor or the bankruptcy estate, whether any hardship to a nondebtor of continuation of the stay outweighs any hardship to debtor, and whether the creditor has a probability of prevailing on the merits of the case."[15]

17.     The party seeking to lift the stay "bears the initial burden of showing 'cause' for relief from the automatic stay."[16] This burden is particularly heavy where the moving party is an unsecured creditor.[17] If the party fails to make such a showing, "the court should deny relief without requiring any showing from the debtor."[18]

18.     Here, Movant has failed to meet its burden and the Motion should be denied. The Debtors have proposed adequate protection payments for the 39 Vehicles that they propose to retain for operations in an amount equal to the pro-rated debt service on such Vehicles. This

---

[12] *In re MCC Humble Auto Paint, Inc.*, 2011 WL 3799764, at *3 (Bankr. S.D. Tex. Aug. 25, 2011).

[13] *In re Porter Dev. Partners, LLC*, 2018 WL 1626246, at *7 (Bankr. S.D. Tex. Mar. 30, 2018) (quoting *Matter of Northtown Mall Assoc.*, 3 F.3d 436 (5th Cir. 1993)).

[14] *Matter of Northtown Mall Assocs.*, 3 F.3d 436, at *4 (reversing lift of stay).

[15] *In re MCC Humble Auto Paint, Inc.*, 2011 WL 3799764, at *3.

[16] *HSH Nordbank AG v. Baytown Navigation, Inc. (In re Baytown Navigation, Inc.)*, 2012 WL 1123047, at *3 (S.D. Tex. Apr. 3, 2012).

[17] *In re Eagle Enters., Inc.*, 265 B.R. 671, 680 (E.D. Pa. 2001) ("unsecured creditors are entitled to relief from an automatic stay only in extraordinary circumstances"); *In re Stranahan Gear Co.*, 67 B.R. 834, 838 (Bankr. E.D. Pa. 1986) ("Several factors militate strongly against the allowance of any relief … where the moving party is an unsecured creditor.").

[18] *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990); *see also Capital Communications Federal Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997) ("[A] bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.").

structure is consistent with the Debtors' agreements with other lenders in these cases. The Debtors also have proposed to surrender seven Vehicles and turnover to Movant any actual lease receipts realized by the Debtors from the four Vehicles that have been leased to third parties. In light of this adequate protection proposal, Movant has not established cognizable harm or cause to justify relief from the stay.

19. Movant has suggested that Kal Trailers has not procured sufficient insurance for the Vehicles because the deductible of $150,000 per vehicle is too high. However, as quoted above, the insurance provision in the parties' prepetition agreement does not set a minimum threshold for a deductible. It does not even mention the concept of a deductible. The insurance provision merely requires that Kal Trailer fully insure the value of Movant's collateral. The Debtors have insurance of up to $1.5 million per occurrence. Kal Trailers has maintained this level of insurance since prior to the Petition Date.

20. Further, Movant can make no showing of harm. The Debtors have budgeted $130,000 per month for possible losses payable by the Debtors, consistent with the Debtors' historical run rate, and have been paying for actual postpetition losses on a current basis at a rate that does not exceed such budgeted amount. In other words, the Debtors are satisfying their administrative obligations for vehicle damage or loss that may occur in the ordinary course. This is not a basis for Movant to obtain broad-ranging relief from stay to remove critical equipment needed for the Debtors' operations in the midst of their sale and restructuring process.

21. Lifting the automatic stay will prejudice the Debtors and other creditors and the balance of harms strongly disfavors granting the Motion. The Debtors are attempting to maintain operations and their going concern value for the benefit of their estates and all stakeholders. Allowing Movant to exercise remedies against the Vehicles that are necessary for the Debtors'

ongoing operations stands starkly in the face of the proper administration of these bankruptcy cases. The Debtors therefore urge the Court to deny the Motion.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court deny the Motion and grant such other and further relief as is just and proper under the circumstances.

Dated: January 31, 2025                              **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Teddy M. Kapur*
Teddy M. Kapur (SBT 24046186)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
tkapur@pszjlaw.com
mlitvak@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

      I certify that on January 31, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                         */s/ Teddy M. Kapur*
                                         Teddy M. Kapur