**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**OBJECTION OF MITSUBISHI HC CAPITAL CANADA INC.,
TRUIST EQUIPMENT FINANCE CORP., AND FIFTH
THIRD BANK, N.A. TO THE COMBINED DISCLOSURE
STATEMENT AND PLAN OF LIQUIDATION OF KAL FREIGHT INC. AND ITS
AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Mitsubishi HC Capital Canada Inc. ("MHCCA"), Truist Equipment Finance Corp. ("TEFC"), and Fifth Third Bank, N.A. ("Fifth Third" and, together with MHCCA and TEFC, the "Objectors"), creditors of the above-captioned debtors (the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the Debtors *Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 515] (the "Combined Disclosure Statement and Plan"), which includes both the Debtors' proposed disclosure statement (the "Disclosure Statement") and chapter 11 plan (the "Plan").[2]   In support of the Objection, the Objectors respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are:  KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320).  The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning provided in the Combined Disclosure Statement and Plan.

## I.   PRELIMINARY STATEMENT

1.      Prior to the commencement of the bankruptcy cases (the "Chapter 11 Cases"), the Debtors and their principal, Kalvinder Singh ("Mr. Singh"), committed fraud on their lenders by, among other schemes: (a) double pledging collateral; (b) pledging non-existent collateral; (c) altering VINs to mislead lenders; and (d) transferring collateral between affiliated Canadian companies in violation of loan documents.  Indeed, the Debtors do not run from such allegations and have conceded, as stated in the declaration of the Debtors' Chief Restructuring Officer, Bradley D. Sharp, that the Debtors may have engaged in significant malfeasance prior to the Petition Date[3] to the detriment of all creditors.  Notwithstanding the Debtors' fraud and the need to unwind their web of deceit, they have tried to operate these Chapter 11 Cases as though the businesses are a going concern that required a financial restructuring to turnaround operations. Unsurprisingly, however, the business could not recover from the fraud and is being crushed by the effects of the Debtors' prepetition fraudulent decisions.

2.      On the verge of running out of money to operate in chapter 11, the Debtors' latest attempt to salvage these Chapter 11 Cases is to rush a plan process—one that lacks clarity and purpose.  The Disclosure Statement generally describes a process by which the Debtors will seek a quick sale of their business as a going concern (a sale that is notably unsupported by any party in interest).  If, however, a sale does not materialize quickly, the Debtors will toggle to an orderly wind down, which may include the sale of specific collateral and the abandonment of collateral that it cannot sell.  As part of the wind down, the Plan establishes a Liquidating Trust.  Beyond a

---

[3] *Declaration of Bradley D. Sharp In Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 5], ¶ 10 ("Aside from the foregoing debt obligations, the Debtors have been the subject of various allegations of malfeasance, including that certain of the Debtors' personnel improperly moved trucks and trailers from the United States to Canada, improperly titled vehicles, and engaged in inappropriate accounting practices. . . .").

general discussion of how the Plan may operate, the Disclosure Statement lacks any material information that informs a creditor's vote.  Restated, the Disclosure Statement is so devoid of information and detail regarding the Plan that a creditor cannot possibly know whether to vote for confirmation.

3.        Without more information regarding the two proposed paths, the Disclosure Statement falls far short of the requirements under section 1125(a) of the Bankruptcy Code. Creditors must understand the sale process, including the financial terms, the proposed timeline, and the benefit to the Debtors' estates.  Without such information, the Disclosure Statement is nothing more than a suggestion that, should the stars align, the Debtors will sell the business. Further, the Disclosure Statement must include a robust discussion of the Liquidating Trust, including the initial funding sources, the claims and assets that will be assigned to it, and the Liquidating Trustee's powers and obligations.  The Liquidating Trust is a key component of the Plan—and likely the only source of recovery for unsecured creditors—so the details are paramount.

4.        Accordingly, the Objectors request that the Court deny approval of the Disclosure Statement until it meets the requirements set forth under the Bankruptcy Code.  Creditors are entitled to understand the process on which they are being asked to vote, and the Debtors' Disclosure Statement falls woefully short of satisfying this standard.

## II.        JURISDICTION AND VENUE

5.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105(a), 1104(c), 1106(b), 1107(a), and 1125.

### III.    BACKGROUND

6.     On December 5, 2024, (the "Petition Date") the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (this "Court"). On December 18, 2024, the U.S. Trustee appointed the Official Committee of Unsecured Creditors pursuant to section 1102(a)(1) of the Bankruptcy Code. [Docket No. 184].

