**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER**
**(I) APPROVING BINDING SETTLEMENT TERM SHEET WITH**
**PARTICIPATING LENDERS AND COMMITTEE, (II) AUTHORIZING**
**RELIEF FROM AUTOMATIC STAY AND/OR ABANDONMENT OF**
**CERTAIN COLLATERAL, AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested.  Relief is requested not later than March 12, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on March 12, 2025 at 10:00 a.m. (prevailing Central Time), in Courtroom 401, 4th floor, 515 Rusk, Houston, Texas 77002.  You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320).  The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion (this "<u>Motion</u>"):

## <u>RELIEF REQUESTED</u>

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "<u>Order</u>"), (a) approving that certain *Binding Settlement Term Sheet*, substantially in the form attached as **<u>Exhibit 1</u>** to the Order (the "<u>Term Sheet</u>"), by and among the Debtors, the Official Committee of Unsecured Creditors appointed in the Debtors' cases (the "<u>Committee</u>"), Triumph Financial Services, LLC ("<u>Triumph</u>"), TBK Bank, SSB ("<u>TBK</u>"), Daimler Truck Financial Services, LLC ("<u>Daimler</u>"), Banc of America Leasing & Capital, LLC ("<u>BofA</u>"), and Wells Fargo Equipment Finance, Inc. and Wells Fargo Bank, N.A. (collectively, "<u>Wells Fargo</u>") (together, Triumph, TBK, Daimler, BofA, and Wells Fargo, the "<u>Participating Lenders</u>"); (b) authorizing relief from the automatic stay in accordance with the Term Sheet; (c) authorizing the Debtors to abandon any collateral not surrendered in accordance with the Term Sheet; and (d) granting related relief.

## <u>JURISDICTION AND VENUE</u>

2.      The United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 362(a), 363(b), and 554(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and rules 6004 and 9019

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013 of the

Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## GENERAL BACKGROUND

5.      On December 5, 2024 (the "Petition Date"), the Debtors each commenced with

this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the

"Cases").  The Debtors are authorized to continue to operate their business and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee or examiner has been appointed in these Cases.

6.      On December 18, 2024, the Office of the United States Trustee (the "U.S.

Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"),

consisting of the following four members: (i) Donaldson Company, Inc.; (ii) Maxam Tire

North America, Inc.; (iii) Continental Tire the Americas, LLC; and (iv) 3G Sillect Partners LP.

*See* Docket No. 184.

7.      Information regarding the Debtors' business and capital structure and the

circumstances leading to the commencement of these Chapter 11 cases is set forth in the

*Declaration of Bradley D. Sharp in Support of Debtors' Chapter 11 Petitions and First Day

Relief* [Docket No. 5] (the "First Day Declaration"),[2] which is incorporated herein by

reference.

## SETTLEMENT BACKGROUND

8.      Since the Petition Date, the Debtors have taken affirmative steps to reduce and

right-size their fleet of trucks and trailers in order to maximize the going concern value of the

Debtors' enterprise.  The Debtors have surrendered dozens of trucks and trailers to date to

---

[2]      A capitalized term used but not otherwise defined herein shall have the meanings ascribed to it in the First Day
Declaration.

various secured parties.  The Debtors, their primary lenders, and the Committee also engaged with prospective purchasers regarding a sale of the Debtors' business and intend to proceed with a going concern sale of a portion of their assets (primarily Triumph and TBK collateral).  In addition, the Debtors seek to effectuate an orderly wind-down of their remaining assets and operations.

9.     After weeks of negotiations, the Debtors have reached agreement on a global settlement with their primary lenders (*i.e.*, the Participating Lenders) and the Committee that includes funding for an orderly sale and wind-down of the estates, to be followed by confirmation of a chapter 11 plan.  The Debtors' plan will not in any manner deviate from the terms, conditions, and obligations as set forth in the Term Sheet.  Significantly, upon consummation of the Term Sheet and the effectiveness of estate releases, as provided for in the Term Sheet, the Participating Lenders will waive administrative and adequate protection claims against the Debtors' estates in excess of amounts they have already received and also waive remaining substantial deficiency claims against the estates, except for secured claims to their rolling stock and, if applicable (*i.e.,* as in the case of TBK and Triumph), real estate collateral, pledged accounts, and other collateral, and agree not to assert any claims against the Unencumbered Assets (as defined below) of the estates.  The Term Sheet attaches a budget supported by the parties to the settlement pursuant to which the Debtors are projected to have adequate funding for the estates to satisfy administrative expenses.  The proposed settlement represents a far better outcome for the estates than a conversion to chapter 7, which would leave behind an administratively insolvent estate and cause catastrophic damage to lenders, drivers, and other constituents as there would be no orderly disposition of the Debtors'

thousands of trucks and trailers. The Debtors now seek approval of the Term Sheet to effectuate the global settlement.

