# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING (A) THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, INTERESTS, CHARGES, AND ENCUMBRANCES, (B) THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE PURCHASE AGREEMENT, AND (C) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND UNEXPIRED LEASES AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than March 12, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on March 12, 2025 at 10:00 a.m. (prevailing Central Time), in Courtroom 401, 4th floor, 515 Rusk, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company") submit this *Debtors' Emergency Motion for Entry of an Order (I) Authorizing (A) the Sale of Certain Assets Free and Clear of Liens, Claims, Rights, Interests, Charges, and Encumbrances, (B) the Debtors to Enter Into and Perform Under the Purchase Agreement, and (C) the Assumption and Assignment of Certain Contracts and Unexpired Leases and (II) Granting Related Relief* (this "Motion").  In support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.       Debtors Kal Freight, Inc. and Kal Trailers & Leasing, Inc. (collectively, "Seller") are seeking authority to sell (the "Sale") certain of the assets used in their transportation and logistics business (the "Assets")  to Noor Transport Leasing, LLC (the "Buyer"), pursuant to that certain Asset Purchase Agreement (the "APA")[2] attached to the Proposed Order (as defined below) as Exhibit 1.  The proposed form of order approving this Motion (the "Proposed Order") is attached hereto.  The Leases and Contracts (as defined in the APA) and the Cure Costs (as defined in the APA) associated with each are set forth in the attached **Exhibit A**.

2.       As disclosed to the Court at the hearing on March 4, 2025, the Buyer has certain affiliations with the Debtors' principals.[3]  However, given that the Debtors (i) are otherwise winding-down their operations and would be surrendering the bulk of the Assets and (ii) have reached a global settlement contemplating this Sale that has the support of the Official Committee of Unsecured Creditors and the Debtors' principal lenders, the Debtors submit that the Sale falls well within the Debtors' sound business judgment and should be approved.  Put simply, the Debtors stand to realize $3.325 million in cash from the Sale (of which $2.4 million

---

[2]   A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the APA.
[3]    The Buyer's affiliate is also a lessor of certain real estate to Kal Freight, Inc., which the Debtors seek to assume and assign through this Motion.

would be funded in advance prior to closing), plus assumed liabilities that include substantial amounts owed under equipment leases, that otherwise would not be available to the Debtors' estates if the Sale were not approved and these cases converted to chapter 7.  Further, absent the Sale, the Debtors would be rendered administratively insolvent and the estates' creditors would not have the benefit of the provisions of the global settlement, which is the subject of a separate settlement motion.

3.     The Debtors believe in the exercise of their sound business judgment that the proposed Sale of the Assets on the terms set forth in the APA is in the best interests of creditors and these estates.  The Debtors urge the Court to approve the Sale at the hearing on March 12, 2025 (the same date as the hearing on the settlement motion), or as soon thereafter as possible, so that the Debtors can move expeditiously towards closing.  Given the Debtors' liquidity crisis, expedited approval of the Sale is necessary to maximize value for the estates.

## RELIEF REQUESTED

4.     The Debtors seek entry of the Proposed Order: (a) authorizing (i) the sale of the Assets free and clear of any liens, claims, rights, interests, charges, and encumbrances, except as set forth in the APA, (ii) the Debtors to enter into and perform under the APA, in the form substantially attached to the Proposed Order, and (iii) the assumption and assignment of certain contracts and unexpired leases as set forth in the APA and **Exhibit A** hereto and (b) granting related relief.

## JURISDICTION AND VENUE

5.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent,

3

pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 363(f), and 363(m) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Bankruptcy Rules 6004 and 6006, and rules 4002-1(e) and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## **BACKGROUND**

8.      On December 5, 2024 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "Cases"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

9.      On December 18, 2024, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"), consisting of the following four members: (i) Donaldson Company, Inc.; (ii) Maxam Tire North America, Inc.; (iii) Continental Tire the Americas, LLC; and (iv) 3G Sillect Partners LP.  *See* Docket No. 184.

