## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| Kal Freight Inc., *et al.*, | Case No. 24-90614 (CML) |
| Debtors.[1] | (Jointly Administered) |

## FINAL ORDER (A) PROVIDING ADEQUATE PROTECTION TO BANC OF AMERICA LEASING & CAPITAL, LLC, (B) MODIFYING THE AUTOMATIC STAY, AND (C) GRANTING RELATED RELIEF
### (Related Docket Nos. 183, 219)

Upon the motion, dated December 18, 2024 (the "Motion")[2] of KAL Freight Inc. ("KAL") and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), as debtors and debtors in possession (each a "Debtor" and collectively the "Debtors"), seeking entry of a final order (this "Final Order"),[3] *inter alia*:

(i)     authorizing all of the Debtors' remittance of the Cash Collateral (as defined below) of Banc of America Leasing & Capital, LLC ("BALC") prior to the date of this Final Order, and for BALC to apply  BALC's Cash Collateral to permanently reduce the BALC Obligations, as set forth herein;

(ii)    authorizing all of the Debtors' provision of adequate protection to BALC during the pendency of these Chapter 11 Cases for the diminution in value of BALC's interests in the BALC Collateral (as defined below), resulting from (a) the imposition of the automatic stay, (b) the Debtors' use, sale, or lease of certain of the BALC Collateral, or (c) any reason provided for in or pursuant to the Bankruptcy Code ("Diminution in Value");

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Kal Freight Inc. (0249); Kal Aviation LLC (2600); Kal Partz Inc. (0139); Kal Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3]  Pursuant to sections 105, 361, 362, 363, 364, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6003, 6004, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-1(b), 4002-1 and 9013-1 of the Bankruptcy Local Rules and the Procedures for Complex Cases for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

<div style="margin-left:2em;">

(iii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to (a) implement and effectuate the terms and provisions of this Final Order and the Settlement Term Sheet (as defined below), (b) allow BALC to take possession of and to foreclose its liens on all of the BALC Collateral, and (c) allow BALC to exercise its rights and remedies to the BALC Collateral;

(iv)    waiving the Debtors' ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against the BALC Collateral and waiving any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code; and

(v)    waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order;

</div>

and the Court having entered an interim order approving the Motion on December 20, 2024 [Docket No. 219] (the "<u>Interim Order</u>"); and the Court having considered the Motion, the Settlement Term Sheet, the exhibits attached thereto, the declaration submitted in support of the Motion, the Settlement Term Sheet and the evidence submitted and arguments made at the final hearing held on March 12, 2025 (the "<u>Final Hearing</u>"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Bankruptcy Local Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing that approval of the final relief requested in the Motion is necessary to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties-in-interest, and is essential for the orderly wind down of the Debtors' businesses and the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

A.  **Petition Date**.  On December 5, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

B.  **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.  **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6, of the United States District Court for the Southern District of Texas.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and proceedings with respect to the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Bankruptcy Local Rules 2002-1, 4001-1(b), 4002-1 and 9013-1.

D.  **Committee Formation**.  On December 18, 2024, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code.

---

[4]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

     **E.**    **Settlement Term Sheet.**  It is a condition precedent to entry of this Final Order that the foregoing parties enter into the Settlement Term Sheet (as defined below) and such Settlement Term Sheet is approved by an order of this Court.  The terms and conditions of this Final Order are expressly subject to the terms and conditions of the Settlement Term Sheet and in the event of a conflict between any term or condition of this Final Order and the Settlement Term Sheet, the terms and conditions of the Settlement Term Sheet shall control.[5] A true and correct copy of the Binding Settlement Term Sheet between the Debtors, the Committee, Triumph Financial Services, LLC, TBK Bank, SSB, Daimler Truck Financial Services, LLC, and Banc of America Leasing & Capital, LLC and Wells Fargo Bank, N.A. is attached as Exhibit "1" to *Debtors' Emergency Motion for Entry of an Order (I) Approving Binding Settlement Term Sheet with Participating Lenders and Committee, (II) Authorizing Relief from Automatic Stay and/or Abandonment of Certain Collateral, and (III) Granting Related Relief* (Dkt. No. 691) and incorporated herein for all purposes (the "Settlement Term Sheet").

