# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**ORDER (I) AUTHORIZING (A) THE SALE OF CERTAIN ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, INTERESTS, CHARGES, AND
ENCUMBRANCES, (B) THE DEBTORS TO ENTER INTO AND PERFORM UNDER
THE APA, AND (C) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
CONTRACTS AND UNEXPIRED LEASES AND (II) GRANTING RELATED RELIEF**

[Related to Docket No. 692]

Upon the emergency motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) authorizing and approving, among other things, (a) the sale of the Property (as defined in the APA (as defined below)) of Debtors Kal Freight, Inc. and Kal Trailers & Leasing, Inc. (collectively, the "Seller") to Noor Transport Leasing, LLC (the "Buyer") free and clear of liens, claims, rights, interests, charges, and encumbrances (the "Sale"), subject to the terms of that certain Asset Purchase Agreement attached hereto as **Exhibit 1** (the "APA"), (b) Seller to enter into and perform under the APA (as defined herein), (c) the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale, and (ii) granting related relief, all as more fully set forth in the Motion; and upon the evidence offered in support of the Motion; and this Court having

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] The Motion is *Debtors' Emergency Motion for Entry of an Order (I) Authorizing (A) the Sale of Certain Assets Free and Clear of Liens, Claims, Rights, Interests, Charges, and Encumbrances, (B) the Debtors to Enter Into and Perform Under the Purchase Agreement, and (C) the Assumption and Assignment of Certain Contracts and Unexpired Leases and (II) Granting Related Relief* filed on March 7, 2025. Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion, and having heard the statements in support of the relief requested therein and upon the evidence submitted in support of the Motion; and this Court having conducted a hearing on the Motion (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **THE COURT HEREBY FINDS AND IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as provided herein, and entry into and performance under, the APA and the consummation of the Sale contemplated thereby is authorized and approved.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections, are hereby denied and overruled on the merits with prejudice.  Those parties who did not object or withdrew their

objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code to the relief granted herein.

3.      Notice of the Motion and Sale Hearing was adequate, appropriate, fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

## APPROVAL OF THE APA

4.      In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 6004 and as described in the Motion, the Seller is authorized, but not directed, to sell the Property to the Buyer in accordance with the terms and conditions set forth in the APA, which together with all annexes, exhibits, and amendments thereto, is hereby approved.

5.      The Seller is authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate the Sale of the Property to the Buyer pursuant to and in accordance with the terms and conditions of the APA; (b) close the Sale of the Property as contemplated in the APA and this Order; and (c) execute and deliver, perform under, consummate, implement, and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale of the Property, including any other ancillary document, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.

6.      The APA represents the highest and best offer to purchase the Property under the facts and circumstances of these chapter 11 cases, including that no party other than the Buyer or an insider (as such term is defined by applicable law) of the Debtors or their affiliates would have any interest in purchasing the Property. Approval of the APA and the consummation of the Sale contemplated hereby is in the best interests of the Debtors, their creditors, their estates, and all

other parties in interest.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Property. Notwithstanding anything set forth above or otherwise in this Order, nothing in this Order shall preclude a subsequent determination by this Court or any other court of competent jurisdiction that the Buyer is an insider (as such term is defined by applicable law) of the Debtors or their affiliates; other than for matters arising solely and directly by reason of the Sale of the Property contemplated herein.

7.      The APA was negotiated, proposed and entered into by the Debtors and Buyer without collusion, in good faith and from an arm's-length bargaining position, and is substantively and procedurally fair to all parties. The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the benefits, immunities and protections afforded thereby and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale pursuant to the APA shall not affect the validity of the Sale or the APA nor the Sale of the Property to the Buyer free and clear of liens, claims, rights, interests, charges and encumbrances, other than those reserved herein or pursuant to the terms of the APA, unless such authorization is duly stayed pending such appeal.  The Buyer has acted in good faith in all respects in connection with the Sale, in that: (i) the Buyer recognized that the Debtors were free to deal with other parties interested in acquiring the Property, (ii) all payments to be made by the Buyer and other agreements entered into by the Buyer in connection with the Sale have been disclosed, and (iii) the negotiation and execution of the APA and related agreement was in good faith and was an arm's-length transaction. Neither the Debtors nor the Buyer have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the APA,

or to otherwise prevent the consummation of the Sale contemplated by the APA. The Buyer has acted in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale contemplated by the APA at any time after entry of this Order.  Notwithstanding anything set forth above or otherwise in this Order, including any findings relating to section 363(m) or any provision that purports to be preemptory, nothing in this Order shall impact, affect, modify or release any pre- or post-petition claims of any kind or nature whatsoever held by Vanguard National Trailer Corporation and its affiliates ("Vanguard"), CIMC Reefer Trailer, Inc. ("CRTI"), or any other party against the Debtors or any affiliates thereof (including the Singhs) arising from any pre- or post-petition transactions occurring between Vanguard and/or CRTI and the Debtors and/or the Singhs, except for matters arising solely and directly by reason of the sale of assets contemplated herein.

## TRANSFER OF THE PROPERTY

8.     The Seller is authorized to sell the Property free and clear of liens, claims, rights, interests, charges, and encumbrances against the Seller or its estates (other than as included in the Assumed Liabilities (as defined in the APA)), because one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.

9.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Sale of the Property under the terms and conditions set forth in the APA shall be free and clear of any and all liens, claims, rights, charges, encumbrances, and other interests of any kind or nature whatsoever (other than included in the Assumed Liabilities); *provided* that any such liens, claims, rights, charges, encumbrances, and other interests shall attach to the proceeds of the Sale with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Property, subject to any claims and defenses that the

Seller may possess with respect thereto. Any such interests shall be transferred and attached to the proceeds of the Sale with the same validity and priority, and subject to the same defenses that such liens had against the Property immediately prior to the Closing (as defined below).  The Property will be conveyed to the Buyer on an "as-is, where is" basis, without any representations or warranties whatsoever (whether express, statutory, or implied) as to the Property, except as expressly set forth in the APA.

10.     Notwithstanding any provision of the APA to the contrary, after the Closing of the sale of the Property, the Seller shall have no further liability to any party (including, but not limited to, the Buyer) with respect to the Property, and any claims, whether administrative or otherwise, relating to or arising from the Property after the Closing of the sale and transfer of the Property that are asserted against the Seller shall be deemed disallowed.  Because the entry into the APA and consummation of the Sale constitute the exercise by the Seller of its sound business judgment, the Seller shall not have or incur any liability or otherwise be subject to any damages whatsoever for any act or omission in connection with, related to, or arising out of the negotiations of the APA or the consummation of the Sale, other than for an act or omission that constitutes a breach of the APA, fraud, gross negligence, or willful misconduct, in each case as determined by this Court or another court of competent jurisdiction pursuant to a final order.

11.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the liens and other encumbrances of record.

12.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons

and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale contemplated by the APA.

13.     The APA and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or the rights of any party holding a lien, claim, right, interest, charge or encumbrance on or against the Property.

14.     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the Sale with the Debtors that are approved by this Order.

## PROHIBITION OF ACTIONS AGAINST THE BUYER

15.     By virtue of the Sale, neither the Buyer nor any of its affiliates shall be deemed to: (i) be a legal successor, or otherwise deemed to be a successor, to any of the Debtors under any theory of law or equity; (ii) have, de facto or otherwise, merged with or into any or all Debtors or their estates; (iii) have a common identity or a continuity of enterprise with the Debtors; (iv) be an alter ego or a mere continuation or substantial continuation, or be holding itself out as a mere continuation, of the Debtors or any business, enterprise, or operation of the Debtors; or (v) be liable for any acts or omissions of the Debtors in the conduct of the business or arising under or related to the Property, other than as set forth in the APA.  The Buyer's acquisition of the Property owned by the Debtors shall be free and clear of any "successor liability", vicarious liability and other types of transferee liability of any kind or nature whatsoever, whether known or unknown as of

7

the Closing, asserted or unasserted, fixed or contingent, liquidated or unliquidated (other than, to the extent applicable, any Assumed Liabilities).  The operations of the Buyer and its affiliates shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Property. The Buyer would not have acquired the Property but for the foregoing protections against potential claims based upon "successor liability" theories.

