United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 02, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al*.,<br><br>　　　　　　　　Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR SALE OF REAL
PROPERTY AND ANY RELATED PERSONAL PROPERTY AND
IMPROVEMENTS THERETO, (II) APPROVING BREAKUP FEE,
(III) SCHEDULING CERTAIN DATES WITH RESPECT THERETO,
AND (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

(Related Docket No. 844)

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** (the "Bidding Procedures"), (b) establishing certain dates and deadlines in connection with the Bidding Procedures, (c) approving the Breakup Fee set forth in the Stalking Horse Purchase Agreement attached hereto as **Exhibit 2**, (d) approving procedures for assuming and assigning certain executory contracts and unexpired leases, and certain related notices, approving the Sale Notice, substantially in the form attached hereto as **Exhibit 3**, all as more fully set forth in the Motion; and the Court having reviewed any evidence in support of the Motion; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the Motion having been withdrawn with prejudice or overruled on the merits at the Hearing; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

THE COURT FINDS:[3]

A.      Jurisdiction and Venue. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      Bases for Relief. The bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014 and Bankruptcy Local Rule 9013-1.

C.      Notice of the Bidding Procedures Motion. Good and sufficient notice of the Motion, the Bidding Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein and in the Bidding Procedures. The notice of the Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion or the Hearing is necessary. A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

D.      Bidding Procedures. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate

---

[3] The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052 made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such.

under the circumstances and designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties in interest. The Debtors, with the assistance of their advisors, are engaged in a fulsome marketing and sale process to solicit and develop the highest or otherwise best offer for the Real Property. The Bidding Procedures are designed to build on that robust and extensive marketing and sale process following entry of this Order.

E.       <u>Breakup Fee</u>. Subject to the noticing requirements and objection procedures set forth in this Order, the Breakup Fee is fair, reasonable, and appropriate, including in light of the commitments that have been made and the efforts that have been and will be expended by the Stalking Horse Purchaser. The Breakup Fee is necessary to induce the Stalking Horse Purchaser to pursue the Sale and to be bound by the Stalking Horse Purchase Agreement, and are also reasonable in relation to the Stalking Horse Purchaser's lost opportunities resulting from the time and money spent pursuing the Sale.

F.       <u>Sale Notice</u>. The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and certain dates and deadlines related thereto, and no other or further notice of the Auction shall be required.

G.       <u>Good Faith Negotiation of Bidding Procedures and Stalking Horse Purchase Agreement</u>. The Bidding Procedures and the Stalking Horse Purchase Agreement were each negotiated in good faith and at arm's-length among the Debtors and the Stalking Horse Purchaser. The Stalking Horse Purchase Agreement represents the highest or otherwise best offer that the Debtors have received to date for the Real Property. The process for selecting the Stalking Horse Purchaser was fair and appropriate under the circumstances and in the best interests of the Debtors' estates.

H.     <u>Business Justification</u>. The Debtors have demonstrated a compelling and sound business justification for the Bankruptcy Court to enter this Order and, thereby: (i) approve the Bidding Procedures as contemplated by the Motion and the Stalking Horse Purchase Agreement; (ii) authorize the Breakup Fee under the terms and conditions set forth in the Stalking Horse Purchase Agreement and the Bidding Procedures; (iii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing and other deadlines set forth in the Motion and the Bidding Procedures; and (iv) approve the noticing procedures and the forms of notice. Such compelling and sound business justification, as set forth in the Motion and on the record at the Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:**

1.     All objections, statements, and reservations of rights to the relief granted herein that have not been withdrawn with prejudice, waived, or settled are overruled and denied on the merits with prejudice.

**I.     Important Dates and Deadlines.**

2.     The following dates and deadlines regarding the Sale are hereby established, subject to the right of the Debtors, to modify the following dates (with the prior written consent of the Stalking Horse Purchaser), provided notice is given in accordance with the terms of this Order:

| Event or Deadline | Date and Time |
|---|---|
| Qualified Bid Deadline | May 5, 2025, at 4:00 p.m. (prevailing Central Time) |
| Auction (if applicable) | The Auction will be held on May 9, 2025, at 10:00 a.m. (prevailing Central Time) via remote video[4] |

---

[4] If the Debtors decide to hold a live, in-person Auction, Qualified Bidders shall still have the ability to submit Bids remotely.

| Event or Deadline | Date and Time |
|---|---|
| Sale Objection Deadline | May 12, 2025, at 4:00 p.m. (prevailing Central Time) |
| Sale Hearing | _____ __, 2025 at __:__ _.m. (Central Time) |
| Outside Closing Date | June 30, 2025[5] |

3.      ***Successful Bidder***. The Debtors shall present the results of the Auction (if any) or otherwise present any Successful Bidders (as defined in the Bidding Procedures) to the Court at the Sale Hearing.

