**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al.*,<br><br>              Debtors. [1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**OBJECTION OF THE CHUBB COMPANIES TO THIRD AMENDED AND RESTATED COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION OF KAL FREIGHT INC. AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

ACE American Insurance Company, Illinois Union Insurance Company, Federal Insurance Company, and/or any of their respective U.S.-based affiliates and the predecessors of each of the foregoing (collectively, and together with ESIS, Inc., and solely in their capacities as insurers and/or third-party administrators, as applicable, the "Chubb Companies"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the *Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 845] (the "Plan"),[2] and in support of the Objection, the Chubb Companies respectfully state as follows:

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2]     Capitalized terms used but not defined herein shall the meaning set forth in the Plan.

**BACKGROUND**

A.      **The Bankruptcy Case**

1.      On December 5, 2024 (the "Petition Date"), Kal Freight Inc. and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

2.      On February 11, 2025, the Debtors filed the *Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 515], followed by the first amended version of the Plan [Docket No. 693] filed on March 7, 2025, and the second amended version of the Plan [Docket No. 777] filed on March 13, 2024.

3.      On February 26, 2025, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Granting Interim Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan;(II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto;(III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* (the "DS Motion") [Docket No. 584].

4.      On March 13, 2025, the Bankruptcy Court granted the DS Motion and entered the *Order (I) Granting Interim Approval of the Adequacy of Disclosures in the Combined Plan and Disclosure Statement; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Relief* [Docket No. 783] (the "DS Order") approving the adequacy of the disclosures contained in the Plan on an interim basis and scheduling a combined hearing on final approval of the adequacy of the disclosures and confirmation of the Plan.

5.      On March 26, 2025, the Debtors filed the Plan.

6.       Also on March 26, 2025, the Debtors filed the *Notice of Filing Plan Supplement for the Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 846].

**B.       The Insurance Program**

7.       Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtors as named insureds.

8.       Prior to the Petition Date, the Chubb Companies and the Debtors also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

9.       Pursuant to certain Policies and Insurance Agreements (collectively, the "Insurance Program"),[3] ACE American Insurance Company, Illinois Union Insurance Company, Federal Insurance Company, and/or certain of their U.S.-based affiliates provide, inter alia, certain workers' compensation, general liability, crime; directors' & officers' liability,  employment practices liability, fiduciary liability, business automobile, business automobile & truckers excess liability, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums),

---

[3]       The description of the Insurance Program set forth herein is not intended to, and shall not be deemed to amend, modify or waive any of the terms or conditions of the Insurance Program. Reference is made to the Insurance Program for a complete description of their terms and conditions.

deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Insurance Program (collectively, the "Obligations").[4]

10.     The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

11.     Certain of the Obligations are secured by certain collateral, including letters of credit or proceeds of such letters of credit.  The Obligations may also be secured by trusts, escrows, surety bonds, cash collateral, other paid loss deposit funds, or other amounts.

**C.     The Plan**

12.     With regard to insurance policies, the Plan proposes as follows:

> Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the Insurance Policies. To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action the Debtors hold or may hold against any Entity, the Debtors shall, to the extent permissible under each Insurance Policy, assign all rights to collect insurance proceeds thereunder with respect to such Causes of Action to the Liquidating Trustee as covered by any Insurance Policy (collectively, the "Assigned Insurance Rights"). All net proceeds of Insurance Policies received by the Liquidating Trustee shall be treated as proceeds of such Causes of Action for all purposes under the Plan.

> The Debtors shall take no action to or otherwise impair the Insurance Policies. Nothing herein shall diminish or impair the enforceability of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtors or any other Entity.

> If the Debtor, the Reorganized Debtor, the Estate, and/or any Participating Party is unable to transfer the Assigned Insurance Rights to the Trust, then the Debtor, the Reorganized Debtor, and/or such Participating Party shall, at the sole cost and expense of the Trust: (a) take such actions reasonably requested by the Trustee to pursue any of the Assigned Insurance Rights for the benefit of the Trust and (b) promptly transfer to the Trust any amounts recovered

---

[4]     The Obligations include both monetary and non-monetary obligations that the insureds, including one or more of the Debtors, may have.

