**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Kal Freight Inc., *et al.*, | Case No. 24-90614 (CML) |
| Debtors.[1] | (Jointly Administered) |
| | **Obj. Deadline:  April 4, 2025 at 4:00 p.m. (Central Time)** |
| | **Hearing Date:  April 10, 2025 at 1:00 p.m. (Central Time)** |
| | **Re:  D.I. 845** |

**OBJECTION OF MITSUBISHI HC CAPITAL CANADA, INC., TRUIST
EQUIPMENT FINANCE CORPORATION, DE LAGE LANDEN FINANCIAL
SERVICES, LLC, AND FIFTH THIRD BANK, N.A. TO FINAL APPROVAL
AND CONFIRMATION OF DEBTORS' THIRD AMENDED AND RESTATED
<u>COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION</u>**

Mitsubishi HC Capital Canada Inc. ("<u>MHCCA</u>"), Truist Equipment Finance Corp. ("<u>TEFC</u>"), De Lage Landen Financial Services, LLC ("<u>DLL</u>") and Fifth Third Bank, N.A. ("<u>Fifth Third</u>" and together with MHCCA, TEFC, and DLL, collectively, the "<u>Objectors</u>"), creditors of the above-captioned debtors (the "<u>Debtors</u>"), by and through their undersigned counsel, file this objection (the "<u>Objection</u>") to the *Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [D.I. 845] (the "<u>Combined Plan</u>").[2]  In support of this Objection, the Objectors respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] Capitalized terms used but not otherwise defined in this Objection have the meanings ascribed to such terms in the Combined Plan (as defined herein).

## PRELIMINARY STATEMENT

1.      The Debtors ask this Court to confirm—on an expedited timeline—a chapter 11 plan that fails to comply with the substantive and procedural requirements of the Bankruptcy Code, Bankruptcy Rules, and applicable law.  As currently proposed, the Combined Plan is fatally flawed and cannot be confirmed because it (i) violates multiple provisions of 11 U.S.C. § 1129, (ii) improperly prioritizes payment of a subset of Administrative Claims (*i.e.*, Professional fees) to the detriment of Holders of other Administrative Claims, and (iii) includes broad, illegal releases of Claims held by the Debtors and their Estates.

2.      For the reasons set forth herein, the Court should deny confirmation of the Combined Plan in its current state and require the Debtors to submit a revised version of the Combined Plan that complies with the Bankruptcy Code and applicable law.

3.      In the spirit of offering solutions, the Objectors believe that the revisions set forth below would appropriately address the deficiencies of the Combined Plan and request that the Court order the Combined Plan to be revised to incorporate such revisions:

| ISSUE | PROPOSED RESOLUTION |
|---|---|
| ***11 U.S.C. § 1129(a)(9)***: The Combined Plan does not assure payment in full of all allowed Administrative Claims and provides disparate treatment Allowed Administrative Claims that are not Professional Fee Claims. | Holders of Allowed Administrative Claims should not be paid until all Allowed Administrative Claims are determined and, to the extent there are insufficient funds to pay all Holders of such Claims, such Holders must receive *pro rata* payments on account of such Allowed Administrative Claims (including, without limitation, any Professional Fees previously awarded and paid on an interim basis). |
| ***11 U.S.C. §§ 524(g) & 1123(b)(3)(A)***:  The Combined Plan provides releases without consideration and prior to any investigation into the fraud and malfeasance that necessitate the filing of these Chapter 11 Cases. | No Released Party receives a release until the Liquidating Trustee's investigation into the Debtors' asserted fraud is complete. |

| *11 U.S.C. § 1141(d)*: Debtors are not entitled to a discharge because they are liquidating. | Remove Debtors from the list of beneficiaries of the Combined Plan's injunction provision. |
| --- | --- |

## BACKGROUND

### A. The Chapter 11 Cases

4.      On December 5, 2024, (the "Petition Date") the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (these "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

5.      As acknowledged by the Debtors, these Chapter 11 Cases were commenced to address the financial problems stemming from various fraudulent activity and schemes perpetrated by the Debtors and (likely) other yet-to-be identified parties.  To address the fraud underpinning and plaguing these Chapter 11 Cases, MHCCA, Fifth Third, and TEFC jointly filed a *Motion to Appoint Examiner* (the "Examiner Motion") [D.I. 386] on January 24, 2025.  The Examiner Motion has never been set for hearing.

