## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

### FOURTH AMENDED AND RESTATED COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION OF KAL FREIGHT INC. AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

PACHULSKI STANG ZIEHL & JONES LLP
Teddy M. Kapur (SBT 24046186)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
tkapur@pszjlaw.com
mlitvak@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

## TABLE OF CONTENTS

SECTION I. INTRODUCTION ........................................................................... 1

SECTION II. SUMMARY OF CLASSIFICATION AND TREATMENT OF  CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT  SOLICITATION AND CONFIRMATION DATES AND DEADLINES ............................................... 3

    A.    Summary of Classification and Treatment of Claims and Interests. ..................... 3

    B.    Important Dates and Deadlines ...................................................... 6

SECTION III. DEFINED TERMS ...................................................................... 6

SECTION IV. BACKGROUND .......................................................................... 19

    A.    General Background. ................................................................ 19

    B.    Events Leading to the Bankruptcy Filings; Allegations of Malfeasance. ........... 25

    C.    Chapter 11 Goals ................................................................... 26

SECTION V. THE CHAPTER 11 CASES ............................................................. 27

    A.    First Day and Other Early Relief. .................................................. 27

    B.    Factoring and Security Agreement; Use of Cash Collateral Relief; and Adequate Protection Payments. ................................................................ 28

    C.    Formation of the Committee. ....................................................... 28

    D.    Retention of Professionals. ......................................................... 28

    E.    Debtors' Schedules and Statements of Financial Affairs. ........................... 28

    F.    Sale Order .......................................................................... 29

    G.    Settlement Order. ................................................................... 29

SECTION VI. CONFIRMATION AND VOTING PROCEDURES ................................ 29

    A.    Hearing on Confirmation and Final Approval of Disclosure Statement. ........... 29

    B.    Procedures for Objections. .......................................................... 29

    C.    Requirements for Confirmation. ..................................................... 30

    D.    Classification of Claims and Interests. .............................................. 30

    E.    Impaired Claims or Interests. ....................................................... 32

    F.    Confirmation Without Necessary Acceptances; Cramdown. ......................... 32

    G.    Feasibility. .......................................................................... 33

    H.    Best Interests Test and Liquidation Analysis. ...................................... 33

    I.    Eligibility to Vote on the Combined Plan and Disclosure Statement. .............. 35

    J.    Solicitation Package. ................................................................ 35

    K.    Voting Procedures, Voting Deadline, and Applicable Deadlines. ................... 35

    L.    Acceptance of the Combined Plan and Disclosure Statement. ...................... 36

i

SECTION VII. CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER
DISCLOSURES ........................................................................................................ 36

    A.    Certain Risk Factors to be Considered. ............................................... 36

    B.    The Combined Plan and Disclosure Statement May Not Be Accepted. ............. 37

    C.    The Combined Plan and Disclosure Statement May Not Be Confirmed. ........... 37

    D.    Distributions to Holders of Allowed Claims Under the Combined Plan and
Disclosure Statement May be Inconsistent with Projections. ............................ 37

    E.    Objections to Classification of Claims. ............................................... 38

    F.    Failure to Consummate the Combined Plan and Disclosure Statement. ............. 39

    G.    The Plan Releases May Not Be Approved. ........................................... 39

    H.    Reductions to Estimated Creditor Recoveries. .................................... 39

    I.    Certain U.S. Federal Income Tax Consequences. ................................. 39

    J.    Tax Consequences for U.S. Holders of Certain Claims. ...................... 40

    K.    Tax Consequences in Relation to Liquidating Trust. ......................... 41

    L.    Information Reporting and Withholding. ............................................. 43

    M.    Releases, Exculpations, and Injunctions. ........................................... 44

    N.    Alternatives to the Combined Plan and Disclosure Statement. ........................... 44

SECTION VIII. UNCLASSIFIED CLAIMS ...................................................... 45

    A.    Unclassified Claims. ........................................................................... 45

    B.    Administrative Claims. ....................................................................... 45

    C.    Professional Fees. ............................................................................... 46

    D.    Priority Tax Claims. ........................................................................... 47

SECTION IX. CLASSIFICATION OF CLAIMS AND INTERESTS ........................... 47

    A.    Summary of Classification. ................................................................. 47

    B.    Special Provision Governing Unimpaired Claims. ............................. 47

    C.    Vacant and Abstaining Classes. ......................................................... 48

SECTION X. TREATMENT OF CLAIMS AND INTERESTS ................................... 48

    A.    Class 1—Priority Non-Tax Claims. .................................................. 48

    B.    Class 2—Other Secured Claims ....................................................... 48

    C.    Class 3—Unsecured Claims. ............................................................. 49

    D.    Class 4—Participating Lender Claims ............................................... 49

    E.    Class 5—Intercompany Claims. ....................................................... 50

    F.    Class 6—Interests. ............................................................................. 50

SECTION XI. DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS ............... 50

    A.    Distribution Dates; Subsequent Distributions. .................................. 50

B.   Distribution Record Date. ................................................................... 51

C.   Manner of Cash Payments Under the Plan or Liquidating Trust Agreement. .... 51

D.   Time Bar to Cash Payments by Check. .................................................. 51

E.   Liquidating Trust Assets Account. ........................................................ 51

F.   Tax Identification Numbers. ................................................................. 52

G.   Claims Paid or Payable by Third Parties. ............................................... 52

SECTION XII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND
REDISTRIBUTIONS ................................................................................. 53

A.   No Distributions Pending Allowance. ................................................... 53

B.   Resolution of Disputed Claims. ............................................................ 53

C.   Objection Deadline. ........................................................................... 53

D.   Estimation of Claims. ......................................................................... 53

E.   Disallowance of Claims. ..................................................................... 54

F.   Claims Register ................................................................................ 54

G.   Reserve Provisions for Disputed Claims. ............................................... 54

H.   *De Minimis* Distributions, Rounding. .................................................... 55

I.   Unclaimed and Undeliverable Distributions. .......................................... 55

J.   Books and Records and Vesting of Privileges. ........................................ 56

SECTION XIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ................................................................................................ 57

A.   Rejection. ......................................................................................... 57

B.   Rejection Claims. .............................................................................. 57

C.   Insurance Policies. ............................................................................. 57

SECTION XIV. MEANS FOR IMPLEMENTATION OF THE PLAN ......................... 58

A.   Summary. ......................................................................................... 58

B.   Debtors' Corporate Existence; Corporate Action by Debtors. ..................... 58

C.   The Transition Services Agreement ....................................................... 59

D.   The Liquidating Trust. ........................................................................ 59

E.   Appointment of the Liquidating Trustee; Trust Oversight Committee. ........... 60

F.   Rights and Powers of the Liquidating Trustee. ........................................ 61

G.   Fees and Expenses of the Liquidating Trust. ........................................... 62

H.   Transfer of Beneficial Interests in the Liquidating Trust. ........................... 62

I.   Provision of the Liquidating Trust Expenses. .......................................... 62

J.   Residual Real Property. ...................................................................... 62

K.   Limited Substantive Consolidation. ...................................................... 65

L.  Litigation. .................................................................................................... 66

M.  Dissolution of the Committee. ................................................................... 66

N.  Termination After Five Years and Extension. ............................................ 66

SECTION XV. EFFECT OF CONFIRMATION .................................................... 67

A.  Binding Effect of the Plan. ......................................................................... 67

B.  Vesting of Liquidating Trust Assets in the Liquidating Trust. ................... 67

C.  Property Free and Clear. ............................................................................. 67

SECTION XVI. EXCULPATIONS, INJUNCTIONS, AND RELEASES .................... 68

A.  Exculpation. ................................................................................................ 68

B.  Debtor Releases. ......................................................................................... 68

C.  Injunction. .................................................................................................. 69

D.  Post-Confirmation Liability of the Liquidating Trustee. ........................... 69

E.  Survival of Exculpation and Indemnification. ........................................... 70

F.  Preservation of Rights of Action. ............................................................... 70

G.  Preservation of All Causes of Action Not Expressly Settled or Released. ......... 71

H.  Reservation of Governmental Unit Rights ................................................. 71

SECTION XVII. CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN .................................................................... 72

A.  Conditions to Confirmation of the Plan. .................................................... 72

B.  Conditions to the Effective Date. ............................................................... 72

C.  Waiver of Conditions Precedent. ................................................................ 72

SECTION XVIII. RETENTION OF JURISDICTION ........................................... 72

SECTION XIX. MISCELLANEOUS PROVISIONS .............................................. 74

A.  Payment of Statutory Fees / Closing of Chapter 11 Cases. ....................... 74

B.  Revocation of the Combined Plan and Disclosure Statement. ................... 74

C.  Severability of Plan Provisions. ................................................................. 74

D.  Exhibits. ...................................................................................................... 74

E.  Notices. ....................................................................................................... 75

F.  Reservation of Rights. ................................................................................ 75

G.  Defects, Omissions and Amendments. ....................................................... 75

H.  Filing of Additional Documents. ................................................................ 76

I.  Successors and Assigns. ............................................................................. 76

J.  Setoffs and Recoupments. .......................................................................... 76

K.  Tax Exemption. ........................................................................................... 76

L.  Securities Exemption. ................................................................................. 77

M.   Implementation. .......................................................................................... 77

N.   Record Date. .............................................................................................. 77

O.   Certain Actions. .......................................................................................... 77

P.   Substantial Consummation. ........................................................................ 77

Q.   Waiver of Fourteen-Day Stay ...................................................................... 78

R.   Governing Law. .......................................................................................... 78

S.   Entire Agreement. ...................................................................................... 78

T.   Triumph and TBK. ...................................................................................... 78

SECTION XX. RECOMMENDATION ......................................................................... 78

EXHIBIT A: CORPORATE CHART

EXHIBIT B: DEBT SUMMARY CHART

EXHIBIT C: LIQUIDATION ANALYSIS

EXHIBIT D: SCHEDULE OF CAUSES OF ACTION

EXHIBIT E: RESIDUAL REAL PROPERTY

**DISCLAIMERS**

EACH HOLDER OF A CLAIM AGAINST THE DEBTORS ENTITLED TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE VOTING. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY BE MADE EXCEPT PURSUANT TO THE TERMS HEREOF AND SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE. IF YOU ARE ENTITLED TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTORS URGE YOU TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3016 AND 3017, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST OR INTERESTS IN THE DEBTORS SHOULD EVALUATE THE COMBINED PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS. YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE COMBINED PLAN AND DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, ANTICIPATED EVENTS IN THE CHAPTER 11 CASES, AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTORS BELIEVE THAT THE STATEMENTS AND DESCRIPTIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE TRUE AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTORY PROVISIONS. THE TERMS OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTES GOVERN IN THE EVENT OF ANY DISCREPANCY WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT. CREDITORS AND OTHER INTERESTED PARTIES SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND THE APPLICABLE

1

STATUTES THEMSELVES FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE FACTUAL STATEMENTS AND REPRESENTATIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE MADE BY THE DEBTORS AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED, AND THE DEBTORS DISCLAIM ANY OBLIGATION TO UPDATE ANY SUCH STATEMENTS AFTER THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT NECESSARILY BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

ALL FORWARD-LOOKING STATEMENTS CONTAINED HEREIN OR OTHERWISE MADE BY THE DEBTORS INVOLVE MATERIAL RISKS AND UNCERTAINTIES AND ARE SUBJECT TO CHANGE BASED ON NUMEROUS FACTORS, INCLUDING FACTORS THAT ARE BEYOND THE DEBTORS' CONTROL. ACCORDINGLY, THE DEBTORS' FUTURE PERFORMANCE AND FINANCIAL RESULTS MAY DIFFER MATERIALLY FROM THOSE EXPRESSED OR IMPLIED IN ANY SUCH FORWARD-LOOKING STATEMENTS. SUCH FACTORS INCLUDE, BUT ARE NOT LIMITED TO, THOSE DESCRIBED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTORS DO NOT INTEND TO UPDATE OR REVISE THEIR FORWARD-LOOKING STATEMENTS EVEN IF EXPERIENCE OR FUTURE CHANGES MAKE IT CLEAR THAT ANY PROJECTED RESULTS EXPRESSED OR IMPLIED THEREIN WILL NOT BE REALIZED.

ANY PROJECTED RECOVERIES TO CREDITORS SET FORTH IN THIS DISCLOSURE STATEMENT ARE BASED UPON THE ANALYSES PERFORMED BY THE DEBTORS AND THEIR ADVISORS. ALTHOUGH THE DEBTORS AND THEIR ADVISORS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN, THE DEBTORS AND THEIR ADVISORS CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THIS INFORMATION.

IN CONNECTION WITH THE DEBTORS' SOLICITATION OF ACCEPTANCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT PURSUANT TO SECTION 1126(b) OF THE BANKRUPTCY CODE, THE DEBTORS ARE FURNISHING A SOLICITATION PACKAGE, CONSISTING OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE EXHIBITS HERETO, CONFIRMATION NOTICE, AND A BALLOT, AS APPLICABLE, TO EACH RECORD HOLDER OF CLAIMS ELIGIBLE TO VOTE OR ITS COUNSEL. THE COMBINED PLAN AND DISCLOSURE STATEMENT IS TO BE USED BY EACH SUCH ELIGIBLE HOLDER SOLELY IN

CONNECTION WITH ITS EVALUATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT; USE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE IS NOT AUTHORIZED. NOTHING STATED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY. THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY NOT BE REPRODUCED OR PROVIDED TO ANYONE OTHER THAN ADVISORS TO THE RECIPIENT WITHOUT THE PRIOR WRITTEN CONSENT OF THE DEBTORS.

## SECTION I.
## INTRODUCTION

Kal Freight Inc. and its affiliated debtors, the debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors" or the "Company"), hereby propose the following combined disclosure statement and plan of liquidation pursuant to sections 1121(a) and 1125(b) of title 11 of the United States Code (the disclosure statement portion hereof, the "Disclosure Statement" and the chapter 11 plan portion hereof, the "Plan," as may be modified and/or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement"). Capitalized terms used in the Combined Plan and Disclosure Statement and not otherwise defined have the meanings ascribed to such terms in Section III.

Prior to the Petition Date, Kal Freight was a transportation and logistics industry leader, providing its customers with cost-effective and reliable trucking and shipping servicers. After several years of successful operations, Kal Freight joined with other trucking operators in 2020 to create additional related business lines—including KAL Partz, KVL, and KAL Trailers. Notwithstanding their best efforts, the Debtors were unable to operate these new "verticals" successfully. The Debtors commenced the Chapter 11 Cases because of the strain on their operations caused by their over $313 million in debt and the various allegations of prepetition malfeasance levied against the Debtors discussed below.

Since the Petition Date, the Debtors have taken affirmative steps to reduce and right-size their fleet of trucks and trailers in order to maximize the going concern value of the Debtors' enterprise and have surrendered dozens of trucks and trailers to date to various secured parties. The Debtors, their primary lenders, and the Committee also engaged with prospective purchasers regarding a sale of the Debtors' business. The Debtors' efforts resulted in the Court approving the Sale Order and Settlement Order. Docket Nos. 770; 857.

The Settlement Order approved a Term Sheet and global settlement between the Debtors, the Committee, Triumph, TBK, Daimler, BALC, and Wells Fargo. The Term Sheet provides for the Participating Lenders to fund an orderly sale and wind down of the Debtors' estates (the "Estates") and to waive their administrative and other claims, including deficiency claims—aside from their secured claims in the Rolling Collateral and the TBK/Triumph Collateral. The Participating Lenders are also agreeing not to assert any claims against the Liquidating Trust Assets. In exchange, and provided they fulfill their obligations under the Term Sheet, the Participating Lenders are receiving a release from the Debtors. The releases in the Settlement Order are incorporated and reaffirmed herein.[2]

The Sale Order authorized Kal Freight and Kal Trailers to enter into and consummate the Purchase Agreement pursuant to which Kal Freight and Kal Trailers are selling certain of their assets to Noor Transport Leasing, LLC ("Noor"). As disclosed in the Sale Motion, Noor has certain affiliations with the Debtors' principals; however, the Purchase Agreement provides $3.25 million in proceeds to the Estates and Noor is assuming substantial Estate liabilities. The Debtors are otherwise effectuating an orderly wind-down of their remaining assets and operations. The Debtors

---

[2] The Plan incorporates the Settlement Order, as applicable, even if not expressly stated throughout. The provisions of the Settlement Order survive the Effective Date.

currently project that the Effective Date will occur on or about April 14, 2025. The Debtors intend to enter into a Transition Services Agreement which purports to facilitate, among other things, the return of Rolling Stock to lenders and lessors of the Debtors.

On the Effective Date, the Debtors will transfer the Liquidating Trust Assets to the Liquidating Trust. The Liquidating Trustee will conduct an investigation into those Causes of Action transferred to the Liquidating Trust for the benefit of the general unsecured creditors and will liquidate, collect, sell, or otherwise dispose of the transferred assets and distribute all net proceeds to Creditors in accordance with the priority scheme under the Bankruptcy Code and the Plan. There will be no distributions to Holders of Interests.

In a Chapter 7 proceeding, the Debtors believe that general unsecured creditors would receive no distribution on account of their claims.

The Plan provides limited Debtor releases for the Independent Directors, the Committee, and the individual members thereof in their capacity as such, the CRO, Professionals, and the Participating Lenders that fully satisfy their funding obligations in the Term Sheet. The Plan does not contain third party releases.

The Plan further provides for the limited substantive consolidation of the Debtors' Estates solely for the purposes of voting on the Plan by the Holders of Claims and making Distributions to Holders of Claims.

The Debtors submit that the Combined Plan and Disclosure Statement and/or notice thereof will be distributed to all holders of Claims and Interests in accordance with section 1125(b) of the Bankruptcy Code; Rules 2002, 3016, and 3017 of the Federal Rules of Bankruptcy Procedure; and the Court's order conditionally approving the Combined Plan and Disclosure Statement. The Combined Plan and Disclosure Statement and the exhibits hereto include a discussion of: (i) the nature and history of the Debtors' business and liabilities; (ii) events during the Chapter 11 Cases; (iii) the requirements for confirmation of the Plan and procedures for voting to accept or reject the Plan; (iv) additional factors and disclosures to be considered, including risk factors and certain U.S. federal income tax consequences of the Plan; and (v) the terms of the Plan, including the treatment of holders of Claims and Interests under the Plan. The Disclosure Statement was prepared with the intent to provide "adequate information" (as defined in the Bankruptcy Code) to enable holders of Claims against and Interests in the Debtors to make informed judgments about the Plan.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, if any, the Debtors expressly reserve the right to alter, amend, or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before substantial consummation thereof.

*Please read the Combined Plan and Disclosure Statement, the exhibits, other supporting materials, and any appropriate ballot carefully and follow the instructions set forth below and on the appropriate ballot to vote on the Combined Plan and Disclosure Statement. The Debtors believe that the Combined Plan and Disclosure Statement provides the best method of maximizing the recoveries for the holders of Claims against the Debtors. Therefore, the Debtors*

*recommend that all creditors who are entitled to vote should vote in favor of the Combined Plan and Disclosure Statement.*

Unless otherwise specified, all section or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, or exhibit to, the Combined Plan and Disclosure Statement, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection, or clause contained herein. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; and (c) unless otherwise noted above, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

## SECTION II.
## SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT SOLICITATION AND CONFIRMATION DATES AND DEADLINES

### A.  Summary of Classification and Treatment of Claims and Interests.

All Claims against or Interests in the Debtors, other than Administrative Claims, DIP Facility Claims, and Priority Tax Claims, are classified for purposes of voting and distributions under the Combined Plan and Disclosure Statement. A summary of the classification of these Claims and Interests, the proposed treatment of each Class of Claims or Interests, and the voting status of each Class of Claims or Interests follows.

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Unclassified:<br>Priority Tax Claims, estimated to total approx. $341,591<br><br>**Estimated Recovery: 100%** | Unless a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, the Debtors or Liquidating Trust shall pay each holder of an Allowed Priority Tax Claim, from Available Cash, the full unpaid amount of such Allowed Priority Tax Claim (as of the Effective Date) via either, at the Liquidating Trustee's sole discretion, (a) a single lump sum payment on or as soon as practicable after the later of (i) the Effective Date, (ii) the date such Priority Tax Claim becomes an Allowed Claim, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law; or (b) regular cash installment payments over a period ending not later than 5 years after the Petition Date with interest at the | Unimpaired | No |

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| | rate determined under non-bankruptcy law in accordance with 11.U.S.C. §§ 1129(a)(9)(c) and 511. | | |
| Class 1: Priority Non-Tax Claims, estimated to total approx. $0 - $75,807 **Estimated Recovery: 100%** | The Debtors or Liquidating Trust, as applicable, shall pay, from Available Cash, the Allowed amount of each Priority Non-Tax Claim to each Entity holding a Priority Non-Tax Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by law). The Debtors or the Liquidating Trust shall pay each Entity holding a Priority Non-Tax Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; *provided however*, that such Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity. | Unimpaired | No |
| Class 2: Other Secured Claims, estimated amount $144,699,797 **Estimated Recovery: 41%** | Unless previously paid in full, the Holder of an Allowed Class 2 Claim (1)(a) if the Collateral securing the Creditor's Class 2 Claim (subject to any applicable intercreditor rights or obligations) is not a Liquidating Trust Asset, will receive its Collateral, which shall be abandoned to such Creditor, or (b) if the Collateral securing the Creditor's Class 2 Claim is a Liquidating Trust Asset, will retain any valid and enforceable existing lien, claim, or encumbrance in or on such Collateral and will receive the proceeds, if any, from the Liquidating Trust's sale or liquidation of such Collateral up to the value of its Allowed Class 2 Claim on terms that may be agreed to in writing or dictated by the Court or (2) such other treatment as may be agreed to in writing by the Debtors and the Holder of such Class 2 Claim, in each case in full satisfaction and release of such Class 2 Claim. All Allowed Deficiency Claims, if any, will be classified and treated as Class 3 Unsecured Claims. Non-Participating Lenders will not receive a Debtor/Estate Release.<br><br>Each Other Secured Claim will be treated as a separate subclass for voting and distribution purposes. | Impaired | Yes |
| Class 3: Unsecured Claims, estimated amount $133,501,559 **Estimated Recovery: 4%** | Holders of Class 3 Claims shall receive a Pro Rata share of the Liquidating Trust Interests in exchange for their Allowed Claims, which entitle the Beneficiaries thereof to a Pro Rata share of any net proceeds of the Liquidating Trust Assets, after payment of all Liquidating Trust Expenses. Unsecured Claims are subject to all statutory, equitable, and contractual subordination claims, rights, and grounds available to the Debtors, the Estates, and pursuant to the Plan, except as may be expressly provided otherwise, the Liquidating Trustee, which subordination claims, | Impaired | Yes |

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| | rights, and grounds are fully enforceable prior to, on, and after the Effective Date.<br><br>For the avoidance of doubt, Class 3 includes all Deficiency Claims other than Participating Lender Deficiency Claims. | | |
| Class 4: Participating Lender Claims, estimated amount $142,142,946<br><br>**Estimated Recovery: 0%** | Notwithstanding anything to the contrary contained herein, the Participating Lenders retain all liens and security interests with respect to their Collateral and proceeds thereof (including without limitation lease payments) as and to the extent set forth in the Term Sheet, which liens and security interests survive confirmation of the Plan. The Participating Lenders are entitled to exercise all rights and remedies with respect to such Collateral and proceeds thereof as and to the extent set forth in the Term Sheet. Notwithstanding anything to the contrary contained in the Plan, the Confirmation Order, or Title 11, the automatic stay is lifted, as and to the extent set forth in the Settlement Order and Final Financing Orders, and the Plan Injunction does not apply with respect to the foregoing.<br><br>There shall be no Distribution on account of Class 4 Participating Lender Claims; however, the Holder of an Allowed Class 4 Claim will receive a Debtor/Estate Release and the rights and benefits set forth in the Term Sheet. Notwithstanding anything to the contrary herein, if the Debtors and/or the Liquidating Trust become aware of their receipt of proceeds of a Participating Lender's Collateral, the Debtors and/or the Liquidating Trust shall hold such proceeds in trust for the Participating Lenders and shall notify the Participating Lenders, and reasonably remit such proceeds to the Participating Lenders, which remittance shall not be deemed a Distribution herein.<br><br>Each Participating Lender Claim will be treated as a separate subclass for voting and distribution purposes. | Impaired | No |
| Class 5: Intercompany Claims, estimated amount $285,162,119<br><br>**Estimated Recovery: 0%** | There shall be no Distribution on account of Class 5 Intercompany Claims. Upon the Effective Date, all Intercompany Claims will be deemed, at the option of the Debtors, converted to equity, otherwise set off, settled, canceled, released, or discharged without any distribution on account of such Claims. | Impaired | No |
| Class 6: Interests<br><br>**Estimated Recovery: 0%** | There shall be no Distribution on account of Class 6 Interests. Upon the Effective Date, all Interests will be deemed cancelled and will cease to exist. | Impaired | No |

## B. Important Dates and Deadlines

| Event | Proposed Date[3] |
|---|---|
| Conditional Disclosure Statement Hearing | March 12, 2025 at 10:00 a.m. |
| Solicitation Deadline | March 15, 2025 |
| Deadline to file Plan Supplement | March 26, 2025 |
| Voting Record Date | April 4, 2025 |
| Objection Deadline | April 4, 2025 at 4:00 p.m. |
| Voting Deadline | April 4, 2025 at 4:00 p.m. |
| Deadline to File Voting Tabulation Affidavit | April 7, 2025 |
| Briefs in Support of Confirmation | April 8, 2025 |
| Hearing on Confirmation and Final Approval of Disclosure Statement | April 10, 2025 at 1:00 p.m. |

## SECTION III.
## DEFINED TERMS

As used in the Combined Plan and Disclosure Statement, capitalized terms not otherwise defined have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

"Administrative Claim" means a Claim for an expense of administration of the Chapter 11 Cases arising under Sections 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by the Debtors within 20 days before the Petition Date to the extent that goods were sold to the Debtors in the ordinary course of the Debtors' business; (c) Professional Fee Claims; (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Court; (f) administrative claims that were timely filed prior to the Administrative Expense Bar Date; and (g) any Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

"Administrative Expense Bar Date" means the applicable last date, at 5:00 p.m. Central time, set by the Court for a Claimant to file a request for payment of any Administrative Claim (excluding Professional Fee Claims) arising on or after the Petition Date, through and including the Effective Date. **The Administrative Expense Bar Date shall be thirty (30) days after the Effective Date.**

"Affiliate" means an affiliate of a Debtor, as defined in Section 101(2) of the Bankruptcy Code.

---

[3] All times noted are in prevailing Central Time.

"Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors on the Schedules as other than disputed, contingent, or unliquidated and, as to which, the Debtors, the Liquidating Trustee or other party in interest has not filed an objection on or before the Claims Objection Deadline; (b) a Claim that is set forth in a timely filed Proof of Claim as to which no objection has been filed and which is not otherwise a Disputed Claim; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtors prior to the Effective Date and approved by the Court; (ii) in any stipulation of amount and nature of Claim executed by the Liquidating Trustee on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Non-Tax Claim, or Priority Tax Claim executed by (y) the Debtors and approved by the Court, or (z) the Liquidating Trustee; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by Debtors in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed or Disallowed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely filed by the Claimant before the applicable rejection Bar Date for such claim or has otherwise been deemed timely filed under applicable law; or (f) a Claim that is allowed pursuant to the terms of the Plan. For the purpose of determining distributions pursuant to the Plan, allowance under subsections (a) and (b) only is applicable once any of the following occur (1) before the Claims Objection Deadline, the Debtors, or the Liquidating Trustee, as applicable, determine not to object to the Claim, (2) the Claims Objection Deadline passes without an objection being filed, or (3) after the Debtor, or the Liquidating Trustee timely objects to the Claim, the Claim is allowed as provided in subparagraphs (c), (d) or (e) above.

"Allowed Claim" or "Allowed … Claim" means a Claim that has been Allowed.

"Available Cash" means the aggregate amount of all Cash held by the Debtors on the Effective Date.

"Avoidance Actions" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtors, the Estates, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

"BALC" means Banc of America Leasing & Capital, LLC.