7.     On the eve of the Petition Date, on December 4, 2024, Mr. Singh appointed Robert H. Warshauer and John T. Young, Jr. as independent directors (the "Independent Directors") to the boards of each of the Debtors. The Independent Directors, in turn, appointed Bradley Sharp as the Chief Restructuring Officer (the "CRO"). On December 11, 2024, the Court ratified the appointment of the Independent Directors. [Docket No. 125].

8.     Prior to the Petition Date, the Objectors and certain of the Debtors (and non-Debtor entities) entered into transactions whereby the Objectors financed the Debtors' purchase of equipment used in the ordinary course of the Debtors' businesses. These transactions are more specifically described in the Examiner Motion. *See* Examiner Motion, ¶¶ 9-21.

### IV.    ARGUMENT AND AUTHORITY

9.     Approval of the Disclosure Statement should be denied because it does not contain adequate information and the Plan is patently unconfirmable. Section 1125 of the Bankruptcy Code requires that "an acceptance or rejection of a plan may not be solicited…unless, at the time of or before such solicitation, there is transmitted to such holder the plan and a written disclosure statement approved, after notice and a hearing, by the court as containing *adequate information*." *See* 11 U.S.C. § 1125(b)(emphasis supplied). Further, where a plan is on its face non-confirmable as a matter of law, then it is appropriate to deny approval of the disclosure statement. *See e.g. In re U.S. Brass Corp.*, 194 B.R. 420 (Bankr. E.D. Tex. 1996); *In re Quigley Co. Inc.*, 377 B.R. 110,

115-16 (Bankr. S.D.N. Y. 2007); *In re Bjolmes Realty Trust*, 134 B.R. 1000, 1002 (Bankr. D.

Mass. 1991).

      **A.**      **The Disclosure Statement Lacks Adequate Information.**

      10.      Pursuant to Bankruptcy Code Section 1125(b), a disclosure statement must contain

"adequate information" as a condition to the solicitation of a plan.  Adequate information is defined

as:

> information of a kind, and in sufficient detail, as far as is reasonably
> practicable in light of the nature and history of the debtor and the
> condition of the debtor's books and records, including a discussion
> of the potential material Federal tax consequences of the plan to the
> debtor, any successor to the debtor, and a hypothetical investor
> typical of the holders of claims or interests in the case, that would
> enable such a hypothetical investor of the relevant class to make an
> informed judgment about the plan, but adequate information need
> not include such information about any other possible or proposed
> plan and in determining whether a disclosure statement provides
> adequate information, the court shall consider the complexity of the
> case, the benefit of additional information to creditors and other
> parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1); *see also In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir.

1988)("'Adequate information' is defined in 11 U.S.C. § 1125(a) as being 'information of a kind,

and in sufficient detail…that would enable a hypothetical reasonable investor typical of holders of

claims or interests of the relevant class to make an informed judgment about the plan.'").  Courts

have discussed a number of factors for evaluating the adequacy of a disclosure statement, which

include, among others: (i) the events which led to the filing of a bankruptcy petition; (ii) a

description of the available assets and their value;  (iii) the anticipated future of the company;

(iv) the source of information stated in the disclosure statement; (v) the present condition of the

debtor while in Chapter 11; (vii) the scheduled claims; (viii) the estimated return to creditors under

a Chapter 7 liquidation; (ix) the accounting method utilized to produce financial information and

the name of the accountants responsible for such information; the estimated administrative expenses, including attorneys' and accountants' fees; (x) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; and (xi) information relevant to the risks posed to creditors under the plan. *See e.g.*, *In re U.S. Brass Corp.*, 194 B.R. 420, 424 (Bankr. E.D. Tex. 1996); *Westland Oil Dev. Corp. v. MCorp Management Solutions, Inc.*, 157 B.R. 100, 102 (S.D. Tex. 1993)*; In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).