10. Under the Term Sheet, which is summarized below (the terms of the Term Sheet will govern), the Participating Lenders will advance and contribute funds to the estates to fund a wind-down and sale process and the Debtors will surrender or sell the Participating Lenders' collateral (and all other rolling stock) that the Debtors have in their custody, possession, and control (the "Rolling Collateral") on the following terms:

A. Funding Obligation: Except as set forth in the Term Sheet, each Participating Lender shall fund the Debtors' estates in advance in the amount of $2,500 per truck and $1,500 per trailer that constitutes such Participating Lender's Rolling Collateral (the "Funding Obligation"), which the Debtors will surrender in a reasonable manner. The Debtors shall surrender the Rolling Collateral to the Participating Lenders by the earlier of expiration of the Budget (as described below) or April 18, 2025, and, prior to such deadline, shall exercise commercially reasonable efforts to surrender collateral to the applicable Participating Lenders on a weekly basis on terms agreed upon by the Debtors and such Participating Lender. Within three (3) business days after entry of an order approving this Motion, TBK will fund $1.25 million to the Debtors in five equal weekly installments of $250,000, and continuing on each Friday thereafter upon the expectation of weekly progress in the return of Triumph and TBK Rolling Collateral, which Funding Obligation can be paid in full at any earlier time; Daimler will fund $1 million to the Debtors in full; and BofA will fund $250,000 and Wells Fargo shall fund $126,000 to the Debtors in full, provided that the Debtors shall hold 50% of such funding from BofA and Wells Fargo in escrow pending a final reconciliation of the

trucks and trailers actually surrendered to BofA and Wells Fargo by the Debtors hereunder. The Debtors shall exercise commercially reasonable efforts to complete such reconciliation by the earlier expiration of the Budget or April 18, 2025. At the request of a Participating Lender, the Debtors will deliver trucks and trailers to the nearest Ritchie Brothers location, if practicable, for an additional charge of $500 per unit. The Debtors will act promptly to deliver funds to BofA and Wells Fargo upon reconciliation based upon any Rolling Collateral not delivered, and such obligations will be binding on any successor trustees, whether under Chapter 11, Chapter 7, or any litigation or liquidation trust. The amounts funded by TBK and Daimler hereunder shall be non-refundable and not subject to later reconciliation, provided the Debtors substantially comply with the terms and conditions of the Term Sheet. For the avoidance of doubt, the foregoing Funding Obligation shall not apply to any collateral that the Debtors were obligated to surrender under any prior entered adequate protection order, as to which the Debtors remain obligated to surrender at no additional expense.

B.      Cessation of Adequate Protection Payments: The Debtors will not be required to make any further adequate protection payments to the Participating Lenders, except that Participating Lenders will be entitled to the proceeds of the liquidation of (i) any real estate in which a Participating Lender maintains a valid, enforceable, and nonavoidable lien, (ii) in the case of TBK and Triumph, the proceeds of any other collateral in which they have liens, including as such collateral is summarized in the Interim Cash Collateral Order [Docket No. 51] and all attachments thereto, including the Stipulations

set forth in Ex. 1 (the "TBK Stipulations"), other than from the Unencumbered Assets, (iii) any Rolling Collateral, if applicable (the "Adequate Protection Exceptions").

C.      Budget: The budget attached to the Term Sheet (the "Budget") has been approved by the Participating Lenders, and any amounts budgeted for the Committee's professional fees and expenses not used shall be funded to the Trust (as defined below). The Budget will include $1,000,000 for the Committee's professional fees and expenses (in addition to $375,000 previously funded to the professional fee escrow). Triumph will continue to purchase accounts under the Factoring and Security Agreement with the Debtors pursuant to the Budget. Triumph's obligations under the Factoring Agreement will terminate at the end of the wind-down period in the Budget, and Triumph will retain all of its liens, claims, and rights under the Factoring Agreement. The Debtors will retain $350,000 from the $700,000 of the proceeds resulting from the sale of tires to Candor Tires and shall promptly remit the remaining $350,000 of proceeds from that sale to TBK, and thereafter shall share 50% of any additional proceeds of parts and tires collateral with TBK (remitting to TBK that 50% of such proceeds promptly after the Debtors' receipt of same), which payments shall be in addition to any and all adequate protection payments already made to Triumph and TBK pursuant to the interim cash collateral order.