10.     Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 cases is set forth in the *Declaration of Bradley D. Sharp in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 5] (the "First Day Declaration"), which is incorporated herein by reference.

4

## THE PROPOSED SALE AND SUMMARY OF THE APA

11.     The APA provides for the sale of certain assets of Kal Freight, Inc. and Kal Trailerss & Leasing, Inc. as a going concern, plus the assumption and assignment of certain contracts and leases, including payment of cure costs and substantial obligations under equipment leases.

12.     The key terms of the APA are summarized as follows:

| Asset Purchase Agreement | |
|---|---|
| **Assets** | (i) Seller's right, title and interest in and to the real property, improvements and fixtures described on Schedule 1.1.1 to the APA; (ii) Seller's right, title and interest in and to the real property and other leases and contracts described on Schedule 1.1.2 to the APA; (iii) Seller's right, title and interest in and to the truck, tractorss, trailers, vehicles and other rolling stock described on Schedule 1.1.3 to the APA; (iv) equipment and tangible personal property owned by Seller and used exclusively in connection with their business, including the personal property described on Schedule 1.1.4 to the APA; (v) intangible property owned by Seller and used exclusively in connection with their business; (vi) transferable and assignable licenses and other governmental permits; (vii) other than intercompany obligations or factored accounts, all accounts and notes receivable (whether current or non-current) arising out of the operation of the business that were not previously sold or factored and all causes of action specifically pertaining to the collection of the foregoing; (viii) inventory owned and held by Seller for use in connection with the operation of its business; and (ix) promotional allowances and vendor rebates and similar items relating exclusively to the operation of the business. <br><br> Excluded Assets include all cash deposits, cash and cash equivalents, tax assets, insurance proceeds, any rolling stock not included above, real property and leases or other contracts not listed on the applicable schedules, securities of Seller, tax records, minute books, stock transfer books and corporate seal, financial accommodations issued to third parties, claims and causes of action, including preference and avoidance actions, any scheduled excluded assets, and any books and records relating to the foregoing. |
| **Purchase Price** | Upon the Closing, the consideration to be paid by Buyer to Seller for the Property (the "Purchase Price") shall be an amount equal to: (a) Two Million Four Hundred Thousand Dollars ($2,400,000.00), which shall be paid in accordance with Section 2.1.2, plus (b) Nine Hundred Twenty Five Thousand Dollars ($925,000.00) for the Unencumbered Trailers (the "Unencumbered Trailer Payment"), plus (c) the Assumed Liabilities (as described below). |

| Asset Purchase Agreement | |
|---|---|
| **Advance Payment** | Concurrently with the mutual execution and delivery of the APA, Buyer shall pay an amount equal to $800,000 to Seller (the "Initial Payment") to Seller in immediately available, good funds, and then an additional $800,000 weekly thereafter until the sum of $2,400,000.00 has been paid to Seller (collectively with the Initial Payment, the "Advance Payments"). The Advance Payments may be used by Seller in its operations and to satisfy administrative expenses incurred by Seller prior to Closing.  At the Closing, the Advance Payments shall be credited and applied toward payment of the Purchase Price.  In the event the APA is terminated prior to the Closing, except as a result of a breach of this Agreement by Buyer, then Seller will return the Advance Payments to Buyer. |
| **Assumed Liabilities** | Effective as of the Closing Date, Buyer shall assume and be solely responsible for the Cure Costs, all existing secured obligations relating to the rolling stock in the amounts agreed between Buyer and the applicable secured lender, and those liabilities and obligations arising from or relating to the ownership of the Property or the use thereof by Buyer, and all obligations under the Leases and Contracts, from and after the Closing.<br><br>Cure Costs include the obligations under assumed Leases and Contracts.<br><br>Certain of the rolling stock that will be sold to Buyer are subject to the liens and claims of Triumph/TBK and will be assumed by Buyer. |
| **Closing Date** | The outside date for closing is currently April 4, 2025, subject to extension by Seller for up to 14 additional days. |
| **Employee Matters** | Buyer may offer to employ certain employees of Seller in Buyer's discretion. |

13.     In concert with the proposed global settlement with the Committee and the principal lenders in these cases, the Debtors are seeking expedited approval of the Sale, which is expected to close not later than April 4, 2025.