     **F.**    **Notice**.  Notice of the Motion and the Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, is reasonable under the circumstances and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

     **G.**    **Debtors' Stipulations**.  Subject to Section 11 of this Final Order and the Settlement Term Sheet, the Debtors permanently and irrevocably admit, stipulate, acknowledge, and agree (collectively, the "Debtors' Stipulations") as follows:

---

[5] As set forth in the Settlement Term Sheet, BALC, the Committee and Debtors  agree that this Final Order is subject to the Settlement Term Sheet.  Accordingly, the applicable sections of this Final Order state "subject to the Settlement Term Sheet" for clarity.  However, the failure to expressly set forth "subject to the Settlement Term Sheet" in any particular section in this Final Order shall in no way limit or diminish the fact that the entirety of this Final Order is subject to the Settlement Term Sheet.

1.     *BALC Debt and Collateral.*   Prior to the Petition Date, the applicable Debtors executed a Loan and Security Agreement No. 50733-70000 dated as of April 15, 2021 (the "Master Loan Agreement"), and 18 separate Equipment Security Notes (assigned Nos. 001, 002, 003, 004, 005, 006, 007, 013, 021, 022, 023, 024, 025, 026, 035, 036, 037, 038) (together with the other documents and instruments executed and delivered in connection therewith, the "Loan Documents")[6] in the original aggregate principal amount of $31,239,971 (the "BALC Obligations"). that, among other things, financed the purchase and acquisition by Debtors of certain equipment (as evidenced by the Loan Documents, the "Loans"), primarily trucks/tractors and trailers, which secure the obligations of the Loan Documents.  The obligations under the Loan Documents are secured by properly perfected liens and security interests in approximately 445 items of collateral as described in the Loan Documents (the "BALC Collateral"). The Loans are in default as of the Petition Date, and are fully due and payable.  The Loans evidenced by the respective Loan Documents are cross-defaulted and cross-collateralized as set forth in the Loan Documents.

2.     *Use and/or Disposition of BALC Collateral.*   Under the Interim Order, the Debtors proposed the following use and/or disposition of BALC Collateral:

(a)     "**Retained Collateral**": The Debtors originally proposed to retain approximately 51 trucks/tractors and 56 trailers for their use in their post-petition business operations in exchange for adequate protection payments of $185,615.60 per month (the "Adequate Protection Payments").  The Debtors delivered a total of $504,929.22 in Adequate Protection Payments to BALC, but ceased making payments after February 14, 2025, and the

---

[6]  BALC assigned 19 of the Equipment Notes to other lenders (more specifically, Equipment Notes 009, 010, 011, 012, 014, 015, 016, 017, 018, 019, 020, 027, 028, 029, 030, 031, 032, 033 and 034), and such Equipment Notes are not addressed in this Order.

Debtors can no longer afford to make any Adequate Protection Payments to BALC and propose to surrender the remaining BALC Collateral to BALC pursuant to the Settlement Term Sheet and this Final Order;

(b) "**Leased Collateral**": The Debtors leased approximately 23 trucks/tractors and 108 trailers to third parties and owner/operators in exchange for aggregate monthly contractual lease payments anticipated to be a maximum of $172,123.58.  Some of the leases were performing and some were in default as of the Petition Date. The Debtors proposed to turn over all leases and leased Collateral which are in default on the Petition Date (the "Defaulted Leases") to BALC for termination, repossession, and foreclosure of its liens (with the automatic stay modified pursuant to the Interim Order to allow such repossession and foreclosure). Under the Interim Order, the leases of BALC Collateral which were not in default (the "Performing Leases") were retained, and the Debtors agreed to segregate and to remit 100% of the lease proceeds received to BALC, along with an accounting of lease payments, on a weekly basis to BALC.  In addition, under the Interim Order, the Debtors agreed to transfer and assign any or all of the Performing Leases and the collateral associated therewith to BALC upon request to Debtors. The Debtors now propose to transfer all remaining Defaulted Leases and Performing Leases to BALC pursuant to the Settlement Term Sheet and this Final Order;