**ASSUMPTION AND ASSIGNMENT OF LEASES AND CONTRACTS**

16.      Subject to, and effective as of the date and time of, the Closing (as defined in the APA) of the Sale of the Property contemplated by this Order and payment of the Cure Costs, the Seller may assume the Leases and Contracts (as identified in the APA) and assign each of them to the Buyer pursuant to section 365 of the Bankruptcy Code free and clear of all claims and interests, except as otherwise provided in the APA and subject to the Assumed Liabilities, and notwithstanding any anti-assignment clause as provided in section 365(f) of the Bankruptcy Code. The assumption and assignment of the Leases and Contracts pursuant to the terms of this Order is integral to the APA and is in the best interests of the Seller and its estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

17.      The Seller has, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), 365(b)(3) (to the extent applicable) and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment of the Leases and Contracts to the extent provided under the APA and have:  (1) cured or provided adequate assurance of prompt cure of any default existing prior to the Closing Date under any of the Leases and Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (2) provided compensation or adequate assurance of compensation to any

party for any actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Leases and Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

18.     As and to the extent requested or required, Buyer has provided adequate assurance of future performance of and under the Leases and Contracts, within the meaning of sections 365(b)(1), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code.

19.     The Leases and Contracts are assignable notwithstanding any provisions contained therein to the contrary, and any provisions in any Assumed Leases that prohibit or condition the assignment of such Assumed Leases or allow the non-Debtor counterparty to such Assumed Leases to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Leases constitute unenforceable anti-assignment provisions that are void and of no force and effect.

20.     Subject to the following sentence, the respective cure amounts set forth in the Motion served upon each counterparty to the Leases and Contracts (each a "Counterparty"), are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses thereunder existing prior to the Closing Date (the "Cure Costs").  If any timely response or objection to the Cure Costs was filed in response to the Motion or by agreement of the Debtors and any Counterparty, then the Cure Costs shall be determined either (i) as agreed upon by the Debtors and the Counterparty in writing and filed on an amended cure schedule (ii) or, if not agreement can be reached, then the amount set forth in a later Order of the Court resolving the cure dispute.  The Buyer shall pay the Cure Costs for each of the Leases and Contracts within five (5) Business Days after the Closing Date, subject to the right of the Buyer to remove any such Lease or Contract through and including

the Closing Date.  For the avoidance of doubt, the assumption and assignment of a Lease or Contract is not effective unless and until all Cure Costs have been paid with respect to such Lease or Contract.  Further, the assumption and assignment of the leases identified in Schedule 1.1.2(ii) of the APA between Premier Trailers, LLC d/b/a Premier Trailer Leasing and Kal Freight Inc. is subject to the condition that the Buyer shall make all payments required under such leases via ACH payment.  The Seller, its bankruptcy estates, and any successor chapter 7 or 11 trustee are not responsible for any Cure Costs (or any portion thereof).

## RELATED RELIEF

21.     For the avoidance of any doubt, notwithstanding anything to the contrary in this Order or in any Plan of Reorganization confirmed in respect of the Debtors (including, in each case, any provision that purports to be preemptory) and except as provided in Option A to the Binding Settlement Term Sheet separately approved by this Court, nothing herein or therein shall (a) impact, affect, modify or release the rights, interests, or claims of Vanguard or CRTI in or to any trailers manufactured by Vanguard or CRTI purportedly purchased by the Debtors (the "Disputed Trailers"), including the trailers identified by Vanguard and CRTI in Adversary Proceeding No. 25-03030 (pending in the Court), (b) impact, affect, modify or release the rights, interests, or claims of any other parties to the Disputed Trailers, including the Participating Lenders and subsequent Participating Lenders, and (c) impact, affect, modify or release any pre- or post-petition claims of any kind or nature whatsoever held by Vanguard or CRTI against the Debtors or any affiliates thereof (including the Singhs) arising from any pre- or post-petition transactions occurring between Vanguard and/or CRTI and the Debtors and/or the Singhs.

22.     Nothing contained in this Order shall determine whether the Debtors' assets, wherever located, being sold or surrendered in which the Big Rig Receivership estates or the Big

Rig Chapter 15 debtor (collectively, the "Receivership Estates")[3] may claim an interest, constitute assets of the Debtors, or of the Receivership Estates. All issues, and the rights of the Debtors, the Debtors' secured creditors, the Committee, Vanguard, CRTI, and the Receivership Estates, if any, to claim interests in, to avoid transfers of, and to recover assets related to, the assets that may be subject to the Receivership Estates, are fully reserved. Nothing contained in this Order shall: (i) have any effect on or determine the proper jurisdiction to resolve issues relating to the Debtors, the Debtors' secured creditors, the Committee, Vanguard, CRTI, and the Receivership Estates' rights and claims in and to assets that may be claimed subject to the Receivership Estates, (ii) constitute relief from stay or terminate any injunctive relief issued as to the Receivership Estates or any assets of the Receivership Estates, or (iii) subject the assets of the Receivership Estate, wherever located, to the jurisdiction of this Court.

23.     Notwithstanding any provision of the APA to the contrary, the Property sold and transferred to the Buyer pursuant to the Sale and this Order shall not include fixtures located in or upon the real property located at 14765 Valley Blvd, Fontana, California 92335. JPMorgan Chase Bank, N.A. asserts a properly-perfected, first priority lien in such fixtures, which shall remain unaffected by this Order.

24.     The term "Excluded Assets" in the APA shall include any insurance policies and all agreements, documents or instruments relating to such insurance policies that have been issued by ACE American Insurance Company and/or any of their U.S.-based affiliates and/or any

---

[3]   Grant Thornton Limited ("GTL") is the court appointed receiver and the Licensed Insolvency Trustee of Big Rig Trailers and Leasing Inc., Big Rig Partz Inc., and Big Rig Tires Inc. in Canadian proceedings (the "Canadian Proceeding") under the Canadian Bankruptcy and Insolvency Act, RSC 1985, c B-3, as amended (the "BIA"), pending before the Supreme Court of British Columbia (Vancouver Registry) in Vancouver, Canada, as Case No. S-244137 (the "Canadian Court"). GTL is also the duly-authorized and recognized foreign representative (the "Foreign Representative") of Chapter 15 Debtor Big Rig Trailers and Leasing Inc. in a pending case filed under Chapter 15 of the Bankruptcy Code captioned *In re Big Rig Trailers and Leasing Inc.,* (U.S. Bankruptcy Court for the Central District of California, Case 6:24-bk-15309-WJ) (the "Big Rig Debtor").

predecessors and successors, and any rights, interests, proceeds, benefits, claims, rights to payments and/or recoveries under or related thereto.

25.    All time periods set forth in this Order and the APA shall be calculated in accordance with Bankruptcy Rule 9006(a).

26.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby reduced to the extent necessary to permit Closing of the sale of the Property.  This Order shall otherwise be effective immediately upon its entry.

27.    To the extent there is any inconsistency between the terms of the APA, the Motion, and this Order, the terms of this Order shall govern.

28.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

29.    The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and the APA.

30.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

32.     This Order shall be binding upon the Buyer and all successors and assigns of the Buyer, the Debtors, their estates, any chapter 7 or chapter 11 trustee appointed in these cases, all creditors of and holders of equity interests in the Debtors, and any holders of liens against or on all or any portion of the Property.  This Order and the APA shall inure to the benefit of the Debtors, their estates, their creditors, any chapter 7 or chapter 11 trustee appointed in these cases, the Buyer, and its respective successors and assigns.

Dated: _____, 2025

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

**Asset Purchase Agreement**

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (the **"Agreement"**) is made and entered into as of this 6th day of March, 2025, by and between Noor Transport Leasing, LLC (**"Buyer"**), on the one hand, and Kal Freight, Inc. and Kal Trailers & Leasing, Inc. (collectively, **"Seller"** and, together with Buyer, the **"Parties"**), with Seller being a Debtor and Debtor in Possession under Case No. 24-90614 (CML) (the **"Case"**) in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the **"Bankruptcy Court"**).

## RECITALS

A.     Seller is a transportation and logistics business that provides its customers with trucking and freight services (the **"Business"**).

B.     Seller wishes to sell to Buyer**,** pursuant to section 363 of chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**), certain of the assets of Seller heretofore used exclusively in connection with or arising out of the operation of the Business, all at the price and on the other terms and conditions specified in detail below and Buyer wishes to purchase and acquire such assets from Seller.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.     <u>Transfer of Assets</u>.