**II.      The Bidding Procedures.**

4.      The Bidding Procedures, which are incorporated by reference as though fully set forth herein, are hereby approved, and the Debtors are authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures. The Bidding Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a bid on the Real Property must do so strictly in accordance with the terms of the Bidding Procedures and this Order. The Debtors are authorized to take all actions as are reasonably necessary or appropriate to implement the Bidding Procedures.

5.      Each bidder participating at an Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures, and an Auction (if any) shall be transcribed or recorded.

6.      Pursuant to the Bidding Procedures, including any applicable consultation or consent rights therein, the Debtors may (a) determine which Qualified Bid is the highest or otherwise best offer for the Real Property, (b) at any time prior to entry of an Order of the Court

---

[5] The Debtors cannot modify the Outside Closing Date without the consent of the Stalking Horse Purchaser, as set forth in the Stalking Horse Purchase Agreement. The Debtors shall consult with the Stalking Horse Purchaser prior to modifying the date of the Auction, the Cure Objection Deadline, or the Sale Objection Deadline.

approving the applicable Successful Bid, reject any Bid (other than the Stalking Horse Purchase Agreement) that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors, and (c) prior to conclusion of an Auction (if any), impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases. Notwithstanding the foregoing, the Debtors shall not impose any terms and conditions upon the Stalking Horse Purchaser that are inconsistent with, or in addition to those contained in, the Stalking Horse Purchase Agreement (except as required at the Auction (if any) for the Stalking Horse Purchaser to become the Successful Bidder).

7.      If the Auction is cancelled, then the Debtors shall file a notice with the Court of such election within two (2) business days of the determination of such election by the Debtors. The deadline to object to the Sale shall be May 12, 2025, at 4:00 p.m. (prevailing Central Time).

8.      Other than any Breakup Fee approved for the Stalking Horse Purchaser as provided herein, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature in connection with such bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

9.      Notwithstanding anything to the contrary herein or in the Bidding Procedures, (a) TBK Bank, SSB ("TBK") shall be entitled to credit bid pursuant to section 363(k) of the Bankruptcy Code, (b) in the event TBK submits a credit bid, TBK shall be automatically deemed a Potential Bidder and a Qualified  Bidder without regard for any conditions precedent or other

requirements in the Bidding Procedure with respect to same, and (c) TBK shall be automatically entitled to participate in the Auction (if any). If TBK submits a credit bid or any other bid, TBK and its affiliates will be prohibited from communicating with the Consultation Parties about any other Potential Bidders and/or their bids; *provided, however*, and for the avoidance of doubt, nothing contained herein or in the Bidding Procedures will prohibit TBK and its affiliates from communicating with the Consultation Parties about any other subject.

### III.    The Breakup Fee.

10.    The Breakup Fee as set forth in the Stalking Horse Purchase Agreement is hereby approved. The Debtors are authorized without further Court action to pay any Breakup Fee to the Stalking Horse Purchaser ***solely*** (i) in the event that a Successful Bid (as defined in the Bidding Procedures) from a party other than the Stalking Horse Purchaser is accepted by the Debtors and approved by the Court and (ii) from the proceeds of closing of such alternative Successful Bid. For the avoidance of doubt, the Breakup Fee shall be deemed a cost of sale.

### IV.    Sale Notice and Related Relief.

11.    The Sale Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved. Within three (3) business days after entry of this Order, the Debtors shall serve the Bidding Procedures and the Sale Notice upon the Notice Parties. In addition, within five (5) business days after entry of this Order, the Debtors will publish the Sale Notice, with any modifications necessary for ease of publication, on the case-specific website maintained by Stretto to provide notice to any other potential interested parties. No publication notice shall be required under the circumstances of these cases.

12.    Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies, or defenses that any party (including the Debtors, the Debtors' lenders, the

Stalking Horse Purchaser, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law or any rights, remedies or defenses of the Debtors with respect thereto, including seeking relief from the Court with regard to the Auction, the Bidding Procedures, the Sale, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

13.     In addition to TBK's prepetition debt with respect to the Real Property, TBK shall be entitled to seek recovery of all other amounts due and owing with respect to the Real Property, including interest, fees, attorneys' fees, costs and charges authorized under section 506 of the Bankruptcy Code (the "TBK Section 506 Claim").

14.     In the event the Court enters a Sale Order, such order shall provide that (a) all amounts owed to TBK with respect to the Real Property (including TBK's prepetition debt and the TBK Section 506 Claim) shall be paid at closing and (b) in the event of any delay in payment of such amounts to TBK, any such unpaid amounts shall be held in escrow by the title company pending further order of the Court.

15.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

16.     The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order in accordance with the Motion.

17.     The requirements set forth in Bankruptcy Local Rule 9013-1 and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas are satisfied by the contents of the Motion.

18.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon entry hereof.

19.     The Court retains exclusive jurisdiction and power with respect to all matters

arising from or related to the implementation of this Order.