4

under or on account of the Assigned Insurance Rights; provided however, that while any such amounts are held by or under the control of the Debtor, the Reorganized Debtor, or such Participating Party, such amounts shall be held for the benefit of the Trust.

Plan at Art. VIII.C.

## **OBJECTION**

13.     The Chubb Companies object to the Plan[5] on the grounds that (I) while it appears that the Debtors seek to retain the benefits of the Insurance Program (Plan at Art. VIII.C), the Plan fails to adequately address the fact that, in order to do so, the Debtors' successors must remain liable for the Obligations under the Insurance Program; (II) the terms of the Insurance Program cannot be altered through the Plan; and (III) the Plan must provide that workers' compensation, claims against non-Debtor-insureds, and direct action claims must continue in the ordinary course.

---

[5]   This Objection focuses on the Chubb Companies' objections to the Plan. As for the Disclosure Statement, section 1125 of the Bankruptcy Code provides that a plan proponent may not solicit acceptance or rejection of a plan unless, before such solicitation, the plan proponent transmits to the parties to be solicited the plan and a disclosure statement containing "adequate information," as defined in section 1125(a) of the Bankruptcy Code, which has been approved by the bankruptcy court after notice and a hearing. *See* 11 U.S.C. § 1125(b). A disclosure statement contains "adequate information" if it provides information concerning the proposed plan of a kind and in sufficient detail that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan. *See* 11 U.S.C. § 1125(a). Courts consistently refuse to approve disclosure statements that lack the information that a "reasonable hypothetical investor" would require to make an informed decision about the proposed plan. *See, e.g.*, *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417-18 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988); *In re Route 202 Corp.*, 37 B.R. 367, 375 76 (Bankr. E.D. Pa. 1984); *In re Fierman*, 21 B.R. 314 (Bankr. E.D. Pa. 1982); *In re E. Redley Corp.*, 16 B.R. 429 (Bankr. E.D. Pa. 1982); *In re Civitella*, 15 B.R. 206 (Bankr. E.D. Pa. 1981). In this case, the Chubb Companies cannot determine with complete certainty how the Debtors propose to treat the Insurance Programs and the Chubb Companies' claims thereunder and, therefore, object to the Disclosure Statement and final approval thereof on this basis.

A.      **The Debtors' Successors Cannot Continue To Receive The Benefits Of The Insurance Program Without Remaining Liable For The Obligations Thereunder.**

14.     As set forth above, the Debtors appear to seek to retain the benefits of their insurance policies; however, the Plan fails to adequately address the treatment of the Debtors' obligations under their insurance policies.[6]

15.     To the contrary, the Plan contains provisions which provide for the release of liens, the vesting of assets in the Debtors' successors, i.e., the Liquidating Trust, "free and clear of all Claims, Interests, Liens, charges, or other encumbrances of Creditors or Interest Holders." Plan at Arts. VIII.C and XV.C.

16.     It is well-established that debtors (and their successors) cannot seek to receive benefits of a contract without being liable for obligations thereunder.  *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely

---

[6]     While the Plan does discuss "obligations" in Art. VIII.C, in context it is not clear that the obligations being discussed therein are those of both the insurer and insured.

Case 24-90614   Document 902   Filed in TXSB on 04/04/25   Page 7 of 13

on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.,* 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at \*20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at \*3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

17. Moreover, the Insurance Program is an integrated insurance program and therefore must be read, interpreted and enforced in its entirety.[7] *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two

---

[7]     The Chubb Companies reserve the right to object to the treatment of the Policies and any related insurance agreements as executory if the Debtors seek to reject any such contracts.

agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract");

*In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

18.     Accordingly, the Plan must be clarified to provide that, to the extent that the Debtors or their successors seek to retain the benefits of any portion of the Insurance Program, the entirety of the Insurance Program shall be assumed by the Debtors' successors, and the Debtors' successors shall remain liable in full for all of the Obligations arising under the Insurance Programs.