6.      From the outset of these Chapter 11 Cases, as few parties received any adequate protection for the Debtors' continued possession and use of equipment collateral, nearly every secured lender filed a motion for stay relief, which motions were eventually followed by calls to convert these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.  *See* D.I. 606, 583, and 569 (collectively, the "Conversion Motions").  In response to the Conversion Motions and in attempt to find a path forward in chapter 11, the Debtors struck various deals with their favored creditors as memorialized in the *Order (I) Approving Binding Settlement Term Sheet with Participating Lends and Committee, (II) Authorizing Relief from Automatic Stay and/or Abandonment of Collateral, and (III) Granting Related Relief* (the "Participating Lender Settlement") [D.I. 691, as amended by D.I 770] and the *Omnibus Order Granting Relief from the Automatic Stay* (the "Omnibus Stay Relief Order") [D.I. 764].

7.      The Participating Lender Settlement and Omnibus Stay Relief Order put into motion the Debtors' liquidation and return of Collateral to Secured Parties (as defined in the Omnibus Stay Relief Order), to be closely and carefully monitored by the Court including a status conference to discuss progress on April 2, 2025 (the "April Status Conference") given the precarious administrative solvency of the Debtors, among other operational issues.  At the April Status Conference, the Debtors acknowledge, among other things, that: (i)  while they are not aware of any "major" accidents, the Debtors are not properly insured while continuing to move and operate rolling stock across the country; (ii) the $3,500,000 dedicated to the Liquidating Trust would be available for satisfying Administrative Claims, including professional fees; (iii) the Committee's professional fees have ballooned to about $1,000,000 more than previously disclosure; and (iv) the Debtors' principal has not made the promised $800,000 contribution to the Estates, further imperiling the administrative insolvency of these Chapter 11 Cases.

**B.  The Objectors' Finance Transactions With the Debtors**

8.      Prior to the Petition Date, each of the Objectors provided financing to certain of the Debtor-entities for the purchase of certain equipment (the "Equipment") to be used in the Debtors' shipping and freight businesses (collectively the "Objector Finance Agreements").[3]  Pursuant to the Objector Finance Agreements, the Objectors were granted and perfected their security interest in their respective Equipment as evidenced by notation of the lien on the Certificates of Title and/or duly filed UCC-1 Financing Statements.  Prior to the Petition Date, the Debtors defaulted under each of the Objector Finance Agreements by, among other things, failing to make payments when due and sub-leasing the Equipment to third parties.

---

[3] The details of each of the Objector Finance Agreements as well as the relevant documents are provided in each Objector's filed proof of claims, which are as follows:  DLL Claim No. 134; Fifth Third Claim Nos. 168,169, and 170; Truist Claim Nos. 214, 215, 216, 217, and 218.

9.      The Debtors have not made any post-petition payments to DLL, Fifth Third, or TEFC despite their continued use and possession of their equipment.  DLL, Fifth Third, and TEFC each sought relief from the automatic stay to pursue their respective rights and remedies as to their specific Equipment, which requests were eventually granted as provided in the Omnibus Stay Relief Order.[4]  *See* D.I. 338, 354, and 355.