"Ballots" mean the ballots upon which the Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

"Bankruptcy Code" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in Sections 101 *et seq*. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Court.

"Bar Date" means, as applicable, the General Claims Bar Date, the Administrative Expense Bar Date, or any other applicable deadline to file Claims referenced in the Plan.

"Bar Date Order" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Notice of Bar Dates* [Docket No. 533], which established the General Claims Bar Date and certain other deadlines and procedures.

"Beneficiaries" means holders of Allowed Unsecured Claims in Class 3 entitled to receive Liquidating Trust Interests under the Plan, whether or not such Claims were Allowed on the Effective Date.

"Business Day" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

"Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

"Causes of Action" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions of the Debtors and/or the Estates (unless the context expressly states that such Causes of Action belong to another Entity) against Creditors, insiders, and/or any other Persons or Entities, based in law or equity, including, without limitation, all Avoidance Actions and any other causes of action under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date, including as identified, described, or otherwise referenced in the Schedule of Causes of Action. For the avoidance of doubt, the term "Causes of Action" does not include (i) any claims or causes of action released pursuant to this Plan or the Settlement Order or (ii) with respect to BALC, Daimler, TBK, and Triumph, claims or causes of action that were released or otherwise waived by virtue of the expiration of the applicable Challenge Period.

"Challenge Period" means the deadline to challenge or contest the Liens and/or Secured Claims of BALC, Daimler, TBK, and Triumph, pursuant to the applicable Financing Orders for such parties.

"Chapter 11 Cases" means the Chapter 11 cases commenced when the Debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on the Petition Date, being administered under Case No. 24-90614 (CML).

"Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtors, including, but not limited to: (a) any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the

Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claimant" means the Holder of a Claim.

"Claims Agent" means Stretto Inc. which was appointed as the Debtors' claims, noticing, and balloting agent.

"Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) 180 days after the Effective Date, or (b) such other period as may be fixed by an order of the Court for objecting to Claims upon request of the Liquidating Trustee.

"Class" means a category of Holders of Claims or Interests, as set forth in Article IX of the Plan.

"Collateral" means any property or interest in property of the Debtors' Estates that is subject to a valid and enforceable Lien to secure a Claim. For the avoidance of doubt, the Liquidating Trust Assets are not Collateral.

"Combined Plan and Disclosure Statement" means this Plan and Disclosure Statement, as modified and/or amended from time to time.

"Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases.

"Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Section XVII hereof having been (a) satisfied or (b) waived pursuant to Section XVII.

"Confirmation Date" means the date upon which the Confirmation Order is entered by the Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Order" means the Order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

"Consummation" or "Consummate" means the occurrence of the Effective Date.

"Contingent Claim" means any Claim for which a Proof of Claim has been filed with the Court but was not filed in a sum certain and which Claim has not been estimated, fixed, or liquidated by the Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

"Court" means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Cases.

"Creditor" means any Holder of a Claim against the Debtors as specified in Section 101(10) of the Bankruptcy Code.

"CRO" means Bradley D. Sharp.

"Daimler" means Daimler Truck Financial Services USA LLC and Mercedes-Benz Financial Services USA, LLC.

"Debtors" means Kal Freight Inc. and its affiliated debtors and debtors and debtors-in-possession in the Chapter 11 Cases.

"Debtor/Estate Release" has the meaning set forth in Section XVI.B. hereof.

"Debtor/Estate Releasors" has the meaning set forth in Section XVI.B hereof.

"Debtors' Professional Fee Account" means the Professional Fee Account funded pursuant to (and as defined in) the Final Cash Collateral Order to pay fees of the Debtors' Professionals.

"Deficiency Claim" means any unsecured deficiency Claim, including Non-Participating Lender Deficiency Claims, of a Holder of an Allowed Other Secured Claim.

"Disallowed Claim" means a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a Claimant, any Claim that is listed by the Debtors in the Schedules as zero or as disputed and as to which no Proof of Claim has been timely filed, or any Claim that is deemed disallowed pursuant to the terms of the Plan.

"Disclosure Statement" means the portion of this Combined Plan and Disclosure Statement that satisfies the disclosure requirements of section 1125 of the Bankruptcy Code.

"Disputed" means, with respect to any Claim or Interest, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed, or contingent and as to which no Proof of Claim has been filed; (b) as to which the Debtors, the Liquidating Trustee, or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors, or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) held by a Debtor or any Affiliate or Insider of a Debtor other than the CRO and any Independent Director.

"Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of any deadline fixed under the Plan or by order of the Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim that is not a Disallowed Claim that is scheduled by the Debtors in the Schedules as disputed, contingent, or unliquidated and as to which no Proof of Claim has been timely filed; or (iii) any Claim that is not a Disallowed Claim that is not listed in the Schedules and as to which no Proof of Claim has been timely filed. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

"Disputed Claim Reserve" has the meaning set forth in Section XII.G. hereof.

"Distributions" means the distributions of Cash to be made in accordance with the Plan and the Liquidating Trust Agreement.

"Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

"Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

"Effective Date" means the date selected by the Debtors (in consultation with the Participating Lenders), which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Section XVII hereof have been satisfied, unless waived by the Debtors. Notice of the Effective Date shall be filed with the Court by the Debtors.

"Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code and, where applicable, the Committee.

"Estates" means the bankruptcy estates of the Debtors in the Chapter 11 Cases created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

"Exculpated Parties" has the meaning set forth in Section XVI.A. hereof.

"Factoring Agreements" has the meaning given to it in the Term Sheet.

"Final Cash Collateral Order" means the Court's *Final Order (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, and (C) Modifying the Automatic Stay* [Docket No. 760].

"Final DIP Order" Court's *Final Order Authorizing Debtors to (I) Maintain, and Continue to Operate Under Factoring and Security Agreement in Order to Sell Accounts Post-Petition to Triumph Business Capital Pursuant to 11 U.S.C. Section 363(b), (c), (f), and (m); (II) Obtain Credit from Triumph Business Capital Pursuant t11 U.S.C. Sections 364(c)(1), (c)(2), and (d)(1); (III) Grant Adequate Protection in the Form of First Priority Liens and Security Interests on Property of Debtors' Estates Pursuant to 11 U.S.C. Sections 361 and 363(e); (IV) Amend the Factoring and Security Agreement and Grant Triumph Business Capital Additional Liens; (V) Use Cash Collateral and Grant Triumph Adequate Protection; (VI) Annul and Modify the Automatic Stay; and (VII) Grant Related Relief, All Retroactively to the Petition Date* [Docket No. 761]

"Final Financing Orders" means (i) the Final Cash Collateral Order, (ii) the Final DIP Order, (iii) the Court's *Final Order (A) Providing Adequate Protection to Daimler Truck Financial Services USA Inc, (B) Modifying the Automatic Stay, and (C) Granting Related Relief* [Docket No. 762], and (iv) the Court's *Final Order (A) Providing Adequate Protection to Banc of America Leasing & Capital, LLC, (B) Modifying the Automatic Stay, and (C) Granting Related Relief* [Docket No. 763].

"Final Decree(s)" means the decree contemplated under Bankruptcy Rule 3022.

"Final Distribution" means the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan and/or the Liquidating Trust Agreement.

"Final Order" means an order or judgment of the Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

"General Claims Bar Date" means April 14, 2025, at 5:00 p.m. prevailing Central Time, which was the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtors that arose prior to the Petition Date.

"Governmental Unit" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

"Holder" means a Person or Entity holding a Claim or Interest.

"Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"Indemnified Parties" has the meaning set forth in Section XVI.D hereof.

"Independent Directors" means Robert H. Warshauer and John T. Young, Jr., appointed as independent directors pursuant to the *Order (i) Ratifying the Appointment of Independent Directors Effective as of the Petition Date; and (ii) Authorizing the Payment of Director Fees* [Docket No. 125].

"Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial Distribution shall be made to the Holders of Allowed Claims, as determined by the Liquidating Trustee in his or her reasonable discretion.

"Insider" means an insider of the Debtors, as defined in Section 101(31) of the Bankruptcy Code.

"Insurance Policies" means all insurance policies maintained by the Debtors as of the Petition Date, specifically including, but not limited to, director and officer insurance policies.

"Interest" means any equity interest in the Debtors including, but not limited to, all issued, unissued, authorized, or outstanding shares or stock, whether vested or non-vested, together with any warrants, options, or contract rights to purchase or acquire such interests at any time, but not an Intercompany Interest.

"Intercompany Claim" means any Claim held by a Debtor or Affiliate of a Debtor against another Debtor or Affiliate of a Debtor.

"Interim Fee Order" means the Order [Docket No. 431] establishing certain procedures for the interim compensation and reimbursement of expenses of Professionals in the Chapter 11 Cases.

"Kal Aviation" means Debtor Kal Aviation LLC.

"Kal Freight" means Debtor Kal Freight Inc.

"Kal Partz" means Debtor Kal Partz.

"KAL Trailers" means Debtor KAL Trailers & Leasing Inc.

"KVL" means Debtor KVL Tires Inc.

"Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

"Liquidation Proceeds" means any Cash or other consideration paid to or realized upon the collection, sale, transfer, assignment, or other disposition of the Liquidating Trust Assets and any Residual Real Property Net Proceeds.

"Liquidating Trust" means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

"Liquidating Trust Agreement" means the agreement, substantially in the form included in the Plan Supplement governing the Liquidating Trust (which form shall be reasonably acceptable to the Committee and the Debtors), as it may be subsequently modified from time to time.

"Liquidating Trust Assets" means (i) any Causes of Action, Litigation, and Litigation Recoveries, (ii) any Residual Real Property Net Proceeds, (iii) the $3.5 million of settlement proceeds received under the TRIP Settlement Order, and (iv) any other assets that are unencumbered as of the Effective Date (except, for the avoidance of doubt, the Residual Real Properties), including as to each of the foregoing items (i) through (iv), any Cash or any other consideration paid to or realized by the Debtors, the Liquidating Trust, the Residual Real Property Agent, or any successor to any of the foregoing parties from any settlement, litigation, sale or other disposition of the foregoing; *provided, however*, and for the avoidance of doubt, the TBK/Triumph Collateral are not Liquidating Trust Assets, and the Liquidating Trust Assets *do not* include any Rolling Stock. Without limiting the foregoing, and again for the avoidance of doubt, the Liquidating Trust Assets include all remaining Cash of the Estates as of the Effective Date and any funds remaining in the Debtors' Professional Fee Account after satisfaction of all Allowed Professional Fee Claims of the Debtors' Professionals. For the avoidance of doubt, Liquidating Trust Assets do not include Triumph/TBK Collateral, except for equity, if any, above the amount of the TBK secured lien and claim, in 825 Navy Road, Stockton, California.

"Liquidating Trust Assets Account" means an interest-bearing bank account or money-market account to be established and held in trust by the Liquidating Trustee on or after the Effective Date for the purpose of holding any Cash that constitutes a Liquidating Trust Asset.

"Liquidating Trust Expenses" means any fees, costs, and expenses incurred by the Liquidating Trustee, the Residual Real Property Agent, or the Liquidating Trust from and after the Effective Date, including, for the avoidance of doubt, any fees, costs, and expenses incurred in connection with any marketing, sale, or other disposition of Residual Real Property under Section XIV.J of this Plan.

"Liquidating Trust Interests" means the non-transferable interests in the Liquidating Trust, distributions of which will be made to the Beneficiaries of the Liquidating Trust.

"Liquidating Trust Oversight Committee" or "Oversight Committee" has the meaning provided in Section XIV.E of this Plan.

"Liquidating Trustee" means the Person selected by the Committee (which Person shall be reasonably acceptable to the Debtors), whose identity will be disclosed in form of the Liquidating Trust Agreement to be included in the Plan Supplement, to act as trustee of the Liquidating Trust in accordance with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement, or such successor appointed as the trustee in accordance with the Liquidating Trust Agreement.

"Litigation" means the interest of the Estates, the Debtors or the Liquidating Trust, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtors or the Liquidating Trust, as applicable, except to the extent concerning any Released Parties. Litigation includes, without limitation not otherwise stated herein, any action: (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code; (ii) for the turnover of property to the Debtors or the Liquidating Trust, as applicable; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors or the Liquidating Trust, as applicable; (iv) for compensation for damages incurred by the Debtors or the Liquidating Trust; and (iv) equitable subordination actions against Creditors.

"Litigation Recovery" means any Cash or other property received by the Debtors or the Liquidating Trust, as applicable, from all or any portion of the Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest, and punitive damages, whether recovered by way of settlement, execution on judgment, or otherwise. If any Litigation is pursued on a contingent-fee basis, the Litigation Recovery will be net of any contingent fee paid to legal counsel.

"Non-Participating Lenders" means any Secured Lender that is not a Participating Lender.

"Non-Participating Lender Deficiency Claim" means any unsecured deficiency Claim of a Non-Participating Lender in relation to the respective Non-Participating Lender's Secured Claim.

"OCPs" means those certain Professionals utilized in the ordinary course of business whose retention and compensation were approved by the OCP Order.

"OCP Order" means the Order [Docket No. 563] granting that certain *Debtors' Motion for Entry of an Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [Docket No. 310].

"Other Secured Claim" means all Secured Claims other than the Participating Lender Secured Claims. For the avoidance of doubt, Other Secured Claims include Non-Participating Lender Secured Claims.

"Participating Lenders" means Triumph, TBK, Daimler, BALC, and Wells Fargo as the initial "Participating Lenders" and any "Subsequent Participating Lenders" as such terms are defined in the Term Sheet.

"Participating Lender Claims" means the Participating Lender Deficiency Claims and any other Administrative and Unsecured Claims held by a Participating Lender.

"Participating Lender Deficiency Claim" means any unsecured deficiency Claim of a Participating Lender in relation to the respective Participating Lender's Secured Claim.

"Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

"Petition Date" means December 5, 2024, the date on which the Debtors filed their respective voluntary Chapter 11 petitions.

"Plan" means the portion of this Combined Plan and Disclosure Statement that constitutes the chapter 11 plan for the Debtors.

"Plan Documents" means the Plan, the Disclosure Statement, the Plan Supplement, the Liquidating Trust Agreement, any plan support letters, or other documents or pleadings filed by the Debtors relating to the Plan.

"Plan Injunction" means the injunction set forth in Section XVI.C hereof.

"Plan Objection Deadline" means the deadline established by the Court for filing and serving objections to Confirmation of the Plan.

"Plan Supplement" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Court not later than five (5) Business Days prior to the Plan Objection Deadline, which shall include certain exhibits and schedules to the Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan.

"Priority Non-Tax Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

"Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all

Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

"Professional" means an Entity: (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

"Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

"Proof of Claim" means a proof of claim filed pursuant to Section 501 of the Bankruptcy Code or any order of the Court, together with supporting documents.

"Purchase Agreement" means that certain *Asset Purchase Agreement* by and between Kal Freight and Kal Trailers, on the one hand, and Noor, on the other.

"Record Date" has the meaning set forth in Section XIX.N. hereof.

"Rejection Bar Date" means the last date for any Entity whose claims arise out of the Court approved rejection of an executory contract or unexpired lease to file a proof of claim for damages related to such rejection. The Rejection Bar Date for such Claims will be, (i) with respect to executory contracts and unexpired leases rejected pursuant to a Court order other than the Confirmation Order, the date provided by an order approving the rejection, and (ii) with respect to executory contracts and unexpired leases rejected pursuant to the Confirmation Order, the date that is thirty (30) days after the Effective Date.

"Released Parties" means, collectively, (a) the Independent Directors; (b) the Committee and the individual members thereof in their capacity as such; (c) the CRO; (d) any Professional; and (e) all Participating Lenders that fully satisfy their funding obligations in the Term Sheet. For the avoidance of doubt, the Released Parties do not include any former officer, director, or other Insider or Affiliate of the Debtors not specifically mentioned in the immediately preceding sentence.

"Residual Real Property" means the Debtors' right, title and interest in any parcels of real property which remain in the Estate as of the Effective Date, including, but not limited to, those properties listed on **Exhibit E** hereto and the real property located at 14765 Valley Blvd., Fontana, California 92335. For the avoidance of doubt, Residual Real Property does not include the Real Property Collateral that is TBK/Triumph Collateral.

"Residual Real Property Agent" means the Liquidating Trustee solely in his or her capacity as such pursuant to Section XIV.I hereof.

"Residual Real Property Net Proceeds" means the total cash consideration received in connection with a sale or other disposition of a Residual Real Property parcel minus (i) the amount needed to pay the full outstanding balance of any valid, duly perfected and enforceable mortgage,

deed of trust, Lien or other encumbrance against such parcel of Residual Real Property, (ii) all outstanding real estate taxes due and payable in respect to such parcel, and (iii) any and all closing costs and adjustments or other fees, expenses and charges incurred in connection with such sale or disposition.

"Rolling Collateral" has the meaning given to it in the Term Sheet.

"Rolling Stock" means the Rolling Collateral and all other tractors/trucks, trailers, and other vehicles owned by the Debtors.

"Sale Motion" means *Debtors' Emergency Motion for Entry of an Order (i) Authorizing (a) the Sale of Certain Assets Free and Clear of Liens, Claims, Rights, Interests, Charges, and Encumbrances, (b) the Debtors to Enter into and Perform under the Purchase Agreement, and (c) the Assumption and Assignment of Certain Contracts and Unexpired Leases and (ii) Granting Related Relief* [Docket No. 692].

"Sale Order" means the Order [Docket No. 857] approving the Sale Motion and authorizing Kal Freight and Kal Trailers to enter into and consummate the Purchase Agreement.

"Schedules" means the respective schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

"Schedule of Causes of Action" means **Exhibit D** hereto identifying and describing Causes of Action, as may be amended, modified, and supplemented as part of the Plan Supplement.

"Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under Sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

"Secured Lenders" means the Holders of prepetition Secured Claims and any successor(s) thereto, in their capacity as lenders thereunder.

"Settlement Motion" means *Debtors' Emergency Motion for Entry of an Order (i) Approving Binding Settlement Term Sheet with Participating Lenders and Committee, (ii) Authorizing Relief from Automatic Stay and/or Abandonment of Certain Collateral, and (iii) Granting Related Relief* [Docket No. 691].

"Settlement Order" means the Order approving the Settlement Motion and Term Sheet [Docket No. 770].

"Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Liquidating Trust makes a distribution to any Holders of Allowed Administrative, Secured, Priority, or Unsecured Claims.

"Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

"Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtors.

"TBK" means TBK Bank, SSB.

"TBK Stipulations" means the *Stipulations in Favor of TBK Bank, SSB*, attached as Exhibit 1 to Docket No. 51.

"TBK/Triumph Collateral" means, collectively, (i) the "Real Property Collateral" commonly described as (a) 14823, 14875 and 14887 Valley Blvd., Fontana, CA, (b) 8115 Las Cruces Dr., Laredo, TX.; (c) Block 22, Lot 30.01 in Union Township, NJ, generally known as 15 Frontage Road, Union Township, New Jersey, (d); 3393 Jonesboro Rd. South East, Atlanta, GA, and (e) 825 Navy Rd., Stockton, CA (up to the amount of the TBK secured lien and claim); (ii) the "Equipment Collateral," including as summarized in the TBK Stipulations; (iii) "Pledged Accounts Collateral," including as set forth in the TBK Stipulations; (iv) any other Collateral subject to TBK's and Triumph's liens, including such Collateral as summarized in the TBK Stipulations (other than the Liquidating Trust Assets); (v) Causes of Action related to insurance on Triumph or TBK's Rolling Collateral returned to Triumph and TBK or sold, other than any Chapter 5 causes of action related to the Debtors' payment of insurance premiums; (vi) Causes of Action relating to leased Rolling Collateral, other than unpaid lease payments for periods prior to the turnover of that leased Rolling Collateral (together subsections (v) and (vi) herein shall be referred to as the "TBK/Triumph Retained Causes of Action"); (7) all Collateral of TBK and Triumph under the Factoring Agreements; and (8) any liens, claims, and rights under the Factoring Agreements (other than the Liquidating Trust Assets), including, but not limited to, ownership free and clear by Triumph of all accounts Triumph purchased, all of TBK and Triumph's claims against third parties under UCC Section 9-406, all accounts receivable, all re-bills and chargebacks, all unpaid billing disputes, all reserves, all cargo claims, all warehousing invoices, and all related claims under the Factoring Agreements.

"Term Sheet" means that certain *Binding Term Sheet*, by and among, the Debtors, the Committee, Triumph, TBK, Daimler, BALC, and Wells Fargo, attached to the Settlement Motion and approved by the Settlement Order.

"Transition Service Agreement" means the *Transition Services Agreement*, to be entered into by and between Noor, on the one hand, and Kal Freight and Kal Trailers, on the other hand.

"TRIP Settlement Order" means the *Order (i) Approving the TRIP Settlement, (ii) Authorizing the Debtors to Enter into and Perform Under the TRIP Settlement Agreement, and (iii) Granting Related Relief* [Docket No. 639].

"Triumph" means Advance Business Capital LLC d/b/a Triumph Business Capital.

"Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

"Unsecured Claim" means any Claim against the Debtors or Estates that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Participating Lender Claim, or an Intercompany Claim. For the avoidance of doubt, Deficiency Claims are Unsecured Claims.

"U.S. Trustee" means the Office of the United States Trustee for Region 7 (Southern District of Texas).

"Voting Instructions" means the instructions for voting on the Plan contained on the Ballots.

"Voting Record Date" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan.

"Wells Fargo" means Wells Fargo Equipment Finance, Inc. and Wells Fargo Bank, N.A.

## SECTION IV.
## BACKGROUND

### A.  General Background.

1.  Introduction.

Founded in 2014, KAL Freight grew into a transportation and logistics industry leader, providing cost-effective and reliable trucking and shipping services. After several years of successful operations Kal Freight joined with other trucking operators in 2020 to create additional related business lines—including KAL Partz, KVL, and KAL Trailers. Notwithstanding their best efforts, the Debtors were unable to operate these new "verticals" successfully. This failure led to disputes with the Debtors' new business associates and ultimately to a substantial drain on the Debtors' profitability. At the same time, during the recent COVID-generated pandemic, the Debtors' core trucking business flourished due to an increase in trucking demand nationwide. The Debtors invested heavily in the acquisition of trucks and trailers (for use by KAL Freight and as inventory for sale or lease by KAL Trailers) during the pandemic to meet increased customer demand. Once the pandemic came to an end and customer demand trailed off, however, the Debtors found themselves severely overleveraged and unable to meet their obligations absent substantial additional financing. As a result, as of November 10, 2024, KAL Freight is now obligated on vehicle financing facilities with at least nineteen lenders (including assignees) for a total of $260,029,903. Moreover, the Debtors' operations were sustained by critical ongoing funding provided by Triumph, an affiliate of TBK, in the form of factoring (or purchase) of accounts receivable on a daily basis. In total, the Debtors' total prepetition secured debt exceeded $313 million.

Aside from the foregoing debt obligations, the Debtors have been the subject of various allegations of malfeasance, including that certain of the Debtors' personnel improperly moved trucks and trailers from the United States to Canada, improperly titled vehicles, and engaged in

inappropriate accounting practices. These allegations, some of which were made public in a pending lawsuit, along with the Debtors' financial difficulties and payment defaults, caused certain Creditors to take legal action against the Debtors, including noticing defaults, and initiating foreclosure proceedings.

### 2.   Debtors' Business and Operations.

The Debtors, which began in 2014 with just six trucks, grew into an integrated transportation and logistics business which provides exceptional and cost-effective hauling and other logistics solutions to its customers and serves as a "one-stop shop" for independent owner-operators in the trucking industry. The Debtors are engaged in four primary business lines focused on the United States trucking and logistics industries, generally organized into (i) KAL Freight; (ii) KAL Partz; (iii) KAL Trailers; and (iv) KVL.[4]

#### a)   Kal Freight

Kal Freight is the Debtors' flagship business founded in 2014, Kal Freight offers a complete range of transportation and logistics solutions to businesses throughout the United States. With approximately 800 drivers and a fleet of over 800 trucks and more than 2,200 trailers as of the Petition Date, Kal Freight offers its customers cost-effective, technology-driven, and reliable transportation and logistics solutions backed by the KAL Group's decades of industry experience. As of the Petition Date, Kal Freight operates through a network of seven strategically located terminals in seven states.

#### b)   Kal Partz

Kal Partz, founded in 2021, specializes in supplying heavy-duty aftermarket truck and trailer parts, backed by expert advice and exceptional customer service. Kal Partz carries over 150,000 SKUs, which it sells both online and at one brick-and-mortar location.[5]

#### c)   Kal Trailers

Kal Trailers is a large distributor and retailer of major brand heavy-goods vehicles that opened for business in June 2020. KAL Group is party to over 300 agreements pursuant to which Kal Trailers sells or leases (as applicable) heavy-goods vehicles to independent owner-operators and small trucking companies. In 2023, Kal Trailers leased and sold approximately 85 trucks and 79 trailers through its network of six dealerships across the United States.

#### d)   KVL

Founded in 2021, KVL is a full-service commercial tire dealer, offering high-quality, name brand products to fleet owners, owner-operators, and repair shops across the United States. As of

---

[4]   Each business line generally operates through a different Debtor. As of the Petition Date, Kal Aviation, a Delaware limited liability company, had no assets or operations.

[5]   Prior to the Petition Date, the Debtors exited ten brick-and-mortar Kal Partz locations.

the Petition Date, KVL does not operate any brick-and-mortar locations and does not have any employees.

### 3. Corporate/Equity Structure

The Debtors do not have a holding company or other ultimate corporate parent. Rather, each Debtor is a separate legal entity that is wholly owned by Kalvinder Singh. A diagram of the Debtors' organizational structure, including certain non-Debtors, is attached hereto as **Exhibit A**.

In addition to the Debtors, Mr. Singh also owns Tires & Parts of America ("TPA") and KALWAY Inc. ("Kalway"). TPA is a tire wholesaler which, in the ordinary course of its business prior to the Petition Date, sold tires and other products that KVL was not able to sell through its retail operations. Historically, KVL transferred its excess inventory to TPA for no consideration, and TPA would use the proceeds from the sale of its inventory, including that received from KVL, to fund its own operations. The Debtors have ceased making transfers to TPA. Prior to the Petition Date, Kalway was the KAL Group's in-house freight brokerage solution, serving as the intermediary between customers and carriers. KAL Group is in the process of winding down Kalway's operations.

Kal Freight is the sole member of non-Debtors Exeter 23606 WY LLC ("Exeter"), a Wyoming limited liability company, and 3393 Jonesboro LLC ("Jonesboro" and, together with Exeter, the "Property SPVs"), a Georgia limited liability company. The Property SPVs hold the Company's ownership interest in certain parcels of real property located in Texas and California (Exeter) and Georgia (Jonesboro).

Kal Freight also works closely with SPG Transportation, Inc. ("SPG"), and Pro Tec Inc. ("Protec" and, together with SPG, the "Servicing Companies") owned, respectively, by Mr. Singh's father and a former KVL employee . The Servicing Companies have used Debtor trucks and trailers (the "Servicing Assets") to service their own customers and, when the Debtors have insufficient capacity, Debtor customers. Historically, the Debtors and the Servicing Companies would transfer cash and other assets to each other to support their respective operations.

Kal Freight and the Servicing Companies were parties to written agreements pursuant to which the Servicing Companies were required to pay the Debtors for the use of the Servicing Assets (the "Servicing Agreements"). However, because the cash transferred from the Servicing Companies to the Debtors historically exceeded the amounts due to the Debtors under the Servicing Agreements, the Servicing Agreements were replaced by certain Business Services Agreements between the Servicing Companies and Kal Freight (the "Replacement Agreements") in December 2024. Through the Replacement Agreements, Kal Freight manages the Servicing Companies, provides certain other back and middle-office services, and allows the Servicing Companies to use the Servicing Assets. In exchange, the Servicing Companies pay Kal Freight 98% of their cash collections from all gross load revenue net of factoring escrow reserves and fees and interest expenses.

Mr. Singh also owns 100% of the equity in three Canadian corporations: Big Rig Trailers & Leasing, Inc. ("Big Rig Trailers"); Big Rig Tires & Services Inc. ("Big Rig Tires"); and Big Rig Partz Inc. ("Big Rig Partz" and, collectively, the "Big Rig Entities"). However, as addressed

below, Mr. Singh no longer has any control or influence over the Big Rig Entities due to the appointment of Grant Thornton Limited ("GT") as the receiver of the Big Rig Entities.