11.     Importantly, "[t]he code requires that the debtors adequately, not selectively, disclose fully and precisely all information a creditor would reasonably want before voting on the plan." *Westland Oil Dev. Corp. v. MCorp Mgmt. Solutions, Inc.*, 157 B.R. 100, 104 (S.D. Tex. 1993).  Here, the Disclosure Statement appears to be hardly more than a skeleton placeholder, completely devoid of the details specific to these Chapter 11 Cases and wholly insufficient to provide creditors the requisite information for making an informed determination as to their acceptance or rejection of the Plan.  Among the most glaring deficiencies are the following:

> **i.     The Disclosure Statement lacks basic information regarding the Plan's proposed sale.**

12.     The Disclosure Statement and Plan are premised on a *possible* sale of the Debtors' business as a going concern.  *See* Disclosure Statement, Sec. 4.C.  Unsold collateral will be abandoned to each creditor. *See id.*[4]  However, the Disclosure Statement provides zero detail about how the Debtors will (or are) conducting the sale.  For instance, the Disclosure Statement lacks information on the proposed sale timeline, marketing efforts, bidder interest, sale cost, closing logistics, and the application of proceeds.

---

[4] Section XIV.A of the Disclosure Statement restates the same sale proposition—the Debtors will seek a going concern sale and abandon any unsold collateral.

13.     When this missing information is considered within the context of these Chapter 11 Cases, however, it is hardly surprising that the Debtors offer no detail.  They have nothing to describe.  The sale is, at best, a last-ditch effort to salvage an otherwise disappointing case.  What the Debtors do not say—although they should—is that there is one buyer with some interest in the company as a going concern, but any proposal is light on detail and certainly not guaranteed to close.  From the Objectors' point of view (including what was discussed during a hearing on February 12, 2025), the sale will not close.  The Disclosure Statement *must* explain the Debtors' process for selling the collateral for the maximum possible recovery to creditors.  Because the Disclosure Statement fails to provide *any* information regarding the possible sale, it necessarily fails to provide adequate information, as required by section 1125(a).  For this reason alone, the Court should not approve the Disclosure Statement.

> ii.     *The Disclosure Statement does not provide any information regarding the Liquidating Trust.*

14.     Another feature of the Plan is the creation of a Liquidating Trust to, among other things, administer certain estate assets, resolve claims, make estate distributions, and pursue causes of action.  *See id.* at Sec. XIV.C.  As is typical, the Disclosure Statement states that key details of the Liquidating Trust are contained in the Liquidating Trust Agreement, which is of course not attached to the Disclosure Statement or Plan.

15.     To accept a Plan that establishes a Liquidating Trust, the Disclosure statement must include information regarding the assets to be transferred to the Liquidating Trust, the initial funding source (including how long the funds may last), the estate causes of action that will be transferred, the Debtors' assessment of the merits and potential outcomes of claims that will be transferred, and the proposed Liquidating Trustee (the list is not exclusive).  Not one of these items is described in detail in the Disclosure Statement.  *See id.*  There is no reasonable way for a creditor

(especially an unsecured creditor) to know if it benefits from the creation of the Liquidating Trust. Creditors are being asked to make myriad assumptions without any information while hoping they make a reasonable decision that may yield a recovery. *See, e.g., In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (noting a disclosure statement must be succinct and clear).

### iii. The Disclosure Statement is devoid of necessary financial information.

16.     While the Debtors cite to a Liquidation Analysis, "attached as Exhibit C" to their Disclosure Statement, as the basis for estimated recoveries in a chapter 7 bankruptcy; no such Liquidation Analysis is included in the Disclosure Statement or has been separately filed by the Debtors. *See* Disclosure Statement, Sec. VI.H and Exhibit C.  It is fundamentally misleading, and inadequate, to cite to an undisclosed analysis, particularly because the Debtors' have acknowledged they have no ability to continue to make any adequate protection payments to secured lenders and, from all accounts, the Chapter 11 Cases are administratively insolvent. *Id.*

17.     Specifically, in order to meet the best interest of creditors test, a liquidation analysis must be provided.  The liquidation analysis must include a comprehensive schedule of assets and liabilities of each of the Debtors. Without that information, creditors cannot determine whether they are receiving as much as they would in a chapter 7 liquidation, as required by Section 1129(a)(7) of the Bankruptcy Code—a serious consideration given the pending request to convert these Chapter 11 Cases. *See Emergency Motion of Vanguard National Trailer Corporation and CIMC Reefer Trailer, Inc. to Convert These Cases to Cases under Chapter 7, or in the Alternative, Appoint a Chapter 11 Trustee* [Docket No. 569] (the "Motion to Convert").