D.      Releases of Participating Lenders: Subject to entry of the approval order and payment of the Funding Obligation by each respective Participating Lender, the Committee will support a termination of the Challenge Period (as defined in applicable financing orders) as to such Participating Lenders, and will support the entry of final financing and adequate protection orders consistent with this settlement. Subject to the

terms of the Term Sheet, the Term Sheet also contains global releases by the Debtors in favor of the Participating Lenders.

E.      Support of Sale and Plan: Subject to credit approval of the purchaser by TBK and Triumph and approval of the Federal Reserve Bank of Boston, the Debtors will file a separate Emergency Motion to Sell Assets Pursuant Bankruptcy Code Section 363, seeking approval of the sale of designated Triumph and TBK Rolling Collateral not being surrendered under the Term Sheet and certain unencumbered trailers by no later than March 10, 2025, or as soon thereafter as is practicable, and will promptly obtain an order from the Court approving such sale.  The Committee and Participating Lenders will support approval of the Term Sheet and confirmation of a chapter 11 plan in the Debtors' cases.  In addition to the releases granted under the Term Sheet which are effective for each Participating Lender contemporaneously with that Participating Lender's meeting its Funding Obligation as set forth in paragraph 10(A) hereinabove, the plan will reaffirm the estate releases in favor of the Participating Lenders to the maximum extent permitted by law and the Participating Lenders' deficiency or general unsecured claims will be separately classified and treatment shall provide for no recovery.

F.      Surrender and/or Abandonment of Collateral / Stay Relief: The Committee and the Participating Lenders will support blanket stay relief for the Debtors to (i) surrender collateral to the Participating Lenders (including Rolling Stock, encumbered real property collateral, and to TBK and Triumph, any and all of its collateral, other than the Unencumbered Assets and the real property commonly described as 825 Navy Rd., Stockton, CA) and (ii) turnover, assign, and transfer to the Participating Lenders any

rights that the Debtors have under any leases of Rolling Collateral to third parties or with respect to such collateral itself, and such blanket stay relief extends to the Participating Lenders to enforce their respective rights and remedies as to all such collateral and property to dispose of as they see fit without further order of the Court. The Debtors will direct lessees to make lease payments directly to the assigned Participating Lenders, and will promptly account for and turn over to Participating Lenders any proceeds received by Debtors on account of such assigned leases. The Debtors and any successor trustees will further reasonably cooperate with the Participating Lenders with respect to such leases, including execution of any documents required to exercise remedies, providing original or verified copies of leases, and providing lessee payment histories, in each case to the extent available. The foregoing relief and all of the terms of this settlement will be binding on any successor trustees in these cases, whether under Chapter 11, Chapter 7, or any litigation or liquidation trust.

G.    Unencumbered Assets. Each Participating Lender's claims against the Debtors or their estates (including the chapter 7 estates upon a conversion) will be limited to recovery of its collateral, including Rolling Collateral and the proceeds thereof, including lease proceeds, except as escrowed funds returnable post-reconciliation for Rolling Collateral not returned to BofA and Wells Fargo, as well as in the case of TBK and Triumph, any and all of its collateral, other than the Unencumbered Assets. The following assets will be treated as "Unencumbered Assets": (i) any causes of action belonging to the Debtors' estates except for those expressly released pursuant to the Plan or hereby (see express exclusions below) including, but not limited to, all commercial tort claims of the Debtors' estates that are not released thereby and the

proceeds thereof; (ii) any causes of action of the Debtors' estates that are not released hereby arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 553(b), or 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code   or applicable state-law equivalents and the proceeds thereof (collectively, "Avoidance Actions"); (iii) any real estate (or the equity value therein) not subject to any Participating Lender's or other secured party's valid, enforceable, and nonavoidable lien and the proceeds thereof; (iv) any rights, claims, or causes of action against Trip Portfolio, LLC (including the $3.5 million of settlement proceeds approved by the Court's Order at Docket No. 639), with respect to the real property located at 3817 Irving Boulevard, Dallas, Texas, and the proceeds thereof; (v) including as to each of the foregoing items (i) through (iv), any cash or any other consideration paid to or realized by the Debtors, the Trust, or any successor thereto from any settlement, litigation, or sale of the foregoing.