## BASIS FOR RELIEF

**A.     The Sale of the Assets and the Debtors' Entry into the APA Should Be Approved as a Sound Exercise of the Debtors' Business Judgment**

14.     Under Section 363(b) of the Bankruptcy Code, a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[4]  It is well-established in this jurisdiction that a debtor may sell estate property outside the ordinary course of business under this provision if there is a good business reason for doing

---

[4]    11 U.S.C. § 363(b)(1).

so.[5]  "Great judicial deference is given to the [debtor in possession's] exercise of business judgment" regarding the sale of estate property.[6]  Once a debtor articulates a good business reason for the sale of estate property outside the ordinary course of business, it is presumed that the debtor's decision to move forward with the sale was made "on an informed basis, in good faith, and in the honest belief that the [transaction] was in the best interests of the [debtor] company."[7]

15.    The APA and proposed Sale is a sound exercise of the Debtors' business judgment for several reasons.  The Debtors and their advisors believe the Purchase Price represents the highest and best price available for the Assets.  The alternative is a hard-stop surrender of the Assets and conversion of these cases to chapter 7, which would leave the Debtors' estates administratively insolvent and without the benefit of the global settlement or the funding thereunder.  The APA is also the product of arm's-length negotiations between sophisticated parties represented by able counsel.  The APA includes $2.4 million of the Purchase Price to be funded to the Debtors for use in operations and available to pay administrative expenses prior to closing of the Sale.  Accordingly, the Debtors submit that approval of the APA and the proposed Sale is in the best interest of their estates and is a sound exercise of their business judgment.

---

[5]    *See, e.g.*, *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011); *In re State Park Bldg. Grp., Ltd.*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005).

[6]    *State Park Bldg. Grp.*, 331 B.R. at 254.

[7]    *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1990); *see Richmond Leasing Co.* v. *Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("As long as [the sale of estate property] appears to enhance [the] debtor's estate, court approval of a [debtor in possession's] decision to [sell the property] should only be withheld if the [debtor's] judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.") (internal quotation marks and citation omitted).

**B.**     **The Private Sale of the Assets is Appropriate Under Bankruptcy Rule 6004**

16.     Bankruptcy Rule 6004(f)(1) permits a debtor to sell property of the estate outside of the ordinary course of its business by private sale.[8] Courts generally afford debtors in possession broad discretion to determine the manner in which estate property is sold.[9] Private sales by a debtor outside of the ordinary course of business are appropriate where the debtor demonstrates that the sale is permissible pursuant to section 363 of the Bankruptcy Code, *i.e.*, where the debtor articulates a good business reason for the sale.[10] Bankruptcy courts have a "large measure of discretion" in determining, "based upon the facts and circumstances of the proposed sale," whether a private sale, as opposed to a public auction, is appropriate.[11] In general, courts in this and other districts have approved private sales of less than all the assets of a debtor pursuant to section 363(b)(1) of the Bankruptcy Code as long as the debtor provides a valid business reason for not conducting an auction.[12]

17.     The Debtors believe that the prompt consummation of the Sale on a private basis is appropriate in light of the facts and circumstances of these chapter 11 cases, and in the best interest of the Debtors and all economic stakeholders. Stated bluntly, the Debtors have no viable

---

[8]   Fed. R. Bankr. P. 6004(f)(1); *see In re Cypresswood Land Partners, I*, 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) ("[T]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

[9]   *See, e.g.*, *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998); *In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del. 1981).