(c) "**Returned Collateral**": The Debtors agreed to promptly turn over possession and control of all BALC Collateral in their possession, other than the Retained Collateral and leased collateral under Performing Leases (the "Performing Leased Collateral"), to BALC, and the Debtors consented to BALC exercising all of its rights and remedies under the Loan Documents to the Returned Collateral.  The Debtors now propose to transfer all remaining Retained Collateral and Performing Leased Collateral to BALC under this Final Order;

(d)      "**Other Collateral**".  In addition to the Retained Collateral, Leased Collateral and Returned Collateral, there were hundreds of BALC financed units of BALC Collateral which were improperly in the possession of third parties in violation of the Loan Documents.  Under the Interim Order, the Settlement Term Sheet and by this Final Order, the Debtors consent to the termination of the automatic stay to allow BALC to pursue possession and control of the "Other Collateral" from the third parties in possession of such Collateral, and to foreclose its liens on such Other Collateral when it is able to take possession of such other Collateral.

3.      *Validity and Perfection of the Prepetition BALC Liens*.  Subject  to Paragraph 11 hereof and the Settlement Term Sheet, the liens and security interests of BALC in the BALC Collateral (a) are perfected by a notation of BALC's security interest and lien on each title to each unit of the BALC Collateral; (b) constitute legal, valid, binding, enforceable (other than in respect of any insolvency law), and perfected security interests in and liens on the BALC Collateral; (c) were granted to or for the benefit of BALC for fair consideration and reasonably equivalent value; and (d) are not subject to defense, counterclaim, recharacterization, subordination, avoidance, disallowance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

4.      *No Challenges/Claims*.  Subject to Paragraph 11 and the Settlement Term Sheet, including without limitation, BALC fulfilling the Funding Obligations (as defined therein), the Debtors and their Estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code) objections, challenges, causes of action, and/or choses in action against BALC or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees with respect to the Loan Documents, the BALC Obligations, the BALC Collateral, or

otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents.

5.       *No Control.*  BALC does not control (nor has it in the past controlled) any of the Debtors or their respective properties or operations, does not have authority to determine the manner in which any Debtor's operations are conducted, and is not a control persons or insider of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from the Loan Documents or any other prepetition agreements between BALC and any of the Debtors.

6.       *Negative Covenants.*  The Debtors shall not sell, lease, or pledge the BALC Collateral to any other party including, but not limited to, post-petition lenders or as adequate protection to any party.

7.       *Release*.  Subject to the Term Sheet, including without limitation, BALC's payment of the full amount of its "Funding Obligation" as defined and set forth in the Settlement Term Sheet,  each of the Debtors and their estates, on their own behalf and on behalf of each of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit BALC, and each of its respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (solely in their capacities as such, collectively, the "Released Parties") of and from any and all claims, controversies, disputes,

liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to the BALC Obligations or the Loan Documents, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 of chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or common law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, or perfection of any of the BALC Obligations, the Loan Documents, or the BALC Collateral, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the BALC Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Final Order.

8.       *Waiver and Relinquishment of Rights.* The Debtors hereby acknowledge that they may hereafter discover facts different from, or in addition to, those which they now claim or believe to be true with respect to the claims released herein. The Debtors hereby acknowledge that they are knowingly and voluntarily waiving their rights under Section 1542 of the California Civil Code to the full extent that they may lawfully waive all such rights and benefits pertaining

to the subject matter hereof, except as expressly excluded, and that the consequences of such waiver have been explained to them by their counsel and/or advisors. The Debtors acknowledge that they are familiar with the provisions of Section 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY

No part of the releases provided by this Final Order shall extend to the Debtors' rights and remedies arising from this Final Order.

**H.** **Cash Collateral**.  As used herein, the term "Cash Collateral" shall mean, to the extent such cash constitutes BALC Collateral, all of the Debtors' cash, wherever located and held, and all cash equivalents, including any cash in deposit accounts, that constitutes or will constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code. The Debtors admit, stipulate, acknowledge, and agree that all of the cash of the Debtors, wherever located and held, and all cash equivalents, including any cash in deposit accounts, that constitutes identifiable proceeds, products, accessions, rents or profits of the Leased Collateral constitutes "cash collateral" of BALC within the meaning of section 363(a) of the Bankruptcy Code.  For the avoidance of doubt, none of the Unencumbered Assets (as defined in the Settlement Term Sheet ) or the proceeds thereof shall constitute BALC Collateral or its "cash collateral".