    1.1     <u>Purchase and Sale of Assets</u>.  On the Closing Date, as hereinafter defined, in consideration of the covenants, representations and obligations of Buyer hereunder, and subject to the conditions hereinafter set forth, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, the Seller's right, title and interest as of the Closing Date in and to those assets and properties used exclusively in connection with the operation of the Business, consisting solely of the following (collectively, excluding the Excluded Assets (as defined in Section 1.2 below), the **"Property"**):

        1.1.1     <u>Real Property, Improvements and Fixtures</u>.  Seller's right, title and interest in and to the real property, improvements and fixtures described on **Schedule 1.1.1** attached to this Agreement and incorporated herein by this reference (collectively, the **"Real Property"**).

        1.1.2     <u>Leases and Contracts</u>.  Seller's right, title and interest in and to (i) the lessee's interest under those real property leases described on **Schedule 1.1.2(i)** attached to this Agreement and incorporated herein by this reference (collectively, the **"Real Property Leases"**), (ii) the lessee's interest under those equipment, personal property and intangible property leases, rental agreements, licenses, contracts, agreements and similar arrangements, if

any, described on **Schedule 1.1.2(ii)** attached to this Agreement and incorporated herein by this reference (collectively, the **"Other Leases"**), and (iii) those other contracts, leases, orders, purchase orders, licenses, contracts, agreements and similar arrangements described on **Schedule 1.1.2(iii)** attached to this Agreement and incorporated herein by this reference (collectively, the **"Other Contracts"** and together with the Real Property Leases and Other Leases, the **"Leases and Contracts"**).  Buyer shall have the right to add (subject to Seller providing adequate notice to affected contract counterparties) or remove Leases and Contracts until five (5) business days prior to the Closing Date.

         1.1.3   <u>Rolling Stock</u>.   Seller's right, title and interest in and to the encumbered truck, tractors, trailers, vehicles, and any other rolling stock, if any, described in **Schedule 1.1.3** attached to this Agreement and incorporated herein by this reference (collectively, the **"Rolling Stock"**), plus the unencumbered trailers described on Schedule 1.1.3(a) (the **"Unencumbered Trailers"**).   As used herein, the Rolling Stock and the Unencumbered Trailers do not include the Personal Property and the Inventory (each as defined below).  Buyer shall have the right to add (subject to Seller providing adequate notice to affected contract counterparties) or remove Rolling Stock until five (5) business days prior to the Closing Date

         1.1.4   <u>Personal Property</u>.   Excluding the Rolling Stock and the Unencumbered Trailers, all of those items of equipment and tangible personal property owned by Seller and heretofore used exclusively in connection with the Business, including, without limitation, all such furniture, machinery, equipment, tools, spare parts, computers, fixtures and furnishings and other items of tangible personal property listed or described in **Schedule 1.1.4** attached to this Agreement and incorporated herein by this reference (collectively, the **"Personal Property"**). As used herein, the Personal Property does not include the Rolling Stock, the Unencumbered Trailers, and the Inventory. The Personal Property shall also expressly exclude any equipment or other tangible property held by Seller pursuant to a lease, rental agreement, contract, license or similar arrangement (a **"Contract"**) where Buyer does not assume the underlying Contract relating to such personal property at the Closing.

         1.1.5   <u>Intangible Property</u>.   All intangible personal property owned or held by Seller to the extent heretofore used exclusively in connection with the Business, but in all cases only to the extent of Seller's interest and only to the extent transferable, together with all books, records and like items pertaining to the Business, the goodwill of the Business, processes, trademarks, trade names, service marks, catalogues, customer lists and other customer data bases, correspondence with present or prospective customers and suppliers, advertising materials, software programs, and telephone exchange numbers identified with the Business (collectively, the **"Intangible Property"**).  As used in herein, the Intangible Property shall in all events exclude(i) any materials containing privileged communications or information and any other materials which are subject to attorney-client or any other privilege, including but not limited to, information about employees, disclosure of which would violate an employee's reasonable expectation of privacy and (ii) any software or other item of Intangible Property held by Seller pursuant to a license or other Contract where Buyer does not assume the underlying Contract relating to such Intangible Property at the Closing.

1.1.6   <u>Governmental Permits</u>.  To the extent transferable and assignable, Seller's interest in all licenses, certificates of occupancy, permits, registrations, certificates of public convenience and necessity, approvals, licenses, easements, authorizations and operating rights issued or granted by any governmental or similar authority having jurisdiction over the Business to the extent relating exclusively to the operation of the Business (collectively, the **"Permits and Licenses"**).

1.1.7   <u>Accounts Receivable</u>.  To the extent not sold or factored prior to the Closing in the ordinary course of business, all accounts and notes receivable (whether current or non-current) and all causes of action specifically pertaining to the collection of the foregoing, in each case to the extent arising exclusively out of the operation of the Business (collectively, the **"Accounts Receivable"**).

1.1.8   <u>Inventory</u>.   All supplies, goods, materials, work in process, inventory and stock in trade owned and held by Seller for use in connection with the operation of the Business (collectively, the **"Inventory"**).

1.1.9   <u>Vendor Items</u>.  All promotional allowances and vendor rebates and similar items relating exclusively to the operation of the Business (collectively, the **"Vendor-Related Assets"**).

1.2   <u>Excluded  Assets</u>. Notwithstanding  anything  to  the  contrary  in  this Agreement, the Property shall be limited to the items identified or described in Section 1.1 above and shall in any event exclude all of the following (collectively, the **"Excluded Assets"**):  (i) those items excluded pursuant to the provisions of Section 1.1 above; (ii) Seller's rights under this Agreement and all cash and non-cash consideration payable or deliverable to Seller pursuant to the terms and provisions hereof; (iii) all cash deposits and prepaid items of Seller whether or not relating to or arising in connection with the operation of the Business; (iv) all cash and cash equivalents (including checking account balances, certificates of deposit and other time deposits and petty cash) and marketable and other securities of Seller whether or not relating to or arising in connection with the operation of the Business, (v) all tax refunds, rebates, credits and similar items of Seller whether or not relating to or arising out of the operation of the Business; (vi) insurance proceeds, claims and causes of action of Seller whether or not relating to or arising out of the operation of the Business; (vii) any Real Property of Seller which is not listed or described on **Schedule 1.1.1**; (viii) any Real Property Lease, Other Lease, or Other Contract of Seller to which Seller is a party which is not listed or described on **Schedule 1.1.2(i), Schedule 1.1.2(ii),** and **Schedule 1.1.2(iii)** and any Real Property Lease, Other Lease, or Other Contract which is not assumable and assignable as a matter of applicable law (including, without limitation, any with respect to which any consent requirement in favor of the counter-party thereto may not be overridden  pursuant  to  Section  365  of  the  Bankruptcy  Code)  (collectively,  **"Excluded Contracts"**); (ix) any Rolling Stock or Unencumbered Trailers of Seller which are not listed or described on **Schedule 1.1.3**; (x) all securities, whether capital stock or debt, of Seller or any other entity; (xi) all tax records, minute books, stock transfer books and corporate seal of Seller; (xii) any letters of credit or similar financial accommodations issued to any third party(ies) for the account of Seller and any collateral therefor and other collateral deposits and prepaid items associated with the Property; (xiii) except to the extent directly relating to or arising out of an

Account Receivable, all rights, claims and causes of action of Seller against any person or entity, including without limitation, any current or former officers, directors, employees, members, principals, agents, and representatives of Seller, (xiv) all preference or avoidance claims and actions of Seller, including, without limitation, any such claims and actions arising under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code; (xv) those additional assets, if any, listed on **Schedule 1.2(xv)** attached hereto and incorporated herein by this reference; (xvi) any intercompany accounts or notes receivable between Seller and any affiliate of Seller; and (xvi) Seller's books and records, including physical and electronic records, with respect to any of the foregoing.

       1.3   <u>Instruments of Transfer</u>.  The sale, assignment, transfer, conveyance and delivery of the Property to Buyer shall be made by deeds, assignments, bill of sale, and other instruments of assignment, transfer and conveyance provided for in Section 3 below and such other instruments as may reasonably be requested by Buyer to transfer, convey, assign and deliver the Property to Buyer, but in all events only to the extent that the same do not impose any monetary obligations upon Seller or in any other respect increase in any material way the burdens imposed by the other provisions of this Agreement upon  Seller, or any of them.

       1.4   <u>Assumed Contracts and Leases</u>.