Signed:  April 02, 2025

Christopher Lopez
United States Bankruptcy Judge

**Exhibit 1**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' REAL PROPERTY**
**AND ANY RELATED PERSONAL PROPERTY AND IMPROVEMENTS THERETO**

On December 5, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

On [____], 2025, the Court entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving Breakup Fee, and (III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof* [Docket No. [_]] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures (the "Bidding Procedures").

These Bidding Procedures set forth the process for a potential auction (the "Auction") for the sale or sales (any such sale, a "Sale") of some or all of the assets of the Debtors (the "Property").

> **Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Stretto by calling (855) 933-3437 or +1 (714) 788-8331 (international) or visiting the Debtors' restructuring website at https://cases.stretto.com/KalFreight**

**Assets to be Auctioned**

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers which in the aggregate will make the highest or otherwise best offer

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] All capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in these Bidding Procedures or the Bidding Procedures Order.

to purchase some or all of the Debtors' Property. The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder) in any combination for the Real Property.

The following is a table setting forth key dates and deadlines with respect to the Sale process:

| Event or Deadline | Date and Time |
|---|---|
| Qualified Bid Deadline | May 5, 2025, at 4:00 p.m. (prevailing Central Time) |
| Auction (if applicable) | The Auction will be held on May 9, 2025, at 10:00 a.m. (prevailing Central Time) via remote video[3] |
| Sale Objection Deadline | May 12, 2025, at 4:00 p.m. (prevailing Central Time) |
| Sale Hearing | May 15, 2025, at a time to be determined or as soon prior to this date as the Court's calendar permits |
| Outside Closing Date | June 30, 2025[4] |

## I.    <u>Public Announcement of Auction</u>.

Within three (3) business days after entry of the Bidding Procedures Order, the Debtors shall serve on the Notice Parties a notice of the Auction and Sale (the "<u>Sale Notice</u>"). Within five (5) business days after entry of the Bidding Procedures Order, the Debtors shall publish the Sale Notice, with any modifications necessary for ease of publication, on the case-specific website maintained by Stretto to provide notice to any other potential interested parties.

## II.    <u>Potential Bidder Requirements</u>.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity (other than the Stalking Horse Purchaser) interested in purchasing some or all of the Debtors' Property (a "<u>Potential Bidder</u>") must deliver or have previously delivered to the Debtors the following documents (collectively, the "<u>Preliminary Bid Documents</u>"):

- an executed confidentiality agreement (a "<u>Confidentiality Agreement</u>") in form and substance acceptable to the Debtors;

- a non-binding written indication of interest specifying, among other things, with respect to any proposed Sale, the identity of the Real Property to be acquired, the

---

[3] If the Debtors decide to hold a live, in-person Auction, Qualified Bidders shall still have the ability to submit Bids remotely.

[4] The Debtors cannot modify the Outside Closing Date without the consent of the Stalking Horse Purchaser, as set forth in the Stalking Horse Purchase Agreement. The Debtors shall consult with the Stalking Horse Purchaser prior to modifying the date of the Auction, the Cure Objection Deadline, or the Sale Objection Deadline.

amount and type of consideration to be offered, and any other material terms to be included in a bid by such party;

- preliminary proof by the Potential Bidder of its financial capacity to close the proposed Sale (which may include current audited or verified financial statements of, or verified financial commitments ("Financial Statements") obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be reasonably acceptable to the Debtors;

- identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity, and any known connections the Potential Bidder has to the Debtors or their advisors, any statutory committee appointed in these cases (if any) or its advisors, or any creditor or equity security interest holder of the Debtors;

- a list with the names and contact information for any financial, legal and other advisors the Potential Bidder has engaged to assist in connection with the proposed Sale; and

- a description of the nature and extent of any due diligence the Potential Bidder wishes to conduct.

The Debtors, in their reasonable discretion, may agree to waive some or all of the Potential Bidder requirements set forth above. Each Potential Bidder shall comply with all reasonable requests for information and access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Sale. Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors shall (a) determine and notify each Potential Bidder as to whether such Potential Bidder has submitted acceptable Preliminary Bid Documents and (b) provide copies of any such notices to the following parties (each a "Consultation Party" and, collectively, the "Consultation Parties") (i) counsel to the official committee of unsecured creditors: Brown Rudnick LLP Attn: Robert J. Stark (rstark@brownrudnick.com); Bennet S. Silverberg (bsilverberg@brownrudnick.com); Kane Russell Coleman Logan PC Attn: Kyle Woodard (kwoodard@krcl.com); Joseph M. Coleman (jcoleman@krcl.com); (ii) counsel to Triumph Commercial Finance, LLC and TBK Bank, SSB: Sussman Shank LLP Attn: Howard M. Levine (hlevine@sussmanshank.com); Josh G. Flood (jflood@sussmanshank.com); Jackson Walker L.L.P. Attn: Michael S. Held (mheld@jw.com); J. Machir Stull (mstull@jw.com); (iii) counsel to Daimler Truck Financial Services USA LLC: Foley & Lardner LLP Attn: Joseph S. harper (jharper@foley.com); Stephen A. McCartin (tmccartin@foley.com); Thomas C. Scannell (tscannell@foley.com); Cooksey Toolen Gage Duffy Woog Attn: Kim P. Gage (kgage@cookseylaw.com); and (iv) counsel to Banc of America Leasing & Capital, LLC: Reed Smith, LLP Attn: Christopher O. Rivas (crivas@reedsmith.com); Marsha A. Houston (mhouston@reedsmith.com) ; Shayna A. Jackson (sjackson@reedsmith.com).