**B.     The Plan Should Clearly Provide That Nothing Modifies, Alters Or Impairs The Insurance Programs.**

19.     Neither the Debtors nor this Court can rewrite the Insurance Program, but rather, the Insurance Programs must be enforced as written. *See, e.g., Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) aff'd, 988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or

take away something which the parties have included.") (citation omitted); *Ally Financial Inc., v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015) (a party cannot convince a court to "rewrite [a] contract to fulfill [its] unspoken expectation"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court*"); In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

20.     However, as noted above, the Plan contains provisions that provide for the release of liens, the vesting of assets in the Debtors' successors free and clear of liens, certain releases, and exculpation and injunctions against certain actions.  *See, e.g.*, Plan at Art. XVI.

21.     The Plan must therefore clarify that nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order or any other document related to the foregoing, including, but not limited to, those provisions identified above, shall modify, alter or impair the Insurance Programs, including the rights and obligations of the Chubb Companies and the Debtors thereunder, as well as the coverage provided thereunder.

22.     Accordingly, the Chubb Companies further object to the Plan on this basis.

C.     **The Plan Must Provide That Workers' Compensation Claims, Claims Against Non-Debtor Insureds, And Direct Action Claims Must Continue In The Ordinary Course.**

23.     The Plan does not provide for the handling of workers' compensation claims, claims against non-Debtor insureds under the Insurance Program, and direct action claims.

24.     Both workers' compensation claims and direct action claims are subject to state-law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Debtors' Plan.  *See, e.g.*, *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

25.     The Plan must clarify that workers' compensation, claims against non-Debtor insureds under the Insurance Program, and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course, and, relatedly, that the Chubb Companies may continue to so administer, handle, defend, settle, and/or pay such covered claims in the ordinary course, pursuant to the terms of the Insurance Program and applicable non-bankruptcy law.

26.     Further, the Plan cannot impair, modify, release or otherwise change or impact in any way the Chubb Companies claims and rights against non-Debtor insureds under the Insurance Program, such rights and claims must continue unchanged pursuant to the terms and conditions of the Insurance Program and applicable non-bankruptcy law.  The Plan should be modified to make this clear.

## **RESERVATION OF RIGHTS**

27.     The Chubb Companies specifically reserve all of their rights with respect to the Insurance Program and their rights to assert additional objections to the Plan, to assert any other objections, including, but not limited to, objections to the Plan Supplement, the Liquidating Trust Agreement, and the Confirmation Order and/or any documents related thereto, and/or to join in or rely on the objections of other insurers to the Plan or any documents related thereto and/or any other objections.

WHEREFORE, the Chubb Companies respectfully request that this Court: (a) either (i) deny confirmation of the Plan, or (ii) condition confirmation of the Plan on inclusion of the clarifications requested herein; and (b) grant such other relief as the Court deems appropriate.

Dated: April [4], 2025.

Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ James Billingsley*
James Billingsley, P.C.
Texas Bar No. 00787084
100 Crescent Court, Suite 1200
Dallas, TX 75201
Phone: (214) 257-7242
Email: JBillingsley@duanemorris.com

-and-

Wendy M. Simkulak, Esq.
Jessica Kenney Bonteque, Esq.
1540 Broadway
New York, NY 10036-4086
Telephone: (212) 692-1036
Fax: (212) 954-5310
Email: wmsimkulak@duanemorris.com
Email: JBonteque@duanemorris.com

*Counsel for the Chubb Companies*

**<u>CERTIFICATE OF SERVICE</u>**

I, James Billingsley, hereby certify that I am not less than 18 years of age, and that on April 4, 2025, I caused a true and correct copy of the foregoing *Objection of The Chubb Companies to Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* to be served electronically via the Court's CM/ECF electronic noticing system on all parties registered to receive electronic service in the above cases.


*/s/ James Billingsley*
James Billingsley, P.C.
Texas Bar No. 00787084