## OBJECTION TO CONFIRMATION

10.      Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan of reorganization.  The Court may not confirm a plan if the plan fails to meet *any* of these requirements.  11 U.S.C. §1129(a).  Debtors bear the heavy burden of proving that the Combined Plan complies with all the elements of § 1129.  *In re Cypresswood Land Partners, I*, 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009) ("The Debtor, as the proponent of the [plan], has the burden of proving that all elements of 11 U.S.C. § 1129(a) are satisfied.") (citing *In re Internet Navigator Inc.*, 289 B.R. 128, 131 (Bankr. N.D. Iowa 2003)).  Under § 1129(a) of the Bankruptcy Code, debtors must carry their burden by a preponderance of the evidence.  *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In Re Briscoe Enters. ,Ltd., II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) ("[p]reponderance of the evidence is the debtor's appropriate standard of proof … under § 1129(a)...").  For the reasons set forth herein, the Debtors cannot meet their burden of proof with respect to certain confirmation requirements.

11.      Specifically, the Combined Plan is unconfirmable because it (i) fails to pay Administrative Claims on the Effective Date, (ii) attempts to elevate the recovery of Professional

---

[4] Notably, while the Omnibus Stay Relief Order grants Secured Lenders stay relief to "permit the applicable Secured Creditor to take possession of such Collateral and exercise its rights and remedies with respect to such Collateral in accordance with applicable non-bankruptcy law and the terms of the applicable pre-petition loan documents", the Debtors refuse to execute a Limited Power of Attorney in favor of Fifth Third or TEFC in order to permit them to pass title to a third-party.  This refusal negates the purpose of the Omnibus Stay Relief Order and is also in violation of the applicable Objector Finance Agreement.

Fees over other Administrative Claim holders, and (iii) provides for releases prior to any investigation into the fully acknowledged fraud that is at the core of these Chapter 11 Cases. To be clear: nothing in Bankruptcy Code permits the Debtors to force a liquidating plan on creditors for the sole benefit of the Debtors, their Professionals, and their favored creditors. Absent revisions to address these concerns, the Combined Plan therefore cannot be confirmed.

## A.    THE DISPARATE TREATMENT OF ADMINISTRATIVE CLAIM HOLDERS UNDER THE COMBINED PLAN VIOLATES 11 U.S.C. § 1129(A)(9).

12.    There is no dispute that (i) the Objectors are secured creditors with perfected security interests in specific Equipment, comprised of (in the aggregate) approximately 400 trucks and trailers and  (ii) the Debtors have failed to remit any post-petition payments to the Objectors on account of Debtors' obligations related to the Objector Finance Agreements.  Accordingly, the Objectors have substantial claims for post-petition rent and other amounts due under the Objector Finance Agreements (such claims, the "Objector Administrative Claims"), all of which are entitled to administrative priority under 11 U.S.C. § 503(b).

13.    The law is clear:  a Chapter 11 plan can only be confirmed if *all* the requirements of 11 U.S.C. § 1129(a) are met.  In that regard, the statute provides in relevant part:

> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
>
> > (A) with respect to a claim of a kind specified in section 507(a)(2) [*i.e.*, claims entitled to administrative priority under section 503(b)] . . . on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

11 U.S.C. § 1129(a)(9)(A).  Section 507(a)(2) incorporates administrative expense claims under § 503(b).  11 U.S.C. §§ 503(b) and 507(a)(2).  "The [Bankruptcy] Code clearly requires the full payment of all allowed administrative expenses."  *In re TCI 2 Holdings, LLC*, 428 B.R. 117 (Bankr. D.N.J. 2010).

14.     A court cannot confirm a Chapter 11 plan unless the plan provides full cash payment of all § 503(b) claims or the claim holder agrees to different treatment.  *In re Hechinger Inv. Co. of Delaware*, 298 F.3d 219, 224 (3d Cir. 2002); *see also In re Goody's Family Clothing, Inc.*, 401 B.R. 656, 663 n. 6 (D. Del. 2009) ("A court cannot confirm a distribution plan unless the plan provides full cash payment of all § 503(b) administrative expense claims or the claim holder agrees to different treatment.").  The default position of § 1129(a)(9) is that § 503(b) allowed claims are paid in full.  *In re Capitol Hill Group*, 313 B.R. 344, 355 (D. D.C. 2004).  To pay anything less than the full amount of an allowed § 503(b) claim, a debtor has an affirmative burden to secure the § 503(b) claimant's consent.  *Id.*