4.   Corporate Governance

Historically, Mr. Singh served as the sole director of each of Kal Freight, Kal Partz, Kal Trailers, and KVL, as the managing member of Kal Aviation, and as the sole executive officer for each Debtor.

Prior to the Petition Date, the Debtors took steps to ensure that experienced and qualified independent managers would control the Debtors and ensure that the Debtors fulfill their obligations to stakeholders. To that end, Mr. Singh, as sole member, caused Kal Aviation to amend its operating agreement to create a board of managers tasked with overseeing Kal Aviation's business and operations. Thereafter, Mr. Singh appointed the Independent Directors to the boards of each Debtor (collectively, the "Boards") effective as of December 4, 2024 (the "Board Actions"). The Board Actions made clear that Mr. Singh no longer serves as a director or manager of any Debtor and that Mr. Singh can neither remove the Independent Directors nor appoint additional directors to the Boards without the Independent Directors' consent. As of the Petition Date, each Board consists solely of the Independent Directors.

Immediately after their appointment, the Independent Directors appointed Bradley D. Sharp as the CRO for each Debtor.

The Independent Directors' appointment was ratified by the Court on December 11, 2024 [Docket No. 125].

Mr. Singh remains an officer of the Debtors to ensure continued operational stability in light of Mr. Singh's relationships with the Debtors' stakeholders, including customers and truck drivers. However, Mr. Singh and all other Debtor employees report to the CRO, and, in the unlikely event that it becomes necessary, the CRO can terminate Mr. Singh as an officer of any or all Debtors.

5.   Prepetition Financing Facilities

Certain of the Debtors are party to various types of financing arrangements (collectively, the "Prepetition Financing Facilities")[6] that can be generally (though not exclusively) categorized as vehicle financing, equipment financing, real property financing, and factoring. Certain of the Prepetition Financing Facilities are guaranteed by other Debtors and, in some instances, non-Debtors. In total, the Debtors have nearly $325 million of outstanding funded indebtedness.

***Prepetition Term Facility***. Kal Freight, as borrower, and TBK, as lender (in such capacity, the "Prepetition Term Lender") are parties to a *Loan and Security Agreement*, dated as of December 14, 2020, as amended (along with any ancillary documents thereto, the "Prepetition Term Loan Agreement"), designated as a "$50,000,000 Main Street Priority Term Loan." As of

---

[6] The following summary is qualified in in its entirety by reference to the relevant documentation with respect to each such facility. Nothing herein is intended to, or should be construed as, an admission as to the nature, extent, or priority of any of the Prepetition Financing Facilities.

the Petition Date, the outstanding principal obligations under the Prepetition Term Loan Agreement total approximately $38.1 million. The obligations under the Prepetition Term Loan Agreement are secured, subject to certain exceptions, by first priority liens on substantially all of Kal Freight's personal property assets, including, but not limited to, equipment, accounts, inventory, investment property, general intangibles, cash, and deposit accounts, all as set forth in the Prepetition Term Loan Agreement, as well as a first-priority lien on certain real estate located in Fontana, California, as set forth in the *Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing* as of December 14, 2020.

*Vehicle Financing Facilities*. The majority of the Debtors' Prepetition Financing Facilities are purchase-money loans utilized to purchase trucks, trailers, and other vehicles (collectively, the "Prepetition Vehicle Financing Facilities") and, generally speaking, are collateralized by specifically identified trucks, trailers, or vehicles. The Prepetition Secured Parties under the Prepetition Vehicle Financing Facilities are: (a) BALC; (b) BMO Bank N.A. (f/k/a BMO Harris Bank N.A.); (c) Daimler; (d) De Lage Landen Financial Services, Inc.; (e) Flushing Bank (as assignee of BALC); (f) Ford Motor Credit Company LLC; (g) M&T Capital and Leasing Corp. (f/k/a People's Capital and Leasing Corp.); (h) PACCAR Financial Corp. (as assignee of Rush Truck Centers of California, Inc.); (i) TBK; (j) Transportation Alliance Bank, Inc.; (k) Truist Equipment Finance Corp. (as assignee of BALC); (l) U.S. Bank Equipment Finance (as assignee of BALC); (m) Wallwork Financial Corporation; (n) Webster Capital Finance (as assignee of JPMorgan Chase Bank, N.A.); and (o) Wells Fargo.

*Equipment Financing Facilities*. Certain of the Debtors are party to equipment finance agreements (collectively, the "Prepetition Equipment Financing Facilities") related to the purchase of, and collateralized by, specific pieces of equipment, such as forklifts. The Prepetition Secured Parties under the Prepetition Equipment Financing Facilities are: (a) BALC; (b) Byline Bank; (c) First Western Equipment Finance, a division of First Western Bank & Trust; and (d) Wells Fargo.

*Real Property Financing Facilities*. As of the Petition Date, the Debtors (through both Debtors and non-Debtor Property SPVs) own 20 parcels of real property, which include trucking terminals, trucking repair and storage yards, brick and mortar locations, warehouses, and unimproved land. The acquisition of certain such real property was financed or refinanced (each, a "Real Property Financing Facility"), as follows:

- *Term Note*, dated February 4, 2022, between Kal Freight and JPMorgan Chase Bank, N.A. in the principal amount of $3,500,000, related to the refinancing of Kal Freight's purchase of real property located at 14765 Valley Blvd., Fontana, CA 92335;

- *Promissory Note*, dated August 5, 2022 and as amended and modified, between Kal Freight and First Security Bank in the original principal amount of $2,483,948, related to the purchase of real property in Springdale, AR;

- *Loan Agreement*, dated July 10, 2023, between Kal Freight and TBK in the principal amount of $2,925,000 related to the purchase of 825 Navy Drive, Stockton, CA 95206; and

- *Third Amended and Restated Promissory Note*, dated October 27, 2023, between Kal Freight and TBK in the principal amount of $10,362,000 related to the purchase of certain real property located in Atlanta, GA, Union Township, NJ, and Laredo, TX.

**Factoring Agreements**. Kal Freight, Kal Partz, and KVL are each party to a factoring agreement (the "Prepetition Factoring Agreements") pursuant to which each applicable Debtor sold certain accounts receivable. Specifically, (i) Kal Freight is party to that certain *Factoring and Security Agreement*, dated April 25, 2017 (as amended), with Triumph; (ii) KVL is party to that certain *Accounts Purchase Agreement*, dated July 17, 2024, with WEX Bank ("WEX"); and (iii) Kal Partz is party to that certain *Accounts Purchase Agreement*, dated July 17, 2024, with WEX.[7]

**Other**. In addition to the foregoing general categories of Prepetition Financing Facilities, certain parties assert or may assert liens against certain of the Debtors' assets. Specifically:

- Kal Freight is party to a *Loan Authorization and Agreement*, *Note (Secured Disaster Loans)*, and *Security Agreement* (collectively, the "SBA Loan Documents"), each with the United States Small Business Administration (the "SBA") and dated June 7, 2020 in connection with a $150,000 COVID-19 Economic Injury Disaster Loan;

- in connection with that certain *Forbearance Agreement* executed by and among non-Debtor Big Rig Trailers as Borrower; Mitsubishi HC Capital Canada Inc. ("Mitsubishi Canada") as Lender; Kal Freight, Kal Trailers, Kal Partz, KVL, and Kal Aviation as Guarantors; and Kalvinder Singh as Personal Guarantor, dated May 30, 2024, Kal Freight executed that certain *Security Agreement* dated May 30, 2024 (the "Mitsubishi Security Agreement") pursuant to which Kal Freight granted Mitsubishi Canada a security interest in the Additional Collateral (as defined in the Mitsubishi Security Agreement);

- pursuant to a UCC-1 financing statement filed by Vanguard National Trailer Corporation ("Vanguard") against Kal Trailers with the Texas Secretary of State on August 26, 2024, Vanguard asserts a security interest in identified vehicles;

- pursuant to a UCC-1 financing statement filed by Royal Bank of Canada ("RBC") against Kal Trailers with the California Secretary of State on June 12, 2024, RBC asserts that "[a]ll indebtedness and liability" that Kal Trailers owes to any Big Rig Entity "shall be (i) deferred and postponed to the debts and liabilities of [the Big Rig Entities] to [RBC] and (ii) assigned to [RBC]"; and

- pursuant to a UCC-1 financing statement filed by Sumitomo Rubber North America, Inc. ("Sumitomo") against KVL with the California Secretary of State on June 19, 2023, Sumitomo asserts a security interest in "all inventory, equipment, and goods" distributed by Sumitomo and all proceeds thereof.

---

[7] "First Corporation Solutions, as representative" and "Corporation Service Company, as representative" have filed UCC-1 financing statements against certain of the Debtors. The Debtors believe that these financing statements are related to the Prepetition Factoring Agreements.

A chart summarizing the secured obligations asserted against the Debtors (as of November 10, 2024) is attached hereto as **Exhibit B** (the "Debt Summary Chart").[8]

### B.  Events Leading to the Bankruptcy Filings; Allegations of Malfeasance.

The North American commercial transportation business is in the midst of a pronounced downturn, the impact of which has resulted in numerous trucking-related bankruptcy proceedings in recent months throughout the nation. The COVID-19 pandemic was initially a boon to the transportation industry as freight rates dramatically increased amidst a labor shortage, lower diesel prices, and reduced truck and trailer depreciation. As demand for trucking services waned, however, once stay-at-home orders dissipated diesel prices soared, interest rates rose, and there was a sudden glut of trucks and drivers throughout the United States.

As a result of the Debtors having purchased trucks and trailers at higher prices that more rapidly depreciated during the industry downturn, the Debtors began to experience decreased margins in its usually profitable Kal Trailers' business, particularly in 2024.

The rapid expansion of its brick-and-mortar Kal Partz and KVL Tires businesses across the United States through 2022 and 2023 was not accompanied by corresponding profitability and, as a result, the Company began downsizing its physical footprint in 2024.

Compounding the macroeconomic and business-specific issues, the Debtors, Mr. Singh and his brother Sukhvinder Singh, have been embroiled in a dispute with two brothers (the "Randhawa Brothers") that stems from prior business dealings among the parties, including the Randhawa Brothers' roles with the Debtors. The Randhawa Brothers allege that the Singhs committed fraud and breached fiduciary duties and contracts.

Prior to the Petition Date, the Debtors' business required the frequent transfer of trucks among different business lines. For example, Kal Trailers may have purchased numerous new trucks in a single transaction (financed through a Prepetition Financing Facility), but certain of those trucks may have been transferred to and then utilized by Kal Freight. While Secured Lenders may expect first-priority security over vehicles that they financed, it is uncommon for Secured Lenders to register financing statements against the specific vehicles that serve as their loan collateral. Instead, lenders rely on periodic audit checks to verify that their collateral is not subject to other asserted interests. Accordingly, it is possible that more than one Prepetition Secured Party may claim a security interest in vehicles that were allegedly pledged as collateral in favor of another Prepetition Secured Party.

Further, on June 21, 2024, the Supreme Court of British Columbia appointed GT as the interim receiver of the Big Rig Entities, commencing a proceeding entitled *Royal Bank of Canada v. Big Rig Trailers & Leasing Inc.*, Supreme Court of British Columbia, Vancouver Registry, Case No. S-244137 under the *Bankruptcy and Insolvency Act*, RSC 1985 c. B-3, as amended. On July 5, 2024, the Canadian Court appointed GT as the receiver of all of the assets, undertakings, and property of the Big Rig Entities. GT, as receiver, filed an assignment of the Big Rig Entities into

---

[8] As noted in the Debt Summary Chart, certain of the Secured Lenders under the Prepetition Vehicle Financing Facilities assert liens on substantially all Debtor assets.

bankruptcy (which is roughly the Canadian equivalent of chapter 7 of the Bankruptcy Code) on September 10, 2024 and was appointed as the licensed insolvency trustee. GT, on behalf of the Big Rig Entities' creditors, asserts claims against the Debtors and the Debtors assert claims against the Big Rig Entities.

Finally, in the months leading to the Petition Date, the Debtors received several notices from Secured Lenders and other parties asserting defaults under certain agreements with the Debtors, including certain Prepetition Financing Facilities.

## C. **Chapter 11 Goals**

Prepetition, the Debtors and their advisors worked to prepare for and develop various strategic alternatives, including engaging in significant negotiations with the Debtors' largest Secured Lenders. However, the Debtors were able to reach agreement with certain of the Secured Lenders regarding the use of their collateral and debtor in possession financing prior to the Petition Date, but, in light of the Debtors' liquidity constraints, impending defaults under the Prepetition Financing Facilities, and the allegations of malfeasance, the Debtors were unable to continue such processes out of court, and filed the cases to explore a consensual reorganization with their various constituents.

The Court approved the Sale Order and Settlement Order. Docket Nos. 857; 770. The Settlement Order approved a Term Sheet and global settlement between the Debtors, the Committee, Triumph, TBK, Daimler, BALC, and Wells Fargo. The Term Sheet provides for the Participating Lenders to fund an orderly sale and wind down of the Estates and to waive their administrative and other claims, including deficiency claims—aside from their secured claims in the Rolling Collateral and the TBK/Triumph Collateral. The Participating Lenders are also agreeing not to assert any claims against the Liquidating Trust Assets. In exchange, and provided they fulfill their obligations under the Term Sheet, the Participating Lenders are receiving a release from the Debtors.

The Sale Order authorized Kal Freight and Kal Trailers to enter into and consummate the Purchase Agreement pursuant to which Kal Freight and Kal Trailers sold certain of their assets to Noor. As disclosed in the Sale Motion, Noor has certain affiliations with the Debtors' principals; however, the Purchase Agreement provides $3.25 million in proceeds to the Estates and Noor is assuming substantial Estate liabilities. The Debtors are otherwise effectuating an orderly wind-down of their remaining assets and operations. The Debtors currently project that the Effective Date will occur on or about April 14, 2025. The Debtors intend to enter into a Transition Services Agreement which provides for, among other things, the return of Rolling Stock to lenders and lessors of the Debtors.

On the Effective Date, the Debtors will transfer the Liquidating Trust Assets to the Liquidating Trust. The Liquidating Trustee will conduct an investigation into the Causes of Action transferred to the Liquidating Trust for the benefit of the general unsecured creditors and will liquidate, collect, sell, or otherwise dispose of the transferred assets and distribute all net proceeds to Creditors in accordance with the priority scheme under the Bankruptcy Code and the Plan. There will be no distributions to Holders of Interests.

The Plan provides limited Debtor releases for the Independent Directors, the Committee, and the individual members thereof in their capacity as such, the CRO, Professionals, and the Participating Lenders. The Plan does not contain third party releases.

## SECTION V.
## THE CHAPTER 11 CASES

The following is a brief description of certain material events that have occurred during the Chapter 11 Cases.

### A. First Day and Other Early Relief.

In order to facilitate the Chapter 11 Cases, minimize disruption to the Debtors' affairs, and preserve the value of the Estates, the Debtors filed motions with the Court on or shortly after the Petition Date seeking certain relief (and obtained such relief by order of the Court), including, without limitation:

- authority to honor and pay certain prepetition workforce compensation including for independent contractors and commissions, expenses and other related obligations, subject to certain caps, which was granted pursuant to an order entered on December 6, 2024 [Docket No. 60];

- authority to continue using the Debtors' existing cash management system and the provision of other related relief, which was granted pursuant to an interim order entered on December 6, 2024, and a final order entered on January 19, 2025 [Docket Nos. 53; 367];

- authority to continue insurance coverage, honor and renew premium financing agreements, and renew, amend, supplement, extend, or purchase insurance policies, which was granted pursuant to an interim order entered on December 6, 2024, and a final order entered on December 20, 2024 [Docket Nos. 56; 227];

- approval of certain procedures for the Debtors to redact from any Court filing certain personally identifiable information, which motion was granted pursuant to an order entered on December 6, 2024 [Docket No. 57];

- authority to pay certain taxes and fees, which was granted pursuant to an order entered on December 10, 2024 [Docket No. 110];

- approval of adequate assurance procedures for utility providers, which was granted pursuant to an order entered on December 10, 2024 [Docket No. 112];

- ratification of the appointment of the Independent Directors, which was granted pursuant to an order entered on December 11, 2024 [Docket No. 125]; and

- the appointment of Stretto Inc., as the claims and noticing agent in the Chapter 11 Cases [Docket Nos. 3; 30].

**B.** **Factoring and Security Agreement; Use of Cash Collateral Relief; and Adequate Protection Payments.**

On the Petition Date, the Debtors filed an emergency motion for authority to maintain and continue operating under its Prepetition Factoring Agreements with Triumph, to obtain credit from Triumph, and to use Triumph's cash collateral and grant Triumph adequate protection (the "Triumph Motion") [Docket No. 7]. The Triumph Motion was filed because, without access to Triumph's cash collateral or the liquidity provided by its Prepetition Factoring Agreement, the Debtors would have been unable to fund their operations, their capital expenditures, and the administrative costs of the Chapter 11 Cases. The Triumph Motion was approved on an interim basis on December 6, 2024 [Docket No. 61], and on a final basis on March 12, 2025 [Docket No. 761].

Also, on the Petition Date, the Debtors filed motions for entry of interim and final orders authorizing the Debtors to use the cash collateral of, and provide adequate protection to, (i) Daimler [Docket No. 8] and (ii) certain Secured Lenders other than Triumph and Daimler [Docket No. 19], which were granted on an interim basis [Docket Nos. 52; 51] and on a final basis [Docket Nos. 760; 762]. The liens, rights, and benefits granted to Triumph and TBK pursuant to the Final Financing Orders and the Settlement Order survive confirmation of this Plan and the Effective Date, except as expressly provided otherwise in the Term Sheet and/or the Settlement Order.

**C.** **Formation of the Committee.**

On or about December 18, 2024, the U.S. Trustee formed the Committee, comprised of Donaldson Company, Inc., Maxam Tire North America, Inc., Continental Tire the Americas, LLC, and 3G Sillect Partners LP [Docket No. 184].

**D.** **Retention of Professionals.**

The Debtors filed, and the Court approved, applications or motions, as applicable, to employ or retain (i) Pachulski Stang Ziehl & Jones LLP as bankruptcy counsel [Docket Nos. 304; 429]; (ii) Bradley D. Sharp, Development Specialists, Inc., as CRO [Docket Nos. 305; 641]; (iii) Keen-Summit Capital Partners LLC as real estate advisor and broker [Docket Nos. 309; 640]; (iv) Benesch Friedlander Coplan & Aronoff LLP, as special transportation counsel [Docket Nos. 307; 562]; and (v) OCPs [Docket No. 310; 563].

The Committee also filed, and the Court approved, applications to retain Brown Rudnick LLP [Docket Nos. 370; 721] and Kane Russell Coleman Logan PC [Docket Nos. 369; 720] as its counsel and Province, LLC, as its financial advisors [Docket Nos. 371; 719].

**E.** **Debtors' Schedules and Statements of Financial Affairs.**

The Debtors filed with the Court their respective Schedules and Statements of Financial Affairs, as may be amended from time to time on February 3, 2025 [Docket Nos. 465-469].

F. **Sale Order**

The Court approved the Sale Order on March 31, 2025. The Sale Order authorized Kal Freight and Kal Trailers to enter into and consummate the Purchase Agreement pursuant to which Kal Freight and Kal Trailers agreed to sell certain of their assets to Noor—an entity affiliated with certain of the Debtors' principals. The Purchase Agreement provides for Noor to purchase certain Debtor assets for $3.25 million (the "Purchase Price") and to assume, and be solely responsible for, significant Estate liabilities. Noor also agreed to pay $2.4 million of the Purchase Price prior to the closing date of the Purchase Agreement.

G. **Settlement Order.**

The Court approved the Settlement Order on March 12, 2025. The Settlement Order approved the Term Sheet and global settlement between the Debtors, the Committee, Triumph, TBK, Daimler, BALC, and Wells Fargo. The Term Sheet provided for the Participating Lenders to fund an orderly sale and wind down of the Estates and to waive their administrative and other claims, including deficiency claims—aside from their secured claims in the Rolling Collateral and the TBK/Triumph Collateral. The Participating Lenders also agreed not to assert any claims against the Liquidating Trust Assets. In exchange, the Participating Lenders received a release from the Debtors.

## SECTION VI.
## CONFIRMATION AND VOTING PROCEDURES

A. **Hearing on Confirmation and Final Approval of Disclosure Statement.**

On March 12, 2025, the Court conditionally approved the Combined Plan and Disclosure Statement (the "Conditional Approval and Procedures Order") for solicitation purposes only and authorizing the Debtors to solicit the Combined Plan and Disclosure Statement. The Confirmation Hearing has been scheduled for **April 10, 2025, at 1:00 p.m. (prevailing Central Time)** to consider (a) final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Court.

B. **Procedures for Objections.**

Any objection to final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Combined Plan and Disclosure Statement must be made in writing and filed with the Court by no later than **April 4, 2025, at 4:00 p.m. (prevailing Central Time) (prevailing Central Time)**. **Unless an objection is timely filed and served, it may not be considered by the Court at the Confirmation Hearing.**

### C.  Requirements for Confirmation.

The Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in the Chapter 11 Cases is that the Combined Plan and Disclosure Statement be: (i) accepted by all Impaired Classes of Claims and Interests or, if rejected by an Impaired Class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against, and is "fair and equitable" with respect to, such Class; and (ii) feasible. The Court must also find that:

- the Combined Plan and Disclosure Statement has classified Claims and Interests in a permissible manner;

- the Combined Plan and Disclosure Statement complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

- the Combined Plan and Disclosure Statement has been proposed in good faith.

The Debtors believe that the Combined Plan and Disclosure Statement complies, or will comply, with all such requirements.

### D.  Classification of Claims and Interests.

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1123 of the Bankruptcy Code, the Combined Plan and Disclosure Statement divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified).

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class. The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with Priority Non-Tax Claims, various Secured Claims, Unsecured Claims, and Interests. The Debtors believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Interests in the same Class and, thus, meet the requirements of section 1122 of the Bankruptcy Code.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Debtors believe that the Combined Plan and Disclosure Statement complies with such standard. If the Court finds otherwise, however, it could deny confirmation of the Combined Plan and Disclosure Statement if the holders of Claims or Interests affected do not consent to the treatment afforded them under the Combined Plan and Disclosure Statement.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Combined

Plan and Disclosure Statement only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The Debtors believe that the Combined Plan and Disclosure Statement has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a holder of a Claim or Interest may challenge the Debtors' classification of Claims or Interests and that the Court may find that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed. If such a situation develops, the Debtors intend, in accordance with the terms of the Combined Plan and Disclosure Statement, to make such permissible modifications to the Combined Plan and Disclosure Statement as may be necessary to permit its confirmation. Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Combined Plan and Disclosure Statement.

**EXCEPT AS SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE COMBINED PLAN AND DISCLOSURE STATEMENT'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual Distribution received by creditors. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein. The Debtors believe that the consideration, if any, provided under the Combined Plan and Disclosure Statement to holders of Allowed Claims reflects an appropriate resolution of their Allowed Claims taking into account the differing nature and priority of such Claims and Interests. The Court must find, however, that a number of statutory tests are met before it may confirm the Combined Plan and Disclosure Statement. Many of these tests are designed to protect the interests of holders of Claims or Interests who are not entitled to vote on the Combined Plan and Disclosure Statement, or do not vote to accept the Combined Plan and Disclosure Statement, but who will be bound by the provisions of the Combined Plan and Disclosure Statement if it is confirmed by the Court.

### E.  Impaired Claims or Interests.

Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims in Classes Impaired by the Combined Plan and Disclosure Statement and receiving a payment or Distribution under the Combined Plan and Disclosure Statement may vote to accept or reject the Combined Plan and Disclosure Statement. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be Impaired if the Combined Plan and Disclosure Statement alters the legal, equitable, or contractual rights of the holders of such Claims or Interests treated in such Class. The holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement. The holders of Claims or Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote. Finally, the holders of Claims or Interests whose Claims or Interests are not classified under the Combined Plan and Disclosure Statement are not entitled to vote on the Combined Plan and Disclosure Statement.

Under the Combined Plan and Disclosure Statement, Holders of Claims in Class 1 (Priority Non-Tax Claims) are Unimpaired and, therefore, not entitled to vote on the Combined Plan and Disclosure Statement and are deemed to accept the Combined Plan and Disclosure Statement. Holders of Claims in Class 2 and Class 3 are Impaired and entitled to vote on the Plan. Holders of Claims in Class 4 are Impaired but, consistent with the Term Sheet, are deemed to accept the Plan and are not entitled to vote. Holders of Claims and Interests in Class 5 and Class 6 will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement and, therefore, are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.

**ACCORDINGLY, BALLOTS FOR ACCEPTANCE OR REJECTION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE BEING PROVIDED TO HOLDERS OF CLAIMS IN CLASS 2 AND CLASS 3.**

### F.  Confirmation Without Necessary Acceptances; Cramdown.

If any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, determined without including any acceptance of the plan by any insider holding a claim in that class, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. Here, because holders of Claims and Interests in Class 5 and Class 6 are deemed to reject the Combined Plan and Disclosure Statement, the Debtors will seek confirmation of the Combined Plan and Disclosure Statement from the Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. The Debtors believe that such requirements are satisfied, as no holder of a Claim or Interest junior to those in Class 3 is entitled to receive any property under the Combined Plan and Disclosure Statement.

The concept of "unfair discrimination" is not defined in the Bankruptcy Code, but has been suggested in recent case law to arise when a difference in a plan's treatment of two classes of equal priority results in a materially lower percentage recovery for the non-accepting class. Based upon their understanding of existing case law, the Debtors do not believe that the Plan unfairly discriminates against any Class of Claims.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors, and equity holders, as follows:

- <u>Secured Creditors</u>. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

- <u>Unsecured Creditors</u>. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

- <u>Interests</u>. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

As discussed above, the Debtors believe that the distributions provided under the Combined Plan and Disclosure Statement satisfy the absolute priority rule, where required.

## G. **Feasibility.**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Combined Plan and Disclosure Statement). Based on the Debtors' analysis and their existing cash on hand, the Liquidating Trust will have sufficient assets to accomplish their tasks and satisfy their obligations under the Combined Plan and Disclosure Statement. Therefore, the Debtors believe that the liquidation pursuant to the Combined Plan and Disclosure Statement will meet the feasibility requirements of the Bankruptcy Code.

## H. **Best Interests Test and Liquidation Analysis.**

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires the Court to determine that such plan is in the best interests of all holders

of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses, and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class.

The Debtors, with the assistance of their advisors, have prepared a liquidation analysis that summarizes the Debtors' best estimate of recoveries by holders of Claims if the Chapter 11 Cases were converted to a case under chapter 7 (the "Liquidation Analysis"), which is attached hereto as **Exhibit C**. In this case, the Debtors have either sold, monetized and/or otherwise disposed of most of their assets and distributed the proceeds therefrom or will abandon their Creditors' Collateral to their Creditors unless alternative arrangements are made with such Creditor. The Debtors' remaining assets will be collected, liquidated or otherwise dealt with by the Liquidating Trustee. Further, the Liquidating Trust Assets will be made available to general unsecured creditors pursuant to the Plan, which amounts likely would be distributed to the Secured Lenders and would not be available for general unsecured creditors of the Debtors in a Chapter 7 proceeding. Based upon the Debtors' current projections, Holders of Allowed Administrative and Priority Claims will be paid in full under the Plan, while Holders of Prepetition Lenders Secured Claims and Unsecured Claims will receive less than full payments. *See* **Exhibit C** (Liquidation Analysis) attached hereto.