### B. The Disclosure Statement Should Not Be Approved Because the Plan is Patently Unconfirmable.

18.     It is well settled that a court may consider defects in a debtor's plan at the disclosure stage. *In re Miller*, Case No. 96-81663, 2008 WL 191256, at *3 (Bankr. W.D. La. Jan. 22, 2008)

("Disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible."); *see also In re Am. Capital Equipment, LLC*, 688 F.3d 145, 154 (3rd Cir. 2012). "[A] bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable." *Am. Capital*, 688 F.3d at 154. The Debtor's Plan is patently unconfirmable under 11 U.S.C. § 1129(a) because it does not (and cannot) satisfy the best interest of creditors test and the Plan is not feasible.

### i. *The Plan does not satisfy the best interests of creditors test.*

19.     As stated above, the Debtors fail to include a Liquidation Analysis with the Disclosure Statement and Plan. Section 1129 of the Bankruptcy Code, in relevant part, provides that "each holder of a claim…will receive…under the plan on account of such claim or interest property of a value….that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date…." 11 U.S.C. § 1129(a)(7)(A).

20.     Without even an attempt to provide a liquidation analysis, creditors are left only with the Debtor's unsupported assurance that the Plan will produce a better outcome for the creditors than a Chapter 7 liquidation. Based on the evidence presented in the Motion to Convert, that statement likely is not even true. In any event, without proper supporting analysis, the Debtors do not provide creditors with enough information to determine whether the Plan satisfies the "best interests of creditors" test under Bankruptcy Code § 1127(a)(7) and the Debtors cannot state that the Plan complies with 11 U.S.C. § 1129(a)(7)(A) without providing evidence of such compliance.

###### ii.     *The Plan is not feasible.*

21.     Section 1129(a)(11) requires that the plan proponent prove that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor. . . ." The purpose of the feasibility requirement is to prevent confirmation of "visionary schemes which promise creditors . . . more under a proposed plan than the debtor can possibly attain after confirmation." *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 507–08 (Bankr. S.D. Tex. 1989) (quoting *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985)). To establish feasibility, the debtor must present proof through reasonable projections that there will be sufficient cash to fund the plan, and such projections cannot be speculative, conjectural or unrealistic. *In re Maluhia Eight, LLC*, 2010 WL 4259832 (Bankr. N.D. Tex. 2010) (citing *In re M & S Assocs.*, 138 B.R. 845, 849 (Bankr. W.D. Tex. 1992)).  The Plan is devoid of any projections, valuations, or other evidence that supports the proposed "toggle" and Liquidating Trust are viable paths for recovery to any creditor.

22.     Furthermore, at the Court's hearing on February 12, 2025, the United States Trustee noted that the CRO admitted during the Debtors' 341 meeting he and his team have not independently verified the Debtors' books and records.  Meaning this Plan is based on the books and records maintained by the Debtors' former management team who are facing serious allegations of fraud and mismanagement—allegations the Debtors have made no effort to deny or contradict.  The feasibility of the Plan is questionable where the underlying information with respect to the Debtors' assets and liabilities on which it is based on unverified—and likely inaccurate—disclosures.  As a result, any Plan proposed by the Debtors without verified and vetted information on the Debtors' assets and liabilities, cannot be accurate and, in turn, feasible.

## V.  <u>RESERVATION OF RIGHTS</u>

23.     The Objectors reserve their rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Objection, to seek discovery, and to raise additional statements at the hearing on this Objection.

## VI.  <u>NOTICE</u>

24.     Notice of this Objection has been provided by ECF, email, or first-class mail to: (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the Southern District of Texas, in accordance with Bankruptcy Rule 2007; (iii) counsel to the Committee of Unsecured Creditors; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Objectors submit that no other or further notice be given.

## VII.  <u>CONCLUSION</u>

**WHEREFORE**, Objectors respectfully request that the Court enter an order denying the approval of the Disclosure Statement.

*[Remainder of page intentionally left blank]*

11

Dated:  February 25, 2025

/s/ *Devan J. Dal Col*
Devan J. Dal Col (SBN 24116244)
Alexis A. Leventhal (admitted *pro hac vice*)
**REED SMITH LLP**
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: 469.680.4200
Facsimile: 469.680.4299
E-mail:  ddalcol@reedsmith.com
           aleventhal@reedsmith.com


*Attorneys for Objectors*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2025, a true and correct copy of the above foregoing document was served via the Court's Electronic Case Filing (ECF) system on all parties registered to receive electronic service through same.

*/s/ Devan J. Dal Col*
Devan J. Dal Col