Except only with respect to (a) the Unencumbered Assets as to which Triumph has no lien or claim subject to the terms hereof; (b) Triumph's unsecured deficiency claim which is waived subject to the terms hereof; and (c) Triumph's administrative, superpriority, section 507(b) and/or diminution claims against the estates which are waived subject to the terms hereof, Triumph retains any and all liens, claims, and rights under the Factoring and Security Agreement, the final financing order to be entered, and applicable law.

For the avoidance of doubt, the following Triumph and TBK assets and collateral are not "Unencumbered Assets": (1) "Real Property Collateral" commonly described as (a) 14823, 14875 and 14887 Valley Blvd., Fontana, CA, (b) 8115 Las

Cruces Dr., Laredo, TX.; (c) Block 22, Lot 30.01 in Union Township, NJ, (d); 3393 Jonesboro Rd. South East, Atlanta, GA, and (e) 825 Navy Rd., Stockton, CA (up to the amount of the TBK secured lien and claim); (2) "Equipment Collateral," including as summarized in the TBK Stipulations; (3) "Pledged Accounts Collateral," including as set forth in the TBK Stipulations; (4) any other collateral subject to TBK's and Triumph's liens, including such collateral as summarized in the TBK Stipulations (other than the property described in subsections (i) through (iv) in this paragraph); (5) claims and causes of action related to insurance on Triumph or TBK's Rolling Collateral returned to Triumph and TBK or sold, other than any Chapter 5 causes of action related to the Debtors' payment of insurance premiums; (6) claims and causes of action relating to leased Rolling Collateral, other than unpaid lease payments for periods prior to the turnover of that leased Rolling Collateral; (7) all collateral of TBK and Triumph under the Factoring Agreement; and (8) any liens, claims, and rights under the Factoring Agreements (other than the property described in subsections (i) through (iv) in this paragraph), including, but not limited to, ownership free and clear by Triumph of all accounts Triumph purchased, all of TBK and Triumph's claims against third parties under UCC Section 9.406, all accounts receivable, all re-bills and chargebacks, all unpaid billing disputes, all reserves, all cargo claims, all warehousing invoices, and all related claims under the Factoring Agreements.

Each Participating Lender will acknowledge and agree, and disclaim any right to, the Unencumbered Assets and the proceeds thereof.  Pursuant to a chapter 11 plan, the Unencumbered Assets will be transferred to a liquidating trust for the benefit of the holders of unsecured claims against the Debtors' estates (the "Trust").  Except as stated

above, the Participating Lenders will have no obligation to fund or otherwise contribute to the Trust.

H.      Subsequent Participating Lenders: Any other secured lender or lessor of the Debtors may elect to participate in the Term Sheet and then will be treated as a "Subsequent Participating Lender."   Failure to timely elect to become a Subsequent Participating Lender will result in the immediate abandonment of such lender's or lessor's collateral to it, on an as-is, where-is basis, without any further cooperation or assistance from the Debtors.  The Debtors will have no further obligations with respect to the disposition, maintenance, or surrender of such abandoned collateral.

11.     The Term Sheet is the product of good faith, arm's-length negotiations between the Debtors, the Committee and the Participating Lenders, is mutually beneficial, and realizes significant value for the Debtors' estates, allowing for a path to a sale, an orderly wind-down, and plan confirmation.  The Term Sheet is fair, reasonable, and the best available option to maximize the value of the Debtors' estates under the circumstances.

12.     The Term Sheet shall be binding upon any subsequently appointed Chapter 11 or Chapter 7 trustee, the Trust and any plan that is confirmed shall be consistent with and shall not alter the provisions of the Term Sheet.

13.     In the event of any inconsistencies between this Motion and the Term Sheet, the Term Sheet shall govern.

14.     For the reasons set forth herein, the Court should approve the Term Sheet and authorize the Debtors' entry into and performance of the same.

**BASIS FOR RELIEF**

A.    **The Debtors' Entry Into and Performance Under the Term Sheet
Reflect a Sound Exercise of the Debtors' Business Judgment.**

15.    Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363(b)(1).  It is well established in this jurisdiction that a debtor may use estate property outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g., ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)).