[10]   *See, e.g.*, *In re Schipper*, 933 F.2d 513, 514 (7th Cir. 1991) (private real estate sale by debtor approved when purchase price was the same as independent appraisal); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser").

[11]   *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995); *In re Blue Coal Corp.*, 168 B.R. 553, 564 (Bankr. M.D. Pa. 1994).

[12]   *See, e.g.*, *In re 9 Houston LLC*, 578 B.R. 600, 618 (Bankr. S.D. Tex. 2017) (holding there is no requirement that sales outside the ordinary course of business must be done through an auction process); *In re Wellman, Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex for $17.9 million); *In re W.R, Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. July 23, 2007) (authorizing private sale of business line for approximately $22 million); *In re Solutia, Inc.*, No. 03-17949 (SCC) (Bankr. S.D.N.Y. Dec. 28, 2006) (approving private sale of real property for approximately $7.1 million).

alternative to the Sale and the proposed global settlement, aside from an immediate shut-down, surrender/abandonment of all encumbered assets, and conversion to chapter 7.  Only the Sale and the global settlement provides the Debtors with an actionable path to adequate funding and administrative solvency, along with various benefits for unsecured creditors under the settlement.

## C.   The Sale Should be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code

18.   The Debtors also seek to sell the Assets free and clear of all liens, claims, rights, charges, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code, subject to the terms of the APA.  Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of any interest in such property if:

    (a)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (b)  the holder of the interest consents;

    (c)  such interest is a lien and the price at which such property is sold exceeds the value of all liens on such property;

    (d)  such interest is in bona fide dispute; or

    (e)  the holder of the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[13]

Section 363(f) of the Bankruptcy Code is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the applicable property free and clear of all interests (*i.e.*, all liens, claims, rights, interests, charges or encumbrances), except with respect to any interests that may be assumed under the applicable agreement.[14]

---

[13]   11 U.S.C. § 363(f).

[14]   *See In re C-Power Prods., Inc.*, 230 B.R. 800 (Bankr. N.D. Tex. 1998); *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 Bankr. LEXIS 4333, at *7 (Bankr. E.D. Tex. Dec. 19, 2007) ("satisfaction of any one of the requirements [of Section 363(f)] will suffice to warrant the Debtors' sale . . . free and clear of all interests").

19.     With respect to any party asserting a lien, claim, right, interest, charge, or encumbrance against the Assets, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f).  To the extent there are liens on the Assets, the Debtors anticipate that holders of such liens will consent to the sale because such sale will provide the most efficient approach to realizing proceeds for, among other things, the repayment of amounts due to such parties or will result in the assumption of the debt by the Buyer relating to the rolling stock in the amounts agreed between the Buyer and the applicable secured lender. The Sale will facilitate the lenders' collection of their collateral in an orderly manner, as opposed to a hard-stop shutdown of the Debtors' operations, which would leave much of the lenders' collateral abandoned throughout the country.  Any and all remaining liens on the Assets will attach to the remaining net proceeds of such Sale with the same force, effect, and priority as such liens currently have on these assets, subject to the rights and defenses, if any, of the Debtors and of any party in interest with respect thereto. Any entity that does not object to the Sale should be deemed to have consented.

20.     Thus, section 363(f)(3) of the Bankruptcy Code is satisfied.  The Debtors accordingly request authority, subject to the terms of the APA, to convey the Assets to the Buyer free and clear of all liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds from the Sale of the Assets.