**I.** **No Consent to Use of Cash Collateral**.

(i)     BALC has not consented and is not deemed to have consented to the use of BALC's Cash Collateral by the Debtors except as expressly set forth herein or in the Settlement

Term Sheet and nothing in this Final Order shall be construed as the affirmative consent by BALC for the use of BALC's Cash Collateral by the Debtors except as expressly set forth herein or in the Settlement Term Sheet.

(ii)     The Debtors shall segregate and remit 100% of the lease payments to BALC from the Performing Leased Collateral, and shall provide an accounting of lease payments on a weekly basis.

**J.**     **Adequate Protection**.  Subject to the terms of the Settlement Term Sheet, BALC is entitled to Adequate Protection against any Diminution in Value of its interests in the BALC Collateral, as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.   For the avoidance of doubt, pursuant to the Settlement Term Sheet, the Debtors shall not be obligated to make any adequate protection payments to BALC from and after February 7, 2025 except as provided in the Settlement Term Sheet or under this Final Order.  Also for the avoidance of doubt, pursuant to the Settlement Term Sheet, the Debtors shall be obligated to turn over lease proceeds received by the Debtors on account of the leases assigned to BALC, and shall further be obligated to turn over funds, if necessary, following any reconciliation of Rolling Collateral as set forth more fully in the Settlement Term Sheet.  Subject to the Settlement Term Sheet and consummation of the transactions contemplated therein, including, without limitation, BALC's Funding Obligation thereunder, the Debtors agree and stipulate that the Diminution in Value of the Retained Collateral is equal to the Adequate Protection Payments.

**K.**     **Good Cause**.  Good cause has been shown for the entry of this Final Order.  The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the

Debtors' remaining operating businesses and ongoing operations and winding down such operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid harm to the Debtors, their creditors, their businesses, their employees, and their estates.

      **L.**     **[Reserved]**.

      **M.**     **Final Hearing**.  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier, or hand delivery to certain parties in interest, including the Notice Parties (as defined in the Motion).  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances, and no other notice is required in connection with the relief set forth in this Final Order.

      Based upon the foregoing findings and conclusions, the Motion, and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

      1.     <u>Motion Granted on Final Basis</u>.  The Motion is granted on a final basis and solely pursuant to the terms and conditions specifically set forth in this Final Order and the Settlement Term Sheet.  All objections to the Final Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits.  This Final Order shall become effective immediately upon its entry provided, however, that, the entry of this Final Order is expressly conditioned upon the entry of an order of this Court approving and authorizing the Debtors' entry into the Settlement Term Sheet which is being submitted to the Court for its approval simultaneously herewith.

2.     <u>BALC's Cash Collateral</u>.  The Debtors shall segregate and remit 100% of the lease payments received on the Performing Leased Collateral. The Debtors shall remit said payments and provide an accounting of lease payments to BALC, on the fifth business day of each week for the previous week. The Debtors shall transfer and assign any or all of the Performing Leases and Defaulted Leases and the Collateral associated therewith to BALC.

3.     <u>Payments Free and Clear</u>.  Subject to Section 11 of this Final Order, any and all payments or proceeds remitted to BALC pursuant to the provisions of this Final Order and in accordance with the Settlement Term Sheet shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including as to the Committee or any chapter 7 trustee, chapter 11 trustee, examiner or litigation or liquidation trustee.

4.     <u>Adequate Protection for BALC</u>.  Subject to the terms of the Settlement Term Sheet, BALC is entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, to adequate protection of its interests in the BALC Collateral, to the extent of any Diminution in Value of its interests in the BALC Collateral (the "<u>Adequate Protection Obligations</u>").  Notwithstanding anything to the contrary in this paragraph (including its subparts) BALC shall have no claim against the Unencumbered Assets (as defined in the Settlement Term Sheet) for Adequate Protection Obligations or otherwise. As adequate protection, subject to the terms of the Settlement Term Sheet, BALC is hereby granted the following:

(a)     <u>[Reserved]</u>.