       1.4.1   Seller shall provide timely and proper written notice of the motion seeking entry of the Approval Order to all parties to the Leases and Contracts and take all other actions reasonably necessary to cause such Leases and Contracts to be assumed by Seller and assigned to Buyer pursuant to section 365 of the Bankruptcy Code at Closing. The Approval Order shall provide that as of and conditioned on the occurrence of the Closing, Seller shall assume and assign to Buyer, the Leases and Contracts, which shall be identified by the name or appropriate description and date of the Leases and Contracts (if available), the other party to the Leases and Contracts and the address of such party for notice purposes, all included in a notice filed with the Bankruptcy Court. Such notice shall also set forth Seller's good faith estimate of the amounts necessary to cure any defaults under each of the Leases and Contracts as determined by Seller based on their books and records or as otherwise determined by the Bankruptcy Court (the "**Cure Costs**"). At the Closing, Seller shall, pursuant to the Sale Order, this Agreement, and the other agreements and instruments to be executed and delivered pursuant to this Agreement, as applicable, assume and assign to Buyer (the consideration for which is included in the Purchase Price), all Leases and Contracts that may be assigned by Seller to Buyer pursuant to sections 363 and 365 of the Bankruptcy Code, subject to adjustment pursuant to Section 1.1.2. Within five (5) Business Days after the Closing, Buyer shall pay or shall cause to be paid with funds made available by the Buyer all Cure Costs.

       1.4.2   Prior to, or at, the Closing, Seller shall not reject, terminate, amend, supplement, modify, waive any rights under, or create any adverse interest with respect to any Lease or Contract, or take any affirmative action not required thereby, without the prior written consent of Buyer.

       1.4.3   Seller shall use reasonable best efforts to secure any consent or governmental authorization as may be required to assign the Leases and Contracts to Buyer.

2.   Consideration and Liquidated Damages.

2.1   Purchase Price.

2.1.1.   Upon the Closing, the consideration to be paid by Buyer to Seller for the Property (the **"Purchase Price"**) shall be an amount equal to: (a) Two Million Four Hundred Thousand Dollars ($2,400,000.00), which shall be paid in accordance with Section 2.1.2, plus (b) Nine Hundred Twenty Five Thousand Dollars ($925,000.00) for the Unencumbered Trailers (the "**Unencumbered Trailer Payment**"), plus (c) the Assumed Liabilities (as defined below).

2.1.2   The cash portion of the Purchase Price shall be paid as follows:

(a)   Concurrently with the mutual execution and delivery of this Agreement (the date of such mutual execution and delivery is sometimes referred to herein as the **"Execution Date"**), Buyer shall pay an amount equal to $800,000 to Seller (the "**Initial Payment**") to Seller in immediately available, good funds, and then an additional $800,000 weekly thereafter until the sum of $2,400,000.00 has been paid to Seller (collectively with the Initial Payment, the "**Advance Payments**"). The Advance Payments may be used by Seller in its operations and to satisfy administrative expenses incurred by Seller prior to Closing. At the Closing, the Advance Payments shall be credited and applied toward payment of the Purchase Price. In the event this Agreement is terminated prior to the Closing, except as a result of a breach of this Agreement by Buyer, then Seller will return the Advance Payments to Buyer.

(b)   LIQUIDATED DAMAGES.  BUYER AND SELLER HEREBY ACKNOWLEDGE THAT, IN THE EVENT OF BUYER'S DEFAULT, IT WOULD BE IMPRACTICABLE AND EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES SELLER MAY SUFFER OR INCUR IN THE EVENT THAT THE TRANSACTION CONTEMPLATED HEREIN FAILS TO CLOSE BY REASON OF SUCH DEFAULT. ACCORDINGLY, NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, BUYER AND SELLER HEREBY AGREE THAT CONSIDERING ALL OF THE CIRCUMSTANCES EXISTING AT THE EXECUTION OF THIS AGREEMENT, A REASONABLE ESTIMATE OF THE TOTAL DETRIMENT THAT SELLER WOULD SUFFER IN THE EVENT THAT THE TRANSACTION CONTEMPLATED HEREIN FAILS TO CLOSE BY REASON OF BUYER'S DEFAULT IS AND SHALL BE AN AMOUNT EQUAL TO THE AMOUNT OF THE ADVANCE PAYMENTS. EXCEPT AS OTHERWISE PROVIDED IN CLAUSES (ii) AND (iii) BELOW, SAID AMOUNT SHALL REPRESENT THE FULL, AGREED, AND LIQUIDATED DAMAGES TO WHICH SELLER IS ENTITLED BY REASON OF BUYER'S BREACH AND SELLER HEREBY EXPRESSLY WAIVES ANY AND ALL OTHER CLAIMS TO DAMAGES OR OTHER REMEDIES (WHETHER AT LAW OR IN EQUITY).  THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF TEXAS LAW, BUT RATHER IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER.  UPON BUYER'S DEFAULT AND SELLER'S ELECTION TO TERMINATE THIS AGREEMENT BY REASON THEREOF, THIS AGREEMENT SHALL TERMINATE AND EXCEPT FOR (i) SELLER'S RIGHT TO

COLLECT THE AMOUNT OF SUCH LIQUIDATED DAMAGES, (ii) ANY PROVISIONS AND OBLIGATIONS (INCLUDING, WITHOUT LIMITATION, BUYER'S INDEMNITY OBLIGATIONS) OF THIS AGREEMENT WHICH BY THEIR TERMS SURVIVE ANY TERMINATION OF THIS AGREEMENT, AND (iii) THE PARTIES' RESPECTIVE OBLIGATIONS UNDER SECTION 10.2 OF THIS AGREEMENT, THE PARTIES HERETO SHALL BE RELIEVED OF ANY FURTHER LIABILITY OR OBLIGATION UNDER THIS AGREEMENT.

(b)     On the Closing Date, Buyer shall (A) pay the balance of the Purchase Price to Seller, less the Advance Payments, (B) pay the Unencumbered Trailer Payment, and (C) assume, and pay when due, the Assumed Liabilities.

2.2     Assumed Liabilities and Excluded Liabilities.

2.2.1.   Effective as of the Closing Date, Buyer shall assume only the Cure Costs, all existing secured obligations relating to the Rolling Stock in the amounts agreed between Buyer and the applicable secured lender, and those liabilities and obligations arising from or relating to the ownership of the Property or the use thereof by Buyer, and all obligations under the Leases and Contracts, from and after the Closing (collectively, the **"Assumed Liabilities"**).

2.2.2.   Notwithstanding Section 2.2.1 above, Buyer shall not assume and shall noy be responsible to pay, perform or discharge any Liabilities of Seller or any of its Affiliates of any kind or nature whatsoever other than the Assumed Liabilities (collectively, the "**Excluded Liabilities**").

2.3     Purchase Price Allocation.  Not later than sixty (60) days after the Closing Date, Buyer shall prepare and deliver to Seller for its review and consideration a schedule (the **"Allocation Schedule"**) allocating the Purchase Price among the various assets comprising the Property in accordance with Treasury Regulation 1.1060-1 (or any comparable provisions of state or local tax law) or any successor provision.  If Seller disagrees with or raises objections to the Allocation Schedule within thirty (30) days after delivery of the Allocation Schedule to Seller, Buyer and Seller will negotiate in good faith to resolve such objections.  If the Parties are able to agree upon the allocation of the Purchase Price, Buyer and Seller shall report and file all tax returns (including any amended tax returns and claims for refund) consistent with such mutually agreed Purchase Price allocation, and shall take no position contrary thereto or inconsistent therewith (including in any audits or examinations by any taxing authority or any other proceedings).  Buyer and Seller shall file or cause to be filed any and all forms (including U.S. Internal Revenue Service Form 8594), statements and schedules with respect to such allocation, including any required amendments to such forms.  If, on the other hand, the Parties are unable mutually to agree upon the manner in which the Purchase Price should be allocated, Buyer and Seller shall be free to make their own respective allocations of the Purchase Price for tax purposes.

3. Closing Transactions.

3.1 Closing Conference. The Closing of the transactions provided for herein (the **"Closing"**) shall take place at such place or places as the Parties may mutually agree upon and may be effectuated virtually.

3.2 Closing Date. The Closing shall be held upon the earlier to occur of (i) the second (2nd) business day following the satisfaction of the last of the conditions set forth in Sections 4.1 and 4.2 below, and (ii) April 4, 2025 (or later date not to extend beyond an additional 14 days in the discretion of Seller, the **"Outside Date"**); provided, however, in the event the conditions to Closing have not been satisfied or waived by the Outside Date, then any Party who is not in default hereunder may terminate this Agreement. Alternatively, the Parties may mutually agree to an extended Closing Date. Until this Agreement is either terminated or the Parties have agreed upon an extended Closing Date, the Parties shall diligently continue to work to satisfy all conditions to Closing and the transaction contemplated herein shall close as soon as such conditions are satisfied or waived.