Notwithstanding anything herein to the contrary, if any Consultation Party becomes a Potential Bidder, such party will no longer be considered a Consultation Party.

Other than the Stalking Horse Purchaser, only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors, after consultation with the Consultation Parties, may submit bids to purchase the Debtors' Property. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

## III. <u>Obtaining Due Diligence Access</u>.

Only Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors shall be eligible to receive information and access to the Debtors' electronic data room and to additional non-public, non-privileged information regarding the Debtors. For the avoidance of doubt, the Stalking Horse Purchaser is eligible to receive information and access to the Debtors consistent with the terms of the Stalking Horse Purchase Agreement. All information requests must be directed to the real estate advisor, Keen-Summit Capital Partners LLC, Attn: Harold Bordwin (hbordwin@keen-summit.com), Heather Milazzo (hmilazzo@keen-summit.com), Chris Mahoney (cmahoney@keen-summit.com). The Debtors will provide to each Potential Bidder (including the Stalking Horse Purchaser) reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline (as defined herein).

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Sale. For any Bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors determine are commercially sensitive or otherwise inappropriate for disclosure to such bidder.

**Keen-Summit Capital Partners LLC, Attn: Harold Bordwin (hbordwin@keen-summit.com), Heather Milazzo (hmilazzo@keen-summit.com), Chris Mahoney (cmahoney@keen-summit.com), shall coordinate all requests for additional information and due diligence access on behalf of the Debtors.**

**A.    Communications with Potential Bidders (including Qualified Bidders).**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders and Qualified Bidders shall be through the Debtors' real estate advisor, Keen-Summit Capital Partners LLC, Attn: Harold Bordwin (hbordwin@keen-summit.com), Heather Milazzo (hmilazzo@keen-summit.com), Chris Mahoney (cmahoney@keen-summit.com)(via email shall be acceptable).

**B.    Due Diligence from Potential Bidders (including Qualified Bidders).**

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated Sale. Failure by a Potential Bidder (including any Qualified Bidder, but excluding the Stalking Horse Purchaser) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, after consultation with the Consultation Parties, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

**C.    No Communications Among Potential Bidders.**

There must be no communications between or amongst Potential Bidders, or between Potential Bidders and the Consultation Parties, unless the Debtors have previously authorized such communication in writing. Should any Potential Bidder attempt to communicate directly with another Potential Bidder or the Consultation Parties, such Potential Bidder or the Consultation Parties, as applicable shall immediately inform, in writing, the Debtors' counsel and the Debtors' investment banker. The Debtors reserve the right, in their reasonable business judgment and upon consultation with the Consultation Parties, to disqualify any Potential Bidders that have communications between and amongst themselves without the prior consent of the Debtors. The Debtors further reserve their right, in their reasonable business judgment to disqualify any Potential Bidders that have communications with a Consultation Parties.

**IV.    Breakup Fee; Bid Protections.**

Recognizing the Stalking Horse Purchaser will expend time, energy and resources, and that the Stalking Horse Purchaser provides a floor bid with respect to the Real Property that it offers to purchase, the Debtors are authorized (pursuant to the Bidding Procedures Order) to provide the following bidding protections to the Stalking Horse Purchaser.

- The Debtors have agreed to pay the Breakup Fee to the Stalking Horse Purchaser, upon the terms set forth in the Stalking Horse Purchase Agreement and the Bidding Procedures Order.

- Any Bid submitted on or before the Bid Deadline by a party or parties other than the Stalking Horse Purchaser must be in an amount that is sufficient to pay the Breakup Fee and result in additional consideration to the Debtors' estates in the amount of at least $85,000 (as compared to the Purchase Price offered by the Stalking Horse Purchaser), after payment of the Breakup Fee. For the avoidance of doubt, any Bid submitted on or before the Bid Deadline must be at least $3,400,000.