15.     Here, the Combined Plan impermissibly attempts to bifurcate the treatment of Professional Fee Claims[5] and Allowed Administrative Claims.[6]   With respect to Allowed Administrative Claims, the Combined Plan provides that:

> Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, ***other than a Professional Fee Claim***, shall receive from Available Cash payable by the Debtors or the Liquidating Trust, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors or the Liquidating Trust, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms

---

[5] "<u>Professional Fee Claim</u>" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

[6] "<u>Administrative Claim</u>" means a "Claim for an expense of administration of the Chapter 11 Cases arising under Sections 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by the Debtors within 20 days before the Petition Date to the extent that goods were sold to the Debtors in the ordinary course of the Debtors' business; (c) ***Professional Fee Claims***; (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Court; (f) administrative claims that were timely filed prior to the Administrative Expense Bar Date; and (g) any Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date." (emphasis supplied).

as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

Combined Plan, Section VIII.B (emphasis supplied).

16.     By contrast, with respect to Professional Fees, the Combined Plan provides that:

Upon approval of the fee applications by the Court, the Debtors or Liquidating Trust shall pay applicable Professionals all of their respective accrued and Allowed fees and reimbursement of expenses arising prior to the Effective Date, plus reasonable fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date, plus post-Effective Date fees approved by the Post-Effective-Date Debtor(s).

*See* Combined Plan, Section VIII.C.  Professionals, in turn, must seek final allowance and payment of services rendered prior to the Effective Date no later than forty-five (45) days after the Effective Date.  *Id*.

17.     The Debtors' proposed construct presents a number of practical issues that combine to run afoul of the requirements of section 1129(a)(9).  *First*, the total amount of Administrative Claims will not be known until at least forty-five (45) days after the Effective Date.  As the Debtors acknowledge, there are very limited resources available to pay even the Debtors' expenses in connection with winding down its operations.  And, as of April 2, 2025, the Committee alone has blown through their Professional Fee budget by over $1,000,000.  It is far from certain that the Debtors or the Liquidating Trust are (or will) be administratively solvent and thus able to pay Administrative Claims in full as required.  Moreover, the pool of Administrative Claims is unknown (and will be until no sooner than 45 days after the Effective Date—*i.e.*, once all final applications for Professional Fees have been filed).

18.     *Second*, the lack of concrete timelines for payment of non-Professional Fee Administrative Claims creates significant uncertainty that all Allowed Administrative Claims will

be paid *pari passu* and creates the (far more likely) scenario wherein Professional Fees are elevated (paid in full and sooner) over other Allowed Administrative Claims. Indeed, the Combined Plan mandates that Professional Fees be paid once final fee applications are approved by the Court, which the Liquidating Trustee may not object to. *See* Combined Plan, Art. VIII(C).

19.     Under the Local rules, the final fee applications may be filed on negative notice and can be approved as soon as 21 days. LBR 2016-1(c). By contrast, Administrative Claims that are not Professional Fees are subject to objection by the Liquidating Trustee which Claims Objection Deadline is two (2) years after the Effective Date.[7]  Accordingly, Professional Fees are likely to be paid first and in full as soon as sixty-six (66) days after the Effective Date, while holders of Allowed Administrative Claims will be paid more than two (2) years after the Effective Date (and with no guaranty of payment in full). This two-tiered class of Administrative Claims impermissibly (and insultingly) ensures a more robust recovery to Professionals than any creditor.

20.     While Section XVII.A of the Combined Plan conditions Confirmation on the Debtors determining that "there will be sufficient Cash on the Effective Date to pay Allowed Administrative Claims," this statement, unsupported by the realities of the actual or growing insolvency of these Chapter 11 Cases, does not address the universe of claims that will be Allowed Administrative Claims and cannot serve as the basis for curing the clear failure to meet the standard of 1129(a)(9).