If the Chapter 11 Cases were converted to a Chapter 7 proceeding, first and foremost, the Estates would not have the benefit of the aforementioned Liquidating Trust Assets, to provide a recovery for general unsecured creditors under the Plan, and thus, general unsecured creditors would likely receive no recovery in a Chapter 7 proceeding. Further, the Debtors' estates would incur the costs of payment of a statutorily allowed commission to the Chapter 7 trustee, as well as the costs of counsel and other professionals retained by the trustee. The Debtors believe that such amounts would exceed the amount of expenses that will be incurred in implementing the Plan and winding up the affairs of the Debtors in the Chapter 11 Cases. The Debtors contemplate an orderly administration and winding down of the Estates by parties that are already familiar with the Debtors, their remaining assets and affairs, and their creditors and liabilities. Such familiarity will allow the Liquidating Trust to complete liquidation of the remaining assets (including prosecution of the applicable Causes of Action), and distribute the net proceeds to creditors more efficiently and expeditiously than a Chapter 7 trustee. Additionally, the Estates would suffer additional delays, as a Chapter 7 trustee and his/her counsel took time to develop a necessary learning curve

in order to complete the administration of the Estates (including the prosecution of the applicable Causes of Action). Also, a new time period for the filing of claims would commence under Bankruptcy Rule 1019(2), possibly resulting in the filing of additional Claims against the Estates.

Based upon the foregoing and **Exhibit C** (Liquidation Analysis) attached hereto, the Debtors believe that creditors will receive at least as much or more under the Plan than they would receive if the Chapter 11 Cases were converted to Chapter 7 cases.

## I. Eligibility to Vote on the Combined Plan and Disclosure Statement.

Unless otherwise ordered by the Court, only holders of Allowed Claims in Class 2 and Class 3 may vote on the Combined Plan and Disclosure Statement. Further, subject to the tabulation procedures that were approved by the Conditional Approval and Procedures Order, in order to vote on the Combined Plan and Disclosure Statement, you must hold an *Allowed* Claim in Class 2 or Class 3, or be the holder of a Claim that has been temporarily Allowed for voting purposes only pursuant to the approved tabulation procedures or under Bankruptcy Rule 3018(a).

## J. Solicitation Package.

All holders of Allowed Claims in Class 2 and Class 3 will receive a Solicitation Package. The Solicitation Packages will contain: (i) the Combined Plan and Disclosure Statement; (ii) the Conditional Approval Order and Procedures Order; (iii) notice of the Confirmation Hearing; (iv) a form of Ballot; and (v) such other materials as the Court may direct or approve or that the Debtors deem appropriate.

All other Creditors and parties in interest not entitled to vote on the Combined Plan and Disclosure Statement will receive only a copy of the notice of Confirmation Hearing.

Copies of the Combined Plan and Disclosure Statement shall be available on the Claims and Balloting Agent's website at https://cases.stretto.com/KalFreight. Any creditor or party-in-interest can request a hard copy of the Combined Plan and Disclosure Statement be sent to them by regular mail by calling the Claims and Balloting Agent at (855) 933-3437 (toll-free) or +1 (714) 788-8331 (international) during regular business hours or by email at TeamKALFreight@stretto.com.

## K. Voting Procedures, Voting Deadline, and Applicable Deadlines.

The Voting Record Date for determining which holders of Claims in Class 2 and Class 3 may vote on the Combined Plan and Disclosure Statement is April 4, 2025.

In order for your Ballot to count, you must (1) complete, date, and properly execute the Ballot and (2) properly deliver the Ballot to the Claims and Balloting Agent by either (a) mailing the Ballot to the Claims and Balloting Agent at the following address: Kal Freight Inc., et al. Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; or (b) submit the Ballot via the Claims and Balloting Agent's E-Ballot Portal by visiting https://cases.stretto.com/KalFreight and click on the "File a Ballot" section of the website. Enter your Unique E-Ballot Password as provided on your ballot and follow the instructions to submit your Ballot.

Ballots must be submitted electronically, or the Claims and Balloting Agent must actually receive physical, original Ballots by mail or overnight delivery, on or before the Voting Deadline, which is **April 4, 2025, at 4:00 p.m. (prevailing Central Time)**. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a Ballot is submitted electronically or the Claims and Balloting Agent receives your original paper Ballot. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any Ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection or abstention, as the case may be, of the Combined Plan and Disclosure Statement.

**IF YOU ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT OR PROCEDURES FOR VOTING ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE CLAIMS AND BALLOTING AGENT BY (I) TELEPHONE AT (855) 933-3437 (TOLL-FREE) OR +1 (714) 788-8331 (INTERNATIONAL) DURING REGULAR BUSINESS HOURS OR BY EMAIL AT TEAMKALFREIGHT@STRETTO.COM. THE CLAIMS AND BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

L.  **Acceptance of the Combined Plan and Disclosure Statement.**

If you are a holder of a Claim in Class 2 or Class 3, your acceptance of the Combined Plan and Disclosure Statement is important. For the Combined Plan and Disclosure Statement to be accepted by an Impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement. At least one Impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement. The Debtors urge that you vote to accept the Combined Plan and Disclosure Statement.

**SECTION VII.**
**CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES**

A.  **Certain Risk Factors to be Considered.**

THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR

REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION.

### B.  **The Combined Plan and Disclosure Statement May Not Be Accepted.**

The Debtors can make no assurances that the requisite acceptances of the Combined Plan and Disclosure Statement will be received, and the Debtors may need to obtain acceptances of an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to creditors as those proposed in the Combined Plan and Disclosure Statement.

### C.  **The Combined Plan and Disclosure Statement May Not Be Confirmed.**

Even if the Debtors receive the requisite acceptances, there is no assurance that the Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Plan and Disclosure Statement. Even if the Court determined that the Combined Plan and Disclosure Statement and the balloting procedures and results were appropriate, the Court could still decline to confirm the Combined Plan and Disclosure Statement if it finds that any of the statutory requirements for confirmation had not been met. As is described in greater detail in Section VI.C., section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan. While, as more fully set forth Section VI, the Debtors believe that the Combined Plan and Disclosure Statement complies with or will comply with all such requirements, there can be no guarantee that the Court will agree.

Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Combined Plan and Disclosure Statement is not confirmed, it is unclear what distributions holders of Claims ultimately would receive with respect to their Claims in a subsequent plan of liquidation. If an alternative could not be agreed to, it is possible that the Debtors would have to liquidate their remaining assets in chapter 7, in which case it is likely that the holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Combined Plan and Disclosure Statement.

### D.  **Distributions to Holders of Allowed Claims Under the Combined Plan and Disclosure Statement May be Inconsistent with Projections.**

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Combined Plan and Disclosure Statement are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtors' estimates. If the total amount of Allowed

Claims in a Class is higher than the Debtors' estimates, or the funds available for distribution to such Class are lower than the Debtors' estimates, the percentage recovery to holders of Allowed Claims in such Class will be less than projected.

### E.  Objections to Classification of Claims.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. As is described in greater detail in Section VI.D., the Debtors believe that the classification of Claims and Interests under the Combined Plan and Disclosure Statement complies with the requirements set forth in the Bankruptcy Code. Nevertheless, there can be no assurance the Court will reach the same conclusion.

To the extent that the Court finds that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed, the Debtors would seek to (i) modify the Combined Plan and Disclosure Statement to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such holder was initially a member, or any other Class under the Combined Plan and Disclosure Statement, by changing the composition of such Class and the vote required for approval of the Combined Plan and Disclosure Statement. There can be no assurance that the Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Combined Plan and Disclosure Statement based upon such reclassification. Except to the extent that modification of classification in the Combined Plan and Disclosure Statement requires re-solicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Court that acceptance of the Combined Plan and Disclosure Statement by any holder of Claims pursuant to this solicitation will constitute a consent to the Combined Plan and Disclosure Statement's treatment of such holder, regardless of the Class as to which such holder is ultimately deemed to be a member. The Debtors believe that under the Bankruptcy Rules, they would be required to resolicit votes for or against the Combined Plan and Disclosure Statement only when a modification adversely affects the treatment of the Claim or Interest of any holder.

The Bankruptcy Code also requires that the Combined Plan and Disclosure Statement provide the same treatment for each Claim or Interest of a particular Class unless the holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Debtors believe that the Combined Plan and Disclosure Statement complies with the requirement of equal treatment. To the extent that the Court finds that the Combined Plan and Disclosure Statement does not satisfy such requirement, the Court could deny confirmation of the Combined Plan and Disclosure Statement. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Combined Plan and Disclosure Statement and could increase the risk that the Combined Plan and Disclosure Statement will not be consummated.

**F.   Failure to Consummate the Combined Plan and Disclosure Statement.**

Although the Debtors believe that the Effective Date will occur and may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

**G.   The Plan Releases May Not Be Approved.**

Except for the release approved pursuant to the Settlement Order, which are incorporated and reaffirmed herein, there can be no assurance that the releases, as provided in Section XVI.B., will be granted. Failure of the Court to grant such relief may result in a plan that differs from the Combined Plan and Disclosure Statement or the Plan not being confirmed or being amended as necessary to obtain confirmation.

**H.   Reductions to Estimated Creditor Recoveries.**

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially. The amount of cash realized from the monetization of the Debtors' remaining assets could be less than anticipated, which could cause the amount of distributions to creditors to be reduced substantially.

**I.   Certain U.S. Federal Income Tax Consequences.**

The following discussion is a summary of certain material U.S. federal income tax consequences of the Combined Plan and Disclosure Statement to the Debtors and to certain holders (which solely for purposes of this discussion means the beneficial owner for U.S. federal income tax purposes) of Claims. The following summary does not address the U.S. federal income tax consequences to holders of Claims or Interests not entitled to vote on the Combined Plan and Disclosure Statement. This summary is based on the Internal Revenue Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions, and published administrative rules and pronouncements of the IRS, all as in effect on the date hereof and all of which are subject to change or differing interpretations, possibly with retroactive effect. No legal opinions have been requested or obtained from counsel with respect to any of the tax aspects of the Combined Plan and Disclosure Statement and no rulings have been or will be requested from the IRS with respect to the any of the issues discussed below. The discussion below is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or to certain holders of Claims in light of their individual circumstances, nor does the discussion deal with tax issues with respect to holders of Claims or Interests subject to special treatment under the U.S. federal income tax laws (including, for example, insurance companies; banks or other financial institutions; brokers, dealers, or traders in securities; real estate investment trusts; governmental authorities or agencies; tax-exempt organizations; retirement plans; individual retirement or other tax-deferred accounts; certain expatriates or former long-term residents of the United States; small business investment companies; regulated investment companies; S corporations, partnerships, or other pass-through

entities for U.S. federal income tax purposes and their owners; persons whose functional currency is not the U.S. dollar; persons who use a mark-to-market method of accounting; persons required to report income on an applicable financial statement; persons holding Claims or Interests as part of a straddle, hedge, constructive sale, conversion transaction, or other integrated transaction; and persons who are not U.S. Holders (as defined below)). Furthermore, this discussion assumes that a holder of a Claim holds such claim as a "capital asset" within the meaning of Section 1221 of the Internal Revenue Code (generally property held for investment). This discussion does not address any U.S. federal non-income (including estate or gift), state, local, or foreign taxation, alternative minimum tax, or the Medicare tax on certain net investment income.

If a partnership (or other entity or arrangement classified as a partnership for U.S. federal income tax purposes) is a holder of Claims or Interests, the U.S. federal income tax treatment of a partner in the partnership will generally depend on the status of the partner and the activities of the partnership. A holder of a Claim or Interest that is a partnership and the partners in such partnership should consult their tax advisors with regard to the U.S. federal income tax consequences of the Combined Plan and Disclosure Statement.

**THE FOLLOWING SUMMARY IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

### J.   Tax Consequences for U.S. Holders of Certain Claims.

Subject to the discussion below with respect to holders of Class 3 Claims, a holder of a Claim should in most, but not all, circumstances recognize gain or loss equal to the difference between the "amount realized" by such holder in exchange for its Claim and such holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a holder's Claim. The tax basis of a holder in a Claim will generally be equal to the holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (*e.g.*, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year.

A creditor who receives Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized

for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim. A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the holders of certain Claims will likely receive only a partial distribution of their Allowed Claims. Whether the applicable holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the holder and its Claims. Creditors should consult their own tax advisors.

### K.  Tax Consequences in Relation to Liquidating Trust.

As of the Effective Date, the Liquidating Trust will be established for the benefit of the holders of Allowed Unsecured Claims.

Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to the Liquidating Trust's disputed claims reserves) among holders of Unsecured Claims will be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its assets (valued at their tax book value) to the holders of the beneficial interests in the Liquidating Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining trust assets.

The tax book value of the trust assets for this purpose will equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Liquidating Trustee may (a) elect to treat any trust assets allocable to, or retained on account of, Disputed Claims (the "Disputed Claims Reserve") as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. Accordingly, any Disputed Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the trust assets in such reserves, and all distributions from such reserves will be treated as received by holders in respect of their Claims as if distributed by the Debtors. All parties (including, without limitation, the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust) will be required to report for tax purposes consistently with the foregoing.

The Liquidating Trust is intended to qualify as a liquidating trust for federal income tax purposes. In general, a liquidating trust is not a separate taxable entity but rather is treated for federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS, in Revenue

Procedure 94-45, 1994.28 I.R.B. 124, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Liquidating Trust has been structured with the intention of complying with such general criteria. Pursuant to the Plan and Liquidating Trust Agreement, and in conformity with Revenue Procedure 94-45, *supra*, all parties (including the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust) are required to treat for federal income tax purposes, the Liquidating Trust as a grantor trust of which the holders of Allowed Unsecured Claims are the owners and grantors. While the following discussion assumes that the Liquidating Trust would be so treated for federal income tax purposes, no ruling has been requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust. If the IRS were to challenge successfully such classification, the federal income tax consequences to the Liquidating Trust and the Beneficiaries thereof could materially vary from those discussed herein.

In general, each creditor who is a Beneficiary of the Liquidating Trust will recognize gain or loss in an amount equal to the difference between (i) the "amount realized" by such Beneficiary in satisfaction of its Allowed Unsecured Claim, and (ii) such Beneficiary's adjusted tax basis in such Claim. The "amount realized" by a Beneficiary will equal the sum of cash and the aggregate fair market value of the property received by such party pursuant to the Plan (such as a Beneficiary's undivided beneficial interest in the assets transferred to the Liquidating Trust). Where gain or loss is recognized by a Beneficiary in respect of its Allowed Unsecured Claim, the character of such gain or loss (*i.e.*, long-term or short-term capital, or ordinary income) will be determined by a number of factors including the tax status of the party, whether the Claim constituted a capital asset in the hands of the party and how long it had been held, whether the Claim was originally issued at a discount or acquired at a market discount and whether and to what extent the party had previously claimed a bad debt deduction in respect of the Claim.

After the Effective Date, any amount that a creditor receives as a distribution from the Liquidating Trust in respect of its beneficial interest in the Liquidating Trust should not be included, for federal income tax purposes, in the party's amount realized in respect of its Allowed Unsecured Claim, but should be separately treated as a distribution received in respect of such party's beneficial interest in the Liquidating Trust.

In general, a Beneficiary's aggregate tax basis in its undivided beneficial interest in the assets transferred to the Liquidating Trust will equal the fair market value of such undivided beneficial interest as of the Effective Date and the Beneficiary's holding period in such assets will begin the day following the Effective Date. Distributions to any Beneficiary will be allocated first to the original principal portion of the Beneficiary's Allowed Unsecured Claim as determined for federal tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim. However, there is no assurance that the IRS will respect such allocation for federal income tax purposes.

For all federal income tax purposes, all parties (including the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust) will treat the transfer of assets to the Liquidating Trust, in accordance with the terms of the Plan and Liquidating Trust Agreement, as a transfer of those assets directly to the holders of the applicable Allowed Unsecured Claims followed by the transfer of such assets by such holders to the Liquidating Trust. Consistent

therewith, all parties will treat the Liquidating Trust as a grantor trust of which such holders are to be owners and grantors. Thus, such holders (and any subsequent holders of interests in the Liquidating Trust) will be treated as the direct owners of an undivided beneficial interest in the assets of the Liquidating Trust for all federal income tax purposes. Accordingly, each holder of a beneficial interest in the Liquidating Trust will be required to report on its federal income tax return(s) the holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the Liquidating Trust.

The Liquidating Trust's taxable income will be allocated to the Beneficiaries in accordance with such Beneficiary's Pro Rata share. The character of items of income, deduction and credit to any holder and the ability of such holder to benefit from any deductions or losses may depend on the particular situation of such holder.

The federal income tax reporting obligation of a holder of a beneficial interest in the Liquidating Trust is not dependent upon the Liquidating Trust distributing any cash or other proceeds. Therefore, a holder of a beneficial interest in the Liquidating Trust may incur a federal income tax liability regardless of the fact that the Liquidating Trust has not made, or will not make, any concurrent or subsequent distributions to the holder. If a holder incurs a federal tax liability but does not receive distributions commensurate with the taxable income allocated to it in respect of its beneficial interests in the Liquidating Trust it holds, the holder may be allowed a subsequent or offsetting loss.

The Liquidating Trustee will file with the IRS returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Liquidating Trust will also send to each holder of a beneficial interest in the Liquidating Trust a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct the holder to report such items on its federal income tax return.

Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, could also change the federal income tax consequences of the Plan and the transactions contemplated thereunder.

## L. <u>Information Reporting and Withholding.</u>

In connection with the Combined Plan and Disclosure Statement, the Debtors will comply with all applicable withholding and information reporting requirements imposed by U.S. federal, state, local, and foreign taxing authorities, and all Distributions under the Combined Plan and Disclosure Statement will be subject to those withholding and information reporting requirements. Holders of Claims may be required to provide certain tax information as a condition to receiving Distributions pursuant to the Combined Plan and Disclosure Statement.

In general, information reporting requirements may apply to Distributions pursuant to the Combined Plan and Disclosure Statement. Additionally, under the backup withholding rules, a holder may be subject to backup withholding with respect to Distributions made pursuant to the Combined Plan and Disclosure Statement, unless a U.S. Holder provides the applicable withholding agent with a taxpayer identification number, certified under penalties of perjury, as well as certain other information, or otherwise establish an exemption from backup withholding.

Backup withholding is not an additional tax. Any amounts withheld under the backup withholding rules will be allowed as a credit against a U.S. Holder's U.S. federal income tax liability, if any, and may entitle a U.S. Holder to a refund, provided the required information is timely furnished to the IRS.

In addition, from an information reporting perspective, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders of Claims or Interests are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Combined Plan and Disclosure Statement would be subject to these regulations and require disclosure on the holder's tax returns.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT**.

### M. <u>Releases, Exculpations, and Injunctions.</u>

This Combined Plan and Disclosure Statement contains certain releases, exculpations, and injunctions. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan will affect any Claim, interest, right, or action with regard to the Debtor and certain third parties.

**THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS AGAINST THE DEBTORS TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.**

### N. <u>Alternatives to the Combined Plan and Disclosure Statement.</u>

If the requisite acceptances are not received or the Combined Plan and Disclosure Statement is not confirmed and consummated, the theoretical alternatives to the Combined Plan and Disclosure Statement would be (a) formulation of an alternative chapter 11 plan, (b) conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or (c) dismissal of the Chapter 11 Cases. The Debtors do not believe that any of these alternatives, even if viable, would afford holders of Claims or Interests a greater recovery than what is provided by the Combined Plan and Disclosure Statement.

If the Combined Plan and Disclosure Statement is not confirmed, then the Debtors or any other party in interest could attempt to formulate a different plan. The additional costs, including, among other amounts, additional professional fees, all of which would constitute Administrative

Claims (subject to allowance thereof), however, may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to chapter 7. At this time, the Debtors do not believe that there are viable alternative plans available to the Debtors.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate and distribute the Debtors' remaining assets in accordance with the priorities established by the Bankruptcy Code. As discussed above and indicated in the Liquidation Analysis, the Debtors believe that the Combined Plan and Disclosure Statement provides a better outcome for holders of Claims than a chapter 7 liquidation would provide.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases also could be dismissed. Among other effects, dismissal would result in the termination of the automatic stay, thus permitting creditors to assert state-law rights and remedies against the Debtors and their assets, likely to the detriment of other creditors. While it is impossible to predict precisely what would happen in the event the Chapter 11 Cases are dismissed, it is unlikely that dismissal would result in a ratable distribution of the Debtors' assets among creditors as provided in the Combined Plan and Disclosure Statement. Thus, the vast majority of creditors, including general unsecured creditors, could expect to receive less in the dismissal scenario than they would receive under the Combined Plan and Disclosure Statement.

## SECTION VIII.
## UNCLASSIFIED CLAIMS

### A. Unclassified Claims.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified for purposes of voting or receiving Distributions. Rather, all such Claims are treated separately as unclassified Claims as set forth in this Section, and the holders thereof are not entitled to vote on the Combined Plan and Disclosure Statement.

### B. Administrative Claims.

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive from Available Cash payable by the Debtors or the Liquidating Trust, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors or the Liquidating Trust, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

Unless otherwise provided in the Bankruptcy Code, Holders of Administrative Claims (including, without limitation, Professionals requesting compensation or reimbursement of such expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code) that do not file such requests by the applicable deadline provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Court from asserting such claims against the Debtors, the Estates, the Liquidating Trust, or their successors or assigns, or their property. Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Court.

All fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on the Effective Date or as soon as practicable thereafter.

**C. Professional Fees.**

Professionals, other than OCPs, requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee applications by order of the Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses **no later than forty-five (45) days after the Effective Date**. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Court. For avoidance of doubt, the Liquidating Trustee is not authorized under the Plan to object to applications for final allowance of compensation and reimbursement of expenses. OCPs shall not be required to file final fee applications, and the Debtors or Liquidating Trust, as applicable shall pay retained OCPs outstanding Professional Fees that accrued through and including the Effective Date, *provided that*, the aggregate amount of Professional Fees (exclusive of expenses) paid to an OCP and all OCPs shall be limited by the respective amounts of the Monthly OCP Cap and the OCP Aggregate Cap contained in the OCP Order, multiplied by the number of calendar months between the Petition Date and the Effective Date; *provided further that*, the Debtors or Liquidating Trust, as applicable, shall file a final notice setting forth the aggregate Professional Fees paid to each OCP **no later than forty-five (45) days after the Effective Date** in accordance with the requirements of paragraph 1(g) of the OCP Order.

Upon approval of the fee applications by the Court or as soon as reasonably practicable thereafter, the Debtors or Liquidating Trust shall pay applicable Professionals all of their respective accrued and Allowed fees and reimbursement of expenses arising prior to the Effective Date, plus reasonable fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date, plus post-Effective Date fees approved by the Liquidating Trust.

Any funds remaining in the Debtors' Professional Fee Account after satisfaction of the Allowed Professional Fee Claims of the Professionals constitute TBK/Triumph Collateral pursuant to Section 46 of the Final DIP Order and shall be turned over to TBK/Triumph.

### D.  Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, the Debtors or Liquidating Trust shall pay each holder of an Allowed Priority Tax Claim, from Available Cash, the full unpaid amount of such Allowed Priority Tax Claim (as of the Effective Date) via either, at the Liquidating Trustee's sole discretion, (a) a single lump sum payment on or as soon as practicable after the later of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes an Allowed Claim, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law; or (b) regular cash installment payments over a period ending not later than 5 years after the Petition Date with interest at the rate determined under applicable nonbankruptcy law, pursuant to 11 U.S.C. §§ 1129(a)(9)(C) and 511.

## SECTION IX.
## CLASSIFICATION OF CLAIMS AND INTERESTS

### A.  Summary of Classification.

The provisions of this Section IX govern Claims against and Interests in the Debtors. Any Class that is vacant will be treated in accordance with Section IX.C below.

The following table designates the Classes of Claims against, and Interests in, the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Combined Plan and Disclosure Statement in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Combined Plan and Disclosure Statement. A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof qualifies within the description of such Class and is classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (presumed to accept) |
| 2 | Other Secured Claims | Impaired | Yes |
| 3 | Unsecured Claims | Impaired | Yes |
| 4 | Participating Lender Claims | Impaired | No (deemed to accept) |
| 5 | Intercompany Claims | Impaired | No (presumed to reject) |
| 6 | Interests | Impaired | No (presumed to reject) |

### B.  Special Provision Governing Unimpaired Claims.

Except as otherwise provided in the Combined Plan and Disclosure Statement, nothing under the Combined Plan and Disclosure Statement shall affect the rights of the Debtors or the Liquidating Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in

respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### C.  Vacant and Abstaining Classes.

Any Class of Claims or Interests that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or Interest or a Claim or Interest temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Combined Plan and Disclosure Statement for purposes of voting to accept or reject the Combined Plan and Disclosure Statement and for purposes of determining acceptance or rejection of the Combined Plan and Disclosure Statement by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## SECTION X.
## TREATMENT OF CLAIMS AND INTERESTS

### A.  Class 1—Priority Non-Tax Claims.

(a)    Classification. Class 1 consists of all Priority Non-Tax Claims.

(b)    Treatment. The Debtors or Liquidating Trust, as applicable, shall pay, from Available Cash, the Allowed amount of each Priority Non-Tax Claim to each Entity holding a Priority Non-Tax Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by law). The Debtors or the Liquidating Trust shall pay each Entity holding a Priority Non-Tax Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; *provided however*, that such Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity.

(c)    Impairment and Voting. Class 1 is Unimpaired. Holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

### B.  Class 2—Other Secured Claims

(a)    Classification. Class 2 consists of the Other Secured Claims. Each Other Secured Claim will be treated as a separate subclass for voting and distribution purposes.

(b)    Treatment. Unless previously paid in full, the Holder of an Allowed Class 2 Claim (1)(a) if the Collateral securing the Creditor's Class 2 Claim (subject to any applicable intercreditor rights or obligations) is not a Liquidating Trust Asset, will receive its Collateral, which shall be abandoned to such Creditor, or (b) if the Collateral securing the Creditor's Class 2 Claim is a Liquidating Trust Asset, will retain any valid and enforceable existing lien, claim, or encumbrance in or on such Collateral and will receive the proceeds, if any, from the Liquidating Trust's sale or liquidation of such Collateral up to the value of its Allowed Class 2 Claim on terms that may be agreed to in writing or dictated by the Court or (2) such other treatment as may be agreed to in writing by the Debtors and the Holder of such Class 2 Claim, in each case in full satisfaction and release of such Class 2 Claim. All Allowed Deficiency Claims, if any, will be

classified and treated as Class 3 Unsecured Claims. Non-Participating Lenders will not receive a Debtor/Estate Release.

        (c)    <u>Impairment and Voting</u>. Class 2 is Impaired, and the Holders thereof are entitled to vote on the Plan.

### C. **Class 3—Unsecured Claims.**

        (a)    <u>Classification</u>. Class 3 consists of all Unsecured Claims. For the avoidance of doubt, Class 3 includes all Deficiency Claims other than Participating Lender Deficiency Claims.

        (b)    <u>Treatment</u>. Holders of Class 3 Claims shall receive a Pro Rata share of the Liquidating Trust Interests in exchange for their Allowed Claims, which entitle the Beneficiaries thereof to a Pro Rata share of any net proceeds of the Liquidating Trust Assets, after payment of all Liquidating Trust Expenses. Unsecured Claims are subject to all statutory, equitable, and contractual subordination claims, rights, and grounds available to the Debtors, the Estates, and pursuant to the Plan, except as may be expressly provided otherwise, the Liquidating Trustee, which subordination claims, rights, and grounds are fully enforceable prior to, on, and after the Effective Date.

        (c)    <u>Impairment and Voting</u>. Class 3 is Impaired, and the Holders thereof are entitled to vote on the Plan.

### D. **Class 4—Participating Lender Claims**

        (a)    <u>Classification</u>. Class 4 consists of the Participating Lender Claims, including the Participating Lenders' Secured Claims and Participating Lender Deficiency Claims. Each Participating Lender Claim will be treated as a separate subclass for voting and distribution purposes.

        (b)    <u>Treatment</u>. Notwithstanding anything to the contrary contained herein, the Participating Lenders retain all liens and security interests with respect to their Collateral and proceeds thereof (including without limitation lease payments) as and to the extent set forth in the Term Sheet, which liens and security interests survive confirmation of the Plan. The Participating Lenders are entitled to exercise all rights and remedies with respect to such Collateral and proceeds thereof as and to the extent set forth in the Term Sheet. Notwithstanding anything to the contrary contained in the Plan, the Confirmation Order, or Title 11, the automatic stay is lifted, as and to the extent set forth in the Settlement Order and Final Financing Orders, and the Plan Injunction does not apply with respect to the foregoing.