16.    The Debtors have determined that a going concern sale of certain assets and an orderly wind-down of their remaining business is the best viable option to maximizing estate value, while ensuring that the Debtors' estates are adequately funded to satisfy employee, driver, vendor, and other administrative expenses.

17.    In the Debtors' business judgment, entry into the Term Sheet is a value-maximizing outcome for the Debtors' estates, given the Debtors' need for funding, the Debtors' runway to plan effectiveness, and necessity in selling or surrendering the Rolling Collateral and related assets. The Debtors are satisfied that the Term Sheet represents a sound business decision. The Term Sheet will result in the infusion of millions of dollars into the Debtors that will materially benefit these estates, given the Debtors' significant operational liquidity needs, and support the Debtors' exit from the chapter 11 process.  The Term Sheet

13

also will result in the waiver of tens of millions of dollars of deficiency claims that could be asserted against the Debtors by the Participating Lenders and ensure that the Unencumbered Assets remain unencumbered, which is an important achievement particularly for the Committee.  The effect of the settlement will be highly beneficial to all parties in interest in the Debtors' cases.

18.     The Debtors' entry into and performance under the Term Sheet therefore satisfies the applicable standard under section 363(b) of the Bankruptcy Code and should be approved.

**B.      The Term Sheet Satisfies the Bankruptcy Rule 9019 Standard and Should Be Approved.**

19.     The Term Sheet is fair, reasonable, and in the best interests of the estate and should be approved.   Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) ("Settlements are favored [in bankruptcy]."). Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).

20.     Courts within the Fifth Circuit use a three-factor balancing test to determine whether the proposed settlement is fair, reasonable, and in the best interests of the estate. *See, e.g., In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). The factors considered are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any

14

attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise," including "the best interests of the creditors with proper deference to their reasonable views," and the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.*; *In re Foster Mortgage Corp.*, 68 F.3d 914, 917-19 (5th Cir. 1995).

21.     In evaluating a settlement, the bankruptcy court's role is not to decide the merits of the issues in dispute. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Id.* (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968)).

22.     The Debtors bear the burden of establishing that the balance of the above factors, as applied to the Term Sheet, leads to a fair and equitable compromise. *In re Allied Props., LLC*, No. 06-33754, 2007 Bankr. LEXIS 2174, at *11 (Bankr. S.D. Tex. June 25, 2007) (citing *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990)). "The burden is not high;" rather, the Debtors "need only show that [their] decision falls within the 'range of reasonable litigation alternatives.'" *In re Allied Properties, LLC*, at *11 (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d. Cir. 1983)); *see also In re Heritage Org., L.L.C.*, 375 B.R. 230, 282 (Bankr. N.D. Tex. 2007).

23.     The Debtors submit that the Term Sheet represents a fair and reasonable compromise that is in the best interests of the Debtors and the estates, and satisfies the standard under Bankruptcy Rule 9019.

24.     **First**, the Term Sheet consensually and globally resolves the disputes between the Debtors, Committee, and Participating Lenders.

25.     **Second**, the Debtors anticipate that, absent a settlement, there could be significant litigation between the Participating Lenders and the Committee as to, among other items, the amount of adequate protection payments, lien review issues, financing disputes, and other potential claims, which litigation would be costly, risky, and time-consuming to the estates.  Further, without the Term Sheet, the Debtors would not have a sale of estate assets supported by the primary constituents in these cases and no Unencumbered Assets preserved for the benefit of unsecured claimants.

26.     **Third**, the Term Sheet is the product of good faith, arms-length negotiations between the Parties and is in the best interests of the Debtors' creditors, as the resulting cash infusion will reinforce the Debtors' liquidity and support their sale and orderly wind-down efforts.

27.     For the foregoing reasons, the Term Sheet is fair, reasonable, and in the best interests of the Debtors' estates.  As such, the Term Sheet satisfies the standard for approval under Bankruptcy Rule 9019 and should be approved.

## C.     Blanket Stay Relief Should Be Granted for the Rolling Collateral.

28.     Section 362(d) of the Bankruptcy Code provides, in relevant part, that the Court can lift the automatic stay (a) for cause, including the lack of adequate protection of an interest in property of such party in interest, and (b) if the debtor does not have an equity in such property and such property is not necessary to an effective reorganization. 11 U.S.C. §§ 362(d)(1), (2).