**D.     The Buyer is a Good Faith Purchaser Entitled to Full Protection Pursuant to Section 363(m) of the Bankruptcy Code**

21.     Because the Buyer is acting in good faith, it is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Assets.  Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property
> in good faith, whether or not such entity knew of the pendency of
> the appeal, unless such authorization and such sale or lease were
> stayed pending appeal.[15]

Section 363(m) of the Bankruptcy Code protects a purchaser of assets sold pursuant to section

363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if

the order allowing the sale is reversed on appeal.  Purchasers are provided this protection so long

as they purchased the assets in "good faith."[16]  Although the Bankruptcy Code does not define

"good faith purchaser," the Fifth Circuit has stated that a good faith purchaser is one who (a)

"purchases the assets for value, in good faith, and without notice of adverse claims" and (b) has

not conducted itself in a way that "involves fraud, collusion between the purchaser and other

bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."[17]  Courts

generally conclude that a purchaser has acted in good faith as long as the consideration is

adequate and reasonable and the terms of the transaction are fully disclosed.[18]

22.    Here, although the Buyer is affiliated with the Debtors, it is acting as a bona fide

purchaser with respect to the APA, and the Buyer is offering fair value to the estates in exchange

for the Assets.  All terms of the proposed Sale have been disclosed, as well as the Buyer's

affiliation with insiders of the Debtors.  The Debtors agreed to the Sale to the Buyer following an

extensive negotiation process.  In connection with this process, the Debtors engaged in good

faith, arm's-length discussions to reach an agreement with the Buyer that would be mutually

---

[15]    11 U.S.C. § 363(m).

[16]    *Id.*

[17]    *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014).

[18]    *In re Abbotts Dairies*, 788 F.2d 143, 149–50 (3d Cir. 1986).

beneficial to the parties.  The Debtors and the Buyer were each represented by separate counsel in connection with the negotiation and documentation of the APA.  A fair and transparent negotiation process, such as that conducted by the Debtors here, ensures the proposed Sale is at arm's-length, without collusion or fraud, and entered into in good faith.  Accordingly, the Debtors request that the Court determine that the Buyer has negotiated and acted at all times in good faith with respect to the Sale and, as a result, is entitled to the full protections accorded to good faith purchasers under section 363(m) of the Bankruptcy Code.  Such finding is limited to the Sale and no other transactions with respect to the Debtors.

**E.      The Assumption and Assignment of Contracts and Unexpired Leases
         Should Be Approved**

23.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor."  11 U.S.C. § 365(a).  The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *See, e.g.*, *In re Senior Care Ctrs., LLC*, No. 18-33967, 2019 Bankr. LEXIS 3185, at *7 (Bankr. D. N.D. Tex. Oct. 4, 2019) (citing *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)); *In re Republic Airways Holdings Inc.*, 2016 Bankr. LEXIS 1927, at *10-11 (Bankr. S.D.N.Y. May 3, 2016) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that Section 365 is traditionally subject to the "business judgment" standard); *In re Gucci*, 193 B.R. 411 (S.D.N.Y. 1996). If the debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) ("The bankruptcy court will generally approve [the debtor's] choice, under the deferential 'business judgment'

rule.") (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984)); *see also Group of Institutional Investors v. Chicago M. St. P. & P.R.R. Co.*, 318 U.S. 523 (1943); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d. Cir. 1989). Under the business judgment test, a court should approve a debtor's proposed assumption if such assumption will benefit the estate. *In re Tayfur*, 599 Fed. App'x. 44, 46 (3rd Cir. 2015); *In re Republic Airways Holdings Inc.*, Case No. 16-10429, 2016 Bankr. LEXIS 1927, at *10-11 (Bankr. S.D.N.Y. May 3, 2016) ("Courts generally will not second-guess a debtor's business judgment concerning whether an assumption or rejection benefits the debtor's estate."); *In re Gunner Hotel Assoc.*, 96 B.R. 696, 698, (Bankr. W.D. Tex. 1988); *In re Food City, Inc.*, 94 B.R. 91, 93-94 (Bankr. W.D. Tex. 1988); *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.),* 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *In re Stable Mews Assoc.,* 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984) ("The business judgment test "requires only that the trustee (or debtor-in-possession) demonstrate that rejection of the executory contract will benefit the estate."). Any more exacting scrutiny would slow the administration of a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the Court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank, NA.*, 762 F.2d 1303, 1311 (5th Cir. 1985). Moreover, pursuant to section 365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).