(b)     <u>Carve-Out</u>.  As used in this Final Order, the term "<u>Carve-Out</u>" means the sum of the following: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest, if any, at the statutory rate pursuant to 31 U.S.C.

§ 3717; (ii) all reasonable fees, costs, and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) to the extent allowed by the Court at any time, whether by interim or final compensation order, procedural order, or otherwise, all unpaid fees, costs, and expenses (collectively, the "Allowed Professional Fees") earned, accrued or incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (collectively, the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons").

(c)      *Negative Covenants.*  The Debtors shall not sell, lease, or pledge the BALC Collateral to any other party including, but not limited to, post-petition lenders or as adequate protection to any party.

(d)      Notwithstanding anything to the contrary in this Final Order, BALC shall have no claim against the Unencumbered Assets (as defined in the Settlement Term Sheet) for Adequate Protection Obligations or otherwise. As further provided for in the Settlement Term Sheet, BALC shall have waived any adequate protection claim, 507(b) claim or any other administrative claim against any of the Debtors in excess of amounts they have already received and the Adequate Protection Exceptions (as defined in the Settlement Term Sheet).

5.      Returned Collateral and Stay Relief.   Subject to the terms of the Settlement Term Sheet, the Debtors shall promptly turn over possession and control of all BALC Collateral in their possession to BALC and the automatic stay is hereby terminated as to said BALC Collateral such that BALC may exercise any and all of its rights and remedies under the Loan Documents and applicable non-bankruptcy law as to the Returned Collateral.

6.      <u>Stay Relief as to "Other Collateral"</u>.  The automatic stay is hereby terminated, subject to the Settlement Term Sheet, as to BALC's "Other Collateral" in the possession of third parties in violation of BALC's Loan Documents such that BALC may exercise any and all of its rights and remedies under the Loan Documents and applicable non-bankruptcy law as to the Other Collateral.  As provided in the Settlement Term Sheet, the termination of the automatic stay is irrevocable as to the Committee or any chapter 7 trustee, chapter 11 trustee, examiner or litigation or liquidation trustee, and the automatic stay is also terminated to permit any party-in-interest to exercise any and all of rights and remedies with respect to the Other Collateral.

7.      <u>Modification of Automatic Stay</u>.  Subject to the terms of the Settlement Term Sheet, the automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified (a) to the extent necessary to implement and effectuate the terms and provisions of this Final Order, (b) allowing BALC to take possession of and to foreclose its liens on all of the BALC Collateral, and (c) allowing BALC to exercise its rights and remedies to the BALC Collateral.

8.      <u>Credit Bidding</u>. Subject to the Settlement Term Sheet, in connection with any sale process authorized by the Court, whether effectuated through sections 363, 725, or 1123 of the Bankruptcy Code, BALC may credit bid on the BALC Collateral up to the full amount of the outstanding BALC Obligations, including any accrued and unpaid interest, expenses, fees, and other obligations for its priority collateral (each such bid, a "<u>Credit Bid</u>") pursuant to section 363(k) of the Bankruptcy Code, subject to Section 11 of this Final Order.

9.      <u>Approval of Waivers and Releases</u>.  Subject to Section 11 of this Final Order, the waivers and releases described in Paragraph G.7 and G.8 of the Court's Findings of Fact and

Conclusions of Law, *supra*, are approved and binding as to the Committee or any chapter 7 trustee, chapter 11 trustee, examiner or litigation or liquidation trustee.

10.   <u>Effect of Stipulations on Third Parties</u>.

(a)   *Generally*.  This paragraph is subject to the terms of this Section 12 and the Settlement Term Sheet, including, without limitation, satisfaction of BALC's Funding Obligations under the Settlement Term Sheet. The Debtors' Stipulations and the waivers and releases described in this Final Order  shall be binding on the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected after the Challenge Deadline (as defined below) for any of the Debtors or any other estate representative appointed in the Chapter 11 Cases or any successor Cases) in all circumstances and for all purposes.  The Debtors' stipulations, waivers and releases in this Final Order shall be binding on all creditors and other parties in interest and all of their respective successors and assigns, including, without limitation, the Committee and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes.