3.3 Seller's Deliveries to Buyer at Closing. On the Closing Date, Seller shall make the following deliveries to Buyer:

3.3.1 An Assignment and Assumption of Leases and Contracts substantially in the form and content attached as **Exhibit "A"** hereto, duly executed by Seller pursuant to which Seller shall assign to Buyer Seller's respective interest, if any, in the Leases and Contracts (the **"Assignment of Leases"**).

3.3.2 A Bill of Sale and Assignment, duly executed by Seller in the form and on the terms of the bill of sale attached hereto as **Exhibit "B,"** pursuant to which Seller transfers and assigns to Buyer Seller's right, title and interest in and to the Rolling Stock, the Unencumbered Trailers, and Personal Property (the **"Bill of Sale"**).

3.3.3 A counterpart Assignment of Intangible Property, duly executed by Seller, in the form and content of the assignment of intangible property attached as **Exhibit "C"** hereto, pursuant to which Seller assigns to Buyer Seller's interest, if any, in and to the Intangile Property (the **"Assignment of Intangible Property"**).

3.3.4 A properly completed and duly executed IRS Form W-9 from Seller certifying, among other matters, that Seller is exempt from U.S. federal backup withholding tax.

3.3.5 A copy of the Approval Order.

3.3.6 A transition lease / services agreement, duly executed by Seller, in a form reasonably acceptable to Buyer, for the property identified by Buyer (the "**Transition Lease**"), pursuant to which, among other things, Buyer will lease the premises from Seller, and reimburse Seller for all obligations relating thereto, under the terms and conditions specified in the Transition Lease.

3.3.7    Any such other documents reasonably contemplated by this Agreement to be delivered by Seller to Buyer at the Closing.

3.4    <u>Buyer's Deliveries to Seller at Closing</u>.  On the Closing Date, Buyer shall make or cause the following deliveries to Seller:

3.4.1    Payment of the Purchase Price, less the Advance Payments, and payment for the Unencumbered Trailer Payment.

3.4.2    A counterpart of the Assignment of Leases, duly-executed by Buyer.

3.4.3    An Assumption of Liabilities with respect to the Assumed Liabilities, in the form and content attached as **Exhibit "E"** hereto and incorporated herein by this reference, duly-executed by Buyer (the **"Assumption of Liabilities"**).

3.4.4    A counterpart of the Transition Lease, in a form reasonably acceptable to Seller, duly-executed by Buyer.

3.4.5    Any such other documents reasonably contemplated by this Agreement to be delivered by Buyer to Seller at the Closing.

3.5    <u>Prorations</u>.    Rent, current taxes, prepaid advertising, utilities and other items of expense (including, without limitation, any prepaid insurance, maintenance, tax or common area or like payments in connection with the Real Property or under the Real Property Leases or Other Leases and Contracts, or any of them) relating to or attributable to the Business and/or the Property shall be prorated between Seller and Buyer as of the Closing Date.  All liabilities and obligations due in respect of periods prior to or as of the Closing Date shall be paid in full or otherwise satisfied by Seller and all liabilities and obligations due in respect of periods after the Closing Date shall be paid in full or otherwise satisfied by Buyer; provided, however, the provisions of this Section 3.5 are subject to Buyer's obligations to assume liabilities and obligations pursuant to Section 2.2, above.  Rent shall be prorated on the basis of a thirty (30) day month.

3.6    <u>Sales, Use and Other Taxes</u>.    Any sales, purchase, transfer, stamp, documentary stamp, use or similar taxes under the laws of the states in which any portion of the Property is located, or any subdivision of any such state, or under any federal law or the laws or regulations of any federal agency or authority, which may be payable by reason of the sale or transfer of the Property under this Agreement or the transactions contemplated herein shall be borne and paid by Buyer.

3.7    <u>Bulk Sales Laws</u>. The Parties intend that, pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Property shall be free and clear of any encumbrances in the Property including any liens or claims arising out of the bulk sales, bulk transfer, and similar laws, and the Parties shall take such steps as may be necessary or appropriate to so provide in the Approval Order. Seller and Buyer hereby waive compliance by Seller with the requirements and

provisions of any "bulk-transfer" laws of any jurisdiction that may otherwise be applicable with respect to the sale and transfer of any or all of the Property to Buyer; it being understood that any liabilities arising out of the failure of Seller to comply with the requirements and provisions of any bulk sales, bulk transfer, or similar laws of any jurisdiction shall be treated as Excluded Liabilities.

       3.8   <u>Possession</u>.  Right to possession of the Property shall transfer to Buyer on the Closing Date.  Seller shall transfer and deliver to Buyer on the Closing Date such keys, locks and safe combinations and other similar items as Buyer may reasonably require to obtain occupation and control of the Property, and shall also make available to Buyer at their then existing locations the originals of all documents in Seller's actual possession that are required to be transferred to Buyer by this Agreement. .

       3.9   <u>No Successor Liability</u>.  The Parties intend that, to the fullest extent permitted by applicable law (including under Section 363 of the Bankruptcy Code), upon the closing, Buyer shall not be deemed by virtue of this Agreement to: (a) be the successor of Seller, (b) have, de facto, or otherwise, merged with or into Seller, (c) be a mere continuation or substantial continuation of Seller or the enterprise(s) of Seller or (d) be liable or have any liability for any acts or omissions of Seller in the conduct of their businesses or arising under or related to the Property other than as expressly set forth and agreed in this Agreement. Without limiting the generality of the foregoing, and except as otherwise expressly provided in this Agreement, Buyer's acquisition of the Property and assumption of the Assumed Liabilities shall not cause Buyer to have liability for any encumbrance against Seller or any of Seller's predecessors or affiliates, or cause Buyer to incur successor or vicarious liability of any kind or character whether known or unknown as of the Closing or in connection with the transactions contemplated to occur on the Closing, whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Business, the Property or any liability of Seller arising prior to, or relating to any period occurring prior to, the Closing.

    4.   <u>Conditions Precedent to Closing</u>.

       4.1   <u>Conditions to Seller's Obligations</u>.  Seller's obligation to make the deliveries required of Seller at the Closing Date and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction or waiver by Seller of each of the following conditions:

       4.1.1   All of the representations and warranties of Buyer contained herein shall continue to be true and correct at the Closing in all material respects.

       4.1.2   Buyer shall have executed and delivered to Seller the Assignment of Leases and the Assumption of Liabilities.

       4.1.3   Buyer shall have delivered, or shall be prepared to deliver to Seller at the Closing, all consideration and documents required of Buyer to be delivered at the Closing.

4.1.4    No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.1.5    Buyer shall have substantially performed or tendered performance of each and every material covenant on Buyer's part to be performed which, by its terms, is required to be performed at or before the Closing.

4.1.6    The Bankruptcy Court shall have entered an order in substantially the form attached hereto as **Exhibit "F"** approving the transaction contemplated by this Agreement (the **"Approval Order"**) and the Approval Order shall not have been stayed as of the Closing Date.

4.2    <u>Conditions to Buyer's Obligations</u>.    Buyer's obligation to make the deliveries required of Buyer at the Closing and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

4.2.1    All of the representations and warranties of Seller contained herein shall continue to be true and correct at the Closing in all material respects.

4.2.2    Seller shall have executed and be prepared to deliver to Buyer the Quitclaim Deed, the Assignment of Leases, the Assumption of Liabilities, the Bill of Sale, and the Assignment of Intangible Property.

4.2.3    Seller shall have delivered, or shall be prepared to deliver to Buyer at the Closing, all other documents required of Seller to be delivered at the Closing.

4.2.4    No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.2.5    Seller shall have substantially performed or tendered performance of each and every covenant on Seller's part to be performed which, by its terms, is required to be performed or capable of performance at or before the Closing.

4.2.6    The Bankruptcy Court shall have entered the Approval Order and the Approval Order shall not have been stayed as of the Closing Date.

Any waiver of a condition shall be effective only if such waiver is stated in writing and signed by the waiving Party; provided, however, that the consent of a Party to the Closing shall constitute a waiver by such Party of any conditions to Closing not satisfied as of the Closing Date.