## V.    <u>Bid Requirements</u>.

To be selected to acquire the Real Property or to be eligible to participate in the Auction, if applicable, a Potential Bidder (other than the Stalking Horse Purchaser) must deliver to the parties set forth in Section VII below a written, irrevocable, and binding offer for purchase of the Real Property (the "<u>Bid</u>") that must be determined by the Debtors in their business judgment, after consultation with the Consultation Parties, to satisfy each of the following conditions (collectively, the "<u>Bid Requirements</u>"):

- **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Property or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom Debtors' counsel and investment banker should contact regarding such Bid;

- **Identity of Property and Purchase Price**: Each Bid must clearly state which of the Real Property the Potential Bidder seeks to acquire and which liabilities of the applicable Debtor the Potential Bidder agrees to assume. Each Bid must clearly set forth the purchase price to be paid, including cash and non-cash components, if any, including any assumption of liabilities (collectively, the "<u>Purchase Price</u>"). The Purchase Price should be a single point value in U.S. Dollars for the total enterprise value of the Real Property the Potential Bidder seeks to acquire on a cash-free, debt-free basis; *provided* that the Potential Bidder shall include an allocation of such Purchase Price among the Real Property the Potential Bidder seeks to acquire;

- **Markup of the Purchase Agreement**: Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement, and a markup of the Stalking Horse Purchase Agreement, including the exhibits, schedules and ancillary agreements related thereto, and any other related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the proposed Sale, along with copies that are marked to reflect any amendments and modifications from the form purchase agreement provided to such Potential Bidder, which amendments and modifications may not be materially more burdensome than

the provisions in the Stalking Horse Purchase Agreement, or otherwise inconsistent with these Bidding Procedures. The Debtors, in their reasonable business judgment, after consultation with the Consultation Parties, will determine whether any such amendments and modifications are materially more burdensome;

- **Committed Financing**: Each Bid must include committed financing, documented to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties, that demonstrates the Potential Bidder has received sufficient debt and equity funding commitments to satisfy such Potential Bidder's Purchase Price and other obligations under its Bid, including the identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom Debtors' counsel and investment banker should contact regarding such committed financing. Such funding commitment shall not be subject to any internal approval, syndication requirements, diligence or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors. The Debtors may in their reasonable business judgment and after consultation with the Consultation Parties waive this condition on a case-by-case basis;

- **Pro Forma Capital Structure**: Each Bid must include a description of the Potential Bidder's pro forma capital structure;

- **Contingencies; No Financing or Diligence Outs**: Any Bid shall not be conditioned on the obtaining or the sufficiency of financing, any internal approval, or on the outcome or review of due diligence, and each Bid must identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required. The Potential Bidders are expected to have completed all of their due diligence by the Bid Deadline, including all business, legal, accounting, and other confirmatory diligence. The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid;

- **As-Is, Where-Is**: Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Real Property in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Potential Bidder's proposed purchase agreement;

- **Authorization**: Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its shareholders and/or its board of managers or directors, as applicable, with respect to the submission of its Bid and the consummation of the Sale contemplated by such Bid;

- **Adequate Assurance of Future Performance**: Each Bid must (i) identify the Contracts to be assumed and assigned in connection with the proposed Sale, (ii) provide for the payment of all Cure Costs related to such Contract by the Potential Bidder, and (iii) demonstrate, in the Debtors' reasonable business judgment, that the Potential Bidder can provide adequate assurance of future performance under all such Contracts;

- **Compliance with Bankruptcy Code and Non-Bankruptcy Law; Acknowledgment**: Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law. Each Bid must also include a written acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures and that it has not engaged in any collusion, coordination, or unfair competitive practices with respect to its Bid;

- **Irrevocable**: A Potential Bidder's Bid must be binding and irrevocable unless and until the Debtors accept a higher Bid and such Potential Bidder is not selected as the Backup Bidder (as defined herein);

- **No Fees**: Each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed Sale, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for a breakup fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement on any basis, including under section 503(b) of the Bankruptcy Code;

- **Joint Bids**: The Debtors will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis;

- **Adherence to Bidding Procedures**: By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Sale process or the Auction (if held) after conclusion of the selection of the Successful Bidder (as defined herein). By submitting its Bid, each Potential Bidder is agreeing to comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law;

- **Consent to Jurisdiction**: Each Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction (if held), the construction and enforcement of these Bidding Procedures, the Sale documents, and consummation of a Sale (or Sales) (including confirmation of chapter 11 plan in connection therewith), as applicable;

- **Backup Bid**: Each Bid must provide that the Potential Bidder will serve as a Backup Bidder if the Potential Bidder's Bid is the next highest or otherwise best Bid, ready to close the Sale on the terms stated in the next highest or otherwise best Bid within two business days of the failure of the Successful Bidder to close;

- **Expected Closing Date**: Each Bid must state the Potential Bidder's expected date of closing of the Sale; *provided*, such closing date may be extended pursuant to the terms of an asset purchase agreement; and

Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' reasonable discretion, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable discretion, be deemed to be "Qualified Bidders."

Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' reasonable discretion, after consultation with the Consultation Parties, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable discretion, after consultation with the Consultation Parties, be deemed to be "Qualified Bidders." All information disclosed by any Potential Bidder in connection with all of the preceding requirements will promptly be made available by the Debtors to the Consultation Parties; *provided* that any confidential financing and/or equity commitment documents received from any such Potential Bidder shall only be shared with the Consultation Parties on a "professionals' eyes only" basis.