21.     To rectify the potential disparate treatment—that is unsupported by and, indeed, would run afoul of the Bankruptcy Code—the Combined Plan should unequivocally provide that holders of Allowed Administrative Claims shall not paid until there is finality as to the amount of

---

[7] "Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) two years after the Effective Date, or (b) such other period as may be fixed by an order of the Court for objecting to Claims upon request of the Liquidating Trustee.

such claims and, to the extent there are insufficient funds to pay all Holders of such Claims, such Holders—including Professionals—must receive pro rata payments.

22.     As noted above, the Objectors do not consent to receiving anything less than full payment on their respective Objector Administrative Claims.  Accordingly, absent resolution of this issue, the Combined Plan cannot be confirmed.

### B. DEBTORS HAVE NOT DEMONSTRATED THAT THE COMBINED PLAN IS FEASIBLE AS REQUIRED BY § 1129(A)(11)

23.     As a separate evidentiary requirement for plan confirmation, § 1129(a)(11) of the Bankruptcy Code, commonly referred to as the "feasibility test," requires a finding by the court that confirmation of the plan is not likely to be followed by liquidation or the need for further financial reorganization.  11 U.S.C. § 1129(a)(11).  "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation."  *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985); *see also In re Made in Detroit, Inc.*, 299 B.R. 170, 176-77 (Bankr. E.D. Mich. 2003).

24.     A plan of liquidation is not exempt from the feasibility requirements of section 1129(a)(11).  *In re Calvanese*, 169 B.R. 104, 107 (Bankr. E.D. Pa. 1994) ("Even liquidating plans must be feasible.").  In *In re Holmes*, the court held that the feasibility analysis for a liquidating plan "will vary somewhat from that used in 'true' reorganizations . . . . In particular, the courts in these [liquidation] cases were concerned over the absence of a reliable cash flow or proven earning power that could ensure regular payments to the creditors."  *Holmes v. United States (In re Holmes)*, 301 B.R. 911, 914 (Bankr. M.D. Ga. 2003) (quoting *Resolution Trust Corp. v. Wood (In re Wood)*, No. 89-0111 (JHM), 1991 U.S. Dist. LEXIS 20083, at *3 (W.D. Va. Nov. 11, 1991)).  Ultimately, the court rejected a plan of liquidation in which a debtor proposed to pay a priority tax

claim over a period of sixty months, because there was no showing that the proceeds from the sale of property would be sufficient to cover the claim. *Id*. at 915.

25.     A plan is not feasible if the Debtors are unable to pay administrative expenses and other priority claims in full as required under section 1129(a)(9) of the Bankruptcy Code.  The Combined Plan provides scant information regarding the estimated amount of Administrative Claims or how such Claims will be paid.  *See* Combined Plan, <u>Exhibit C</u> (Liquidation Analysis). Other than a "Chapter 11 Orderly Liquidation" attached to the Combined Plan that provides for a "Transition Budget" and providing estimates of "post-petition expenses," the Debtors do not fully explain how Administrative Claims will be paid, let alone how the Debtors arrived at the estimated amount of such Administrative Claims—especially where the universe of such Claim will not be known until 45 days post-Effective Date (*i.e.*, the deadline to file final fee applications) at the earliest.

26.     To satisfy the confirmation requirement under section 1129(a)(9), the Debtors have the burden of demonstrating that these claims have been considered and accounted for and can be paid in full in cash.  As of the filing of this Objection, Debtors have not submitted evidence of their ability to pay allowed Administrative Claims in full as required by § 1129(a)(9), suggesting the Combined Plan may not be feasible in violation of § 1129(a)(11).  Absent any evidence of the Debtors' ability to satisfy these claims, the Debtors cannot carry their burden to demonstrate that the Combined Plan is feasible.