        There shall be no Distribution on account of Class 4 Participating Lender Claims; however, the Holder of an Allowed Class 4 Claim will receive a Debtor/Estate Release and the rights and benefits set forth in the Term Sheet. Notwithstanding anything to the contrary herein, if the Debtors and/or the Liquidating Trust become aware of their receipt of proceeds of a Participating Lender's Collateral, the Debtors and/or the Liquidating Trust shall hold such proceeds in trust for the Participating Lenders and shall notify the Participating Lenders, and

reasonably remit such proceeds to the Participating Lenders, which remittance shall not be deemed a Distribution herein.

(c)     Impairment and Voting. Class 4 is Impaired. Holders of Class 4 Claims are not entitled to vote, but, consistent with the Term Sheet, Holders of Class 4 Claims are deemed to have accepted the Plan.

**E.  Class 5—Intercompany Claims.**

(a)     Classification. Class 5 consists of all Intercompany Claims.

(b)     Treatment. There shall be no Distribution on account of Class 5 Intercompany Claims. Upon the Effective Date, all Intercompany Claims will be deemed, at the option of the Debtors, converted to equity, otherwise set off, settled, canceled, released, or discharged without any distribution on account of such Claims.

(c)     Impairment and Voting. Holders of Class 5 Intercompany Claims are deemed to have rejected the Plan, and are not entitled to vote.

**F.  Class 6—Interests.**

(a)     Classification. Class 6 consists of all Interests.

(b)     Treatment. There shall be no Distribution on account of Class 6 Interests. Upon the Effective Date, all Interests will be deemed cancelled and will cease to exist.

(c)     Impairment and Voting. Holders of Interests are deemed to have rejected the Plan, and are not entitled to vote.

**SECTION XI.**
**DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS**

**A.  Distribution Dates; Subsequent Distributions.**

The Debtor(s) shall make Distributions to Holders of Claims on the Initial Distribution Date. Subject to the terms of the Plan and the Liquidating Trust Agreement, Liquidating Trustee may, in its sole discretion, make a full or partial Pro Rata Distribution to the Holders of Claims on a Subsequent Distribution Date.

Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Liquidating Trustee for Distribution on any Subsequent Distribution Date after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution.

B.  **Distribution Record Date.**

Except as otherwise provided in a Final Order of the Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Liquidating Trustee as of the Distribution Record Date.

C.  **Manner of Cash Payments Under the Plan or Liquidating Trust Agreement.**

Cash payments made pursuant to the Plan or Liquidating Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Debtor(s) or the Liquidating Trustee or by wire transfer from a domestic bank, at the sole option of the Debtor(s) or Liquidating Trustee. Any and all Distributions and/or written communications pertaining to Distributions shall be made to Creditors or Beneficiaries at each Creditor or Beneficiary's respective address listed in the Claims Register unless the Debtor(s) or Liquidating Trustee, as applicable, receives a written change of address form from a Creditor or Beneficiary consistent with the terms of the Plan or the Liquidating Trust Agreement, as applicable.

D.  **Time Bar to Cash Payments by Check.**

Distribution checks issued to Creditors or Beneficiaries shall be null and void if not negotiated within **ninety (90) days** after the date of issuance thereof. The Debtor(s) or the Liquidating Trustee, as applicable, shall not reissue any check except upon directly receiving a request in writing from the Creditor or Beneficiary that was originally issued such check within **one-hundred and eighty (180) days** of the disbursement of the Distribution. If the 180-day period elapses without the Creditor requesting the check be reissued, the unresponsive holder's Distribution shall be deemed unclaimed property as provided in the Plan or the Liquidating Trust Agreement, as applicable. The foregoing notwithstanding, **ninety (90) days** after the final Distribution under section 1194 of the Bankruptcy Code, the Debtor(s) or the Liquidating Trustee, as applicable, shall stop payment on any check remaining unpaid, the corresponding Distribution shall be deemed unclaimed property, and all unclaimed property shall be redistributed in accordance with the provisions of the Plan or the Liquidating Trust Agreement.

E.  **Liquidating Trust Assets Account.**

Unless otherwise provided in the Confirmation Order, the Liquidating Trust Assets consisting of Cash may be invested by the Liquidating Trustee in a manner consistent with the objectives of Section 345(a) of the Bankruptcy Code and in its reasonable and prudent exercise of discretion. The Liquidating Trustee shall have no obligation or liability to Beneficiaries in connection with such investments in the event of any unforeseeable insolvency of any financial

institution where such funds are held. The Liquidating Trustee shall be under no obligation to generate or produce, or have any liability for, interest or other income on any monies received by the Liquidating Trust and held for distribution or payment to the Beneficiaries, except as such interest or income shall be actually received by the Liquidating Trust.

### F.  Tax Identification Numbers.

The Debtor(s) or the Liquidating Trustee, as applicable, may require any Creditor or Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service by submitting a Form W-8, Form W-9, or other form completed in writing to the Debtor(s) or the Liquidating Trustee, as applicable, and may condition any Distribution to any Creditor or Beneficiary upon receipt of such completed form. If a Creditor or Beneficiary does not timely provide the Debtor(s) or the Liquidating Trustee, as applicable, with its taxpayer identification number in the manner and by the deadline established by the Debtor(s) or the Liquidating Trustee, as applicable—to be not less than **forty-five (45) days** from the service of the request to the Creditor or Beneficiary for its tax identification information—then the Debtor(s) or the Liquidating Trustee, as applicable, may set aside the holder's Distribution for a period of **one-hundred-and-eighty (180) days** following service of the request. If the Creditor or Beneficiary of the Distribution set aside provides the information in the manner requested in the 180-day period, the Debtor(s) or the Liquidating Trustee, as applicable, shall disburse the set aside Distribution, without interest, to the Creditor or Beneficiary. However, if the Creditor or Beneficiary fails to provide the requested information within the 180-day period, then the unresponsive Creditor's Distribution or Beneficiary's Distribution shall be irreversibly deemed "unclaimed property" and redistributed to the other Creditors or Beneficiaries in accordance with the provisions of the Plan or the Liquidating Trust Agreement, as applicable.

### G.  Claims Paid or Payable by Third Parties.

To the extent the Holder of an Allowed Claim receives a payment from any non-Debtor third party on account of their Claim, the Debtors and/or the Liquidating Trustee, as applicable, may reduce the Allowed amount of such Claim by the amount of the such third party payment, for the purposes of any Distribution, and such Claim shall automatically be deemed satisfied and disallowed to the extent of the third party payment without the need to file any objection the Claim and without any further order or approval of the Court.

No Distributions shall be made on account of any Allowed Claim that is paid pursuant to an insurance policy of the Debtors. To the extent any insurance carrier (inclusive of its agents or administrators, an "Insurer") agrees to pay an Allowed Claim, in full or in part, then immediately upon such Insurers' agreement, such Claim shall be noted on the claims register as expunged to the extent of any such payment without the need to file any objection the Claim and without any further order or approval of the Court.

Except as expressly released by the Plan, nothing contained herein shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including Insurers, under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

## SECTION XII.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND REDISTRIBUTIONS

### A. No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

### B. Resolution of Disputed Claims.

Unless otherwise ordered by the Court after notice and a hearing, subject to the Plan and the Liquidating Trust Agreement, the Debtor(s), to the Effective Date, and the Liquidating Trustee, after the Effective Date, shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Claims. The costs of pursuing the objections to Claims shall be borne by the Debtor(s) or Liquidating Trustee from Liquidating Trust Assets, as applicable. From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Interest without approval of the Court.

### C. Objection Deadline.

All objections to Claims (other than Professional Fee Claims) shall be filed and served upon the Claimant not later than the Claims Objection Deadline, as such may be extended by order of the Court.

### D. Estimation of Claims.

At any time, (a) prior to the Effective Date, the Debtors, and (b) after the Effective Date, the Liquidating Trustee, or the Liquidating Trustee, as applicable, may request that the Court estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trust has previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall have jurisdiction to estimate any Claim at any time during Litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Liquidating Trust, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdraw, or resolved by any mechanism of the Court.

### E.  **Disallowance of Claims.**

Except as otherwise agreed or ordered by the Court, any and all proofs of claim filed after the Bar Date shall be treated as a Disputed Claim for purposes of Distribution without any further notice or action, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Effective Date the Court has entered an order deeming such Claim to be timely filed; *provided however*, that such Claims' status as disputed shall not prohibit payment of such Claims after complete payment and satisfaction of all timely Allowed Unsecured Claims and payment of Liquidating Trust Expenses.

On the Confirmation Date, any Claim that is scheduled by the Debtors in the Schedules as disputed, contingent or unliquidated, or listed at zero and as to which no Proof of Claim has been timely filed (or deemed timely filed by Final Order entered by the Court) shall be deemed a Disallowed Claim without further order of the Court.

Any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Liquidating Trust shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action the Debtors hold or may hold against any Entity have been resolved or a Court order with respect thereto has been entered and all sums due, if any, to the Estates by that Entity have been turned over or paid to the Debtors or the Liquidating Trust.

### F.  **Claims Register**

At the Effective Date or as soon after as practicable, the Debtors' Claims Agent shall file a complete copy of the Claims Register into the docket of the Chapter 11 Cases. After the Effective Date, the Liquidating Trustee shall be responsible for maintaining a register of Beneficiaries' interests in the Liquidating Trust which shall be commensurate with the Holders' Allowed Unsecured Claims as reported in the Claims Register. The Liquidating Trustee shall be entitled to initially rely on the Claims Register as reported in the Claim's Agent's filing on the Effective Date for all purposes as an accurate ledger of the status, amount, and class of all Claims. The Liquidating Trustee may engage a claims agent (including the Debtors' Claims Agent) to continue to maintain and update the Claims Register throughout the administration of the Liquidating Trust, and such claims register may serve as the Liquidating Trustee's register of beneficial interests held by Beneficiaries.

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register at the direction of the Debtors or the Liquidating Trustee, as applicable, without an objection filed and without further notice to or action, order, or approval of the Court.

### G.  **Reserve Provisions for Disputed Claims.**

Before making any Distribution, the Debtor(s) or Liquidating Trustee, as applicable, shall reserve Cash required (i) for distribution on Disputed Claims as if such Claims were Allowed as

filed with any Disputed Claims that are unliquidated or contingent and (ii) for payment of accrued or reasonably projected Liquidation Trust Expenses, in each case in an amount reasonably determined by the Liquidating Trustee (the "Disputed Claim Reserve"). On each Distribution date after the Effective Date in which the Liquidating Trustee makes Distributions to Holders of Allowed Claims, the Liquidating Trustee shall retain (i) on account of Disputed Claims an amount the Liquidating Trustee estimates is necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee and (ii) on account of accrued or projected Liquidation Trust Expenses, an amount that the Liquidating Trustee reasonably estimates is necessary to cover such expenses.

The Liquidating Trustee shall hold property in the Disputed Claim Reserve in trust for the benefit of the Holders of Disputed Claims that are ultimately determined to be Allowed. Each Disputed Claim Reserve shall be closed and extinguished by the Liquidating Trustee when all Distributions and other dispositions of Cash of other property required to be made hereunder will have been made in accordance with the terms of the Plan. Upon closure of a Disputed Claim Reserve, all Cash or other property held in that Disputed Claim Reserve shall revest in and become unrestricted property of the Liquidating Trustee. All funds or other property that vest or revest in the Liquidating Trustee, as applicable, pursuant to this paragraph shall be used to pay by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement.

Except as expressly set forth in the Plan, neither the Debtor nor the Liquidating Trustee shall have any duty to fund any Disputed Claim Reserve except from the Distributable Assets or the Liquidating Trust Assets, as applicable.

## H. *De Minimis* **Distributions, Rounding.**

Notwithstanding anything herein to the contrary, the Debtor(s) or the Liquidating Trustee, as applicable, shall not be required to make: (i) partial Distributions or payments of fractions of dollars or (ii) a Distribution if the amount to be distributed is or has an economic value of less than one hundred dollars ($100). Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent Distributions.

## I. **Unclaimed and Undeliverable Distributions.**

If any Distribution to a Creditor or Beneficiary is returned to the Debtor(s) or Liquidating Trustee as undeliverable or is unclaimed, no further Distributions to such Creditor or Beneficiary shall be made unless and until the Creditor or Beneficiary claims the missed Distribution by timely notifying the Liquidating Trustee in writing of its current address along with any other information necessary to make the Distribution to the Creditor or Beneficiary in accordance with this Plan, the Liquidating Trust Agreement, and applicable law. If the Creditor or Beneficiary provides the Liquidating Trustee with its current address and such other information necessary to make the Distribution within **one-hundred and eighty (180) days** of the original disbursement, the missed Distribution shall be made to the Creditor or Beneficiary as soon as is practicable, without interest. However, if any Distribution that is undeliverable or otherwise unclaimed is not claimed within **one-hundred-and-eighty (180) days** of the original disbursement, such Distribution shall be deemed "unclaimed property" under Bankruptcy Code section 347(b) and forfeited, and the

forfeiter shall consequentially lose his status as a Creditor or Beneficiary of the Liquidating Trust. After the 180-day period to claim property has elapsed, the unclaimed property or interests in property shall revert to the Liquidating Trust for redistribution to Creditors or Beneficiaries or other disposition in accordance with the terms of the Plan and the Liquidating Trust Agreement; the Claim to such unclaimed property or interest in property shall be forever barred, expunged, and deemed Disallowed; and the holder of said claim deemed Disallowed shall be enjoined from receiving any Distributions under this Agreement and from asserting such Disallowed Claim against the Liquidating Trustee.

The Liquidating Trustee may, in their sole discretion, attempt to determine a Creditor's or Beneficiary's current address or otherwise locate a Creditor or Beneficiary, but nothing in this Plan or the Liquidating Trustee Agreement shall require the Liquidating Trustee to do so.

### J.  Books and Records and Vesting of Privileges.

The Debtors shall transfer complete electronic copies of their books and records relating to the Liquidating Trust Assets regardless of original form, manner or media, to the Liquidating Trustee on the Effective Date, in a form accessible and viewable by the Liquidating Trustee. The Debtors shall provide any and all digital account information, including passwords, necessary for the Liquidating Trustee to access the Debtors' books and records relating to the Liquidating Trust Assets on the Effective Date. The Liquidating Trust will cooperate with the Participating Lenders, and shall provide the Participating Lenders with reasonable access to the books and records in the Liquidating Trust's possession, custody, or control as the Participating Lenders may require to effectuate the orderly wind-down, and the identification, location, and return of their Collateral; provided that the Liquidating Trust is not required to incur any fees or expenses in providing such information and access, and the Participating Lenders shall promptly reimburse the Liquidating Trust for any such reasonable fees and expense incurred. The Participating Lenders acknowledge that the Liquidating Trust makes no assurances of any kind or character, including, without limitation, as to the accuracy, completeness or reliability of such books and records.

For the avoidance of doubt, as provided in Section XIV.F, on the Effective Date, the attorney-client privilege, the attorney work product doctrine and any similar privilege against disclosure, and all other similar immunities (all together, "Privileges") belonging to the Debtors or the Estates that concern or in any way relate to any of the Liquidating Trust Assets, or that would apply to communications, documents, or records recorded in magnetic, optical, or other form of electronic medium concerning or in any way relating to any Liquidating Trust Assets, shall vest in the Liquidating Trust. The Liquidating Trustee shall have the sole right to waive Privileges that concern or in any way relate to any of the Liquidating Trust Assets or that would apply to communications, documents, or electronic records concerning or in any way relating to any Liquidating Trust Assets.

## SECTION XIII.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Rejection.

Except with respect to: (i) executory contracts or unexpired leases that were previously assumed or rejected by order of the Court, (ii) unexpired leases that were previously the subject of a stipulation filed with the Court, and (iii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; *provided however,* that nothing in this Section shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and directors, and/or the Liquidating Trust. Nothing in this Section shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease. The Confirmation Order shall constitute an order of the Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtor(s) nor the Liquidating Trust shall bear any liability for costs associated with such matters.

To the extent the Debtors have paid rent in April, 2025, the Debtors shall be permitted to use any leased location through April 30, 2025 for the purpose of completing the Debtors' winddown process in the following permitted manners: (i) as a location for storing trucks and trailers and other equipment during the process of returning collateral to the Debtors' secured lenders; and (ii) to liquidate or otherwise transfer, solely with regard to assets of the Debtors, including parts, tires, and any additional assets currently located on the Premises. The Participating Lenders and their agents and assigns shall be given reasonable access to such leased locations for purposes of retrieving their Collateral located at those premises.

### B. Rejection Claims.

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Claims Agent within thirty (30) days after the earlier of the Effective Date or an order of the Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection. All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as Unsecured Claims.

### C. Insurance Policies.

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the Insurance Policies. To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action (other than the TBK/Triumph Retained Causes of Action) the Debtors hold or may hold

against any Entity, the Debtors shall, to the extent permissible under each Insurance Policy, assign all rights to collect insurance proceeds thereunder with respect to such Causes of Action to the Liquidating Trustee as covered by any Insurance Policy (collectively, the "Assigned Insurance Rights"). All net proceeds of Insurance Policies received by the Liquidating Trustee shall be treated as proceeds of such Causes of Action for all purposes under the Plan.

The Debtors shall take no action to or otherwise impair the Insurance Policies. Nothing herein shall diminish or impair the enforceability of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtors or any other Entity.

If the Debtors or the Estates are unable to transfer the Assigned Insurance Rights to the Liquidating Trust, then the Debtors and/or any successor to the Debtors under the applicable Insurance Policy shall, at the sole cost and expense of the Liquidating Trust, (a) take such actions reasonably requested by the Liquidating Trustee to pursue any of the Assigned Insurance Rights for the benefit of the Liquidating Trust and (b) promptly transfer to the Liquidating Trust any amounts recovered under or on account of the Assigned Insurance Rights; *provided however*, that while any such amounts are held by or under the control of the Debtors, such amounts shall be held for the benefit of the Liquidating Trust.

## SECTION XIV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A. Summary.

As discussed above, on the Effective Date, the Debtors will transfer the Liquidating Trust Assets to the Liquidating Trust. The Liquidating Trustee will, among other things, investigate and prosecute those Causes of Action transferred to the Liquidating Trust for the benefit of Class 3 (Unsecured Claims).

### B. Debtors' Corporate Existence; Corporate Action by Debtors.

On the Effective Date, all Interests shall be deemed cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Interests in any of the Debtor's formation documents, and the Debtors will cease to exist; *provided, however*, that, notwithstanding anything in this Plan or the Confirmation Order to the contrary, and solely in order to preserve the corporate existence of each Debtor that holds any right, title or interest in a Residual Real Property and to allow the Residual Real Property Agent to market, sell or otherwise dispose of such Residual Real Property in his or her role as an agent of the Debtors and their Estates pursuant to Section XIV.J hereof, the corporate legal existence of the Debtors shall be deemed to have continued and the Debtors shall not be dissolved until the earlier to occur of either (i) the Residual Real Property Agent's sale or other disposition of all of the Residual Real Properties or (ii) the Residual Real Property Agent's written consent to such dissolution; *provided further, however*, that except as set forth herein or in the Liquidating Trust Agreement, including, but not limited to, Section XIV.J hereof in respect to the limited power and authority of the Residual Real Property Agent to market, sell or otherwise dispose of the Residual Real Property, none of the Liquidating Trust, the Liquidating Trustee nor the Residual Real Property Agent shall have any power, authority, obligation or responsibility to undertake any other action on behalf of such Debtors.

On the Effective Date, the matters under the Plan involving or requiring any corporate actions of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors, managers, members, partners, or other equity holders of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Court or the managers, members, directors, or officers of the Debtors. Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Court. The Confirmation Order shall act as an order modifying the Debtors' organizational documents and operating agreements such that the provisions of this Plan can be effectuated.

From and after the Effective Date, (i) the Debtors, for all purposes, shall be deemed to have withdrawn their business operations from any states in which they were previously conducting or are registered or licensed to conduct business operations, and neither the Debtors nor the Liquidating Trust shall be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) neither the Debtors nor the Liquidating Trust shall be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

### C.  The Transition Services Agreement

Noor, Kal Freight, and Kal Trailers intend to enter into the Transition Services Agreement, which provides, among other things, for Noor to provide the Debtors and the Liquidating Trustee, as applicable, access to certain information including books and records and tax ledgers that may be needed to complete and file any reports or other filings with the Bankruptcy Court or any state, federal, or municipal regulatory, governmental, or taxing authority. Noor will also allow the Debtors to store, free of charge, any trucks, trailers, and other Rolling Stock located on premises controlled by Buyer until such assets can be recovered by the Debtors' applicable secured lenders and/or lessors and will cooperate with such lenders and/or lessors in good faith and provide such assistance as they may reasonably request with respect to the recovery of their Collateral and otherwise take necessary actions to cause such lenders and lessors the return of their Rolling Stock.

### D.  The Liquidating Trust.

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, *inter alia*, (a) administering the Liquidating Trust Assets, (b) prosecuting and/or resolving all Disputed Claims, (c) investigating and pursuing any Causes of Action that constitute Liquidating Trust Assets, and (d) making all Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of the trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall, in an orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, and make timely Distributions to the Beneficiaries, and not unduly prolong the duration of the Liquidating Trust. Neither the Liquidating Trust nor the Liquidating Trustee shall be or shall be deemed a successor-

in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

On the Effective Date, the Liquidating Trust Assets, including, but not limited to, all the Debtors' books and records related to the Liquidating Trust Assets, shall vest automatically in the Liquidating Trust, subject to any valid and enforceable existing liens, claims, or encumbrances in favor of any Holder of an Allowed Class 2 Claim. The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets comprising the Liquidating Trust Assets will be treated as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Unsecured Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets. For the avoidance of doubt, upon vesting in the Liquidating Trust, the Debtors shall have no interest in or control over the Liquidating Trust Assets or any distributions therefrom to Beneficiaries.

As soon as possible after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the Liquidating Trust Assets. The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trust, the Beneficiaries) for all federal income tax purposes.

### E.  Appointment of the Liquidating Trustee; Trust Oversight Committee.

The identity of the Liquidating Trustee, who shall be selected by the Committee, will be disclosed in the Plan Supplement. From and after the Effective Date, professionals may be retained by the Liquidating Trustee as set forth in the Liquidating Trust Agreement, without further need for documentation or Court approval. All fees and expenses incurred by the professionals retained by the Liquidating Trustee following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets (including any interest or other income generated therefrom) in accordance with the Liquidating Trust Agreement.

An oversight committee may be established for the Liquidating Trust (the "Liquidating Trust Oversight Committee" or "Oversight Committee") to oversee the Liquidating Trust and consult with the Liquidating Trustee in connection with his or her duties and responsibilities under the Plan and the Liquidating Trust Agreement, as requested by the Liquidating Trustee. Except as otherwise expressly stated in the Liquidating Trust Agreement, the Liquidating Trustee may act and exercise any rights, powers, and duties without the Oversight Committee's approval.

The initial members of the Liquidating Trust Oversight Committee will be Scott Woitas, Todd Currier, and Jon Gergen. Members of the Oversight Committee are not entitled to compensation but may be reimbursed for reasonable out-of-pocket costs as set forth in the Liquidating Trust Agreement.

### F. **Rights and Powers of the Liquidating Trustee.**

The Liquidating Trustee shall be deemed the Estates' representative with respect to the Liquidating Trust Assets in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidating Trust. Without limiting the foregoing, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the applicable provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate, sell, abandon, or otherwise dispose of all Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtors hold or may hold against any Entity that constitute Liquidating Trust Assets; (4) make all Distributions to Beneficiaries in accordance with the Plan and the Liquidating Trust Agreement; (5) administer the Liquidating Trust and pursue all Litigation and Causes of Action that constitute Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement; (6) establish and administer any necessary reserves for Disputed Claims that may be required; (7) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Court such objections; (8) assert or waive any attorney-client privilege on behalf of the Debtors and Estates with regard to the Liquidating Trust Assets; and (9) employ and compensate professionals and other agents, including, without limitation, Professionals previously employed by the Debtors or the Committee, in accordance with the Liquidating Trust Agreement or the Plan, *provided however*, that any such compensation shall be made only out of the Liquidating Trust Assets (including any interest or other income generated therefrom), to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

If, in the Liquidating Trustee's reasonable judgment, any Liquidating Trust Assets cannot be sold in a commercially reasonable manner or have inconsequential value to the Liquidating Trust and/or the Beneficiaries, the Liquidating Trustee may cause the Liquidating Trust to abandon or otherwise dispose of such Liquidating Trust Assets (including, but not limited to, by way of donation to a non-profit 501(c)(3) organization that the Liquidating Trustee may select in his or her sole discretion) without further order of the Court, and with notice only to parties that are known to assert a Lien on such property, if any, which parties shall receive at least ten business days' written notice of the proposed abandonment.

Except as otherwise expressly provided in this Plan or the Liquidating Trust Agreement, from and after the Effective Date, the Liquidating Trustee may exercise all powers, rights, and discretion conferred under this Plan or the Liquidating Trust Agreement without further order or approval of the Court and without accounting to the Court. Notwithstanding the foregoing, the Liquidating Trustee shall have the right to submit to the Court any question or questions, disputes, or other issues regarding which the Liquidating Trustee may desire to have explicit approval of the Court for the taking of any specific action proposed to be taken by the Liquidating Trust with respect to any of the Liquidating Trust Assets, this Plan, or the Liquidating Trust Agreement (including, without limitation, the administration, or distribution of any Liquidating Trust Assets), and the Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion by the Liquidating Trust.

Any abatement, interruption, or tolling of the statutes of limitation pertaining to the Liquidating Trust Assets in favor of the Debtors or the Estates shall also apply to the benefit of the Liquidating Trustee; for the avoidance of doubt, the Liquidating Trustee shall be construed to be a "trustee" for purposes of 11 U.S.C. § 108.

### G. Fees and Expenses of the Liquidating Trust.

The Liquidating Trust Expenses incurred on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Court, irrespective of whether Allowed Administrative Claims, Allowed Priority Claims and other Claims have been paid in full

### H. Transfer of Beneficial Interests in the Liquidating Trust.

Liquidating Trust Interests shall not be transferable except upon death of the interest holder or by operation of law. The Liquidating Trust shall not have any obligation to recognize any transfer of Claims or Interests occurring after the Distribution Record Date.

### I. Provision of the Liquidating Trust Expenses.

On or as soon as practicable following the Effective Date, the Liquidating Trust Assets Account shall be opened by the Liquidating Trustee and funded with the Estates' Cash, which Cash shall constitute a Liquidating Trust Asset. Thereafter, from time to time, upon receipt of any Liquidation Proceeds or any Litigation Recovery relating to the Liquidating Trust Assets, the Liquidating Trustee shall deposit such funds into the Liquidating Trust Assets Account, and they shall become part of the Liquidating Trust Assets for funding distributions to Beneficiaries.

### J. Residual Real Property.

Notwithstanding anything in this Plan, the Liquidating Trust Agreement, or the Confirmation Order to the contrary, the Residual Real Property shall not be transferred to the Liquidating Trust on the Effective Date, and each parcel of Residual Real Property shall be deemed to remain an asset of the Debtors' Estates until such time as it is sold or otherwise disposed of by the Residual Real Property Agent, in his sole and absolute discretion, including, if the Residual Real Property Agent deems it appropriate, by transferring any such parcel of Residual Real Property into the Liquidating Trust or abandoning any such parcel of Residual Real Property as provided herein. Any Residual Real Property Net Proceeds realized from the Residual Real Properties shall be transferred to the Liquidating Trust promptly upon receipt and, following such transfer, shall constitute Liquidating Trust Assets. For the avoidance of doubt, Residual Real Property does not include the Real Property Collateral that is TBK/Triumph Collateral.