29.     The term "cause" is not defined in the Bankruptcy Code.  Instead, courts are free to determine cause on a case-by-case basis. *Reitnauer v. Texas Exotic Feline Foundation, Inc. (In re Reitnauer)*, 152 F.3d 341, 343 n.4 (5th Cir. 1998) ("Because § 362 does not offer guidance as to what constitutes 'cause,' reviewing courts must determine whether cause existed

on a case-by-case basis.). Whether cause exists is committed to the discretion of the bankruptcy court, and the bankruptcy court's decision will be overturned only with an abuse of discretion. *In re Reitnauer*, 152 F.3d at 344. "Cause" under 362(d)(1) is a broad concept that is intentionally flexible so that courts may respond to different or unique circumstances. *See In re Choice ATM Enter., Inc.*, 2015 WL 1014617 at *3 (Bankr. N.D. Tex. March 4, 2015) (citing Mooney v. Gill, 310 B.R. 543, 546–47 (N.D. Tex. 2002) (quoting In re Sentry Park, Ltd., 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988)).

30.     Here, there is ample cause to lift the automatic stay as to both the Participating Lenders and non-Participating Lenders.  With respect to the Participating Lenders, the Debtors and the Committee support the lifting of the automatic stay consistent with the terms of the Term Sheet to allow the Debtors to surrender the Participating Lenders' collateral in an orderly fashion.   Under the Term Sheet, the Participating Lenders will be funding the Debtors' surrender efforts or, in the case of Triumph and TBK, the Debtors' sale of collateral as a going concern.   With respect to non-Participating Lenders, the Debtors also need authority to surrender and/or abandon collateral of such lenders so that they can recover such assets as quickly and efficiently as possible, albeit without the direct assistance of the Debtors.  In either case, the Debtors can no longer afford to make adequate protection payments or to continue operations in the ordinary course, and all lender collateral must be promptly surrendered, abandoned, or sold.

**D.**     **Abandonment of Any Remaining Rolling Collateral Should Be Approved.**

31.     The Debtors seek authority, as necessary, to abandon any remaining Rolling Collateral to the applicable lenders thereon.  The Debtors seek to abandon any such remaining assets as-is, where-is, and in accordance with section 554(a) of the Bankruptcy Code.

32.     Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The Debtors believe that the costs associated with liquidating any remaining Rolling Collateral will not exceed the debt encumbering such assets and accordingly is of inconsequential value or benefit to the Debtors' estates and should be abandoned.

## REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY

33.     Pursuant to Bankruptcy Rules 6004(h), the Debtors seek a waiver of any stay of the effectiveness of the Order. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bank. P. 6004(h). The estates require funding and a means to an orderly exit prior to the expiration of the 14-day period. As a result, the relief requested herein is necessary and appropriate to maximize the value of the Debtors' estates for the benefit of their creditors.

34.     Accordingly, the Debtors submit that ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rule 6004 to the extent it applies and emergency hearing.

## NOTICE

35.     Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to the Bankruptcy Local Rule, including parties on the Debtors' Master Service List.

## NO PREVIOUS REQUEST

36.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

## EMERGENCY CONSIDERATION

37.     As discussed with the Court at the hearing on March 4, 2025, emergency relief on this Motion is requested no later than March 12, 2025.  As set forth above, the Debtors have an urgent need for financing and to begin the process of selling and/or surrendering their assets consistent with the Term Sheet.  Also, the Court has set certain motions to convert these cases to chapter 7 for hearing on March 12, 2025.  The Term Sheet represents the culmination of the Debtors' settlement efforts in these cases and has the support of the Participating Lenders and the Committee.  Approval of the Term Sheet is required to forestall conversion of these cases and to obtain the necessary funding for the Debtors to satisfy administrative expenses and obtain access to the Unencumbered Assets for the benefit of these estates.  Given the urgency of obtaining approval of the Term Sheet, the Debtors submit that emergency consideration is appropriate under the circumstances.

## CONCLUSION

The Debtors request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

[*Remainder of the page intentionally left blank*]

Dated: March 7, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Maxim B. Litvak*

Teddy M. Kapur (SBT 24046186)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
tkapur@pszjlaw.com
mlitvak@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 7, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Maxim B. Litvak*

Maxim B. Litvak