24.     Section 365(f) of the Bankruptcy Code provides that once an executory contract is assumed, the debtor may elect to assign such contract if "adequate assurance of future

performance is provided." 11 U.S.C. § 365(f)(2). *See also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Center, Inc.)*, 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate."); *see also RPD Holdings, L.L.C. v. Tech Pharm. Servs. (In re Provider Meds, L.L.C.)*, 907 F.3d 845, 851 (5th Cir. 2018) ("Once a trustee assumes an executory contract, a trustee may generally also assign the contract even where legal or contractual provisions would otherwise prohibit assignment."); *Leonard v. General Motors Corp. (In re Headquarters Dodge, Inc.)*, 13 F.3d 674, 682 (3d Cir. 1994) (noting purpose of section 365(f) is to assist trustee in realizing the full value of the debtor's assets). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B. R. 524, 538 (Bankr. D.N.J. 1989). *See also Absinthe Bar, L.L.C. v. Bourbon Saloon, Inc. (In re Bourbon Saloon, Inc.)*, 647 Fed. App'x. 342, 346 (5th Cir. 2016) ("A bankruptcy court's determination of adequate assurance of future performance and the ability to cure under § 365 is a fact-specific question.") (citing *Tex. Health Enters. Inc. v. Lytle Nursing Home (In re Tex. Health Enters. Inc.)*, 72 F. App'x. 122, 126 (5th Cir. 2003)); *Winters Nursery LLC v. Color Spot Holdings, Inc. (In re Color Spot Holdings, Inc.)*, 2018 WL 3996938, at *2 (D. Del. 2018); *In re Texas Health Enters., Inc.*, 246 B.R. 832, 834 (Bankr. E.D. Tex Jan. 27, 2000); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (stating that adequate assurance of future performance does not mean absolute assurance that debtor will thrive). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when a prospective assignee of a lease from debtors has financial

14

resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding); *In re Old South Coors, Inc.*, 27 B.R. 923, 926 (Bankr. N.D. Miss. 1983) (finding that successful business experience and financial strength of assignees met "all reasonable standards of adequate assurance . . . .").

25.     Here, the Debtors submit that the Leases and Contracts designated under the APA should be assumed and assigned to the Buyer in the sound discretion of the Debtors.   The assumption and assignment of the Leases and Contracts are a necessary component of the Sale and will minimize prepetition rejection claims that may be asserted against the Debtors' estates. If not assumed and assigned under the APA, the Leases and Contracts will be rejected by the Debtors.

26.     As to adequate assurance of future performance, the Debtors expect that the Buyer will make the necessary showing to the counterparties to the Leases and Contracts or to this Court at the appropriate time.

27.     The Leases and Contracts that the Debtors seek to assume and assign to the Buyer and the Cure Costs associated with each are set forth in the attached **Exhibit A**.

**WAIVER OF BANKRUPTCY RULES 6004(A), 6004(H), AND 6006(D)**

28.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d).   The Debtors seek to close the Sale soon after the Sale hearing, if possible. Accordingly, the Debtors request that the Court waive the fourteen-day stay periods under Bankruptcy Rules 6004(h) and 6006(d).

## **EMERGENCY RELIEF REQUESTED**

29.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion on March 12, 2025, the same date as the hearing on the global settlement motion.  This Motion works in concert with the global settlement motion.  The Debtors also intend to move expeditiously towards closing soon after approval of this Motion. Authorizing the Debtors to sell the Assets as soon as possible is most efficient method for an orderly wind-down of the Debtors' business and an exit from bankruptcy, which will maximize value for the Debtors' estates and creditors.  Accordingly, the Debtors submit that cause exists for the emergency relief requested herein.

## **NOTICE**

30.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules.  No other or further notice is needed in light of the nature of the relief requested.

*[Remainder of page intentionally left blank]*

## <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested in this Motion and granting such other relief and further relief as appropriate under the circumstances.