(b)   The "<u>Challenge Deadline</u>" shall mean the entry of the order approving the Settlement Term Sheet, BALC's payment in full of its Funding Obligation (as defined in the Settlement Term Sheet) and the Court approval and effectiveness of such Settlement Term Sheet. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases, any examiner, chapter 11 trustee, chapter 7 trustee, or liquidating trustee, any standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates,

including, without limitation, Challenges with respect to the Debtors' Stipulations, releases and waivers, and all rights to object to such standing are expressly reserved.[7]

11.     [Reserved].

12.     <u>Section 506(c) Claims</u>.  Subject to the terms of the Settlement Term Sheet, no costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases or any subsequent chapter 7 case at any time shall be charged against the BALC Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of BALC, and no such consent shall be implied from any action, inaction, or acquiescence by any party.

13.     <u>No Marshaling/Applications of Proceeds</u>.  Subject to the terms of the Settlement Term Sheet, in no event shall BALC be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the BALC Collateral.

14.     <u>Section 552(b)</u>.  Subject to the terms of the Settlement Term Sheet, BALC shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception thereunder shall not apply to it.

15.     <u>Insurance Proceeds and Policies</u>.  Subject to the Settlement Term Sheet and upon entry of this Final Order and to the fullest extent provided by applicable law, BALC shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the BALC Collateral and in accordance with the priorities set forth herein.

---

[7]  In the event this Final Order and the order approving the Settlement Term Sheet are not entered, then in such event the Challenge Deadline applicable to the Committee shall be as set forth in that certain Stipulation by and among Debtors, Daimler Truck Financial Services USA, Inc., Triumph Financials Services LLC, TBK Bank, SSB, Banc of America Leasing & Capital, LLC, and the Official Committee of Unsecured Creditors, dated on or about January 7, 2025.

16. <u>Joint and Several Liability</u>. Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder.

17. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, but subject to the terms of the Settlement Term Sheet, the entry of this Final Order is without prejudice to, and does not constitute a waiver, expressly or implicitly, of: (a) BALC's rights to seek any other or supplemental relief; (b) BALC's rights under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to request modification of the automatic stay imposed by section 362 of the Bankruptcy Code.

18. <u>No Waiver by Failure to Seek Relief</u>. The failure of BALC to seek relief or otherwise exercise its rights and remedies under this Final Order, the Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of BALC's rights hereunder, thereunder, or otherwise.

19. <u>Binding Effect of Final Order</u>.

(a) Immediately upon entry on the docket of this Court, the terms and provisions of this Final Order shall become binding upon the Debtors, BALC, all other creditors of any of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any subsequent chapter 7 or chapter 11 case, or upon dismissal of any Chapter 11 Case or Successor Case provided, however, that, the entry of this Final Order is expressly conditioned upon the entry of an order of this Court approving and authorizing the Debtors' entry into the Settlement Term which is being submitted to the Court for its approval simultaneously herewith.

.

(b)      Nothing in this Final Order, the Loan Documents, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon BALC of any liability for any claims arising from the prepetition or post-petition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  Subject to the Settlement Term Sheet, BALC shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the BALC Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the BALC Collateral shall be borne by the Debtors.

20.      <u>Limitation of Liability</u>.  In determining to permit the use of the BALC Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the Loan Documents, BALC shall not (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.,* as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon BALC of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their respective successors, assigns, affiliates,

parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns.

21.     No Modification of Final Order.  Until and unless the BALC Obligations have been indefeasibly satisfied, the Debtors shall be prohibited from seeking or consenting to, directly or indirectly, any modification, stay, vacatur, or amendment to this Final Order without the prior written consent of BALC, and no such consent shall be implied by any action or inaction of BALC.

22.     Effectiveness.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Bankruptcy Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

23.     Governing Order.  Notwithstanding the relief granted in any other order by this Court, all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to this Final Order.

24.     Bankruptcy Rules.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

25.     No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

26.     Necessary Action.  The Debtors and BALC are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Final Order. The automatic

stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this Final Order.

27.    <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or any Successor Cases.  The terms and provisions of this Final Order shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases notwithstanding the entry of any orders described in clauses (a)-(d) above, and all claims, liens, security interests, and other protections granted to BALC pursuant to this Final Order shall maintain their validity and priority as provided by this Final Order until all of the BALC Obligations have been indefeasibly satisfied.