5. <u>Seller's Representations and Warranties</u>.   Seller hereby makes the following representations and warranties to Buyer:

5.1   <u>Organization, Standing and Power</u>.   Seller is duly organized, validly existing and in good standing under the laws of the states where each Seller is organized.  Seller has all requisite entity power and authority to own, lease and, subject to the provisions of the Bankruptcy Code applicable to debtors in possession, operate its properties, to carry on Seller's business as now being conducted.  Subject to entry of the Approval Order, Seller has the power and authority to execute, deliver and perform this Agreement and all writings relating hereto.

5.2   <u>Validity and Execution</u>.   This Agreement has been duly executed and delivered by Seller and, upon entry of the Approval Order, will constitute the valid and binding obligation of Seller enforceable against it in accordance with the terms hereof.

5.3   <u>No Conflict</u>.   Subject to the entry of the Approval Order, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Seller do not and will not: (i) conflict with or result in a breach of the articles of incorporation, by-laws or operating agreement, as applicable, of Seller; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority, or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Seller is a Party or by which Buyer or its assets or properties may be bound.

5.4   <u>Title to Property</u>. Seller has good and valid title to all of the Property and Seller is in possession or control of the Property.  At the Closing, Seller will transfer, convey and assign good and valid title to all of the Property to Buyer free and clear of all encumbrances, subject to the terms of this Agreement.

6. <u>Buyer's Representations and Warranties</u>.   Buyer hereby makes the following representations and warranties to Seller:

6.1   <u>Organization, Standing and Power</u>.  Buyer is a corporation duly organized, validly existing and in good standing under the laws of the state where Buyer is organized. Buyer has all requisite entity power and authority to own, lease and operate its properties, to carry on its business as now being conducted and to execute, deliver and perform this Agreement and all writings relating hereto.

6.2   <u>Validity and Execution</u>.   This Agreement has been duly executed and delivered by Buyer and constitutes the valid and binding obligation of Seller enforceable against it in accordance with the terms hereof.

6.3     No Conflict.  The consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Buyer do not and will not: (i) conflict with or result in a breach of the articles of incorporation or by-laws of Buyer or, if applicable, other organizational documents or agreements of Buyer; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Buyer is a Party or by which Buyer or its assets or properties may be bound.

7.     "AS IS" Transaction.  Buyer hereby acknowledges and agrees that, except only as provided in Section 5 above, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Property (including, without limitation, income to be derived or expenses to be incurred in connection with the Property, the physical condition of the Personal Property or Inventory, the environmental condition or other matters relating to the physical condition of the Real Property or the premises which are the subject of any Real Property Lease, the zoning of the Real Property or premises which are the subject of any Real Property Lease, the value of the Property (or any portion thereof), the transferability of the Property or any portion thereof, the terms, amount, validity, collectibility or enforceability of the Accounts Receivable or any Assumed Liabilities or Lease or Contract, the merchantability or fitness of the Rolling Stock, the Unencumbered Trailers, the Personal Property, the Inventory or any other portion of the Property for any particular purpose, whether the assignment of any Lease or Contract without the consent of the counterparties thereto or any Lease or Contract would constitute a breach or default under such Lease or Contract).  Without in any way limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Property.  Buyer further acknowledges that Buyer has conducted an independent inspection and investigation of the physical condition of all portions the Property and all such other matters relating to or affecting or comprising the Property and/or the Assumed Liabilities as Buyer deemed necessary or appropriate and that in proceeding with its acquisition of the Property, Buyer is doing so based solely upon such independent inspections and investigations.  Accordingly, except only for the representations set forth in Section 5 above, Buyer will accept the Property at the Closing **AS IS, "WHERE IS," and "WITH ALL FAULTS."**

8.    Pre-Closing Covenants.

8.1     Operation Pending Closing.    Except (i) as otherwise expressly contemplated by this Agreement and the wind-down of Seller's affairs (aside from the Property) through the bankruptcy process, (ii) with the prior written consent of Buyer, (iii) to surrender, abandon, or liquidate Rolling Stock or other assets that are not included in the Property, or (iv) as prohibited or restricted by the Bankruptcy Code, from the date hereof until the Closing Date, Seller shall: (a) conduct the Business in the usual and ordinary course in a manner that preserves the ability of the Buyer to continue operations solely as to the Property substantially similar to the manner in which the Seller operated prior to the date of this Agreement, (b) use commercially reasonable efforts to preserve intact the Business, to keep available the services of its current employees and agents and to maintain its relations and goodwill with its suppliers, customers, distributors and any others with whom or with which it has business relations, and

(c) not take any action inconsistent with this Agreement or with the consummation of the Closing.  For the avoidance of doubt, Seller may continue to surrender, abandon, or liquidate assets that do not constitute the Property.

8.2     Sale Motion and Approval Order.  Promptly following the mutual execution and delivery of this Agreement by the Parties, Seller shall file a motion (the **"Sale Motion"**) seeking entry of the Approval Order.  Following the filing of the Sale Motion, Seller shall use reasonable, good faith efforts to obtain the Approval Order and Buyer shall cooperate in all reasonable respects in such efforts, including the provision of adequate assurance of future performance to any affected contract counterparties.  Both Buyer's and Seller's obligations to consummate the transactions contemplated in this Agreement shall be conditioned upon the Bankruptcy Court's entry of the Approval Order.  If the Bankruptcy Court refuses to issue the Approval Order or to approve any third party purchaser for the Property at the hearing on the Sale Motion, then this transaction shall automatically terminate and the Seller and the Buyer shall be relieved of any further liability or obligation hereunder; provided, however, any such termination shall not affect the Buyer's right with respect to the return of the Advance Payments set forth herein.

9.     Employee Matters.

9.1     Prior to the Closing, Buyer may offer to employ, commencing immediately following the Closing, any employees of Seller (at salaries and compensation levels and on terms and conditions of employment applicable to their employment by Buyer).  Such employees who become employees of Buyer shall be collectively referred to as the **"Transferred Employees."**

9.2     Buyer shall give Transferred Employees full credit for purposes of eligibility and vesting and benefit accrual (other than benefit accrual under a defined benefit pension plan) under the employee benefit plans or arrangements maintained by Buyer in which such Transferred Employees participate for such Transferred Employees' service with the Seller.

9.3     With respect to any welfare benefit plans maintained by Buyer for the benefit of Transferred Employees on and after the Closing Date, Buyer shall (i) cause there to be waived any eligibility requirements or pre-existing condition limitations, and (ii) give effect, in determining any deductible and maximum out-of-pocket limitations, amounts paid by such Transferred Employees with respect to benefit plans heretofore maintained by the Seller.

9.4     Buyer shall provide group health plan continuation coverage, pursuant to the requirements of COBRA, to all Seller's employees, former employees of Seller receiving group health plan continuation coverage from Seller on the Closing Date, and former employees of Seller who are in a COBRA-election period on the Closing Date, each only to the extent that such persons:  (i) properly request such coverage; (ii) will not be hired by Buyer; and (C) timely pay for such coverage.

10. <u>Miscellaneous</u>.

10.1   <u>Damage and Destruction</u>.   Seller shall promptly notify Buyer of the occurrence of any material damage to or destruction of the Property that occurs prior to the Closing Date.  In the event of any uninsured damage to or destruction of the Property prior to the Closing Date the cost of which to repair would total $250,000 or less, then such damage or destruction shall have no effect whatsoever on the Purchase Price or Buyer's or Seller's obligation to close.  Should any uninsured damage or destruction to the Property occur prior to the Closing Date the cost of which to repair would total more than $250,000, then unless Seller causes the same to be repaired and restored in all material respects prior to the Closing Date (in which case the Purchase Price shall be unaffected and the parties shall proceed with the Closing as though such damage, destruction or proceedings had never occurred or been initiated), Buyer's sole remedy shall be to receive a dollar-for-dollar reduction in the Purchase Price in an amount equal to the sum of (i) the cost of such repairs, less (ii) the amount of any insurance proceeds with respect thereto assigned to Buyer at the Closing, and consummate the transaction contemplated herein. For avoidance of doubt, Buyer and Seller intend that the provisions of this Section 10.1 shall control over any right or remedy to which the Buyer may otherwise be entitled under this Agreement by reason of the occurrence of any event subject to this Section 10.1.

10.2   <u>Attorneys' Fees</u>.  In the event that either Party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that action or proceeding shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

10.3   <u>Reasonable Access to Records and Certain Personnel</u>. In order to facilitate Seller's (or any of its successors') efforts to administer and close the Case (including, without limitation, the preparation of filings in the Case and state, local and federal tax returns and other filings, reconciliation of claims filed in the Case, removal of corporate and other records and information), for a period of three (3) years following the Closing, (i) Buyer shall permit Seller's counsel and other professionals and counsel for any successor to Seller, including any trustee, and its respective professionals (collectively, **"Permitted Access Parties"**) reasonable access to the financial and other books and records relating to the Property or the Business and the systems containing such information, books and records (and Buyer shall preserve such information, books, and records), which access shall include (xx) the right of such Permitted Access Parties to copy or remove, as applicable, at such Permitted Access Parties' expense, such documents and records as they may request in furtherance of the purposes described above, and (yy) Buyer's copying and delivering to the relevant Permitted Access Parties such documents or records as they may request, but only to the extent such Permitted Access Parties furnish Buyer with reasonably detailed written descriptions of the materials to be so copied and the applicable Permitted Access Party reimburses the Buyer for the reasonable costs and expenses thereof, and (ii) Buyer shall provide the Permitted Access Parties (at no cost to the Permitted Access Parties) with reasonable access during regular business hours to such Transferred Employees as Seller may hereafter designate in writing, to assist Seller and the other Permitted Access Parties in their post-Closing activities (including, without limitation,

preparation of tax returns), provided that such access does not unreasonably interfere with the Buyer's business operations.

10.4    Notices.  Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by any Party to the other may be effected by personal delivery in writing, or by registered or certified mail, postage prepaid, return receipt requested or by electronic mail, and shall be deemed communicated as of the date of mailing or facsimile transmission (with answer back confirmation of such transmission).  Mailed notices shall be addressed as set forth below, but each Party may change his address by written notice in accordance with this Section 10.4.

|  |  |
|---|---|
| To Seller: | Kal Freight, Inc.<br>c/o DSI<br>333 South Grand Avenue<br>Suite 4100<br>Los Angeles, CA 90071<br>Attn: Bradley D. Sharp<br>Email:  bsharp@dsiconsulting.com |
| With a copy to: | Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Attn: Richard M. Pachulski, Teddy M. Kapur, and Maxim B. Litvak<br>Email: rpachulski@pszjlaw.com; tkapur@pszjlaw.com; mlitvak@pszjlaw.com |
| To Buyer: | Noor Transport Leasing, LLC<br>5723 Dividend Road<br>Indianapolis, IH 46241<br>Attn: Rajpal Bhattal |
| With a copy to: | Porter Hedges LLP<br>1000 Main St., 36th Floor<br>Houston, TX 77002<br>Attn: Joshua W. Wolfshohl<br>Email:  jwolfshohl@porterhedges.com |

10.5    Entire Agreement.   This Agreement, any confidentiality agreement between Seller and Buyer, and the documents to be executed pursuant hereto contain the entire agreement between the Parties relating to the sale of the Property.  Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

10.6    Modification.   This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties hereto.

10.7    Closing Date.  All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

10.8    Severability.  Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

10.9    Captions.  All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

10.10    Further Assurances.  Each Party hereto will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other Party for the purpose of giving effect to the transactions contemplated herein or the intentions of the Parties with respect thereto; provided that nothing herein shall be deemed to require any Party to execute or deliver any such further assurance, document or instrument to the extent that the same could in any material way increase the burdens, obligations or liabilities otherwise imposed upon such Party by this Agreement.

10.11    Waiver.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the Party making the waiver.

10.12    Brokerage Obligations. Seller and the Buyer each represent and warrant to the other that such Party has incurred no liability to any broker or agent with respect to the payment of any commission or other compensation regarding the consummation of the transaction contemplated hereby.  It is agreed that if any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees, or commissions are ever asserted against Buyer or Seller in connection with this transaction by any party, all such claims shall be handled and paid by the Party whose actions form the basis of such claim and such Party shall indemnify, defend (with counsel reasonably satisfactory to the Party entitled to indemnification), protect and save and hold the other harmless from and against any and all such claims or demands asserted by any person, firm or corporation in connection with the transaction contemplated hereby.

10.13    Payment of Fees and Expenses.  Each Party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the transaction described herein.

10.14    Survival.  The respective representations and warranties of Buyer and Seller under this Agreement shall lapse and cease to be of any further force or effect effective upon the Closing.  Except as provided in the immediately preceding sentence, the covenants and

agreements of Seller and Buyer herein, or in any certificates or other documents delivered prior to or at the Closing, shall not be deemed waived or otherwise affected by the Closing.

10.15  Assignments.  This Agreement shall not be assigned by any Party hereto without the prior written consent of the other Party hereto, which consent the Parties may grant or withhold in their sole and absolute discretion.

10.16  Binding Effect.  Subject to the provisions of Section 10.15, above, this Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties hereto.

10.17  Applicable Law/Jurisdiction.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.  Any action based upon this Agreement shall be brought exclusively in the Bankruptcy Court so long as Seller's Case is pending and, thereafter, in the courts of Harris County, Texas.  The Parties hereby accept and agree to personal jurisdiction in the aforementioned forums, and hereby waive any defense based upon a lack of personal jurisdiction in the aforementioned forums.

10.18  Good Faith.  The Parties hereto agree to do all acts and execute all documents required to carry out the terms of this Agreement and to act in good faith with respect to the terms and conditions contained herein before and after Closing.

10.19  Construction.  In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

10.20  Counterparts.  This Agreement may be signed in counterparts.  The Parties further agree that this Agreement may be executed by the exchange of facsimile signature pages provided that by doing so the Parties agree to undertake to provide original signatures as soon thereafter as reasonable in the circumstances.

10.21  Time is of the Essence.  Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

10.22  Interpretation and Rules of Construction.  In this Agreement, except to the extent that the context otherwise requires:

10.22.1 when a reference is made in this Agreement to an Article, Section, Exhibit or Schedule, such reference is to an Article or Section of, or an Exhibit or a Schedule to, this Agreement unless otherwise indicated;

10.22.2 the headings and captions used in this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement;

10.22.3 whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation";

10.22.4 the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

10.22.5 all terms defined in this Agreement have the defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein;

10.22.6 the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms;

10.22.7 any law defined or referred to herein or in any agreement or instrument that is referred to herein means such law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor laws;

10.22.8 references to a person are also to its permitted successors and assigns; and

10.22.9 the use of "or" is not intended to be exclusive unless expressly indicated otherwise.

**In Witness Whereof,** Buyer and Seller have executed this Asset Purchase Agreement as of the day and year first above written.

**BUYER:**

**Noor Transport Leasing, LLC**

By:
Name: RAJPAL BHATTAL
Its: PRESIDENT

**SELLER:**

**Kal Freight, Inc. and Kal Trailers & Leasing, Inc.,
as Debtors and Debtors in Possession**

By:
Name: Bradley D. Sharp
Its:  Chief Restructuring Officer

Scanned with CamScanner

**In Witness Whereof**, Buyer and Seller have executed this Asset Purchase Agreement as of the day and year first above written.

**BUYER:**

**Noor Transport Leasing, LLC**

**By:** _____
**Name:** _____
**Its:** _____

**SELLER:**

**Kal Freight, Inc. and Kal Trailers & Leasing, Inc.,
as Debtors and Debtors in Possession**

**By:** _____
**Name: Bradley D. Sharp**
**Its:  Chief Restructuring Officer**

## <u>SCHEDULES</u>

**[Revised Schedules To Be Filed]**

Exhibit "A"

## ASSIGNMENT AND ASSUMPTION OF LEASES AND CONTRACTS

This Assignment and Assumption of Leases and Contracts (this **"Assignment"**) is entered into as of this ___th day of _____ 2025, between Kal Freight, Inc. and Kal Trailers & Leasing, Inc. (collectively, **"Assignor"**, with Assignor being a Debtor and Debtor in Possession under Case No. 24-90614 (CML) in the United States Bankruptcy Court for the Southern District of Texas, Houston Division), on the one hand, and Noor Transport Leasing, LLC, a _____ (the **"Assignee"**), on the other hand, with respect to the following facts and circumstances:

A.      Assignor, as the Seller, and Assignee, as Buyer, have heretofore entered into that certain Asset Purchase Agreement dated _____, 2025 (the **"Agreement"**).  Except for terms specifically defined herein, the capitalized terms used in this Assignment have the same meanings as capitalized terms used in the Agreement.

B.      Concurrently with the mutual execution and delivery of this Assignment, Assignor and Assignee are consummating the transactions contemplated by the Agreement.  Assignor and Assignee are executing and delivering this Assignment in satisfaction of their respective obligations pursuant to the Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and adequacy of which Assignor and Assignee hereby acknowledge, Assignor and Assignee hereby agree as follows:

1.      Assignment.  Effective as of the Closing Date, Assignor hereby assigns to Assignee all of its right, title and interest in and to the Leases and Contracts (collectively, the **"Assigned Contracts"**).

2.      Assumption.  Effective as of the Closing Date, Assignee hereby accepts the foregoing assignment and assumes and agrees to be bound by the terms and provisions of the Assigned Contracts and to faithfully perform all of Assignor's obligations thereunder to be performed from and after the Closing Date as though Assignee had been the original contracting Party thereunder.

3.      Attorneys' Fees.  In the event that either Party hereto brings and action or other proceeding to enforce or interpret the terms and provisions of this Assignment, the prevailing Party in that action or proceeding shall be entitled to have and recover from the non-prevailing Party therein all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

4. <u>Amendments</u>.   This Assignment may only be amended by a writing signed by both Assignor and Assignee.

5. <u>Execution in Counterparts</u>.  This Assignment may be executed in counterparts and delivered by the delivery of facsimile signatures; provided, however, that if the Parties exchange facsimile signatures, each of them agrees to provide the other with a copy of this Assignment bearing their original signature promptly thereafter.

6. <u>Delivery Pursuant to Agreement</u>.  Notwithstanding anything to the contrary herein, Assignor and Assignee are executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Agreement (including, without limitation, the acknowledgement and disclaimer set forth in Section 7).

7. <u>Governing Law</u>.  This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of Texas.

      **IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the day and year first set forth above.

<u>**ASSIGNOR**</u>**:**

**Kal Freight, Inc. and Kal Trailers & Leasing, Inc.,
as Debtors and Debtors in Possession**

**By:**_____

**Name:** _____

**Its:** _____

<u>**ASSIGNEE**</u>**:**

**Noor Transport Leasing, LLC, a** _____

**By:**_____

**Name:** _____

**Its:** _____

**Exhibit "B"**

## BILL OF SALE AND ASSIGNMENT

Pursuant to that certain Asset Purchase Agreement dated _____, 2025 (the **"Agreement"**), by and between Noor Transport Leasing, LLC, a _____(**"Buyer"),** on the one hand, and Kal Freight, Inc. and Kal Trailers & Leasing, Inc. (collectively, **"Seller"**, with Seller being a Debtor and Debtor in Possession under Case No. 24-90614 (CML) in the United States Bankruptcy Court for the Southern District of Texas, Houston Division), on the other hand, and for good and valuable consideration, the receipt and sufficiency of which Seller hereby expressly acknowledges, Seller hereby sells, transfers, assigns and delivers to Buyer Seller's right, title and interest in and to (i) the Rolling Stock, (ii) the Unencumbered Trailers, and (iii) the Personal Property.

Except for terms specifically defined in this Bill of Sale and Assignment, all capitalized terms used herein have the same meanings as such terms have when utilized in the Agreement.

Seller covenants and agrees to execute and deliver further instruments of transfer and assignment and take such other action as Buyer may reasonably request to more effectively transfer and assign to and vest in Buyer each of the Rolling Stock, the Unencumbered Trailers, and the Personal Property.

Notwithstanding anything to the contrary herein, Seller is executing and delivering this Bill of Sale and Assignment in accordance with and subject to all of the terms and provisions of the Agreement (including, without limitation, the acknowledgement and disclaimer set forth in Section 7 of the Agreement).

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale and Assignment to be executed as of the _____ day of _____ 2025.

<u>**SELLER**</u>:

**Kal Freight, Inc. and Kal Trailers & Leasing, Inc., as Debtors and Debtors in Possession**

**By:**_____

**Name:** _____

**Its:** _____

**Exhibit "C"**

## ASSIGNMENT OF INTANGIBLE PROPERTY

Kal Freight, Inc. and Kal Trailers & Leasing, Inc. (collectively, **"Assignor"**, with Assignor being a Debtor and Debtor in Possession under Case No. 24-90614 (CML) in the United States Bankruptcy Court for the Southern District of Texas, Houston Division), are executing this Assignment of Intangible Property (the **"Assignment"**) in favor of Noor Transport Leasing, LLC (the **"Assignee"**), with respect to the following facts and circumstances:

(A)     Assignor and Assignee have heretofore entered into that certain Asset Purchase Agreement dated _____, 2025 (the **"Agreement"**).  Except for terms specifically defined in this Assignment, the capitalized terms used in this Assignment have the same meanings as such terms when used in the Agreement.

(B)     Concurrently with the execution and delivery of this Assignment, Assignor and Assignee are consummating the transactions contemplated by the Agreement.  Pursuant to the Agreement, Assignor is required to execute and deliver this Assignment at the Closing.

**NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which Assignor hereby expressly acknowledges, each entity comprising Assignor, as to itself, hereby assigns, conveys, transfers and sets over unto Assignee, all of its right, title and interest, if any, in and to all Intangible Property. This Assignment shall inure to the benefit of, and be binding upon, the successors, executors, administrators, legal representatives and assigns of Assignor and Assignee.

Notwithstanding anything to the contrary herein, the entities comprising Assignor are executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Agreement (including, without limitation, the acknowledgement and disclaimer set forth in Section 7).

In the event that Assignor or Assignee brings an action or other proceeding to enforce or interpret the terms and provisions of this Assignment, the prevailing Party(ies) in that action or proceeding shall be entitled to have and recover from the non-prevailing Party(ies) all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing Party(ies) may suffer or incur in the pursuit or defense of such action or proceeding.

This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of Texas.

      **IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the \_\_\_ day of _____ 2025.

**ASSIGNOR:**

**Kal Freight, Inc. and Kal Trailers & Leasing, Inc., as Debtors and Debtors in Possession**

**By:**_____
**Name:** _____
**Its:** _____

**ASSIGNEE:**

**Noor Transport Leasing, LLC, a** _____

**By:**_____
**Name:** _____
**Its:** _____

**Exhibit "D"**

**ASSUMPTION OF LIABILITIES**

This Assumption of Liabilities (this **"Assumption"**) is entered into as of this ____ day of _____ 2025, by Noor Transport Leasing, LLC, a _____ (the **"Buyer"**) in favor of Kal Freight, Inc. and Kal Trailers & Leasing, Inc. (collectively, **"Seller"**, with Seller being a Debtor and Debtor in Possession under Case No. 24-90614 (CML) in the United States Bankruptcy Court for the Southern District of Texas, Houston Division), with respect to the following facts and circumstances:

A.     Seller and Buyer have heretofore entered into that certain Asset Purchase Agreement dated _____, 2025 (the **"Agreement"**).  Except for terms specifically defined herein, the capitalized terms used in this Assumption have the same meanings as capitalized terms used in the Agreement.

B.     Concurrently with the execution and delivery of this Assumption, Buyer and Seller are consummating the transactions contemplated by the Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and adequacy of which Buyer hereby acknowledges, Buyer hereby agrees as follows:

1.     <u>Assumption</u>.  Effective as of the Closing Date, Buyer hereby assumes and agrees fully and faithfully to perform all of the Assumed Liabilities.

2.     <u>Attorneys' Fees</u>.  In the event that either Party(ies) hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Assumption, the prevailing Party(ies) in that action or proceeding shall be entitled to have and recover from the non-prevailing Party(ies) therein all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing Party(ies) may suffer or incur in the pursuit or defense of such action or proceeding.

3.     <u>Amendments</u>.  This Assumption may only be amended by a writing signed by both Buyer and Seller.

4.     <u>Governing Law</u>.  This Assumption shall be governed by and construed and enforced in accordance with the laws of the State of Texas.

5.     <u>Execution in Counterparts</u>.  This Assumption may be executed in counterparts and delivered by the delivery of facsimile signatures; provided, however, that if the Parties exchange facsimile signatures, each of them agrees to provide the other with a copy of this Assumption bearing their original signature promptly thereafter.

  **IN WITNESS WHEREOF**, Buyer has executed this Assumption as of the day and year first set forth above.

      **BUYER:**

      **Noor Transport Leasing, LLC, a**
      _____

      **By:**_____
      **Name:** _____
      **Its:** _____

      **SELLER:**

      **Kal Freight, Inc. and Kal Trailers & Leasing, Inc.,**
      **as Debtors and Debtors in Possession**

      **By:**_____
      **Name:** _____
      **Its:** _____

**Exhibit "E"**

**<u>APPROVAL ORDER</u>**

**[To Be Attached]**