No later than one (1) business day following the Bid Deadline, the Debtors shall determine, after consultation with the Consultation Parties, which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction (if held). Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided*, *however*, that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors shall provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Bid Deadline. The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Real Property such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of selecting the Successful Bidder; *provided* that the Debtors also reserve the right, in consultation with the Consultation Parties, to conduct more than one Sale process or Auction with respect to non-overlapping material portions of the Real Property).

For the avoidance of doubt, the Stalking Horse Purchaser shall be deemed to be a Qualified Bidder, the Stalking Horse Purchase Agreement shall be deemed a Qualified Bid, and the Stalking Horse Purchaser may participate in the Auction (if any) with respect to the Real Property.

## VI.   Bid Deadline.

Binding Bids must be received (via email shall be acceptable) by (a) the Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067, Attn.: Richard M. Pachulski (rpachulski@pszjlaw.com) and Teddy Kapur (tkapur@pszjlaw.com); and (b) the Debtors' real estate advisor, Keen-Summit Capital Partners LLC, Attn: Harold Bordwin (hbordwin@keen-summit.com), Heather Milazzo (hmilazzo@keen-summit.com), Chris Mahoney (cmahoney@keen-summit.com), in each case so as to be **actually received** no later than **5:00 p.m. (prevailing Central Time) on May 5, 2025** (the "Bid Deadline").

## VII.  **Evaluation of Qualified Bids**.

Prior to the Auction (if held), the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid(s) that is, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, the highest or otherwise best Bid (the "Starting Bid"). The Starting Bid shall include the amount provided for in the Stalking Horse Purchase Agreement, *plus* the amount of the Breakup Fee, *plus* $85,000. In addition, prior to the selection of the Successful Bidder, the Debtors may, in the Debtors' reasonable business judgment, engage in negotiations with bidders with respect to their Bids. For the avoidance of doubt, the Debtors may, after consultation with the Consultation Parties, select more than one Qualified Bid to collectively serve as the Starting Bid in an Auction (if held) if each such Qualified Bid contemplates the purchase of different Property. In conducting the evaluation of the Qualified Bids, the Debtors will take into consideration the following non-exclusive factors:

- the amount of the Purchase Price of the Qualified Bid;

- the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account the Breakup Fee;

- the proposed changes or modifications to the Stalking Horse Purchase Agreement delivered in connection with such Qualified Bid and the comparative favorability of the terms set forth in such proposed purchase agreement versus the Stalking Horse Purchase Agreement;

- the assets and liabilities excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed;

- any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

- the certainty of a Qualified Bid leading to a confirmed chapter 11 plan;

- the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals; and

- any other factors the Debtors may, consistent with their fiduciary duties, reasonably deem relevant.

Promptly after determination of the Starting Bid and prior to the Auction, the Debtors will (a) notify the Stalking Horse Purchaser and (b) distribute a copy of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid with respect to such Property.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Qualified Bidder's Good Faith Deposit within five (5) business days after the Bid Deadline.

**VIII.  No Qualified Bids**.

        If no Qualified Bids other than the Stalking Horse Purchase Agreement are received by the Bid Deadline, then the Debtors, after consultation with the Consultation Parties, may cancel the Auction, and may decide, in the Debtors' reasonable business judgment, to designate the Stalking Horse Purchase Agreement as the Successful Bid, and pursue entry of the Sale Order approving a Sale of the Debtors' Property to the Stalking Horse Purchaser pursuant to the Stalking Horse Purchase Agreement. The Debtors shall file notice of any cancellation of the Auction and designation of the Stalking Horse Purchase Agreement as the Successful Bid with the Court, within two business days of the determination of such election by the Debtors.

**IX.  Auction**.

        If one or more Qualified Bids are received by the Bid Deadline with respect to any applicable non-overlapping Property, then the Debtors shall conduct the Auction with respect to such Property. The Auction will be held on **May 9, 2025, at 10:00 a.m. (prevailing Central Time)**, via videoconference or such other form of remote communication arranged by counsel to the Debtors, or such later time or other place as the Debtors determine, after consultation with the Consultation Parties, in which case the Debtors shall timely notify all Qualified Bidders of such later time or other place, and file a notice of the change on the Court's docket for these chapter 11 cases.[5]

        The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

- except as otherwise provided herein, the Auction will be conducted openly;

- only Qualified Bidders, including the Stalking Horse Purchaser, shall be entitled to bid at the Auction;

- the Qualified Bidders, including the Stalking Horse Purchaser, shall appear at the Auction via remote video or through duly authorized representatives via remote video at the Auction;

- only the following parties shall be permitted to attend the Auction: authorized representatives of each of the Qualified Bidders (including the Stalking Horse Purchaser), the Debtors, the Consultation Parties, and their respective advisors;

- bidding at the Auction will begin at the applicable Starting Bid;

- Bids at the Auction, including any Bids by the Stalking Horse Purchaser, must be made in minimum increments of such amount as the Debtors determine and announce at or prior to the Auction, after consultation with the Consultation Parties,

---

[5] If the Debtors decide to hold a live, in-person Auction, Qualified Bidders shall still have the ability to submit Bids remotely.

of additional value (including after payment of the Breakup Fee to the Stalking Horse Purchaser);

- each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors in consultation with the Consultation Parties;

- the bidding will be transcribed or recorded to ensure an accurate recording of the bidding at the Auction;

- no Qualified Bidders (or their respective representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction, and each Qualified Bidder will be required to confirm on the record of the Auction that (i) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Sale and (ii) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase some or all of the Real Property identified in such Bid if such Bid is selected as the Successful Bid; *provided*, *however*, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined bid if the Debtors, after consultation with the Consultation Parties, approve such coordination in their reasonable discretion;

- the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-prevailing highest bid, subject to the Debtors' right, in consultation with the Consultation Parties, to require last and final bids to be submitted on a "blind" basis;

- the Debtors reserve the right, in their reasonable business judgment, after consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, after consultation with the Consultation Parties, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

- the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, after consultation with the Consultation Parties, from time to time on the record at the Auction; *provided* that such other Auction Procedures are (i) not inconsistent with the Bidding Procedures Order, the Stalking Horse Purchase Agreement, the Bankruptcy Code, or any other order of the Court, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Debtors, after consultation with the Consultation Parties, to further the goal of attaining the highest or otherwise best offer for the applicable Property.

For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors).

## X.    <u>Acceptance of the Successful Bid</u>.

The Auction shall continue until only one Qualified Bid is the highest or otherwise best bid. The Auction shall continue until only one Qualified Bid is the highest or otherwise best bid to purchase some or all of the Real Property in the Debtors' reasonable business judgment (after consultation with the Consultation Parties) and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail (a "<u>Successful Bid</u>"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtors, at which point, the Auction will be closed. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a Sale and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the Sale contemplated by the Bid Documents; and (d) the tax consequences of such Qualified Bid.

For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Property. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "<u>Successful Bidder</u>" or "<u>Successful Bidders</u>," with respect to the applicable Property. The Debtors shall promptly file notice of the Successful Bid(s) and the Successful Bidder(s) with the Court. The Debtors shall present the results of the Auction at a hearing (the "<u>Sale Hearing</u>") and shall seek Court approval to enter into a binding purchase agreement or other definitive documentation with the Successful Bidder(s) on the terms of the Successful Bid(s) (the order approving such entry, the "<u>Sale Order</u>"). For the avoidance of doubt, the Sale Order shall deem the Debtors' selection of the Successful Bid(s) final and, subject to the designation of the Backup Bid, the Debtors shall not solicit or accept any further bids or offers to submit a bid after such selection; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XI.    <u>Designation of Backup Bidder</u>.

The Qualified Bidder or Qualified Bidders with the second highest or otherwise best bid(s) or combination(s) of bids (each, a "<u>Backup Bid</u>") to purchase any or all of the applicable Property (each, a "<u>Backup Bidder</u>") will be determined by the Debtors at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. Each

Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the closing of the transaction with the applicable Successful Bidder or, in the case of the Stalking Horse Purchaser, until the earlier of (i) 7 days after the Sale Hearing or (ii) May 22, 2025. The Backup Bidder's good faith deposit (if any) shall be held in escrow until the closing of the transaction with the applicable Successful Bidder. If for any reason a Successful Bidder fails to consummate the purchase of such Property within the time permitted after the entry of the Sale Order, then the Backup Bidder will automatically be deemed to have submitted the Successful Bid for such Property, and the Backup Bidder shall be deemed a Successful Bidder for such Property and shall be required to consummate the Sale with the Debtors as soon as is commercially practicable without further order of the Court; *provided* that the Debtors shall file a notice with the Court.

## XII.   <u>Approval of Sale</u>.

The Debtors will present the results of the Auction to the Court for approval at the Sale Hearing, at which certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with the Bidding Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid or Successful Bids were Qualified Bids as defined in the Bidding Procedures; and (d) consummation of any Sale(s) as contemplated by the Successful Bid(s) in the Auction will provide the highest or otherwise best offer for the Debtors and the Debtors' Property and is in the best interests of the Debtors and their estates.

The Sale Hearing is presently scheduled to commence on **May 15, 2025**, at **[ ] [a/p]**.m. **(prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable **[•]**, United States Bankruptcy Court for the Southern District of Texas.

## XIII.  <u>Return of Good Faith Deposit.</u>

The good faith deposit of a Successful Bidder (including, without limitation, the "Deposit" under and as defined in the Stalking Horse Purchase Agreement) shall, upon consummation of any Sale, be credited to the purchase price paid for the applicable Property. If a Successful Bidder fails to consummate the Sale, then the good faith deposit (if any) shall be forfeited to, and retained irrevocably by, the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder.

The good faith deposit (including, without limitation, the "Deposit" under and as defined in the Stalking Horse Purchase Agreement) of any Qualified Bidders that are not Successful Bidders or Backup Bidders will be returned within two (2) business days after the Auction or upon the permanent withdrawal of the applicable proposed Sale, and the good faith deposit (including, without limitation, the "Deposit" under and as defined in the Stalking Horse Purchase Agreement) of any Backup Bidders will be returned within two (2) business days after the consummation of the applicable Sale or upon the permanent withdrawal of the applicable proposed Sale.

Each good faith deposit shall be held in interest free escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court, except as otherwise provided herein.

XIV. **Reservation of Rights**.

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment as long as not inconsistent with the Stalking Horse Purchase Agreement, after consultation with the Consultation Parties, in a manner consistent with the exercise of their fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction (if held), additional customary terms and conditions on the sale of some or all of the Debtors' Property, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction; (c) modifying the Auction Procedures or adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis. For the avoidance of doubt, and subject to the termination provisions of the Stalking Horse Purchase Agreement, the Debtors reserve the right at any point prior to the selection of the Successful Bidder, and after consultation with the Consultation Parties, to terminate the Sale processes contemplated hereunder with respect to any or all of the Debtors' Property and seek to sell any or all Property pursuant to section 363(b) of the Bankruptcy Code.

XV. **Consent to Jurisdiction.**

All Qualified Bidders at the Auction will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to any Sale, the Auction, and the construction and enforcement of these Bidding Procedures, any written indications of interest, any Preliminary Bid Documents, or any Bid documents, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

XVI. **Fiduciary Out**.

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any sale transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures, through the date of the Auction (if held), nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to:

(a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Debtors' Property (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases (including the United States Trustee), or any other entity regarding Alternate Proposals.

.

**<u>Exhibit 2</u>**

**(Stalking Horse Purchase Agreement)**

**<u>Exhibit 3</u>**

**(Form of Sale Notice)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al*.,<br><br>                   Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' REAL PROPERTY AND ANY RELATED PERSONAL PROPERTY AND IMPROVEMENTS THERETO FREE AND CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES**

      **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting offers for a transaction or transactions, any of which may include the purchase of some or all of the Debtors' Property and assumption of certain liabilities of the Debtors, consistent with the bidding procedures (the "Bidding Procedures")[2] approved by the United States Bankruptcy Court for the Southern District of Texas (the "Court") by entry of an order on [●] [Docket No. [●]] (the "Bidding Procedures Order"). **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

> **Copies of the Bidding Procedures Order or other documents related thereto, including the Stalking Horse Purchase Agreement or an exhibit identifying the Real Property, as applicable, are available upon request to Stretto by calling (855) 933-3437 or +1 (714) 788-8331 (international) or visiting the Debtors' restructuring website at https://cases.stretto.com/KalFreight**

      **PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **May 5, 2025**, at **5:00 p.m. (prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

4913-7865-0926.8 47520.00002

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, beginning on **May 9, 2025**, at **10:00 a.m. (prevailing Central Time)** via videoconference or such other form of remote communication arranged by counsel to the Debtors.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of any Sales at the Sale Hearing, which is presently scheduled to commence on **May 15, 2025**, at **[] [].m. (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable **[]** in the United States Courthouse, 515 Rusk Street, Houston, Texas 77002.

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE STALKING HORSE PURCHASE AGREEMENT.**

4913-7865-0926.8 47520.00002

## NO SUCCESSOR OR TRANSFEREE LIABILITY

The Sale Order is expected to provide, among other things, that the Successful Bidder from the Sale will have no responsibility for, and the Real Property will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Successful Bidder shall not be deemed, as a result of any action taken in connection with the Stalking Horse Purchase Agreement (in the case where the Stalking Horse Purchaser is the Successful Bidder) or a separate purchase agreement entered into with the Successful Bidder (if the Stalking Horse Purchaser is not the Successful Bidder), the consummation of the Sale, or the transfer or operation of the Real Property, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations as an assignee under the Assigned Contracts arising after the effective date); (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the Debtors, in the case of each of (a), (b), and (c), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

All rights of any party to set off any claims, debts, or obligations owed by or to the Successful Bidder in connection with the assets shall be extinguished on the effective date pursuant to the Sale Order. Other than as expressly set forth in the Stalking Horse Purchase Agreement (or another Successful Bidder's purchase agreement, as applicable) with respect to assumed liabilities, the Successful Bidder shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the assets or (b) any claims (as such term is defined by section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates. To the greatest extent allowed by applicable law, the Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the effective date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Real Property prior to the effective date.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, after consultation with the Consultation Parties and in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Motion, Bidding Procedures, and Bidding Procedures Order, as well as all related exhibits, are available: free of charge upon request to Stretto by calling (855) 933-3437 or +1 (714) 788-8331 (international) or visiting the Debtors' restructuring website at https://cases.stretto.com/KalFreight, or for a fee via PACER by visiting http://www.txs.uscourts.gov.

Dated: March [], 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

/s/
Teddy M. Kapur (SBT 24046186)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
tkapur@pszjlaw.com
sgolden@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*