## C.  GRANTING THE RELEASES PROPOSED BY THE COMBINED PLAN PRIOR TO ANY INVESTIGATION IS INAPPROPRIATE.

27.     Section XVI.B of the Combined Plan (the "<u>Debtor Releases</u>") provides releases for the Debtors' Independent Directors, the Committee, the CRO, any Professional, and all Participating Lenders (each, a "<u>Released Party</u>" and, collectively, the "<u>Released Parties</u>").  Under

the circumstances of these Chapter 11 Cases, the Debtor Releases are entirely improper for the CRO and any Professional.  This is especially true in the absence of any affirmative consideration provided by such individuals in exchange for such releases.  The Debtor Releases are not the result of a compromise that reflects the give and take of a true arms-length negotiation process.

28.     Under Fifth Circuit law, consideration and consent are important factors that courts consider when evaluating the propriety of third-party releases in a chapter 11 plan.  *See In re Pacific Lumber Company*, 584 F.3d 229, 252 (5th Cir. 2009); *In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 775-76 (Bankr. N.D. Tex. 2007) ("Consensual nondebtor releases that are specific in language, integral to the plan, a condition of the settlement, and given for consideration do not violate section 524(e).") (citation omitted).

29.     Under section 1123(b)(3)(A), a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate," if such settlement is voluntary, fair and equitable and in the best interests of the estate.  11 U.S.C. § 1123(b)(3)(A). While section 1123(b)(3)(A) permits a plan to provide for a release of claims belonging to the estate, including a release of estate claims against non-debtors, any such release must as a threshold matter satisfy the requirement of a valid settlement of claims under the Bankruptcy Code.  *See In re Bigler LP*, 442 B.R. 537, 543 (Bankr. S.D. Tex. 2010).  Specifically, "[i]t would require, inter alia, consent and consideration by each participant in the agreement to be valid."  *Id*. at 543-44.

30.     The Combined Plan falls far short of demonstrating how each of the Released Parties have made a "substantial contribution" to support the proposed Debtor Releases.  *See United Artists Theatre Co. v. Walton* (*In re UA Theatre Co.*), 315 F.3d 217, 227 (3d Cir. 2003) (holding that releases must be given in exchange for fair consideration).  The Debtors must establish that each Released Party is entitled to the Debtor Release—and that each Released Party

has independently provided consideration supporting the Debtor Release.  *See In re Wash. Mut., Inc.*, 442 B.R. 314, 351 (Bankr. D. Del. 2011) (separately analyzing contributions of all proposed releasees and refusing to give group of proposed releasees credit for contributions "not coming from" them); *cf. In re 710 Long Ridge Rd. Operating Co., II, LLC*, 2014 Bankr. LEXIS 863, at *59 (Bankr. D.N.J. Mar. 5, 2014) ("It is only fair and logical that the consideration required to satisfy the claims affected must be provided by the party actually receiving the release; it is not sufficient that some creditors receive some extra value from another party.").  Importantly, in order for a party to make a "substantial contribution" worthy of a plan release, the party must contribute something tangible to the Combined Plan, whether in the form of cash or providing an "extraordinary service" to the case.  *In re Wash. Mut., Inc.*, 442 B.R. at 348.

31.     The Debtors propose to release estate Claims against the Released Parties without the parties providing affirmative consideration in exchange for such releases.  This is especially true in a case where there are strong allegations of fraud both pre-petition and post-petition.  The Debtors must establish that each Released Party is entitled to a release, including that each Released Party has independently provided consideration supporting the Debtor Release.  Because of the fraud allegations present in this case, no Released Party should receive a release until the Liquidating Trustee's investigation is complete.

**D.   ;THE COMBINED PLAN INCLUDES AN IMPERMISSIBLE INJUNCTION IN VIOLATION OF § 1141(d).**

32.     The Combined Plan also cannot be confirmed because it includes discharge and injunction provisions that do not comply with the Bankruptcy Code.  Under § 1141(d)(3) of the Bankruptcy Code, confirmation of a plan cannot discharge a debtor if "(A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge under

section 727(a) of [the Bankruptcy Code] if the case were a case under chapter 7 of [the Bankruptcy Code.]"  *See Teamsters Pension Trust Fund of Philadelphia and Vicinity v. Malone Realty Co.*, 82 B.R. 346, 349 (E.D. Pa. 1988) ("[A] corporate or partnership debtor that is both liquidating and discontinuing its business does not receive a discharge when a plan is confirmed.").

33.     A plan cannot, through an injunction, accomplish a *de facto* discharge that is otherwise impermissible.  *See In re S. Canaan Cellular Invs., Inc.*, 427 B.R. 44, 84-85 (Bankr. E.D. Pa. 2010) (striking an injunction provision from confirmation order in a liquidating chapter 11 plan where creditors would be enjoined from any collection actions for a period of 18 months or a default by the debtors of their confirmed plan); *see also In re Kabbage Inc.*, No. 22-10951 (CTG), 2023 Bankr. LEXIS 671, at *4 (Bankr. D. Del. Mar. 15, 2023) (approving an injunction that was the functional equivalent of a discharge only because of its temporary nature, stating that the court "has serious concerns about the propriety of granting relief that is the functional equivalent of a discharge to a debtor that is ineligible for a discharge on the ground that the parties affixed a different label to it.").

34.     Here, the Combined Plan provides for injunction with respect to the Debtors, the Estates, the Liquidating Trust, and the Liquidating Trust Assets.  Combined Plan, Section XVI.C. This cannot be approved as each of the § 1141(d)(3) factors are satisfied.  *First*, the Debtors are liquidating, as is evident from the title of the Debtors' plan of liquidation and the fact that substantially all of the Debtors assets are being transferred to the Liquidating Trust.  *Second*, the Debtors concede that they will not operate post-emergence.  *Id*., Section XIV. B.  *Third*, because the Debtors are not individuals, they cannot receive a discharge under § 727(a).  Accordingly, the proposed injunction provision cannot be approved with respect to the Debtors and should be modified appropriately.

## **RESERVATION OF RIGHTS AND JOINDER**

35.     Objectors expressly reserves all rights, claims, defenses, and remedies, including without limitation, the right to (i) supplement and amend this Objection, (ii) be heard, and introduce evidence prior to or at, the hearing on the Objection, (iii) introduce any other relevant information in support of the positions set forth in this Objection prior to or at the hearing on this Objection; and (iv) seek discovery with respect to any issues implicated by the Combined Plan. Objectors further reserve their rights to make an election under 11 U.S.C. § 1111(b) prior to any hearing on the Combined Plan.  Nothing herein is intended to nor shall be construed as a waiver or limitation of any of the rights or remedies of Objectors with respect to the Combined Plan, all of which are fully preserved.

36.     Objectors incorporate herein the arguments of other parties that submit objections to confirmation of the Combined Plan to the extent not inconsistent with this Objection.

[*The remainder of this page was intentionally left blank.*]

## CONCLUSION

**WHEREFORE**, Objectors respectfully request that the Court (i) sustain this Objection, (ii) deny final approval and confirmation of the Combined Plan, and (iii) and grant such other relief as is appropriate.

Dated:  April 4, 2025

   */s/ Jay L. Krystinik*
Jay L. Krystinik (SBN 24041279)
Taylre C. Janak (SBN 24122751)
Devan J. Dal Col (SBN 24116244)
Alexis A. Leventhal (admitted *pro hac vice*)
REED SMITH LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4221
Facsimile: (469) 680-4299
E-mail: jkrystinik@reedsmith.com
      tjanak@reedsmith.com
      ddalcol@reedsmith.com
      aleventhal@reedsmith.com

*Attorneys for Mitsubishi HC Capital Canada Inc.,*
*Truist Equipment Finance Corp., De Lage Landen*
*Financial Services, LLC, and Fifth Third Bank, N.A.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 4, 2025, a true and correct copy of the above foregoing document was served via the Court's Electronic Case Filing (ECF) system on all parties registered to receive electronic service through same.

<u>/s/ *Taylre C. Janak*</u>
Taylre C. Janak