The Liquidating Trustee is hereby appointed as an agent of the Debtors (separately from his capacity as Liquidating Trustee), referenced herein as the Residual Real Property Agent, whose sole authority and responsibility in such capacity shall be to market, sell and execute deeds and any other documents he or she deems necessary or desirable in conjunction with the marketing, sale or other disposition of any or all of the Residual Real Properties, in his or her sole discretion. Without limiting the foregoing, the Residual Real Property Agent will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents

necessary or desirable to market, sell or otherwise dispose of any or all of the Residual Real Property; (2) liquidate, sell, abandon, or otherwise dispose of any or all of the Residual Real Property; (3) employ and compensate professionals and other agents, including, without limitation, Professionals previously employed by the Debtors or the Committee, to assist him or her in his or her duties as Residual Real Property Agent; and (4) execute and deliver deeds, other instruments of conveyance and any and all other documents he or she deems necessary or desirable, in his or her sole discretion, in connection with the marketing, sale or other disposition of any of the Residual Real Properties on behalf of each of the applicable Debtors or its Estate; *provided, however*, that any compensation due to any professionals providing services to the Residual Real Property Agent shall be paid solely from Liquidating Trust Assets or Residual Real Property Net Proceeds, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes. The Liquidating Trustee, in his capacity as such or as the Residual Real Property Agent, shall also have the power and authority to arrange for the provision of customary insurance on the Residual Real Properties; provided, however, that any premiums incurred after the Effective Date shall be paid from the Liquidating Trust Assets.

To the extent necessary or desirable for the Residual Real Property Agent to discharge his or her responsibilities as such, the Debtors hereby grant the Residual Real Property Agent a power of attorney, which shall be deemed to be coupled with an interest, to execute and deliver any and all documents he or she may deem necessary or desirable, in his or her sole discretion, in connection with the marketing, sale, or other disposition of any of the Residual Real Property. For the avoidance of doubt, in his or her capacity as Residual Real Property Agent, the Residual Real Property Agent shall not have the power or authority or have the responsibility or obligation to undertake any action on behalf of the Debtors or their Estates other than activities related to the marketing, sale or other disposition of the Residual Real Property. Without limiting the generality of the foregoing, except as may be expressly provided in the Liquidating Trust Agreement or herein, the Residual Real Property Agent shall have no power, authority, obligation or responsibility to prepare tax returns for the Debtors or to undertake any other action related to the winddown of the Debtors or their Estates. In addition, the Residual Real Property Agent is expressly prohibited from undertaking any of the following actions in respect to any Residual Real Property:

- Directing, managing or handling any on-site environmental activities, including, but not limited to, the storage or disposal of hazardous or regulated materials, the ordering of on-site supplies needed for any operations, directing health and safety operations, or deciding how to spend monies for environmental activities;

- Handling, treating or arranging for any off-site disposal of hazardous or regulated wastes, drums, container, tanks;

- Signing any manifests, bills of lading or disposal documents as the "generator" of the waste;

- Completing any soil, groundwater, or sediment sampling or remediation on the property or off-site; or

- Hiring any environmental professionals to complete any on-site or offsite studies, investigations, or actions.

Subject to the Confirmation Order, if, in the Residual Real Property Agent's sole judgement, any Residual Real Property cannot be sold in a commercially reasonable manner or has inconsequential value to the Liquidating Trust and/or the Beneficiaries, the Residual Real Property Agent may cause the Debtors to abandon or otherwise transfer or dispose of such Residual Real Property (including, but not limited to, by way of (x) a transfer to the holder of a mortgage or deed of trust encumbering such parcel of Residual Real Property in full or partial satisfaction of its debt (or interposing no objection to the applicable lienholder's foreclosing thereon) or (y) donation to a non-profit 501(c)(3) organization that the Residual Real Property Agent may select in his or her sole discretion) without further order of the Court, and with notice only to parties that are known to assert a Lien on such property, if any, and to the United States Environmental Protection Agency and the applicable State regulatory agency or agencies, which parties shall receive at least ten (10) business day's written notice of the proposed abandonment. In the event the Residual Real Property Agent or the Liquidating Trustee seeks to abandon any Residual Real Property, the rights of the aforementioned Governmental Units to object to such abandonment on any applicable grounds (including, but not limited to, asserting that such abandonment is not being done in compliance with all applicable state and federal laws and regulations, rules and permits governing any environmental concerns or operations at the property) are hereby expressly reserved and not waived as are any claims and defenses which the Liquidating Trustee or the Residual Real Property Agent or the Debtors or their Estates may have to any such challenge or assertion. The Residual Real Property Agent, in his or her sole discretion and with consent of the Liquidating Trustee, may also transfer any parcel of Residual Real Property to the Liquidating Trust, but he or she shall be under no obligation to do so.

Except as otherwise expressly provided in this Plan or the Confirmation Order, from and after the Effective Date, the Residual Real Property Agent may exercise all powers, rights, and discretion conferred under this Plan or the Confirmation Order without further order or approval of the Court and without accounting to the Court. Notwithstanding the foregoing, the Residual Real Property Agent shall have the right, but not the obligation, to submit to the Court (A) any question or questions, disputes, or other issues regarding which the Residual Real Property Agent may desire to have explicit approval of the Court for the taking or omission of any specific action proposed to be taken by the Residual Real Property Agent with respect to any of the Residual Real Property, and (B) an application to appoint a person to be a receiver and/or trustee or person of a similar position (as the Court may determine) of and for any Debtor or Estate, to take any other actions he deems necessary or desirable in connection with the marketing, sale or other disposition of any and all of the Residual Real Properties (including, but not limited to, actions related to the winddown of the Debtors); *provided, however*, that any such powers and authority shall be exclusive of the powers and authority granted herein to the Residual Property Agent or the Liquidating Trustee in his capacity as such and any and all costs and expenses incurred by such a receiver shall be paid out of the Liquidating Trust Assets including, but not limited to, any Residual Real Property Net Proceeds. In the event that the Residual Real Property Agent desires to resign from such position or is otherwise unable to serve in such role because or death or disability or other incapacity, the Liquidating Trust Advisory Committee may appoint a successor to serve in such capacity with prior notice to and the approval of the Court. The Court shall retain jurisdiction

and power for such purposes and shall approve or disapprove any such proposed action upon motion by the Residual Real Property Agent.

In his capacity as such, the Residual Real Property Agent shall be indemnified and exculpated by the Liquidating Trust (including, but not limited to, out of any Residual Real Property Net Proceeds that are transferred to the Liquidating Trust and become Liquidating Trust Assets) to the same extent as the Liquidating Trustee is indemnified and exculpated hereunder and pursuant to the Liquidating Trust Agreement. The Liquidating Trustee and the Residual Real Property Agent are acting solely in a limited administrative role as Liquidating Trustee or as an agent of the Debtors and their Estates for the sole purpose of marketing, selling or otherwise disposing of the Residual Real Properties and not in a personal capacity and shall not have personal liability for any action or omission undertaken or not undertaken in his or her capacity as Liquidating Trustee or as an agent of the Debtors for such purpose.

## K. **Limited Substantive Consolidation.**

Under the Plan, there shall be limited substantive consolidation of the Debtors' Estates solely for the purposes of voting on the Plan by the Holders of Claims, reconciling Claims, and making Distributions to Holders of Claims. Specifically, on the Effective Date, (i) all assets and liabilities of the Debtors will, solely for voting and Distribution purposes, be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors. Holders of Allowed Claims entitled to Distributions under the Plan shall be entitled to their share of assets available for Distribution to such Claim without regard to which Debtor was originally liable for such Claim. Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Combined Disclosure Statement and Plan) affect the legal and corporate structures of the Debtors.

The Plan shall serve as a motion seeking entry of an order substantively consolidating the Chapter 11 Cases for distribution and voting purposes as provided above. Unless an objection to substantive consolidation is made in writing by any Creditor or Interest holder affected by the Plan on or before the applicable objection deadline set by the Court, an order substantively consolidating the Chapter 11 Cases for distribution and voting purposes (which order may be the Confirmation Order) may be entered by the Court.

Notwithstanding the substantive consolidation herein, substantive consolidation shall not affect the obligation of each and every one of the Debtors under 28 U.S.C. § 1930(a)(6) until a particular case is closed, converted, or dismissed.

L. **Litigation.**

Except as otherwise provided herein, all Litigation is retained, vested in the Liquidating Trust pursuant to the Plan, and preserved pursuant to Section 1123(b) of the Bankruptcy Code. From and after the Effective Date, all Litigation will be prosecuted or settled by the Liquidating Trustee in accordance with the terms of the Plan and the Liquidating Trust Agreement, as applicable. To the extent any Litigation is already pending on the Effective Date and is a Cause of Action, the Liquidating Trustee, as successor to the Debtors or the Committee (in any derivative capacity or as an intervening party), will continue the prosecution of such Litigation and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtors or the Committee pursuant to the Plan and the Confirmation Order on the Effective Date, without need for any further motion practice or notice in any case, action, or matter. The Liquidating Trustee shall have standing and authority to pursue, prosecute, settle, abandon, or compromise all Litigation and/or Causes of Action.

M. **Dissolution of the Committee.**

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Cases, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). For the avoidance of doubt, the Liquidating Trust and the Liquidating Trustee have no responsibility or obligation to review or object to any fee applications of any Professionals for services rendered prior to the Effective Date. The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date. Nothing in the Plan shall prohibit or limit the ability of the Debtors' or Committee's Professionals to represent the Liquidating Trustee or to be compensated or reimbursed per the Plan and the Liquidating Trust Agreement in connection with such representation.

N. **Termination After Five Years and Extension.**

If on the fifth anniversary of the Effective Date the Liquidating Trust has not been previously terminated in accordance with the terms of the Liquidating Trust Agreement because all Liquidating Trust Expenses have not been paid and/or all Liquidating Trust Assets have not been distributed, then the Liquidating Trustee shall immediately distribute all Liquidating Trust Assets to the Beneficiaries in accordance with this Plan; immediately thereafter, the Liquidating Trust shall terminate and the Liquidating Trustee shall have no further responsibility in connection therewith except as otherwise set forth in the Liquidating Trust Agreement.

Notwithstanding the foregoing, within 120 days of the expiration of the five-year period, the Liquidating Trustee may file a motion with the Court requesting an extension of the term of the Liquidating Trust. An extension shall only be granted if the Court determines that: (i) an extension is necessary to facilitate or complete the recovery on Liquidating Trust Assets and (ii) further extension would not adversely affect the status of the Liquidating Trust as a liquidating

trust for federal income tax purposes. For purposes of this Section, a favorable letter ruling from the Internal Revenue Service shall be conclusive proof that further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes.

**SECTION XV.**
**EFFECT OF CONFIRMATION**

### A.  Binding Effect of the Plan.

The provisions of the confirmed Plan shall bind the Debtors, the Liquidating Trust, the Liquidating Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a Proof of Claim or Interest in the Chapter 11 Cases, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to the Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a). The Plan is intended to comport with and effectuate the Term Sheet.

### B.  Vesting of Liquidating Trust Assets in the Liquidating Trust.

Upon the Effective Date, title to all Liquidating Trust Assets shall vest in the Liquidating Trust and shall be retained by the Liquidating Trust for the purposes contemplated under the Plan pursuant to the Liquidating Trust Agreement. Without limiting the generality of the foregoing, all Causes of Action the Debtors hold or may hold against any Entity that constitute Liquidating Trust Assets, Litigation Recoveries that constitute Liquidating Trust Assets, rights to Liquidation Proceeds that constitute Liquidating Trust Assets, and all resulting proceeds of the foregoing shall vest in the Liquidating Trust upon the Effective Date. Upon vesting in the Liquidating Trust, the Liquidating Trust Assets shall no longer constitute property of the Estates.

Except as otherwise stated herein with respect to Residual Real Property, the Liquidating Trustee and the Residual Real Property Agent have no authority and no responsibility or obligation to undertake any action with respect to any Rolling Stock or any other real or personal property that is not a Liquidating Trust Asset.

### C.  Property Free and Clear.

Except as otherwise provided in the Plan or the Confirmation Order, all property that shall vest in the Liquidating Trust shall be free and clear of all Claims, Interests, Liens, charges, or other encumbrances of Creditors or Interest Holders, other than as set forth herein, in the Plan or the Liquidating Trust Agreement, and in relevant documents, agreements, and instruments contained in the Plan Supplement. Following the Effective Date, the Liquidating Trustee may transfer, abandon, or otherwise dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

## SECTION XVI.
## EXCULPATIONS, INJUNCTIONS, AND RELEASES

### A. Exculpation.

The Debtors, the Independent Directors, the CRO, the Committee, the members of the Committee, and each solely in their capacities as such (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Cases, the sale or other disposition of the Debtors' assets or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; *provided however*, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction); *provided however*, that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such reasonable reliance shall form a defense to any such claim, Cause of Action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code.

### B. Debtor Releases.

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtors and the Estates (collectively, the "Debtor/Estate Releasors") shall release each Released Party, and each Released Party is deemed released by the Debtor/Estate Releasors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor/Estate Releasors, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor/Estate Releasors would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; *provided however*, the foregoing Debtor/Estate Release shall not operate to waive**

or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.

The Debtor/Estate Releases as to the Participating Lenders incorporate and reaffirm the releases in the Term Sheet. In the event of any inconsistency, the broader release of the Participating Lenders shall apply.

Entry of the Confirmation Order shall constitute the Court's approval of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtor/Estate Releasors asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

C. **Injunction.**

In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors, the Liquidating Trust, or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, the Liquidating Trust, or any of the Liquidating Trust Assets, with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estates, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, or the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors, or the Liquidating Trust under the Plan.

Notwithstanding the foregoing, the foregoing injunction does not apply to the Participating Lenders' recovery of their Collateral or the proceeds thereof in accordance with the Term Sheet.

D. **Post-Confirmation Liability of the Liquidating Trustee.**

As further set forth in Sections 4.4, 4.5, and 4.6 of the Liquidating Trust Agreement, which are incorporated herein by reference, the Liquidating Trustee, the members of the Liquidating

Trust Oversight Committee, and all consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and professionals engaged by the Liquidating Trust (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, Causes of Action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Interests for any action or inaction taken in good faith in connection with the performance or discharge of their duties under the Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, bad faith, self-dealing, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of a court of competent jurisdiction). However, any act or omission taken with the approval of the Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud, bad faith, self-dealing, or willful misconduct. In addition, the Liquidating Trust and the Estates shall, as applicable and to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust, and the Estates or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Trust and the Estates. To the extent the Liquidating Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidating Trust Expenses.

### E.   Survival of Exculpation and Indemnification.

All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

### F.   Preservation of Rights of Action.

Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors hold or may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust, save and except for the TBK/Triumph Retained Causes of Action.

Except as otherwise provided in the Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action the Estates hold or may hold against any Entity, in accordance with the terms of the Plan and the Liquidating Trust Agreement, as applicable, and without further order of the Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases.

Liquidating Trust Assets and recoveries therefrom shall remain the sole property of the Liquidating Trust for the ratable benefit of the Beneficiaries of the Liquidating Trust, and holders of Unsecured Claims shall have no direct right or interest in to any such Liquidating Trust Assets or recovery therefrom.

### G.  Preservation of All Causes of Action Not Expressly Settled or Released.

Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan (including, without limitation, pursuant to the Debtor/Estate Release) and/or or any Final Order (including the Confirmation Order), the Debtors, and the Liquidating Trustee expressly reserve such retained Cause of Action for later adjudication by the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order). In addition, the Debtors, and the Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtors are defendants or interested parties against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Subject to the immediately preceding paragraph, any Entity to which the Debtors have incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtors or a transfer of money or property of the Debtors, or that has received services from the Debtors or a transfer or money or property of the Debtors, or that has transacted business with the Debtors, or that has leased property from the Debtors, should assume and is hereby advised that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or Liquidating Trustee have objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent, or unliquidated; or (vi) the Debtors have identified any potential claim or Cause of Action against such Entity herein or in the Disclosure Statement.

### H.  Reservation of Governmental Unit Rights

Nothing in this Order, the Plan, or Plan Documents discharges, releases, precludes, or enjoins any liability to a Governmental Unit of a non-debtor. Nothing in this Order, the Plan, or Plan Documents shall affect any setoff or recoupment rights of any Governmental Unit.

## SECTION XVII.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**A.  Conditions to Confirmation of the Plan.**

Confirmation of the Plan is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors: (i) the Court shall have approved this Combined Disclosure Statement and Plan; and (ii) the Debtors shall have determined that there will be sufficient Cash on the Effective Date to pay (or with respect to Disputed Claims to reserve for as required pursuant to the Plan) Allowed Administrative Claims, Non-Tax Priority Claims, and Priority Tax Claims in full (or in such lesser amount as may be agreed to by the applicable Claimant).

**B.  Conditions to the Effective Date.**

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors: (i) a Confirmation Order in form and substance reasonably acceptable to the Debtors shall have been entered by the Court and become a Final Order which is not subject to any stay of effectiveness; (ii) the Debtors have determined that all Estate assets that can be sold have been sold; (iii) the Liquidating Trust shall have been created pursuant to the terms of the Plan, the Liquidating Trustee shall have been appointed by order of the Court (which may be the Confirmation Order), and the Liquidating Trust Agreement shall have been executed by the Liquidating Trustee; and (iv) all other actions and documents determined by the Debtors to be necessary to implement the Plan shall have been effected and executed.

**C.  Waiver of Conditions Precedent.**

To the fullest extent permitted by law, the conditions to the Effective Date set forth in Section XVII.C. may be waived or modified in whole or in part at any time in writing by the Debtors without leave from or an order of the Court.

## SECTION XVIII.
## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

- To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim, proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

- To administer the Plan, the Liquidating Trust, the Liquidating Trust Assets, and the proceeds thereof;

- To estimate or liquidate any Disputed Claims;

- To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation (whether or not pending on the Effective Date); *provided however*, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions, including, but not limited to, the Court from and after the Effective Date;

- To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

- To hear and determine any and all applications by Professionals for an award of on account of any Professional Fee Claims;

- To enable the Liquidating Trustee to commence and prosecute any Litigation which may be brought after the Effective Date whether in the Court or another court of competent jurisdiction;

- To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

- To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

- To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

- To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

- To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable; and

- To close the Chapter 11 Cases when the administration of the Chapter 11 Cases has been completed.

- To adjudicate a motion to extend the term of the Liquidating Trust as provide under Section XIV.N hereof (whether or not the Chapter 11 Cases have been otherwise closed).

- To hear disputes related to the Term Sheet.

- To enter any orders necessary or appropriate to approve and/or effectuate the sale or other disposition of any Residual Real Property.

- To hear and adjudicate any matters concerning the Liquidating Trust or the Residual Real Property and any other matters related to the implementation of the Plan.

### SECTION XIX.
### MISCELLANEOUS PROVISIONS

#### A.  Payment of Statutory Fees / Closing of Chapter 11 Cases.

All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtors.

As of the Effective Date, all of the Debtors' cases shall be automatically deemed closed, other than the chapter 11 case of Debtor Kal Aviation LLC (24-90615 (CML)); the Liquidating Trust shall be entitled to submit an order and final decree closing such cases and granting related relief under certificate of counsel following the Effective Date.

#### B.  Revocation of the Combined Plan and Disclosure Statement.

The Debtors reserve the right to revoke and withdraw the Combined Plan and Disclosure Statement at any time on or before the Confirmation Date. If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

#### C.  Severability of Plan Provisions.

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

#### D.  Exhibits.

All exhibits attached to the Combined Plan and Disclosure Statement and the Plan Supplement are, by this reference, hereby incorporated herein. The Debtors reserve the right to make non-substantive changes and corrections to such Exhibits in advance of the Confirmation Hearing. If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Court prior to the commencement of the Confirmation Hearing.

### E.  **Notices.**

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

Counsel for Debtors:

PACHULSKI STANG ZIEHL & JONES LLP
Teddy M. Kapur (SBT 24046186)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
tkapur@pszjlaw.com; mlitvak@pszjlaw.com; bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted pro hac vice)
Jeffrey W. Dulberg (admitted pro hac vice)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com; jdulberg@pszjlaw.com

### F.  **Reservation of Rights.**

Neither the filing of the Combined Plan and Disclosure Statement nor any statement or provision contained in the Combined Plan and Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Combined Plan and Disclosure Statement nor any statement contained in the Combined Plan and Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Cases involving the Debtors, except with respect to Confirmation of the Plan.

### G.  **Defects, Omissions and Amendments.**

The Debtors may, with the approval of the Court and without notice to all Holders of Claims or Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended

before or after Confirmation as provided in Section 1127 of the Bankruptcy Code if, in the opinion of the Court, the modification does not materially and adversely affect the interests of Holders of Claims so long as the Plan, as modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial Consummation in a manner which, in the opinion of the Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code Sections 1122 and 1123, the Debtors have complied with Bankruptcy Code Section 1125 and, after notice and a hearing, the Court confirms such Plan, as modified, under Bankruptcy Code Section 1129.

## H.  Filing of Additional Documents.

The Debtors shall file with the Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## I.  Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

## J.  Setoffs and Recoupments.

The Debtor(s) or Liquidating Trust, as applicable, may, but shall not be required to, set off against or recoup from the payments to be made pursuant to the Plan in respect of a Claim, any claim or cause of action of any nature whatsoever that the Debtors, the Liquidating Trust, or the Estates, as applicable, may have against the Holder of such Claim (pursuant to section 553 of the Bankruptcy Code or other applicable bankruptcy or non-bankruptcy law), but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtors, the Liquidating Trust, or the Estates, against such Holder, *provided, however*, that no entity shall be entitled to setoff or recoup against proceeds of Collateral held in trust for the benefit of Participating Lenders, which proceeds shall be immediately remitted to the Participating Lenders.

## K.  Tax Exemption.

Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including, without limitation, any transfers to or by the Debtors, if on the Effective Date, and the Liquidating Trustee, if after the Effective Date, of the Debtors' property in implementation of or as contemplated by the Plan (including, without limitation, any subsequent transfer of property by the Liquidating Trust) shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the

payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

### L.  Securities Exemption.

To the extent the Liquidating Trust Interests are deemed or asserted to constitute securities, the Liquidating Trust Interests and the issuance and distribution thereof shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, Section 1145 of the Bankruptcy Code.

### M. Implementation.

Upon Confirmation, the Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

### N.  Record Date.

To the extent a "Record Date" is required for implementation of the Plan, the record date shall be the voting record date established by the Court in the order conditionally approving the Disclosure Statement or such other date as the Court may set.

### O.  Certain Actions.

By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors, members, managers or other Interest Holders of the Debtor under the Plan, including, without limitation, (i) the Distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, (iii) the cancellation, annulment, and extinguishment of all Interests; and (iv) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable corporation/limited liability company laws, without any requirement of further action by the directors, members, managers or other Interest Holders of the Debtors, irrespective of whether the Confirmation Order specifically authorizes any such action.

### P.  Substantial Consummation.

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code Sections 1101 and 1127(b).

**Q.  Waiver of Fourteen-Day Stay.**

The Debtors request as part of the Confirmation Order a waiver from the Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

**R.  Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

**S.  Entire Agreement.**

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan. In the event of any conflict between the Plan and the Term Sheet, the Term Sheet shall prevail.

**T.  Triumph and TBK.**

Except as expressly provided otherwise in the Settlement Order, Triumph and TBK retain: (a) all of their liens and security interests, all of which survive confirmation of the Plan and (b) all other rights and benefits under the Factoring Agreements and the Financing Orders, all of which survive confirmation of the Plan. To the extent not previously terminated, all of Triumph's obligations under the Factoring Agreements and under any court orders relating to Triumph are terminated on the Effective Date. Any and all personal guarantees, guaranties of entities other than the Debtors, and all collateral granted to Triumph by the Debtors and by any other person or entity, survive unaffected by confirmation of the Plan, and Triumph retains all rights, liens, and claims related thereto.

**SECTION XX.**
**RECOMMENDATION**

The Debtors strongly recommend that all creditors receiving a Ballot vote in favor of the Plan. The Debtors believe that the Plan is in the best interests of creditors. The Plan as structured, among other things, allows creditors with Allowed Claims to participate in distributions believed to be in excess of those that would otherwise be available were the Chapter 11 Cases dismissed or converted under Chapter 7 of the Bankruptcy Code and minimizes delays in recoveries to creditors.

**FOR ALL THE REASONS SET FORTH IN THIS DISCLOSURE STATEMENT, THE DEBTORS BELIEVE THAT THE CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER ALTERNATIVES. THE DEBTORS URGE ALL CREDITORS ENTITLED TO VOTE TO ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR BALLOTS SO THAT THEY WILL BE RECEIVED BY 4:00 P.M. CENTRAL TIME ON APRIL 4, 2025.**

Dated: April 8, 2025                    Respectfully submitted,

                                        KAL FREIGHT INC. AND ITS DEBTOR
                                        AFFILIATES


                                        */s/ Bradley D. Sharp*
                                        Bradley D. Sharp
                                        Chief Restructuring Officer

# EXHIBIT A
## Corporate Chart

*Organizational Chart*



25

# EXHIBIT B
## Debt Summary

| LENDER | DEBTOR(S) | APPROX. PRINCIPAL BALANCE[a] | ASSERTED COLLATERAL[b] | DATE OF ORIGINAL UCC FILING |
|---|---|---|---|---|
| TBK Bank, SSB | Kal Freight | $63,635,329 | All assets, including identified equipment and proceeds | Dec. 22, 2020 |
| | Kal Trailers | $3,026,443 | | |
| | KVL Tires | $1,448,504 | | |
| | Kal Partz | $202,027 | | |
| Daimler Truck Financial Services USA LLC / Mercedes-Benz Financial Services USA LLC | Kal Freight | $132,596,479 | Identified equipment and proceeds | Dec. 20, 2021 |
| | Kal Trailers | $1,943,825 | | |
| Banc of America Leasing & Capital, LLC | Kal Freight | $23,624,631 | Identified equipment and proceeds | Aug. 5, 2022 |
| | Kal Trailers | $4,363,415 | No UCC financing statements filed against Kal Trailers | |
| | KVL Tires | $1,111,768 | Identified equipment and proceeds | |
| | Kal Partz | $217,726 | No UCC financing statements filed against Kal Partz | |
| | Kal Freight | $10,181,848 | Identified equipment and proceeds | Sept. 13, 2022 |

| LENDER | DEBTOR(S) | APPROX. PRINCIPAL BALANCE[a] | ASSERTED COLLATERAL[b] | DATE OF ORIGINAL UCC FILING |
|---|---|---|---|---|
| Wells Fargo Equipment Finance, Inc. / Wells Fargo Bank, N.A. | KVL Tires | $104,712 | Identified equipment and proceeds | |
| | Kal Partz | $340,256 | Identified equipment and proceeds | |
| Webster Capital Finance, a Division of Webster Bank, N.A. (as assignee of JPMorgan Chase Bank, N.A.) | Kal Freight | $13,534,457 | Identified equipment and proceeds | Sept. 9, 2022 |
| Truist Equipment Finance Corp. (as assignee of Banc of America Leasing & Capital LLC) | Kal Freight | $16,470,214 | Identified equipment and proceeds | Mar. 1, 2023 |
| De Lage Landen Financial Services, Inc. | Kal Freight | $3,519,034 | Identified equipment and proceeds | June 9, 2022 |
| JPMorgan Chase Bank, N.A. | Kal Freight | $3,289,740 | All personal property assets, rents, and proceeds from real property located at 14765 Valley Blvd., Fontana, California | Mar. 18, 2022 |
| BMO Bank N.A. (f/k/a BMO Harris Bank N.A.) | Kal Freight | $5,302,909 | No UCC financing statement filed against Kal Freight | Dec. 12, 2022 |
| | Kal Trailers | $6,132,334 | Inventory of new and used vehicles | |

| LENDER | DEBTOR(S) | APPROX. PRINCIPAL BALANCE[a] | ASSERTED COLLATERAL[b] | DATE OF ORIGINAL UCC FILING |
|---|---|---|---|---|
| First Western Bank & Trust | KVL Tires | $149,866 | Identified equipment and proceeds | July 21, 2023 |
| Byline Bank | KVL Tires | $64,856 | Identified equipment and proceeds | Mar. 22, 2024 |
| First Security Bank | Kal Freight | $1,840,767 | No UCC financing statements filed against Kal Freight | N/A |
| Ford Motor Credit Company, LLC | Kal Freight | $10,762 | No UCC financing statements filed against Kal Freight | N/A |
| M&T Capital and Leasing Corp. (f/k/a People's Capital and Leasing Corp.) | Kal Freight | $391,065 | No UCC financing statements filed against Kal Freight | N/A |
| Transportation Alliance Bank, Inc. | Kal Freight | $4,274,485 | No UCC financing statements filed against Kal Freight | N/A |
| U.S. Bank Equipment Finance (as assignee of Banc of America Leasing & Capital, LLC) | Kal Freight | $4,564,707 | No UCC financing statements filed against Kal Freight | N/A |
| Wallwork Financial Corporation | Kal Freight | $1,054,400 | No UCC financing statements filed against Kal Freight | N/A |
| PACCAR Financial Corp. (as assignee of Rush Truck Centers of California, Inc.) | Kal Trailers | $7,546,402 | No UCC financing statements filed against Kal Trailers | N/A |

| LENDER | DEBTOR(S) | APPROX. PRINCIPAL BALANCE[a] | ASSERTED COLLATERAL[b] | DATE OF ORIGINAL UCC FILING |
|---|---|---|---|---|
| Flushing Back (as assignee of Banc of America Leasing & Capital, LLC) | Kal Freight | $2,464,979 | No UCC financing statements filed against Kal Freight | N/A |
| United States Small Business Administration | Kal Freight | $150,000 | All tangible and intangible personal property | June 16, 2020 |
| Advance Business Capital d/b/a Triumph Business Capital | Kal Freight | $5,717,512 | All assets, including purchased accounts | |
| | Kalway[c] | $272,660 | | |
| | SPG[c] | $7,077,543 | | |
| | Protec[c] | $1,462,922 | | |
| WEX Bank | Kal Partz | $1,160,792 | Purchased accounts | |
| | KVL Tires | | | |

---

[a]    As of November 10, 2024, unless otherwise indicated.
[b]    Based on UCC financing statements filed in the jurisdictions in which each of the Debtors is incorporated.  Without limitation, certain liens may be reflected on vehicle titles or may be covered by UCC financing statements filed by "authorized representatives" reflected in the Summary Chart.
[c]    Non-Debtor; listed amounts as of November 14, 2024.

# GZJ IDKV'E
## Liquidation Analysis"

**Kal Freight, Inc. et al.**
Liquidation Analysis - Chapter 7

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Non-Consolidated Debtors | | | | | | | | | | | | | | | Consolidated Debtors | | |
| | Estimated Allowed Claim | Kal Aviation, LLC | Recovery % | Estimated Allowed Claim | Kal Freight, Inc. | Recovery % | Estimated Allowed Claim | Kal Partz, Inc. | Recovery % | Estimated Allowed Claim | Kal Trailers & Leasing, Inc. | Recovery % | Estimated Allowed Claim | KVL Tires, Inc. | Recovery % | Estimated Allowed Claim | Consolidated Debtors | Recovery % | Notes |
| **Wind-Down** | | | | | | | | | | | | | | | | | | |
| Cash | | 91 | 100% | | 374,862 | 100% | | 2,909 | 100% | | 14,668 | 100% | | 7,404 | 100% | | 399,934 | 100% | [1] |
| Accounts Receivable | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | [2] |
| Inventory | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | [3] |
| Other Current Assets | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | [4] |
| Secured Lender Equipment | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | [5] |
| Intercompany Receivable | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | [6] |
| Other Assets | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | | 0 | 0% | [7] |
| Unencumbered Asset Sale | | 0 | | | 10,133,180 | | | 0 | | | 0 | | | 0 | | | 10,133,180 | | [8] |
| **Cash Available for Distribution** | | 91 | | | 10,508,041 | | | 2,909 | | | 14,668 | | | 7,404 | | | 10,533,113 | | |
| **Claims** | | | | | | | | | | | | | | | | | | |
| **Secured Claim Asset Liquidation** | | | | | | | | | | | | | | | | | | |
| Collateral Turnover Value | | 0 | | | 42,970,752 | | | 112,459 | | | 9,592,893 | | | 431,956 | | | 53,108,060 | | [9] |
| Secured Lender Claim Reduction | | 0 | | | (42,970,752) | | | (112,459) | | | (9,592,893) | | | (431,956) | | | (53,108,060) | | |
| **Net Secured Claim Paydown Proceeds** | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | |
| **Estimated Litigation Proceeds** | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | [10] |
| **Remaining Funds for Ch 7 Admin Claims** | | 91 | | | 10,508,041 | | | 2,909 | | | 14,668 | | | 7,404 | | | 10,533,113 | | |
| **Chapter 7 Creditor Payments** | | | | | | | | | | | | | | | | | | |
| Net Windown Costs | 0 | 0 | | 6,600,733 | (6,600,733) | | 0 | 0 | | 0 | 0 | | 0 | 0 | | 6,600,733 | (6,600,733) | | [11] |
| Chapter 7 Trustee Fees | 23 | (23) | | 338,491 | (338,491) | | 727 | (727) | | 2,217 | (2,217) | | 1,490 | (1,490) | | 339,243 | (339,243) | | [12] |
| Chapter 7 Priority Claims | 0 | 0 | | 250,000 | (250,000) | | 0 | 0 | | 0 | 0 | | 0 | 0 | | 250,000 | (250,000) | | [13] |
| **Total Chapter 7 Creditor Payments** | 23 | (23) | | 7,189,225 | (7,189,225) | | 727 | (727) | | 2,217 | (2,217) | | 1,490 | (1,490) | | 7,189,977 | (7,189,977) | | |
| **Remaining Funds for Chapter 11 Claims** | | 68 | | | 3,318,817 | | | 2,182 | | | 12,451 | | | 5,914 | | | 3,343,136 | | |
| Chapter 11 Admin Claims | 0 | 0 | | 10,316,473 | (3,318,817) | 32% | 0 | 0 | | 0 | 0 | | 0 | 0 | | 10,316,473 | (3,343,136) | 32% | [14] |
| Chapter 11 Priority Claims | 163,380 | (68) | 0% | 64,445 | 0 | 0% | 121,083 | (2,182) | 2% | 59,002 | (12,451) | 21% | 9,489 | (5,914) | 62% | 417,398 | 0 | 0% | [15] |
| **Total Chapter 11 Admin & Priority Claims** | 163,380 | (68) | 0% | 10,380,918 | (3,318,817) | 32% | 121,083 | (2,182) | 2% | 59,002 | (12,451) | 21% | 9,489 | (5,914) | 62% | 10,733,871 | (3,343,136) | 31% | |
| **Remaining Funds for General Uns. Creditors** | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | | 0 | | |
| Unsecured Distributions | 0 | 0 | | 252,616,842 | 0 | 0% | 6,020,296 | 0 | 0% | 100,958,618 | 0 | 0% | 7,584,181 | 0 | 0% | 367,179,937 | 0 | 0% | [16] |

**Kal Freight, Inc. et al.**
Liquidation Analysis - Chapter 7
Notes

[1]   Cash balance is bank balance per the February 28, 2025 statements.  Outstanding checks assumed paid as part of the Chapter 11 Admin AP

[2]   Accounts receivable recovery for Kal Freight is included in the Chapter 7 Net Winddown costs.  Accounts receivable for other Debtors is either overwhelmingly 90+ days past due or is inter-debtor receivables and deemed not recoverable.

[3]   Inventory to be sold via motion and is included in Chapter 7 Net Winddown costs.

[4]   Other current assets include other inter-debtor loans and security deposits deemed not recoverable

[5]   Secured lender equipment recovery is included in Secured Claim Paydown.

[6]   Intercompany receivables are determined to be not recoverable.

[7]   Other assets include deferred tax assets and goodwill, determined to be not recoverable.

[8]   Unencumbered assets to be sold include real property and unencumbered VINs

[9]   Recovery of collateral by secured lenders is assumed to be 15% of value of scheduled secured claims, remaining secured claim is treated as a unsecured deficiency claim.   Any collateral value sold by the lenders that results in proceeds exceeding the debt on that collateral is to be returned to the Debtors, however that is anticipated to be zero.

[10]  Litigation proceeds are currently unknown and assumed to be zero in a Chapter 7 liquidation.

[11]  Net costs (including accounts receivable recovery, invoice collection and shutdown expenses) to terminate operations, return collateral to the secured lenders as practical and fund a Chapter 7 liquidation with counsel, financial advisors, claims agent and US Trustee fees.

[12]  Chapter 7 Trustee fee handle based on total distributions.  The amount under consolidated debtors is less than combining all the amounts because under a consolidated Chapter 7 liquidation, only one Trustee fee is needed whereas under separate liquidations each Debtor would pay the Chapter 7 Trustee fee.

[13]  Chapter 7 proirty claims are employee termination and PTO payouts.

**Kal Freight, Inc. et al.**
Liquidation Analysis - Chapter 7
Notes

[14]   Current Chapter 11 admin claims include, but are not limited to, uncleared accounts payable
checks, unpaid insurance premiums, a post-petition accident insurance claim and certain
professional fees and expenses where actual amounts incurred exceed budgeted fee reserves.
Chapter 11 professional fee payments have been budgeted and reserved for in the PSZJ IOLTA
account.  Payment of approved Chapter 11 professional fees other than the certain professional
fees and expenses noted here would come from this reserve.  The administrative claim amount
included in this analysis is subject to change and is not intended to be a finalized administrative
claim amount.  Any professionals who have approved fees and expenses in excess of their
budgeted and reserved amounts would have an additional administrative claim.


[15]   Chapter 11 priority claims included in statements and schedules.  Claims for the Internal
Revenue Service were scheduled for $495,782.62 (Kal Freight) and $4,264,417.07 (Kal Trailers &
Leasing) but are treated as "Undetermined" and not included in the primary liquidation analysis
and thus not included here as they are also contingent, unliquidated and disputed.


[16]   Unsecured creditor pool for this analysis is the scheduled non-Debtor unsecured claims plus the
deficiency unsecured claims from the turnover of collateral to secured lenders and the lease
rejection claims.  It is likely that the actual unsecured creditor pool in a Chapter 7 liquidation
would be higher.  No distribution to priority or unsecured creditors is anticipated under a
Chapter 7 liquidation.

**Kal Freight, Inc. et al.**

Liquidation Analysis - Chapter 11 Orderly Liquidation

| | Estimated Allowed Claim | Plan Recoveries | Recovery % | Notes |
|---|---|---|---|---|
| **Transition Budget** | | | | |
| Starting Cash | | 457,541 | | [1] |
| Forecasted Transition Net Cash | | (6,106,228) | | [2] |
| Lender Funding of Shortfall | | 2,626,000 | | [3] |
| Principal Contribution | | 2,400,000 | | [4] |
| Unencumbered Trailer Sale | | 925,000 | | [5] |
| Post-Petition Expenses Paid from Transition Budget | | 4,427,874 | | [6] |
| Unencumbered Asset sale | | 8,208,180 | | [7] |
| Litigation Recoveries | | 0 | | [8] |
| **Cash Available for Distribution** | | 12,938,367 | | |
| | | | | |
| **Claims** | | | | |
| | | | | |
| **Unclassified** | | | | |
| Post-Petition Expenses Paid from Transition Budget | 4,427,874 | (4,427,874) | 100% | [9] |
| Post-Petition Expenses Paid from Available Cash | 2,138,105 | (2,138,105) | 100% | [10] |
| Priority Tax Claims | 341,591 | (341,591) | 100% | [11] |
| **Remaining Funds** | | 6,030,796 | | |
| | | | | |
| **Class 1** | | | | |
| Priority Non-Tax Claims | 75,807 | (75,807) | 100% | [12] |
| **Remaining Funds** | | 5,954,989 | | |
| | | | | |
| **Class 2** | | | | |
| Collateral Turnover Value | | 139,569,291 | | [13] |
| Prepetition Secured Lender Claim Reduction | | (139,569,291) | | [14] |
| **Remaining Funds** | | 5,954,989 | | |
| | | | | |
| **Class 3** | | | | |
| Unsecured Claims | 133,501,559 | (5,954,989) | 4% | [15] |
| **Remaining Funds** | | | | |
| | | | | |
| **Class 4** | | | | |
| Participating Lender Claims | 142,146,946 | 0 | | [16] |
| | | | | |
| **Remaining Funds** | | 0 | | |
| | | | | |
| **Class 5** | | | | |
| Inter-Debtor Claim Payment | 285,162,119 | 0 | 0% | [17] |
| **Remaining Funds** | | 0 | | |
| | | | | |
| **Class 6** | | | | |
| Funds to Ownership Interests | | 0 | | [18] |

**Kal Freight, Inc. et al.**
Liquidation Analysis - Chapter 11 Orderly Liquidation
Notes

[1]   Starting cash forecasted in the transition budget as of March 7, 2025

[2]   Forecasted net cash shortfall for the transition budget through week ending April 11, 2025

[3]   Anticipated lender funding of the shortfall in the transition budget

[4]   Funds contributed from the principal of the Debtors to fund the transition budget

[5]   Sale of unencumbered trailers to fund the transition budget

[6]   Post-petition expenses that are paid as part of the transition budget.  Administrative claims include, but are not limited to, uncleared accounts payable checks, unpaid insurance premiums, a post-petition accident insurance claim and certain professional fees and expenses where actual amounts incurred exceed budgeted fee reserves.  To properly show the waterfall with cash available for distribution, the claim amount is added back into "Cash Available for Distribution" and the claim payment is shown in that section of the waterfall.  The administrative claim amount included in this analysis is subject to change and is not intended to be a finalized administrative claim amount.

[7]   Unencumbered assets to be sold by the liquidating trust

[8]   Litigation recoveries by the liquidating trust are currently unknown and shown as zero.

[9]   Post-petition expenses that are paid in the transition budgets

[10]  Post-petition expenses that are paid from cash available for distribution.

[11]  Priority tax claims included in the filed statements and schedules.  Claims for the Internal Revenue Service "IRS" were scheduled for $495,782.62 (Kal Freight) and $4,264,417.07 (Kal Trailers & Leasing) but are treated as "Undetermined" and not included in this analyis as they are also contingent, unliquidated and disputed.  If these claims to the IRS are deemed allowed at any value, they will reduce, dollar for dollar, the amount of funds available to unsecured creditors.

[12]  Priority non-tax claims included in the filed statements and schedules

[13]  Turnover of collateral assumed to be 40% of value of scheduled secured claims

[14]  The secured claims are reduced by the estimated collateral value and the remaining deficiency claims will be treated as Class 3 (Unsecured Claims)

[15]  Unsecured claims from statements and schedules plus secured lender deficiency claims that are not waived and lease

[16]  The deficiency claim for participating secured lenders are waived under the plan and term sheet.  The Plan anticipates that these claims will not be paid, but the lenders will receive a release per the Plan.  Any collateral value sold by the lenders that results in proceeds exceeding the debt on that collateral is to be returned to the Debtors, however that is anticipated to be zero.

[17]  Unsecured Inter-Debtor claims included in the filed statements and schedules; no payment is expected

[18]  Equity and other ownership interests; no payment is expected

# **EXHIBIT D**
## **Schedule of Causes of Action**

### *Schedule of Causes of Action*[1]

The Causes of Action described and identified herein are intended to be numerous and may have varying degrees of value on an individual basis but are anticipated to have material value in the aggregate, the exact amount of which is indeterminate as of the date hereof.  The bases and nature of the Causes of Action described or identified herein, as well as the identification of persons or entities who may be defendants or the description of the classes or categories thereof, shall be read and interpreted as broadly as possible.  To the extent that a Cause of Action or a creditor or other party, person, or entity, may be construed as coming within the scope of any basis or nature of claim or description herein, they shall be interpreted as within the scope of such basis or description.  Without limiting the generality of the foregoing, the word "including (and, with correlative meaning, the forms of the word "include") shall mean including, without limiting the generality of any description preceding that word.[2]

### A.    Nature and/or Basis of Claims and Causes of Action

The Causes of Action shall include and except as may expressly be otherwise provided for or released under the Plan or prior order of the Bankruptcy Court, any claims, rights, and causes of action, whether based on the federal law of the United States, state law, municipal law, territorial law, the law of any other country (including Canada and India, inclusive of any of the provinces territories, municipalities or subdivisions thereof), nation, international law, or common law, or any other law or right, and whether arising in law or equity (or otherwise), and whether before or after the Petition Date, based on the following or as described in the Debtors' Schedules:

breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, breach of the duty of good faith, usurpation of corporate opportunities, breach of implied covenant of good faith and fair dealing, conversion, theft, misappropriation of assets, misappropriation of trade secrets, sharing of confidential information, unfair competition, breach of contract, breach of warranty, breach of promissory note, breach of any other duty or obligation, fraud, misrepresentation, constructive fraud, negligence, negligence per se, gross negligence, fraudulent conveyance, fraudulent transfer, quiet title, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, tortious interference, tortious interference with business relations, tortious interference with existing contracts, tortious interference with prospective contracts. intentional interference with prospective economic advantage, *quantum meruit*, unjust enrichment, money had and received, abuse of process, spoliation of evidence, alter ego, veil piercing, entity consolidation (including substantive consolidation), respondeat superior, vicarious liability, substantive consolidation, recharacterization, business disparagement, defamation, libel, slander, injurious falsehood, product liability, premises liability, indemnity, preference, account stated, claims for recovery of distributions or dividends, claims for

---

[1] For the avoidance of doubt, a capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

[2] For the avoidance of doubt, the Causes of Action shall include any pending litigation Debtors' Schedules of Assets and Liabilities (including as may be amended, the "Schedules") and that certain Adversary Proceeding assigned Bankr. S.D. Tex. Case No. 25-03048.

indemnification, promissory estoppel, equitable estoppel, judicial estoppel, quasi-contract claims, any counterclaims, all rights, claims and causes of action under the Bankruptcy Code (including equitable subordination, any equitable or injunctive relief (including any temporary restraining order, temporary injunction, or permanent injunction)), turnover, aiding and abetting any claim or cause of action (including any Cause of Action), conspiracy, extortion, racketeering (including any cause of action under civil Racketeer Influenced and Corrupt Organizations Act and any state law or other corollaries, including the California Control of Profits of Organized Crime Act, NJSA 2C:41-1, *et seq*, and Chapter 14 of Title 16 of the Georgia Code), avoidance actions provided for under Chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code, any objection or motion to disallow claims in accordance with sections 502 and 506(c) of the Bankruptcy Code, claims brought under state law (or the law of any province, municipality, subdivision, or territory), claims brought under federal law, claims brought under international law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims.

**B.      Potential Defendants and Classes and Categories of Defendants**

The Causes of Action shall include any claim or cause of action against persons and entities identified or otherwise described, categorized, classified, or referenced, unless expressly provided for in the Plan or prior order of the Bankruptcy Court, in the following:

(i) any persons or entities identified on the attached **Annex 1** hereto; (ii) any persons or entities identified on Attachment 3 to any of the Debtors' Statements of Financial Affairs as recipients of certain payments made within 90 days of the Petition Date, including the persons and entities identified on the attached **Annex 2**;[3] (iii) any person or entity identified or described in the Debtors' Schedules, including in the Global Notes thereto and in Schedule A/B, Part 11 thereof; (iv) any current or former insider (whether "statutory" or "non-statutory," including any Insider), including any persons or entities identified on Attachment 4 to any of the Debtors' Statements of Financial Affairs as recipients of certain payments made within 1 year of the Petition Date; (v) any current or former employee, officer, or director of the any of the Debtors or any affiliate or subsidiary of any of the Debtors; (vi) any person or entity that, at any time, held itself out as a principal, employee, officer, director, or agent of any of the Debtors or any affiliate or subsidiary of any of the Debtors; (vii) any person or entity that, at any time, asserted an interest in or control over the Debtors or any affiliate or subsidiary of any of the Debtors; (viii) any current or former shareholder or other equity-holder of any of the Debtors or any affiliate or subsidiary of any of the Debtors; (ix) any current or former contractor or vendor to any of the Debtors or any affiliate or subsidiary of any of  the Debtors; (x) any current or former insurer, surety, or insurance broker to any of the Debtors or any affiliate or subsidiary of any of the Debtors; (xi) any current or former professional (including any attorney, accountant, auditor, appraiser, broker, tax professional, or other consultant) retained by any of the Debtors or any subsidiary or affiliate of any of the Debtors, other than a Professional (except OCPs) retained in the Bankruptcy Court; (xii) any person or entity who had possession of or control over any of the Debtors' or any affiliate or subsidiary of any of the Debtors' books and records, in whole or in part, at any time; (xiii) any person or entity who

---

[3] For the avoidance of doubt, all Causes of Action and the bases and nature thereof described in section A of this Schedule of Causes of Action shall apply to all persons and entities identified on Annex 2 hereto.

received money, personal property, intangibles, or real property from any of the Debtors or any affiliate or subsidiary of any of the Debtors at any time; (xiv) any person or entity to which any of the Debtors or any affiliate or subsidiary of any of the Debtors incurred any obligation at any time; (xv) any person, entity, or governmental unit, asserting any lien, encumbrance, or interest in or on any property of any of the Debtors' or any affiliate or subsidiary of any of the Debtors' estates or any of the Liquidating Trust Assets; (xvi) any person or entity that was a party or beneficiary of any contract, lease, or settlement agreement (or similar agreement) with any of the Debtors or any affiliate or subsidiary of any of the Debtors, or their insiders (whether "statutory" or "non-statutory," including any Insider); (xvii) any Non-Participating Lenders; (xviii) any person or entity who entered into a service agreement with any of the Debtors or any affiliate or subsidiary of any of the Debtors; (xix) any person or entity who utilized any fuel card associated with any of the Debtors or any affiliate or subsidiary of any of the Debtors; (xx) any person or entity who leased or purchased any truck, trailer, vehicle, or other equipment from any of the Debtors or any affiliate or subsidiary of any of the Debtors at any time; (xxi) any person or entity who had any debt, claim, or obligation released, waived, or forgiven by any of the Debtors or any affiliate or subsidiary of any of the Debtors at any time; (xxii) any person or entity who acted in violation of, or with recklessness or disregard with respect to, any federal, state, local, or other applicable law with respect to or otherwise concerning any of the Debtors or any affiliate or subsidiary of any of the Debtors; and (xxiii) any person or entity who aided, aided and abetted, or otherwise assisted any person or entity identified or described in the foregoing sentence or the conduct identified, described, or referenced in section A hereof.  Additionally, with respect to any person or entity identified, referenced, or described in the foregoing (i) – (xxiii): (a) any entity owned directly or indirectly, whether in whole or in part, or otherwise controlled, or operated for the benefit of any person or entity identified or described herein; (b) any entity for which any person or entity identified or described herein is, or holds itself as, a principal, employee, agent, officer, member, or director; (c) any spouse, parent, grandparent, cousin, offspring, family member, or other relation of any person described herein; (d) any affiliate or subsidiary of any entity identified or described herein; and (e) any mediate or intermediate transferee from any person or entity identified or described herein.

**<u>ANNEX 1</u>**

- 1000790856 Ontario Inc.
- 1000798196 Ontario Inc.
- A&B Express
- A&B Xpress Inc.
- AAIS Insurance Company
- AAJ Freight Inc.
- Ace American Insurance Company
- Across America insurance Services, Inc.
- Ace Property and Casualty Insurance Co.
- Across America Insurance Company
- Adarsh Bajwa
- AIG
- Ajit Johal
- All Solutions Insurance Agency, LLC
- Amandeep Singh
- Amanjit Kaur
- Amit Jeed
- Amrit Bains
- Anjit Raghunathan
- APEX Freight LLC
- Ategrity Specialty Insurance Comany
- ATS World Wide Real Estate LLC
- Bachittar Singh
- Baljit Singh
- Bee UK Properties Ltd.
- Big Rig Partz Inc.
- Big Rig Tires & Services Inc.
- Big Rig Trailers
- Big Rig Trailers & Leasing Inc.
- Bikramjit Singh
- Binay Singh
- Brian Meith
- BRM LLC
- Brolly Risk Management, LLC
- Burlington Insurance
- Captain Transportation Inc.
- Chahal Freight Line Inc.
- Chubb Group of Insurance Co.
- CM Vantage Specialty Insurance Company
- Colony Insurance Company
- D&H XPRESS Inc.
- Deepanshu Agarwal
- Denise Kukral
- Dharminder Randhawa
- Dharminder Singh Randhawa
- Diamond X-Press LLC
- Dilroop Sandhu
- Divjot Kaur
- Five Star Carrier Xpress Inc.
- G & S Accountancy
- General Security Indemnity Co. of Arizona
- Gemini Insurance Company
- Grant Thornton Limited, as Foreign Representative, Trustee, and Receiver of the Big Rig entities or any other Foreign Representative, Trustee, or Receiver of the Big Rig entities
- Green America Trucking Inc.
- Greg McLaughlin
- Harco National Insurance Company
- Harpreet K Johal
- Harish Kapur
- Harjit Singh Bajwa
- Hardeep Singh
- Harpreet Sandhu
- Hudson Insurance Company
- Hudson Excess Insurance Company
- Incline Americas Insurance Company
- Indus Trans Inc.
- Insta Cargo Line Inc.
- Jagdeep Singh
- Jaspal Singh
- Jaspreet Singh
- Jatinderbir Singh
- JMD Customs Brokers Inc.
- John Fiddick
- Johnson's Heavy Towing, Inc.
- Kal Group Pvt Ltd (India)
- Kal Partz Franchise Corporation
- Kal Trans, Inc.
- KALTRANS INC
- Kalvinder Singh
- KALWAY Inc.
- Kapil Diwani
- Kinsale Insurance Company
- Kernail Singh
- Melysa Golder
- Landmark American Insurance Company
- Lexington Insurance Company
- Majha Trans Logistics Inc.
- Manjit Singh

- National Fire & Marine Insurance Company
- NECC/TAB
- Nirmaljit Kaur
- NNN REIT LP
- Noor K Baral
- Noor K Bhattal LLC
- Noor K Bhatal Real Estate LLC
- Noor Transport Leasing Inc.
- Noor Transport Leasing, LLC
- NorthX Logistics Ltd.
- Pardeep Singh
- Parminder Dhillom
- Phantom Trucking Inc.
- Pritpal Singh
- Pro Tec Inc.
- Pro Tec Repair Center LLC
- Rajpal Bhattal
- Rajpal Singh
- Raman Atwal
- Ranjit Singh
- RB Realty Investments
- Rich Fradin
- RLI Insurance Company
- Royal Bank of Canada
- Royal Truck and Trailer Sales Ltd.
- Rual Rodriguez
- Sameer Singh Pannu
- Sarwan Singh
- Satbir Singh
- Seven Star Trucking LLC
- Shikha Arora
- Sikander Randhawa
- Sikander Singh Randhawa
- Simran Singh
- SPG Transportation, Inc.
- Sukvhinder Singh
- Sukhwinder Singh
- Suranjit Barua
- Surjeet Singh
- Tejinder Singh
- Texas Trailer
- Texas Trailer Manufacturing LLC
- Thrive Hive Pvt Ltd
- Tires & Parts of America
- Tony Transportation, Inc.
- US Transline Inc.
- US Translink
- Vikram Chahal
- Vikrant Arora
- Wadson Trucking
- Walmart Canada Corp.
- Westrans USA LLC
- World Insurance Associates LLC
- XPT Partners, LLC

**ANNEX 2**

- 3IQ Corporation
- 4S Transport LLC
- 5Ab09 Transport Inc
- 8X8
- A & A Truck And Trailer Supply Inc.
- A One Truck & Trailer Repair
- AAA Pacific
- Aadan, Cabdirasaaq Ciise
- Abdalla, Yassir Bwana
- Abdi, Abdihakim Mohamed
- Abdi, Abdirizaq Ali
- Abdi, Ahmed M Ii
- Abdi, Ahmed Mohamed
- Abdi, Ahmed Yusuf
- Abdi, Ali Mohamed
- Abdi, Bacha Mahamoud
- Abdi, Deke Dahir
- Abdi, Hussein Abdulahi
- Abdi, Idiris
- Abdi, Kamaldin
- Abdi, Mohamud Mohamed
- Abdi, Mokhtar Haybe
- Abdi, Noor Mohamed
- Abdi, Sharif Makaraan
- Abdikarim, Ahmed
- Abdillahi, Mohamed Mahamoud
- Abdulahi, Mohamed Abdi
- Abdulaziz Ibrahim, Ibrahim
- Abdulkadir, Abass Mahadi
- Abdullahi Hajji, Abdinasir
- Abdullahi, Abdirizak Mohamed
- Abdullahi, Abdulwahab Muhumed
- Abdullahi, Ali Mohamed
- Abdullahi, Mohamud Yussuf
- Abdulle, Abdikarim Ahmed
- Abdulle, Osman A
- Abikar, Omar

- Abiyow, Mohamed
- Abiyow, Murjan M
- Abk Transport Inc
- Ace Trucking Inc
- Across Transit LLC
- Adan, Dahir Hassan
- Aden, Ahmed Mohamud
- Aden, Ibrahim Salad
- Adnan, Muhammad
- Adullahi, Ahmed Abdi Farah
- Advik Cargoline Inc
- Aes Indiana
- Ahmed Mohamed, Ibrahim
- Ahmed, Abdi Hassan
- Ahmed, Abdirahman Muse
- Ahmed, Abdullahi M
- Ahmed, Ahmed Farah
- Ahmed, Ali F
- Ahmed, Fuaad Ibrahim
- Ahmed, Hasan Shafici
- Ahmed, Hassan M Mohamed
- Ahmed, Mahamed Omar
- Ahmed, Mohamed Aden
- Ahmed, Mohamed Hassan
- Ahmed, Mohamed Hedar
- Ahmed, Shabaan Abdurasak
- Airgas USA, LLC
- Ajay
- Akashdeep Singh
- Akbar Trucking Incorporated
- Akhtar, Faiz
- Ali Yussuf, Yussuf
- Ali, Abdullah Mohammed
- Ali, Abdullani
- Ali, Bashir Abdulahi
- Ali, Daud A
- Ali, Hassan Abdirahman
- Ali, Mahad Sabriye
- Ali, Mohamed Abdi
- Ali, Mohamud Abdirahman

- Ali, Mohamud Hirsi
- Ali, Moustapha Daher
- Ali, Mursal Elmi
- Ali, Mustafe Farah
- Ali, Zakaria Farah
- Alinour, Hussein Abdi
- All American Claims Solutions Inc
- All Solutions Insurance
- Allhar, Sahil
- Alliant Insurance Services, Inc.
- Almo Trucking
- Amandeep, Amandeep
- Amarre, Abdulahi Mohamud
- American Express
- American Logistics Inc.
- Amin, Yogeshkumar Bhumiraj
- Amwins Specialty Casualty Solutions LLC
- Amza Memphis LLC
- Ankit
- Anmolpreet Singh
- Appdirect
- Araj Trucking Inc
- Arciniega, Marvin Elio
- Arizona Public Service Company
- Arkansas Department of Finance and Administration
- Armando Morales
- Armstrong Transport Group
- Arora, Vishal
- Arya, Balraj
- Aryan Transportation Inc
- Asgedom, Michael Tesfai
- Asphalt Service
- AT&T
- At&T Mobility
- Athens Logistics Inc
- Athwal Transport Inc
- Automann Inc
- Avila, Jose Guadalupe
- Awale, Mohamed Ali
- Awed, Guled H
- Awed, Mohamud Farah

- Awed, Sulleiman Ali
- Baba Mandeep Transportation Inc
- Bajuni Queen Transportation Inc
- Banks, Antonio Terrell
- Barkhdale , Mahad M
- Barkhdale, Abdirisaq Mohamed
- Barre, Elmi Mohamud
- Barre, Farhan Arreh
- Barre, Fuad Mohamud
- Bashir, Ahmed Farah
- Benny Cleaning Services LLC
- Benton County Collector
- Best Bay Trucking Corporation
- Best One Tire
- Best One Tire And Service
- of Mid-America
- Big Bird Transportation Inc
- Big Jones Trucking LLC
- Big Rig Tires And Alignment
- Bihe, Abshir Ahmed
- Bile, Hussein Abdi
- Bille, Mohamed Abdullahi
- Bira, Sandeep
- Bora, John
- Brar, Mandeep Singh
- Bravo, Michael
- Brezilien, Jean Yves
- Brian Mieth
- Bule, Abdikarim Omar
- Burhan, Mohamed Osman
- Burrtec Waste Industries, Inc
- Byk Cargo LLC
- California Department Of Taxes
- Cam Freight Inc
- Candor Tires Inc.
- Card Connect
- Cargo Solutions Express Inc
- Carolina Handling LLC
- Cascade Range Investments LLC
- Cassels Brock And Blackwell LLP
- Castano Quigley Cherami LLC
- Ceat Limited
- Cedillos, Jose A
- Chalaune , Kul Bahadur
- Chandler, Everett Wayne
- Chappell, Freddie Lee Jr
- Charter Communications
- Chaturvedi, Sunil Kumar
- Chhena Carrier Inc
- Choudhary, Rohit
- Christian Oliva
- Comcast
- Crov Distribution & Services
- Cruz Castillo, Roberto
- Cumberland Landscape Group
- Dahir, Mahamed Yusuf
- Dahiya, Ravinder
- DAT Solutions LLC
- Dayo, Abdisalan Daud
- Deepak, No Name Given 1
- Delta Transport LLC
- Deo, Dipendra
- Devender, No Given Name
- Dhaliwal, Paramjit Singh
- Dhillon, Nishan
- Dhillon, Prashant
- Dhot, Jaspal Singh
- Diamond X-Press LLC
- Dipleen Freight Inc
- Dirir, Abdi Mohamed
- Dirir, Hassan Farah
- Diriye, Mohamed Ali
- Don's Truck Towing And Truck Wash
- Downs Energy
- Dub, Pritpal
- Echo Global Logistics
- Edna Properties, LLC
- Egal, Mohamed Khalif
- Ege, Ali Hussien
- Elahi, Fazal
- Electronic Funds Source LLC
- Elmi, Mahdi Awale
- Empower Trust Company, LLC
- Evergy
- Factory Motor Parts
- Farah, Abdisadik Mohamed Op
- Farah, Kamil Mohamed
- Farooq, Abdul
- Fateh Usa Inc
- Ferrell Gas, LP
- Finlayson Logistic Assets, LLC
- First Insurance Funding
- Flores, Martin
- Fnu, Amrinder Singh
- Fnu, Ravinder Singh
- Fontana Water Company
- Fortson, Antonio G
- Freight Ninja LLC
- Fulton County Tax Commissioner
- Gadailay, Shubham
- Gagandeep Singh
- Gailbraith Van And Storage Co Inc
- Galaxa Inc
- Gary Hevener
- Gastokyle, Inc.
- Gautam Transport Inc
- Geedi, Abdikarim Aare Op
- Geedi, Ahmed Aare
- Gelle, Muse Abdi
- Ghotra Roadways Inc
- Ghotra, Neeraj Singh
- Gibbs, Johnny, Marrey
- Giftin, Ahmed Mohamed
- Gill, Gurbir Singh
- Gillz Inc
- Global Solution For Transportation LLC
- Global Tranz Enterprises LLC
- Global Truck Partz

- Global Truck Permits
- Global Trucking Permits
- God Grace Logistics Inc.
- Golden State Fasteners & Supply, Inc.
- Gomez, Jorge Alfonso
- Green America Trucking Inc
- Grewal Trans Inc
- Grote Industries
- Gurley, Brandon Jamell
- Gurmohan, No Name Given
- Haajir, Hassan Op
- Hagal LLC
- Haider, Ali
- Haji, Ahmed Ahmed
- Handule, Hussein Dahir
- Hannas Candle Co
- Harden, Timothy Alexander
- Harding Property LLC
- Hared Transportation LLC
- Harjeet Singh & Aliah Clark
- Corporation
- Harjit Singh
- Harmanjeet Singh, No Given Name
- Harmanjit Singh Gabrhi
- Harmu, Binyam Furi
- Hasan, Nur Ahmed
- Hassan, Abdikarim Ahmed R
- Hassan, Abdinur Adan
- Hassan, Abdiwali Yusuf
- Hassan, Ali Nour
- Hassan, Farhan Mohamed
- Hassan, Hussein A
- Hassan, Liban Yusuf
- Hassan, Mohamed Ahmed
- Hassen, Hassen Dawid
- HBH Logistics Inc
- Health Net Of California
- Heartland Payment Systems

- Hgrs Transport LLC
- Hill, Dale
- Hilow Trucking LLC
- Himanshu, No Given Name
- Hirsi, Assaid
- Hr Shaikh
- Husein, Yasin Abdulahi
- Husen, Mohamed Hasan
- Hussain, Atif
- Hussein Abubaker, Mohamed
- Hussein, Ahmed
- Hussein, Mohamed Abikar
- Hussein, Mohamed Hassan
- Hussein, Zakarie Abdullahi Op
- Ibrahim, Abukar Hussein
- Ibrahim, Ali Mahamuud
- Ibrahim, Aweis Ahmed
- Ibrahim, Mohamed Daud
- Idd, Asad Bayle
- Ilyas Trucking LLC
- Imperial County Treasurer
- Imperial Repair Group Inc.
- Inayat, Imran
- Indian American Trade Inc
- Infinitely Virtual
- Internal Revenue Service
- International Carrier Inc
- Interstate Batteries
- Isaq, Abdifatah Abdinur
- Ismail, Faical Abdallah
- Ismail, Said Mohamud
- Issa, Abdirahman Ahmed Ad
- Issa, Kedir Mohammed
- Issa, Yassien, Mohamed
- Isse, Muhyadin M
- J B Hanna LLC
- Jackson Lewis P.C.
- Jagga S Transport
- Jama, Muhidin Ahmed
- Jama, Selman Mohamed

- Jamal, Farah Ibrahim
- James, Shahzad
- Jangra, Poojan
- Janjua, Naveed
- Jashan Logistic Inc
- Jaspreet Singh
- Javed, Muhammad Rizwan
- Jaylani, Ahmed Ibrahim I
- Jbs Logistics LLC
- Jeffrey, Sattar
- Jeylani, Ahmed Mohamud
- Jibril, Mustafe Muse
- Johan, No Name Givne
- JP Morgan Chase Bank N.A.
- Kala, Rahul
- Kalif, Kader Ismail
- Kam Way
- Kamaljit Singh
- Kamboj, Davinder Pal
- Kamboj, Nikhil
- Kent A Youkey
- Kent Harris
- Khadka, Gajendra
- Khadka, Narendra Kumar
- Khan, Wadood Ahmad
- Kiros, Tewelde G
- Kool Freight Inc
- Krihan Consultancy LLC
- Ktm Trucking Inc
- Kumar, Amit Ii
- Kumar, Amit Iii
- Kumar, Ashok
- Kumar, Avinash
- Kumar, Dinesh
- Kumar, Dinesh Ii
- Kumar, Harsh
- Kumar, Manish
- Kumar, Mohit
- Kumar, Mukesh Iii
- Kumar, Nishant
- Kumar, Pankaj
- Kumar, Prince
- Kumar, Ramesh
- Kumar, Sachin
- Kumar, Sandeep

- Kumar, Sandeep Ii
- Kumar, Sandeep Iv
- Kumar, Sanjiv
- Kumar, Satish Ii
- Kumar, Shakti
- Kumar, Shubham
- Kumar, Vikas
- Kumar, Vishal
- Lal, Mohit
- Landcare USA LLC
- Lathar, Mohit
- Lgl Inc
- Lidher, Inderjeet Singh
- Lnu, Anil
- Lohian Transport Incorporated
- Los Angeles Freightliner
- Los Angeles Truck Centers, LLC
- Lovedeep Singh, No Given Name
- Lovish, No First Name
- Lowt, Harjinder Singh
- Ltp Trucking LLC
- Maas Logistics Inc.
- Mahal Transport
- Mahamed, Ali Hassan
- Mahamed, Tahliil Ahmed Op
- Mahamoud, Abdulaahi Egeh
- Mahamud Ali, Khadar
- Mahamud, Mustaf Mahamed
- Mahdi, Omar Mohamed
- Mahmoud, Jamel Salah
- Martin Lara
- Martinez Quiros, Julio
- Mathias, Samuel Christopher
- Maygag Transportation LLC
- Meerza, Syed Abul Hassan
- Melen Corp
- Melendez Hernandez, Alex E
- Menat, Ashokkumar Godadbhai
- Meza Transp Inc
- Mg Truck Parking

- Microsoft
- Milton Tyrone , Dozier
- Mire, Adam Osmail
- Mk Freight Inc
- Mode Transportation LLC
- Mohamed, Abdelmalik Mahmoud
- Mohamed, Abdile Shuriye
- Mohamed, Abdirahman Ii
- Mohamed, Abdulnour Othman
- Mohamed, Ahmed Mohamud
- Mohamed, Faisal Ibrahim
- Mohamed, Haybe Osman
- Mohamed, Hussein Farah
- Mohamed, Ibrahim Yahya
- Mohamed, Ilyaas Yasin
- Mohamed, Mahamudd Haji
- Mohamed, Mahmmud Abdi
- Mohamed, Mekael Ahmed
- Mohamed, Mohamed Abdirahman
- Mohammed , Farah Abdi
- Mohammed, Yusuf Ahmed
- Mohamud Yusuf, Farhan
- Mohamud, Ahmed Arab
- Mohamud, Mohamed Ahmed
- Mohamud, Mohamed Ahmed Ii
- Mohamud, Mohamed Osman
- Muhumed, Ahmed Dahir
- Muktar, Mohamud Yusuf
- Multani, Sukhwinder Singh

- Mursal, Rooble Ibrahim
- Musa, Mohammed Abdulqader
- Musse, Said Abdi
- MVSC
- Mzee, Ismail Mohamed
- Nagra, Avtar Singh
- Nagra, Gurkirat Singh
- Naji, Bashir Ahmed
- Narwal, Robin
- Nationwide Technologies Inc.
- Norfleet Transportation
- Nvj Transportation Inc
- Obsiye, Abdikarim Mahamud
- Ocean Fleet Inc
- Odowaa, Hirsi Warsame
- Om Guruji Transport Inc
- Omar, Abdulkhader Idris
- Omar, Abdulrahman Adam
- Omar, Ahmed Ismail
- Omar, Ahmed Yahye
- Omar, Muqtar Mohamed
- Osman, Abdulahi Omer
- Osman, Mohamed Borow
- Osoble, Ibrahim Mohamed
- Othman, Mahdi Ibrahim
- Owl Transport Inc.
- P&R Fleet Services Inc
- Pabla Express LLC
- Paddock Parking, LLC
- Pal, Ravi
- Pal, Ravi Ii
- Pal, Samir
- Pam Freight Inc
- Pandher, Karanvir Singh
- Pankaj, Fnu
- Pankaj, Pankaj
- Parkhouse Tire, Inc
- Patel, Ankit Kumar
- Pathward
- Pawar, Jaspal Singh
- Paycom Payroll LLC
- Pb07 Logistics
- Pb35 Logistics Inc

- Pcc Trucking LLC
- PCS Software, Inc.
- Perfect Union Insurance Agency
- Peter Holtz Cpa
- Pilot Travel Centers, LLC
- Pooni, Jaswinder Singh
- Premier Trailers, LLC
- Prepass
- Prime Trans Inc
- Qandid, Abdiyare Ahmed
- Quality Loan Service Corporation
- Rabi, Mohamed Wali
- Rahul, No Given Name
- Rajat, No Given Name
- Rajat, No Name Given Ii
- Rajat, Rajat
- Rajo Transportation LLC
- Ram, Panch
- Ramila Corp
- Rana, Bhanwar
- Randhawa & Randhawa Transport Inc
- Ravinder Global Express Inc
- Ravinder, Fnu
- Relay Payments
- Relentless Crowned
- Reliable Premium Management Inc
- Rikit, No Name Given
- Riyalle, Ahmed Barkhad
- Roble, Abdi F
- Rocha, Tania Erendida
- Rogelio Negrete
- Rs Trucking Transport Inc
- Rupal Law
- Rush Truck Center
- S&S Trans Inc
- Sabiti, Riyad Abdalla
- Sagar, No Name Given
- Sagp Inc
- Sahib Singh Inc
- Sai Trucks Inc
- Said, Aidurus Issa

- Saini, Balwinder
- Saini, Mukesh
- Salad, Abdi Yasin
- Salah, Abdirahman H
- Salat, Abshir Suleiman
- Sampa Usa, LLC
- Samsara Inc
- Sandhu, Jagpreet Singh
- Saney, Abdinasir Mohamud
- Sanhotra, Gurpreet Singh
- Sant Cargo Inc.
- Santa Fe Management, Inc.
- Saran, Davinder Singh
- Sarwor, Md Shahid
- Sasa Transportation LLC
- Saul Rivera
- Sawan, Sawan
- Sbr Express Inc
- Se Lyallpur Logistics LLC
- Seed Logistics LLC
- Septo, Jeylani, Abdikadir
- Service Tire Truck Center Inc
- Shali, Abbas Mohamed
- Sharma, Ajay
- Sharma, Ashish
- Sharma, Sanjay
- Sharma, Vipul
- Sheikh Adan, Mohamed Nuur
- Shire, Gullied Hassan
- Shrestha, Bibek
- Sia Cargo-Inc
- Siad, Abdifatah Hassan
- Sidhanth, Sidhanth
- Sidhu, Gursahib Singh
- Sidhu, Hardeep Singh
- Sidhu, Shamsher Singh
- Siham Transportation LLC
- Singh, Abhijeet
- Singh, Achint Raj
- Singh, Amandeep 4
- Singh, Amandeep Iii
- Singh, Amanpreet Ii
- Singh, Amarjit Iv

- Singh, Amolak
- Singh, Amrit Pal Ii
- Singh, Amritpal 4
- Singh, Amritpal 5
- Singh, Amritpal 7
- Singh, Amritpal 8
- Singh, Attarpal
- Singh, Bahadur
- Singh, Baldeep Ii
- Singh, Baljeet 4
- Singh, Baljeet 7
- Singh, Baljinder Iv
- Singh, Baljit Iii
- Singh, Baljit Iv
- Singh, Baljit V
- Singh, Baljit Vi
- Singh, Balwinder 4
- Singh, Barinder
- Singh, Barinderjeet In R
- Singh, Bhagwan 2
- Singh, Bhupinder 2
- Singh, Charanjit
- Singh, Daljit 6
- Singh, Daljit 7
- Singh, Daljit 8
- Singh, Deshveer
- Singh, Devender
- Singh, Dharminder 2
- Singh, Fateh
- Singh, Gobindpreet
- Singh, Gulab Iii
- Singh, Gurcharan
- Singh, Gurdeep I
- Singh, Gurdev
- Singh, Gurdit
- Singh, Gurinder Pal
- Singh, Gurjant 3
- Singh, Gurjant Ii In R
- Singh, Gurjit
- Singh, Gurjodh
- Singh, Gurkaran
- Singh, Gurlal 1
- Singh, Gurminder
- Singh, Gurmukh Iii In R
- Singh, Gurmukh Iv
- Singh, Gurpreet
- Singh, Gurpreet ..
- Singh, Gurpreet 11
- Singh, Gurpreet 12
- Singh, Gurpreet 4
- Singh, Gurpreet 7

- Singh, Gurpreet Opx
- Singh, Gurpreet Xi
- Singh, Gurpreet Xii
- Singh, Gurpreet Xx
- Singh, Gurtek
- Singh, Gurvinder 1
- Singh, Gurwinder 5
- Singh, Gurwinder 6
- Singh, Gurwinder 7
- Singh, Gurwinder Iii
- Singh, Hardeep V
- Singh, Harjinder
- Singh, Harmandeep
- Singh, Harmaninder
- Singh, Harpal Ii
- Singh, Harpreet Iii
- Singh, Harshvir
- Singh, Harvinder
- Singh, Harwinder Iii
- Singh, Inderjeet Ii
- Singh, Inderjit
- Singh, Inderjit 4
- Singh, Inderjit Ii
- Singh, Jagdeep 5
- Singh, Jagdeep In R
- Singh, Jagjit Iii
- Singh, Jagmeet Ii
- Singh, Jagroop
- Singh, Jagroop Iii
- Singh, Jagwinder I
- Singh, Jajbir
- Singh, Jasbir Ii
- Singh, Jaspal Ii
- Singh, Jaspreet Iii
- Singh, Jasvinder Ii
- Singh, Jasvir
- Singh, Jasvir Iii
- Singh, Jasvir Iv
- Singh, Jasvir V
- Singh, Jaswant
- Singh, Jaswant 2
- Singh, Jaswinder 3
- Singh, Jaswinder 5
- Singh, Jobanpreet
- Singh, Jugraj Ii
- Singh, Kamaldeep In R
- Singh, Kamaljit
- Singh, Karandeep Ii
- Singh, Karanjit
- Singh, Karmajeet
- Singh, Karnail

- Singh, Kawalpreet
- Singh, Kewal
- Singh, Kuldeep 3
- Singh, Kulwinder Iii
- Singh, Lakhvinder V
- Singh, Lakhvir
- Singh, Lakhvir Ii
- Singh, Lakhwinder V
- Singh, Lakhwinder..Ii
- Singh, Lovekirat
- Singh, Lovepreet Ii
- Singh, Lovepreet Iii
- Singh, Lovepreet Iv
- Singh, Maan
- Singh, Malkeet
- Singh, Malkiat
- Singh, Malkit
- Singh, Malkit 2
- Singh, Mandeep 5
- Singh, Mandeep 6
- Singh, Mangal
- Singh, Maninder
- Singh, Maninder 3
- Singh, Maninder 7
- Singh, Maninder Ii
- Singh, Maninderpal
- Singh, Manjeet Iii
- Singh, Manjeet Iv
- Singh, Manjinder 6
- Singh, Manjinder Iii
- Singh, Manjinder Iv
- Singh, Manjinder Op Ii
- Singh, Manjinder V
- Singh, Manjit
- Singh, Manmohanjit
- Singh, Manpreet
- Singh, Manpreet 10
- Singh, Manpreet 4
- Singh, Manpreet 5
- Singh, Manpreet 9
- Singh, Manpreet Ii In R
- Singh, Manpreet.....V
- Singh, Mehtab
- Singh, Moninder
- Singh, Nampreet
- Singh, Nanak
- Singh, Narinder Ii
- Singh, Narinder Iii
- Singh, Navjot
- Singh, Navneet
- Singh, Nirmal

- Singh, Nishan
- Singh, Palvinder
- Singh, Papinder
- Singh, Paramjeet I
- Singh, Paramjit Ii
- Singh, Pargat
- Singh, Parminderjeet
- Singh, Parmjeet
- Singh, Parmroop
- Singh, Parvinder Iv
- Singh, Prabhjit 3
- Singh, Prabhjot 2
- Singh, Pritpal
- Singh, Rajdeep
- Singh, Rajinder Iii
- Singh, Rajwinder
- Singh, Rajwinder Ii
- Singh, Ramandeep Ii
- Singh, Ramanjit
- Singh, Randeep 4
- Singh, Randhir
- Singh, Ranjeet
- Singh, Ranjeet I
- Singh, Ranjit I
- Singh, Ranjit Iii
- Singh, Ranjit Iv
- Singh, Ranjit X
- Singh, Ranjit Xi
- Singh, Ravi
- Singh, Roshan
- Singh, Sanampreet
- Singh, Sandeep 6
- Singh, Sandeep Iv
- Singh, Sarabjit V
- Singh, Saravjeet 2
- Singh, Sarbjeet
- Singh, Sarbjit 5
- Singh, Sarbjit 6
- Singh, Sarbjit 7
- Singh, Sarbjit Iv
- Singh, Satnam
- Singh, Satnam Iii
- Singh, Satwant Ii
- Singh, Shamsher Iv
- Singh, Sharanjit Ii In R
- Singh, Simerjeet
- Singh, Sobpreet
- Singh, Sukhcharan
- Singh, Sukhdeep 2
- Singh, Sukhjinder
- Singh, Sukhpal

- Singh, Sukhpreet
- Singh, Sukhwinder 3
- Singh, Sukhwinder 6
- Singh, Sukhwinder Iv
- Singh, Suminderjit
- Singh, Sumit I
- Singh, Surinder Pal
- Singh, Surjeet Ii
- Singh, Tajinder
- Singh, Talwarn
- Singh, Tarnek
- Singh, Varinder Ii
- Singh, Vikram
- Singh, Vikramjit Ii
- Siyad, Abdi Ibrahim
- Sliet Logistics Inc
- Sohal, Gaganpreet Singh
- Southern California Edison
- Southern Tire Mart
- Southernlink LLC
- Sp Saab Trucking Inc
- Sparkletts
- Sta Inc.
- Stacked Logistics Corporation
- Stephens Jr, Treortic
- Stephens, Cecil Orlando
- Stewart & Stevenson
- Subhash, Subhash
- Sudan, Upkar Singh
- Sudhir, Sudhir
- Sumit, Fnu
- Tab LLC
- Tax Services
- Taya, Vikas
- Terreno Ahern LLC
- The Orantes Law Firm
- Tht Services Inc
- Tightline Trucking LLC
- Tijaara Logistics LLC
- Tiscareno Rodriguez, Julio C
- Tony, Tony
- Toor, Bikramraj Singh
- Toor, Jugnu Singh
- Total Quality Logistics
- Tramec Sloan LLC
- Trinity Trans Inc
- Trip Portfolio LLC
- Truckinggenics Inc
- Tsg Fleet Service, LLC
- Tst Trans Inc
- Tyronn, Stanford
- Unipack Trading Inc
- United Healthcare
- United Trans LLC
- Urban Villages San Marcos, LLC
- Us Premium Finance
- Usbd Freight Inc.
- Varstar Alliance
- Velasquez, Jesus Antonio
- Veritex Community Bank
- Verizon Wireless
- Victoria Serrano
- Vikas, No Name Given
- Vikas, Vikas
- Villas, Roman Angel
- Virk Consultants
- Vivek, No Given Name
- Wadhwa, Inderjeet Balvinder
- Wadson Trans LLC
- Walia, Harpreet Singh
- Warraich, Manjit Singh
- Warsame, Abdikadir M In R
- Warsame, Abdirizak Abdisalam
- Warsame, Said Ahmed
- Essential Card
- Wex Inc
- WFX Logistics, LLC
- Williams, Jeremy Maurice
- Willie, Nesby
- Windcave Inc.
- Woods, Kelvin Darnell
- World Truck Parts LLC
- Xtra Lease
- Yussuf, Jamaal
- Yusuf, Luqman Mohamed
- Yusuf, Mohamed M
- Zamora, Jose Luis
- Zs Trucking Inc.

# **EXHIBIT E**
## **Residual Real Property**

## **Exhibit E**

### *(Residual Real Property)*

- 15 NJ Route 173, aka 15 Frontage Road, Union, NJ 08827 (Hunterdon County)

- 14823 Valley Blvd., Fontana, CA 92335 (San Bernardino County)

- 14875 Valley Blvd., Fontana, CA 92335 (San Bernardino County)

- 14887 Valley Blvd., Fontana, CA 92335 (San Bernardino County)

- 3393 Jonesboro Rd, Atlanta GA 30354 (Fulton County)

- 8115 Las Cruces Dr, Laredo, TX 78045 (Webb County)

- 825 Navy Dr, Stockton , CA 95206 (San Joaquin County)

- 200 Galena Manor Dr, Houston, TX 77547 (Harris County)

- 9905 Clinton Dr, Houston, TX 77029 (Harris County)

- 801 Hampshire Road, Drexel Hill, PA 19026 (Delaware County)

- 14771 Washington Dr., Fontana, CA 92335 (San Bernardino County)

- 14875 Washington Dr., Fontana CA 92335 (San Bernardino County)

- 840 Emerson, Calexico, CA 92231 (Imperial County)

- 1803 Sheffield Blvd, Houston, TX 77015 (Harris County)

- 1815 Sheffield Blvd, Houston, TX 77015 (Harris County)

- 0 Ellen, Houston, TX 77015 (Harris County)

- 12901 Industrial Rd, Houston, TX 77015 (Harris County)

- 14765 Valley Blvd., Fontana, CA 92335 (San Bernardino County)

- Conestoga Park (Lots 4, 5, 6, 7, 8), Springdale, AR 72764 (Benton County)

- 20634 Tracy Ave, Buttonwillow, CA 93206 (Kern County)