Dated: March 7, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Teddy M. Kapur*
Teddy M. Kapur (SBT 24046186)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
tkapur@pszjlaw.com
mlitvak@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 7, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Teddy M. Kapur*
Teddy M. Kapur

**EXHIBIT A**

**Assumed Leases and Contracts**

| Lease/Contract | Counterparty | Property Address (if applicable) | Cure Amount | Notice Address |
|---|---|---|---|---|
| Standard Industrial Single Tenant Lease – Net Lease between Kal Freight Inc. and Rexford Industrial Realty, LP dated December 14, 2020 | Rexford Industrial Realty | 10156 Live Oak Ave. Fontana, CA 92335 | $0.00 | Rexford Industrial Realty Attn: General Counsel Attn: Howard Schwimmer, Co-CEO 11620 Wilshire Blvd., Suite 1000 Los Angeles, CA 90025 |
| Lease With Option to Purchase between Kal Freight Inc. and Rajpal Bhattal of ATS World Wide Real Estate LLC dated August 23, 2017 | Rajpal Bhattal | 2025 English Ave Indianapolis, IN 46201 | $0.00 | Noor K Bhattal LLC 5723 Dividend Rd, Suite C Indianapolis, IN 46241 |
| Commercial Lease dated September 11, 2024 between Kal Freight Inc. and Amza Memphis LLC | Amza Memphis LLC | 3388 Gemini Dr Memphis, TN 38109 | $19,070.00 | Amza Memphis LLC Attn: Gabe Amzallag 113 Maple Ave Bala Cynwyd, PA 19004 |
| Commercial Lease Agreement between Kal Freight Inc. and Paddock Parking, LLC dated March 7, 2024 | Paddock Parking | 6060 W Washington St Phoenix, AZ 85043 | $10,000.00 | Paddock Parking 6060 W Washington Street Phoenix, AZ 85043 |
| Equipment Lease Agreement No. 088L296 between XTRA Lease and Kal Freight Inc., along with the following schedules thereto: Schedule A-6 dated as of February 22, 22 Schedule A-8 dated as of November 10, 2021 Schedule A-9 dated as of December 13, 2021 Schedule A-10 dated as of January 7, 2022 Schedule A-11 dated as of June 24, 2022 Schedule A-12 dated as of September 21, 2022 | XTRA Lease LLC | N/A | $317,478.24 | c/o David Unseth Bryan Cave Leighton Paisner LLP One Metropolitan Square 211 North Broadway, Suite 3600 St. Louis, MO 63102 david.unseth@bclplaw.com |

| Lease/Contract | Counterparty | Property Address (if applicable) | Cure Amount | Notice Address |
|---|---|---|---|---|
| Schedule A-13 dated as of October 2, 2023<br>Schedule A-17 dated as of February 26, 2024<br>Schedule A-18 dated as of April 12, 2024<br>Schedule A-19 dated as of April 12, 2024<br>Schedule A-20 dated as of June 14, 2024<br>Schedule A-21 dated as of June 28, 2024 | | | | |
| Master Lease Agreement #4203421057 between Premier Trailers, LLC d/b/a Premier Trailer Leasing and Kal Freight Inc. dated as of July 22, 2024, along with the following schedules and addendums thereto:<br>  Lease Schedule A dated July 22, 2024<br>  Addendum dated July 22, 2024<br>  Lease Schedule A dated August 8, 2024<br>  Termination Option Addendum dated August 8, 2024<br>  Addendum Dated August 8, 2024<br>  Lease Schedule A dated September 12, 2024<br>  Termination Option Addendum dated September 12, 2024 | Premier Trailers, LLC d/b/a Premier Trailer Leasing | N/A | $135,749.88 | c/o Mark Platt<br>Frost Brown Todd LLP<br>2101 Cedar Springs Road, Suite 900<br>Dallas, TX 75201<br>mplatt@fbtlaw.com |