28.    <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

29.    <u>Vanguard</u>.  For the avoidance of any doubt, notwithstanding anything to the contrary in this FInal Order or in any Plan of Reorganization confirmed in respect of the Debtors (including, in each case, any provision that purports to be preemptory) and except as provided in Option A to the Binding Settlement Term Sheet separately approved by this Court, nothing herein or therein shall (a) impact, affect, modify or release the rights, interests, or claims of Vanguard National Trailer Corporation and its affiliates ("<u>Vanguard</u>") and CIMC Reefer Trailer, Inc. ("<u>CRTI</u>") in or to any trailers manufactured by Vanguard or CRTI purportedly purchased by the Debtors (the "<u>Disputed Trailers</u>"), including the trailers identified by Vanguard and CRTI in

Adversary Proceeding No. 25-03030 (pending in the Court), (b) impact, affect, modify or release the rights, interests, or claims of any other parties to the Disputed Trailers, including the Participating Lenders and subsequent Participating Lenders, and (c) impact, affect, modify or release any pre- or post-petition claims of any kind or nature whatsoever held by Vanguard or CRTI against the Debtors or any affiliates thereof (including the Singhs) arising from any pre- or post-petition transactions occurring between Vanguard and/or CRTI and the Debtors and/or the Singhs.  For the avoidance of doubt, BALC claims no interest in any of the property identified in the complaint filed by Vanguard or CRTI in their adversary proceeding, and neither Vanguard nor CRTI has identified any property for which they claim an interest that is subject to BALC's liens.

30.   <u>Big Rig Receivership</u>.   Nothing contained in this Final Order shall determine whether the Debtors' assets, wherever located, being sold or surrendered in which the Big Rig Receivership estates or the Big Rig Chapter 15 debtor (collectively, the "<u>Receivership Estates</u>")[8] may claim an interest, constitute assets of the Debtors, or of the Receivership Estates.  All issues, and the rights of the Debtors, the Debtors' secured creditors, the Committee, Vanguard, CRTI, and the Receivership Estates, if any, to claim interests in, to avoid transfers of, and to recover assets related to, the assets that may be subject to the Receivership Estates, are fully reserved.  Nothing contained in this order shall: (i) have any effect on or determine the proper jurisdiction to resolve issues relating to the Debtors, the Debtors' secured creditors, the Committee, Vanguard, CRTI, and the Receivership Estates' rights and claims in and to assets that may be claimed subject to the

---

[8]   Grant Thornton Limited ("<u>GTL</u>") is the court appointed receiver and the Licensed Insolvency Trustee of  Big Rig Trailers and Leasing Inc., Big Rig Partz Inc., and Big Rig Tires Inc. in Canadian proceedings (the "<u>Canadian Proceeding</u>") under the Canadian Bankruptcy and Insolvency Act, RSC 1985, c B-3, as amended (the "<u>BIA</u>"), pending before the Supreme Court of British Columbia (Vancouver Registry) in Vancouver, Canada, as Case No. S-244137 (the "<u>Canadian Court</u>").  GTL is also the duly-authorized and recognized foreign representative (the "Foreign Representative") of Chapter 15 Debtor Big Rig Trailers and Leasing Inc. in a pending case filed under Chapter 15 of the Bankruptcy Code captioned In re Big Rig Trailers and Leasing Inc., (U.S. Bankruptcy Court for the Central District of California,  Case 6:24-bk-15309-WJ) (the "<u>Big Rig Debtor</u>").

Receivership Estates, (ii) constitute relief from stay or terminate any injunctive relief issued as to the Receivership Estates or any assets of the Receivership Estates, or (iii) subject the assets of the Receivership Estate, wherever located, to the jurisdiction of this Court.

31.     <u>Retention of Jurisdiction</u>.   This Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

32.     <u>Settlement Term Sheet.</u>  The terms and conditions of this Final Order are expressly subject to the terms and conditions of the Settlement Term Sheet and in the event of a conflict between any term or condition of this Final Order and a provision of the Settlement Term Sheet, the terms and conditions of the Settlement Term Sheet shall control.

Signed:  March ___, 2025

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE