**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>Kal Freight Inc., *et al.*,<br><br>               Debtors.[1] | Chapter 11<br><br>Case No. 24-90614 (CML)<br><br>(Jointly Administered) |

**MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF
DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN OF
LIQUIDATION OF KAL FREIGHT INC. AND ITS AFFILIATED DEBTORS
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

(Related Docket Nos. 783 & 955)

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ............................................................................................2

II. BACKGROUND ..............................................................................................................6

III. SUMMARY OF THE PLAN.............................................................................................7

IV. THE PLAN SATISFIES EACH OF THE REQUIREMENTS FOR CONFIRMATION
UNDER THE BANKRUPTCY CODE ..............................................................................10

   A. The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code .......................................11

     i.   The Plan Meets the Requirements of Section 1122 of the Bankruptcy Code.............11

     ii.  The Plan Meets the Requirements of Section 1123(a) of the Bankruptcy Code ........12

   B. The Plan Complies With the Discretionary Provisions of Section 1123(b) of the
Bankruptcy Code .......................................................................................................15

     i.   The Exculpation Provision is Appropriate.................................................................15

     ii.  The Debtors' Releases of Claims Are Appropriate ...................................................18

     iii. The Injunction Provision Is Appropriate and Complies With the Bankruptcy Code. 20

   C. The Debtors Have Satisfied Section 1129(a)(2) of the Bankruptcy Code.........................21

     i.   The Debtors Have Complied With the Requirements of Section 1125 of the
Bankruptcy Code .....................................................................................................21

     ii.  The Debtors Have Complied With the Requirements of Bankruptcy Rules 3017(d)
and 3018(c) ..............................................................................................................22

     iii. The Vote Tabulation Satisfied Section 1126(c) and Bankruptcy Rule 3018(a) .........24

   D. The Plan Has Been Proposed in Good Faith (Section 1129(a)(3))...................................26

   E. Payments for Services and Expenses (Section 1129(a)(4)) .............................................27

   F. Directors and Officers (Section 1129(a)(5)) ..................................................................28

   G. Rate Changes (Section 1129(a)(6))...............................................................................29

   H. The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7))...................................29

I.   Acceptance by Impaired Classes (Section 1129(a)(8))...................................................30

J.   Treatment of Priority Claims (Section 1129(a)(9)) ............................................................31

K.   Acceptance by at Least One Impaired Class (Section 1129(a)(10))..................................33

L.   The Plan Is Feasible (Section 1129(a)(11)) .....................................................................33

M.  Payment of Certain Fees (Section 1129(a)(12)) ...............................................................34

N.   Continuation of the Debtors' Obligations to Pay Retiree Benefits (Section 1129(a)(13))......................................................................................................................35

O.   The Plan Satisfies the "Cramdown" Requirements of Section 1129(b)(1).......................35

    i.   The Plan Does Not Unfairly Discriminate Against the Deemed Rejecting Classes... 36

    ii.  The Plan Is Fair and Equitable as to the Deemed Rejecting Classes.......................... 37

P.   The Plan's Purpose is Consistent with the Bankruptcy Code (Section 1129(d)) .............38

**V. REPLY TO INFORMAL OBJECTIONS AND RESPONSES ...........................................49**

**VI. WAIVER OF THE STAY OF THE CONFIRMATION ORDER ...................................50**

**VII. CONCLUSION .......................................................................................................................50**

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*B.D. Int'l Disc. Corp. v. Chase Manhattan Bank (In re B.D. Int'l Disc. Corp.)*
701 F.2d 1071 (2d Cir. 1983) ................................................................. 26

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*
526 U.S. 434 (1999) ................................................................. 29, 37

*Clarkson v. Cooke Sale & Serv. Co. (In re Clarkson)*
767 F.2d 417 (8th Cir. 1985) ................................................................. 34

*Commodity Futures Trading Comm'n v. Weintraub*
471 U.S. 343 (1985) ................................................................. 17

*In re 203 N. LaSalle St. P'ship*
190 B.R. 567 (Bankr. N.D. Ill. 1995) ................................................................. 36

*In re 222 Liberty Assoc.*
108 B.R. 971 (Bankr. E.D. Pa. 1990) ................................................................. 36

*In re Adelphia Commc'ns Corp.*
368 B.R. 140 (Bankr. S.D.N.Y. 2007) ................................................................. 29

*In re Aztec Co.*
107 B.R. 585 (Bankr. M.D. Tenn. 1989) ................................................................. 36

*In re Block Shim Dev. Company-Irving*
939 F.2d 289 (5th Cir. 1991) ................................................................. 26

*In re Camp Arrowhead, Ltd.*
451 B.R. 678 (Bankr. W.D. Tex. 2011) ................................................................. 21

*In re Cypresswood Land Partners, I*
409 B.R. 396 (Bankr. S.D. Tex. 2009) ................................................................. 10

*In re Freymiller Trucking, Inc.*
190 B.R. 913 (Bankr. W.D. Okla. 1996) ................................................................. 36

*In re Heritage Org., L.L.C.*
375 B.R. 230 (Bankr. N.D. Tex. 2007) ................................................................. 12

*In re Hous. Reg'l Sports Network, L.P.*
505 B.R. 468 (Bankr. S.D. Tex. 2014) ................................................................. 17

*In re Idearc Inc.*
423 B.R. 138 (Bankr. N.D. Tex. 2009) ................................................................. 36

*In re J T Thorpe Co.*
308 B.R. 782 (Bankr. S.D. Tex. 2003) ................................................................. 10

*In re Lakeside Glob. II, Ltd.*
116 B.R. 499 (Bankr. S.D. Tex. 1989) ................................................................. 34

*In re Lapworth*
No. 97-34529, 1998 Bankr. LEXIS 1383 (Bankr. E.D. Pa. Nov. 2, 1998) ............................. 21

*In re Lason, Inc.*
300 B.R. 227 (Bankr. D. Del. 2003) ......................................................................... 29

*In re Lernout & Hauspie Speech Prods.*,
301 B.R. 651 (Bankr. D. Del. 2003) ......................................................................... 36

*In re Neff*
60 B.R. 448 (Bankr. N.D. Tex. 1985), *aff'd,* 785 F.2d 1033 (5th Cir. 1986) ........................... 29

*In re Orlando Investors, L.P.*
103 B.R. 593 (Bankr. E.D. Pa. 1989) ....................................................................... 34

*In re Performance Nutrition, Inc.*
289 B.R. 93 (Bankr. N.D. Tex. 1999) ........................................................................ 17

*In re Pisces Energy, LLC*
No. 09-36591-H5-11, 2009 WL 7227880 (Bankr. S.D. Tex. Dec. 21, 2009 ......................... 12

*In re Prussia Assocs.*
322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) ................................................................. 34

*In re PWS Holdings Corp.*, 228 F.3d 224, 248 (3d Cir. 2000) ..................................... 21

*In re Schepps Food Stores, Inc.*
160 B.R. 792 (Bankr. S.D. Tex. 1993) ..................................................................... 17

*In re Sea Garden Motel & Apartments*,
195 B.R. 294 (D.N.J. 1996) ................................................................................... 34

*In re Sentry Operating Co. of Tex., Inc.*
264 B.R. 850 (Bankr. S.D. Tex. 2001) ..................................................................... 11

*In re Sound Radio, Inc.*
93 B.R. 849 (Bankr. D.N.J. 1988) ........................................................................... 27

*In re Sun Country Dev., Inc.*
764 F.2d 406 (5th Cir. 1985) ................................................................................. 26

*In re Texaco Inc.*
84 B.R. 893 (Bankr. S.D.N.Y. 1988) ....................................................................... 21

*In re T-H New Orleans Ltd. P'ships*
116 F.3d 790 (5th Cir. 1997) ........................................................................... 26, 34

*In re Tribune Co.*,
464 B.R. 126 (Bankr. D. Del.), *modified*, 464 B.R. 208 (Bankr. D. Del. 2011) ................ 20, 34

*In re Vitro Asset Corp.*
No. 11-32600-HDH, 2013 WL 6044453, at *5 (Bankr. N.D. Tex.
Nov. 14, 2013) ................................................................................................... 11

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*
843 F.2d 636 (2d Cir. 1988) ............................................................................. 11, 34

*NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*
   48 F.4th 419 (5th Cir. 2022) .................................................................................. 16, 17

*NLRB v. Bildisco & Bildisco*
   465 U.S. 513 (1984) ................................................................................................. 26

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*
   119 F.3d 349 (5th Cir. 1997) ................................................................................. 19

*Official Comm. v. Michelson (In re Michelson)*
   141 B.R. 715 (Bankr. E.D. Cal. 1992) .................................................................... 21

**<u>Federal Cases</u>**

11 U.S.C. § 1114 ............................................................................................................ 35

11 U.S.C. § 1122 ........................................................................................................ 4, 11

11 U.S.C. § 1123(a) ............................................................................................ 12, 13, 14

11 U.S.C. § 1123(a)(1) ................................................................................................... 13

11 U.S.C. § 1123(b)(3)(A) ............................................................................................. 18

11 U.S.C. § 1125 .................................................................................................... 21, 26

11 U.S.C. § 1125(b) ....................................................................................................... 21

11 U.S.C. § 1125(e) ....................................................................................................... 26

11 U.S.C. § 1126(d) ....................................................................................................... 31

11 U.S.C. § 1126(g) ....................................................................................................... 25

11 U.S.C. § 1129 (a)(1) .................................................................................................. 11

11 U.S.C. § 1129 (a)(9) .................................................................................................. 13

11 U.S.C. § 1129(a) ....................................................................................................... 35

11 U.S.C. § 1129(a)(1) ................................................................................................... 11

11 U.S.C. § 1129(a)(10) ................................................................................................. 33

11 U.S.C. § 1129(a)(12) ................................................................................................. 34

11 U.S.C. § 1129(a)(13) ................................................................................................. 35

11 U.S.C. § 1129(a)(9)(A) .............................................................................................. 31

11 U.S.C. § 1129(a)(9)(B) .............................................................................................. 31

11 U.S.C. § 1129(a)(9)(C) .............................................................................................. 31

11 U.S.C. § 1129(a)(B) ................................................................................................... 35

11 U.S.C. § 1129(b)(1) ................................................................................................... 35

11 U.S.C. § 3018(a) ....................................................................................................... 23

11 U.S.C. § 507(a) .................................................................................................. 13, 31

11 U.S.C. § 507(a)(3) ............................................................................................. 31

11 U.S.C. § 507(a)(7) ............................................................................................. 31

11 U.S.C. § 507(a)(8) ............................................................................................. 32

28 U.S.C. § 1334 .................................................................................................... 10

28 U.S.C. § 1408 .................................................................................................... 10

28 U.S.C. § 1409 .................................................................................................... 10

28 U.S.C. § 157 ...................................................................................................... 10

## State Cases

H.R. Rep. No. 595, 95th Cong. 1st Sess. 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5962, 6368 (1977) ................................................................................................................. 11

S. Rep. No. 989, 95th Cong. 2d Sess. 126 (1978),
  *reprinted in* 1978 U.S.C.C.A.N. 5787, 5913 (1978) ...................................... 11, 21

## Out of State Cases

Fed. R. Bankr. P. 105(d)(2)(B)(vi) ....................................................................... 22

Fed. R. Bankr. P. 2002(b) ...................................................................................... 22

Fed. R. Bankr. P. 3002(c) ...................................................................................... 30

FED. R. BANKR. P. 3017 ................................................................................... passim

FED. R. BANKR. P. 3018 ................................................................................... passim

Fed. R. Bankr. P. 3020 ........................................................................................... 50

Fed. R. Bankr. P. 3020(e) ....................................................................................... 50

Fed. R. Bankr. P. 6004 ........................................................................................... 50

Fed. R. Bankr. P. 6004(h) ....................................................................................... 50

Fed. R. Bankr. P. 6006 ........................................................................................... 50

Fed. R. Bankr. P. 6006(d) ....................................................................................... 50

Kal Freight Inc. and its affiliated debtors (the "Debtors") submit this memorandum of law (the "Memorandum") in support of final approval of the Disclosure Statement and confirmation of the Plan.[2] Attached hereto is the Debtors' proposed order confirming the Plan (the "Proposed Confirmation Order").

This Memorandum, confirmation of the Plan, and entry of the Proposed Confirmation Order are supported by, *inter alia*, the following documents:

1) *Fourth Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 955] (including all exhibits thereto and as amended, supplemented, or otherwise modified from time to time, the "Combined Disclosure Statement and Plan" or, separately in relevant part, the "Disclosure Statement" or the "Plan"), filed on April 8, 2025;

2) *Order (I) Granting Interim Approval of the Adequacy of Disclosures in the Combined Plan and Disclosure Statement; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* [Docket No. 783] (the "Solicitation Procedures Order"), entered on March 13, 2025; and

3) The following documents were filed or are being filed substantially contemporaneously herewith:

   a. *Declaration of Bradley D. Sharp in Support of Confirmation of the Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 941] (the "Sharp Declaration");

   b. *Declaration Angela Tsai of Stretto Inc. Regarding the Solicitation and Tabulation of Ballots Cast on the Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 938] (the "Stretto Declaration"); and

   c. *Notice of Filing of Plan Supplement for the Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 846] and *Notice of Filing Plan Supplement for the Fourth Amended and Restated Combined Disclosure Statement and Plan of*

---

[2] Capitalized terms not defined herein shall have the meanings ascribed in the Combined Disclosure Statement and Plan.

*Liquidation of Kal Freight Inc. and Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 956] (collectively, the "<u>Plan Supplement</u>");

d.     The affidavits or other proofs of service of notices with respect to the Plan, Confirmation Hearing and solicitation of voting on the Plan (including, without limitation, Docket Nos. 847, 880, 910) (the "<u>Solicitation Service Filings</u>").

**I.**

**<u>PRELIMINARY STATEMENT</u>**

1.     The Debtors were founded in 2014 with just six trucks and grew into an integrated transportation and logistics business. The Debtors provided exceptional and cost-effective hauling and other logistics solutions to their customers and served as a "one-stop shop" for independent owner-operators in the trucking industry. As of the Petition Date, the Debtors were engaged in four business lines focused on the United States trucking and logistics industries, generally organized into (i) Kal Freight; (ii) Kal Partz; (iii) Kal Trailers; and (iv) KVL Tires.

2.     Notwithstanding their best efforts, the Debtors commenced the Chapter 11 Cases because of the strain on their operations caused by their over $313 million in debt and the various allegations of prepetition malfeasance levied against the Debtors.

3.     Since the Petition Date, the Debtors have taken affirmative steps to reduce and right-size their fleet of trucks and trailers in order to maximize the going concern value of the Debtors' enterprise and have surrendered dozens of trucks and trailers to date to various secured parties. The Debtors, their primary lenders, and the Committee also engaged with prospective purchasers regarding a sale of the Debtors' business. The Debtors' efforts resulted in the Court approving the Sale Order and Settlement Order. Docket Nos. 770; 857.

4.     The Settlement Order approved a Term Sheet and global settlement between the Debtors, the Committee, Triumph, TBK, Daimler, BALC, and Wells Fargo. The Term Sheet provides for the Participating Lenders to fund an orderly sale and wind down of the Debtors'

Estates and to waive their administrative and other claims, including deficiency claims—aside from their secured claims in the Rolling Collateral and the TBK/Triumph Collateral. The Participating Lenders are also agreeing not to assert any claims against the Liquidating Trust Assets. In exchange, and provided they fulfill their obligations under the Term Sheet, the Participating Lenders are receiving a release from the Debtors.

5.      The Sale Order authorized Kal Freight and Kal Trailers to enter into and consummate the Purchase Agreement pursuant to which Kal Freight and Kal Trailers are selling certain of their assets to Noor Transport Leasing, LLC ("Noor"). As disclosed in the Sale Motion, Noor has certain affiliations with the Debtors' principals; however, the Purchase Agreement provides $3.25 million in proceeds to the Estates and Noor is assuming substantial Estate liabilities. The Debtors are otherwise effectuating an orderly wind-down of their remaining assets and operations. The Effective Date will occur when all or substantially all of the Collateral has been liquidated or abandoned to Creditors.

6.      On the Effective Date, the Debtors will transfer the Liquidating Trust Assets to the Liquidating Trust. The Liquidating Trustee will conduct an investigation into those Causes of Action transferred to the Liquidating Trust for the benefit of the general unsecured creditors and will liquidate, collect, sell, or otherwise dispose of the transferred assets and distribute all net proceeds to Creditors in accordance with the priority scheme under the Bankruptcy Code and the Plan. There will be no distributions to Holders of Interests.

7.      The Plan should be confirmed for the following reasons:

8.      *First*, the Plan provides creditors with the best return that can be achieved under the circumstances of this case. Under the Plan, Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims will be paid in full. The Holders of General Unsecured Claims will

receive a Pro Rata share of the Liquidating Trust Interests, which entitle the Beneficiaries thereof to the net proceeds of the Liquidating Trust Assets, which likely far exceeds any distribution that they would otherwise receive under a chapter 7 liquidation.

9.      *Second*, the Plan implements the global settlement by and among the Debtors, the Committee, and the Participating Lenders as set forth in the Term Sheet, which paved the way to a prompt resolution of this case. *See* Plan; Docket Nos. 691, 770.

10.     *Third,* the Plan has the support of the Debtors' creditors. Class 3 Unsecured Claims voted 84.48% in number and 88.23% in amount to approve the Plan. Under the Plan, each Class 2 Other Secured Claim is treated as a separate subclass for voting purposes. In aggregate 56.71% of the amount of Class 2 Other Secured Claims voted to approve the Plan. 3 out of the 10 Class 2 (Other Secured Claims) voted to approve the Plan. Class 4 Participating Lender Claims is deemed to accept in accordance with the Term Sheet and Settlement Order.

11.     *Finally*, the Plan complies with all applicable provisions of title 11 of the United States Code (as amended, the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). As demonstrated in Section IV herein, the Plan satisfies all of the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

12.     **Further, the Committee supports the confirmation of the Plan.**

13.     The following objections to confirmation of the Plan (collectively, the "Plan Objections") were filed:

- *Tennessee Department of Revenue's Objection to Confirmation of Chapter 11 Plan* [Docket 856] ("Tennessee Objection");

- *Objection of the United States Trustee to the Third Amended and Restated Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 896] ("UST Objection");

- *Joint Limited Objection of the Texas Taxing Authorities to the Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight and Its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Docket No. 897] ("Texas Objection");

- *Limited Objection to Confirmation of Plan [Docket #845] of Theresa Grote, as Administrator of the Estate of Karen E. Bucklew and Kelley Jo Speicher, as Administrator of the Estate of Tommy Yaqub* [Docket Nos. 899, 900] ("Grote/Speicher Objections");

- *Jarvis Reynard Edwards's Limited Objection to the Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 901] ("Edward Objection", and collectively with the Grote/Speicher Objections, the "Personal Injury Claimant Objections");

- *Objection of the Chubb Companies to Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 902] (the "Chubb Objection");

- *U.S. Bank National Association d/b/a U.S. Bank Equipment Finance's Limited Objection to Debtors' Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 903] (the "U.S. Bank Objection");

- *Objection of Mitsubishi HC Capital Canada, Inc., Truist Equipment Finance Corporation, De Lage Landen Financial Services, LLC, and Fifth Third Bank, N.A. to Final Approval and Confirmation of Debtors' Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation* [Docket No. 904] (joined by Paccar Financial Corp. [Docket No. 909]) (together, the "Objecting Lender Objection");

- *TBK Bank, SSB's Limited Objection to Debtors' Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation* [Docket No. 911] (the "TBK Objection");

- *Daimler Truck Financial Services USA LLC's Limited Objection to Debtors' Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation* [Docket No. 913] (the "Daimler Objection"); and

- *Objection and Reservation of Rights of FRIND-Aerotropolis, LLC, to Confirmation of Third Amended and Restated Plan of Liquidation of Kal Freight Inc. and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 928] (the "FRIND Objection").

The Debtors believe that the foregoing objections have either been resolved through the Proposed Confirmation Order or that they should be overruled for the reasons set forth herein.

14.     The Debtors received additional informal comments to the Plan, which have been addressed to the best of the Debtors' knowledge in the Proposed Confirmation Order or as otherwise set forth below.

15.     Together, this Memorandum, the Combined Disclosure Statement and Plan, the Sharp Declaration, the Stretto Declaration, and the Solicitation Service Filings, along with the files and records in this case, reflect that the Plan complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and provide the legal and evidentiary bases necessary for this Court to confirm the Plan.

## II.

## **BACKGROUND**

16.     On December 5, 2024 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

17.     On December 18, 2024, the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee, consisting of the following four members: (i) Donaldson Company, Inc.; (ii) Maxam Tire North America, Inc.; (iii) Continental Tire the Americas, LLC; and (iv) 3G Sillect Partners LP. Docket No. 184.

18.     Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Bradley D. Sharp in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 5] (the "First Day Declaration"), which is incorporated herein by reference.

19.     On March 13, 2025, the Debtors filed the *Second Amended and Restated Combined Disclosure Statement and Plan of Liquidation of Kal Freight Inc. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 777], which was subsequently amended and restated on March 25, 2025 [Docket No. 845], and April 8, 2025 [Docket No. 955]. On March 13, 2025, the Court entered the Solicitation Procedures Order [Docket No. 783]. The Debtors solicited the solicitation version of the Plan [Docket No. 777] in accordance with the Solicitation Procedures Order. *See* Stretto Decl.

### III.

### <u>SUMMARY OF THE PLAN[3]</u>

20.     The Plan is a plan of liquidation that, among other things, provides for the creation of the Liquidating Trust, which is created solely for the benefit of Holders of Allowed Class 3 Unsecured Claims to liquidate, collect, sell, or otherwise dispose of the Liquidating Trust Assets (including, without limitation, certain Causes of Action) and to distribute all net proceeds to Holders of Allowed Class 3 Unsecured Claims, subject to the terms of the Plan. The Liquidating Trust will be funded initially with certain Liquidating Trust Assets.

21.     Under the Plan, certain Claims are not classified and are entitled under the Bankruptcy Code (and the Plan) to a full recovery (*i.e.*, Administrative Claims and Priority Tax Claims). *See* Plan § VII. As discussed further below, the Plan designates five classes of Claims and one class of Interests:

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (presumed to accept) |
| 2 | Other Secured Claims | Impaired | Yes |

---

[3] To the extent that there is any inconsistency between this Summary and the Plan itself, the Plan controls.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 3 | Unsecured Claims | Impaired | Yes |
| 4 | Participating Lender Claims | Impaired | No (deemed to accept) |
| 5 | Intercompany Claims | Impaired | No (presumed to reject) |
| 6 | Interests | Impaired | No (presumed to reject) |

22.     Under the Plan, a Holder of a Class 1 Priority Non-Tax Claim will receive a full recovery as soon as practicable following the later of: (a) the Effective Date, and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by law). Class 1 Priority Non-Tax Claims (to the extent any such claims exist) are Unimpaired under the Plan and deemed to have accepted the Plan.

23.     Unless previously paid in full, the Holder of an Allowed Class 2 Claim (1)(a) if the Collateral securing the Creditor's Class 2 Claim (subject to any applicable intercreditor rights or obligations) is not a Liquidating Trust Asset, will receive its Collateral, which shall be abandoned to such Creditor, or (b) if the Collateral securing the Creditor's Class 2 Claim is a Liquidating Trust Asset, will retain any valid and enforceable existing lien, claim, or encumbrance in or on such Collateral and will receive the proceeds, if any, from the Liquidating Trust's sale or liquidation of such Collateral up to the value of its Allowed Class 2 Claim on terms that may be agreed to in writing or dictated by the Court or (2) such other treatment as may be agreed to in writing by the Debtors and the Holder of such Class 2 Claim, in each case in full satisfaction and release of such Class 2 Claim. All Allowed Deficiency Claims, if any, will be classified and treated as Class 3 Unsecured Claims. Non-Participating Lenders will not receive a Debtor/Estate Release. Class 2 is Impaired and entitled to vote on the Plan.

24.     Holders of Class 3 Claims shall receive a Pro Rata share of the Liquidating Trust Interests in exchange for their Allowed Claims. Class 3 is Impaired and entitled to vote on the Plan.

25.     Notwithstanding anything to the contrary contained herein, the Participating Lenders retain all liens and security interests with respect to their Collateral and proceeds thereof (including without limitation lease payments) as and to the extent set forth in the Term Sheet, which liens and security interests survive confirmation of the Plan. The Participating Lenders are entitled to exercise all rights and remedies with respect to such Collateral and proceeds thereof as and to the extent set forth in the Term Sheet. Notwithstanding anything to the contrary contained herein, the automatic stay is lifted, and the injunction in Section XVI.C of the Plan does not apply with respect to the foregoing. There shall be no Distribution on account of Class 4 Participating Lender Claims; however, the Holder of an Allowed Class 4 Claim will receive a Debtor/Estate Release and the rights and benefits set forth in the Term Sheet. Notwithstanding anything to the contrary herein, if the Debtors and/or the Liquidating Trust receive proceeds of the Participating Lenders' Collateral, the Debtors and/or the Liquidating Trust shall hold such proceeds in trust for the Participating Lenders and immediately remit such proceeds in kind to the Participating Lenders, which remittance shall not be deemed a Distribution herein. Class 4 is Impaired, but Holders of Class 4 Claims are not entitled to vote and are deemed to have accepted the Plan.

26.     Class 5 Intercompany Claims are Impaired, deemed to have rejected the Plan, and will not receive any distributions under the Plan.

27.     Class 6 Interests are Impaired, deemed to have rejected the Plan, and will not receive any distributions under the Plan.

28.     On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, *inter alia*, (a) administering the Liquidating Trust Assets, (b) prosecuting and/or resolving all Disputed Unsecured Claims, (c) investigating and pursuing those Causes of Action transferred to the Liquidating Trust, and (d) making all Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trustee shall be deemed the Debtors' representative in accordance with section 1123 of the Bankruptcy Code for the purposes set forth in the Plan and shall have all the rights and powers set forth in the Liquidating Trust Agreement.

## IV.
### THE PLAN SATISFIES EACH OF THE REQUIREMENTS
### FOR CONFIRMATION UNDER THE BANKRUPTCY CODE

29.     Jurisdiction over this matter is proper pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

30.     The Plan complies with all relevant sections of the Bankruptcy Code and the Bankruptcy Rules relating to confirmation. The Debtors must show by a preponderance of the evidence that the Plan satisfies section 1129 of the Bankruptcy Code in order to confirm the Plan.[4] In particular, the Plan complies with the requirements of sections 1123 and 1129 of the Bankruptcy Code. This Memorandum addresses each requirement below.

---

[4]     *See, e.g., Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir.1993) ("The . . . preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown."); *see also In re Cypresswood Land Partners, I*, 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009); *In re J T Thorpe Co.*, 308 B.R. 782, 785 (Bankr. S.D. Tex. 2003).

A.    **The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code**

31.    Section 1129(a)(1) of the Bankruptcy Code provides that a plan may be confirmed only if "[t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) indicates that the primary focus of this requirement is to ensure that the plan complies with sections 1122 and 1123 of the Bankruptcy Code, which govern classification of claims and interests and the contents of a plan, respectively.[5] The Plan complies with these provisions in all respects.

    i.    **The Plan Meets the Requirements of Section 1122 of the Bankruptcy Code**

32.    The classification requirements of section 1122(a) of the Bankruptcy Code provide, in pertinent part, as follows:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.[6]

33.    For a classification structure to satisfy section 1122 of the Bankruptcy Code, not all substantially similar claims or interests need to be grouped in the same class.[7] Rather, claims or interests designated to a particular class must be substantially similar to each other,[8] and plan

---

[5]    *See* S. Rep. No. 989, 95th Cong. 2d Sess. 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5913 (1978) ("<u>Senate Report</u>"); H.R. Rep. No. 595, 95th Cong. 1st Sess. 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5962, 6368 (1977) ("<u>House Report</u>"); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648–49 (2d Cir. 1988).

[6]    11 U.S.C. § 1122(a).

[7]    *See In re Sentry Operating Co. of Tex., Inc.*, 264 B.R. 850, 860 (Bankr. S.D. Tex. 2001) (recognizing that section 1122 is broadly "permissive of any classification scheme that is not specifically proscribed, and that substantially similar claims may be separately classified").

[8]    *In re Vitro Asset Corp.*, No. 11-32600-HDH, 2013 WL 6044453, at *5 (Bankr. N.D. Tex. Nov. 14, 2013) ("[A] plan may provide for multiple classes of claims or interests so long as each claim or interest within a class is substantially similar to other claims or interests in that class.").

proponents have significant flexibility in placing similar claims into different classes so long as there is a rational basis in doing so.[9]

34.      The classification of claims and interests under the Plan is proper under the Bankruptcy Code. There are five classes of Claims and one class of interests: (1) Class 1 Priority Non-Tax Claims (the only class of priority claims subject to classification), (2) Class 2 Other Secured Claims (secured claims held by Non-Participating Lenders), (3) Class 3 Unsecured Claims (the only class of unsecured claims, which includes certain deficiency claims), (4) Class 4 Participating Lender Claims (secured claims held by Participating Lenders), (5) Class 5 Intercompany Claims (all intercompany claims); and (6) Class 6 Interests (the only class of Interests). As the foregoing descriptions of the classes reflect, valid reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan and, accordingly, the classification of Claims and Interests under the Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

> ### ii.     The Plan Meets the Requirements of Section 1123(a) of the Bankruptcy Code

35.      Section 1123(a) of the Bankruptcy Code sets forth seven requirements with which every chapter 11 plan must comply. The Plan complies fully with each requirement.

---

[9]      Courts have identified grounds justifying separate classification, including: (a) where there are good business reasons for separate classification, and (b) where members of a class possess different legal rights. *Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1167 (5th Cir. 1993) (recognizing that "there may be good business reasons to support separate classification"); *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158–59 (3d Cir. 1993) (holding that a classification scheme is proper as long as each class represents a voting interest that is "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed"); *see also In re Pisces Energy, LLC*, No. 09-36591, 2009 WL 7227880, at *8 (Bankr. S.D. Tex. Dec. 21, 2009) ("[A] plan proponent is afforded significant flexibility in classifying claims under section 1122(a) of the Bankruptcy Code provided there is a reasonable basis for the classification scheme and all claims within a particular class are substantially similar."); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 303 (Bankr. N.D. Tex. 2007) ("[T]he only express prohibition on separate classification is that it may not be done to gerrymander an affirmative vote on a reorganization plan.").

36.     First, paragraph (1) of section 1123(a) requires that a plan designate classes of claims, other than claims with the priority specified in subparagraphs 1, 2, and 8 of section 507(a) of the Bankruptcy Code. Section II of the Plan designates classes of Claims and Interests and does not classify Administrative Claims or Priority Tax Claims because they must receive the treatment specified in the Bankruptcy Code and cannot otherwise be impaired. *See* 11 U.S.C. §§ 1123(a)(1) and 1129(a)(9).

37.     Second, paragraph (2) of section 1123(a) of the Bankruptcy Code requires that a plan specify those classes or interests that are not impaired. Section X of the Plan specifies that Classes 1 and 3 are unimpaired.

38.     Third, paragraph (3) of section 1123(a) of the Bankruptcy Code requires that a plan specify those classes of claims or interests that are impaired. Section X of the Plan specifies that Classes 2, 3, 4, 5, 6, and 7 are impaired.

39.     Fourth, paragraph (4) of section 1123(a) of the Bankruptcy Code requires that a plan provide the same treatment for each claim in a particular class unless the holder of a claim in that class agrees to less favorable treatment for such claim. All of the Holders of Claims or Interests within each Class are treated identically under the Plan as required by section 1123(a)(4) of the Bankruptcy Code.

40.     Fifth, paragraph (5) of section 1123(a) of the Bankruptcy Code requires that a plan provide adequate means for its implementation. Here, Section XIII (Treatment of Executory Contracts and Unexpired Leases), Section XIV (Means for Implementation of the Plan), Section XV (Effect of Confirmation), and Section XVII (Conditions Precedent to Confirmation and Consummation of the Plan), among other provisions of the Plan, set forth the means for the Plan's implementation.

41.     Sixth, paragraph (6) of section 1123(a) of the Bankruptcy Code requires that a plan impose certain restrictions on a corporate debtor's equity securities. Consistent with section 1123(a)(6), the Plan provides in Section XIX.O: " Effective upon the Effective Date, the Debtors' formation documents shall be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under Section 1123(a)(6) of the Bankruptcy Code." Thus, section 1123(a)(6) is satisfied because Section XIX.O of the Plan provides that to the extent required, the Debtors shall comply with the provisions of section 1123(a)(6) of the Bankruptcy Code.

42.     Finally, paragraph (7) of section 1123(a) of the Bankruptcy Code requires that a plan contain only provisions that are consistent with the interests of creditors, equity security holders, and public policy with respect to the manner of selection of any officer, director, or trustee under a plan and any successor thereto. The Plan satisfies this requirement. Section XIV of the Plan describes the manner of selection and powers of the Liquidating Trustee for the Liquidating Trust. The identity of the Liquidating Trustee have been disclosed in the Plan Supplement. Alan D. Halperin will be appointed as the Liquidating Trustee for the Liquidating Trust. Sections XIV.C-F of the Plan describe the powers of the Liquidating Trustee. The engagement of the Liquidating Trustee is consistent with the interests of Holders of Claims and with public policy and so satisfy section 1123(a)(7) of the Bankruptcy Code. Section XIV.E of the Plan discloses that Scott Woitas, Todd Currier, and Jon Gergen are the initial members of the Liquidating Trust Oversight Committee, and Section XIV.E of the Plan and the Plan Supplement disclose the compensation and duties of the Liquidating Trust Oversight Committee.

**B.      The Plan Complies With the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code**

43.      Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan. Among other things, section 1123(b) of the Bankruptcy Code provides that a plan may: (a) impair or leave unimpaired any class of claims or interests, (b) provide for the assumption or rejection of executory contracts and unexpired leases, (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate, and (d) include any other appropriate provision not inconsistent with the applicable provisions of chapter 11. 11 U.S.C. § 1123(b)(1).

44.      The Plan is consistent with section 1123(b) of the Bankruptcy Code. Specifically, under Section X of the Plan, Class 1 is unimpaired because the Plan provides the holders of such claims with the treatment required under the Bankruptcy Code. On the other hand, Classes 2, 3, 4, 5, and 6 are impaired because the Plan modifies the rights of the Holders of Claims and Interests within such classes. In addition, pursuant to section 1123(b)(2) of the Bankruptcy Code, Section XIII of the Plan provides for the rejection of all executory contracts and unexpired leases under section 365 of the Bankruptcy Code to the extent not already assumed or rejected or the subject of a pending motion to assume, except as specified in the Plan.

45.      The Plan's discretionary provisions also include a Debtors' release provision, an exculpation provision, and an injunction provision. The Plan does not contain a third-party release. These provisions are appropriate and consistent with the applicable provisions of chapter 11 because.

### i.      The Exculpation Provision is Appropriate

46.      Section XVI.A of the Plan provides for the exculpation of the Debtors, the Independent Directors, the CRO, the Committee, the members of the Committee, and each solely

in their capacities as such (the "<u>Exculpated Parties</u>"), for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Cases, except for acts determined in a final order to have constituted gross negligence, willful misconduct, or fraud (the "<u>Exculpation Provision</u>").

47.     The Exculpation Provision does not affect the liability of third parties *per se* but rather sets forth a standard of liability under the Bankruptcy Code.[10] A bankruptcy court has the power to approve an exculpation provision in a chapter 11 plan because a bankruptcy court cannot confirm a chapter 11 plan unless it finds that the plan has been proposed in good faith.[11] Once the court makes its good faith finding, it is appropriate to set the standard of care of the parties involved in the formulation of that chapter 11 plan.[12]

48.     The Exculpation Provision is narrowly tailored to exclude acts of fraud and gross negligence, and it relates only to acts or omissions in connection with or arising out of the administration of the Debtors' cases. Further, the definition of Exculpated Parties is narrow and conforms to the Fifth Circuit's ruling in *Highland Capital*. *See NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 437-39 (5th Cir. 2022) ("<u>*Highland I*</u>"). *Highland I* is clear that plan exculpation can, and should, extend to all parties "appointed to act together as the bankruptcy trustee …" and to serve as fiduciaries to

---

[10]     *See, e.g.*, *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (holding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code.").

[11]     *See* 11 U.S.C. § 1129(a)(3).

[12]     *See PWS*, 228 F.3d at 246–47 (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity . . . for actions within the scope of their duties . . . .").

manage a debtors' postpetition estate.[13] Case law in this circuit and others is also clear that where a bankruptcy trustee is not appointed, a debtor in possession's court-appointed officers and directors are considered fiduciaries both to the debtor in possession and to the creditors, just as a trustee would be if one were appointed.[14]

49.     At the hearing approving the appointment of the Independent Directors, the Court was clear that the Independent Directors and the CRO, as in *Highland I*, were being appointed to act as the bankruptcy trustee under 11 U.S.C. § 1108 and to serve as Court-appointed fiduciaries because of the significant allegations of prepetition malfeasance leveled against the Debtors' prior

---

[13]     *Highland I*, 48 F.4th at 437 ("As the bankruptcy court's governance order clarified, nontraditional as it may be, the Independent Directors were appointed to act together as the bankruptcy trustee for Highland Capital. Like a debtor-in-possession, the Independent Directors are entitled to all the rights and powers of a trustee. *See* 11 U.S.C. § 1107(a); 7 COLLIER ON BANKRUPTCY ¶ 1101.01. It follows that the Independent Directors are entitled to the limited qualified immunity for any actions short of gross negligence. *See In re Hilal*, 534 F.3d at 501. Under this unique governance structure, the bankruptcy court legally exculpated the Independent Directors.")

[14]     *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("[I]f a debtor remains in possession—that is, if a trustee is not appointed—the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession."); *see also In re Hous. Reg'l Sports Network, L.P.*, 505 B.R. 468, 481 (Bankr. S.D. Tex. 2014) ("[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'" (quoting *Commodity Futures Trading*, 471 U.S. at355))); *In re Schepps Food Stores, Inc.*, 160 B.R. 792, 797 (Bankr. S.D. Tex. 1993) ("Section 1107(a) of the [Bankruptcy] Code enables a debtor to take the place of the trustee, with few exceptions, as a [d]ebtor-in-[p]ossession . . . . Recognizing that corporations are in reality legal fictions, in such instances it is the debtor's management which takes on the heightened fiduciary obligations of the trustee."); *In re Performance Nutrition, Inc.*, 289 B.R. 93, 111 (Bankr. N.D. Tex. 1999) ("The officers and directors of a debtor in possession owe the same fiduciary duties as a trustee in bankruptcy.").

management team.[15] Accordingly, this case is on all fours with *Highland I*. The Exculpation Provision should be approved.

### ii.    The Debtors' Releases of Claims Are Appropriate

50.    Section XVI.B(1)(a) of the Plan contains a release by the Debtors and the Estates of the Released Parties (the "Debtor/Estate Release"). Released Parties means, collectively, (a) the Independent Directors; (b) the Committee and the individual members thereof in their capacity as such; (c) the CRO; (d) any Professional; and (e) the Participating Lenders that fully satisfy their funding obligations in the Term Sheet.

51.    Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." Accordingly, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the Debtors may release Estate Causes of Action as consideration for concessions made by various stakeholders pursuant to the Plan.[16] In considering the appropriateness of such releases, courts in the Fifth Circuit generally consider whether the release is (a) "fair and equitable" and (b) "in the best

---

[15]    Dec. 11, 2024, Trans. 72:16-25, 73:1 ("I'm even adding to the statutory authority that I have, and I'm really doing it in my power. 1108 says that the Debtor has the ability to operate as a Debtor in possession unless otherwise ordered by this Court. And there is no way in the world that I'm going to allow this Debtor to operate unless those independent directors are there and under people who I can look to. It sounds like the CRO is going to file a motion to get himself -- sounds like the Debtor is going to file a motion to appoint the CRO. That better be coming, too, because we're going to need stability."); *Id.*, 74:3-25, 75:1-2 ("This case is different than a lot of other cases that I have. I've never approved one of these, but I'm sure going to do it in this case. And I sure have the ability under 1108, 105, and 363(b) to do everything that we're doing here today. ... I'm ratifying this agreement for my purpose to make sure that I've got the folks in place who I want that I can look to – independent directors who I can call in, and I feel 100 percent comfortable with these two individuals. ... But they've got the fiduciary duty once I sign this order to operate as independent fiduciaries .... Same way with Mr. Sharp once he signs."); *Id.*, 77:3-4 ("And Lopez is approving this under 363, 1108 as I'm ordering it.")

[16]    *See, e.g.*, *In re Bigler LP*, 442 B.R. 537, 547 (Bankr. S.D. Tex. 2010) (finding that plan release provision "constitutes an acceptable settlement under § 1123(b)(3) because the Debtors and the Estate are releasing claims that are property of the Estate in consideration for funding of the Plan"); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 259 (Bankr. N.D. Tex. 2007); *In re Mirant Corp.*, 348 B.R. 725, 737–39 (Bankr. N.D. Tex. 2006); *In re Gen. Homes Corp.*, 134 B.R. 853, 861 (Bankr. S.D. Tex. 1991).

interests of the estate."[17] Courts in this Circuit generally interpret the "fair and equitable" prong, consistent with that term's usage in section 1129(b) of the Bankruptcy Code, to require compliance with the Bankruptcy Code's absolute priority rule.[18] Courts generally determine whether a release is "in the best interest of the estate" by reference to the following factors:

(1)      the probability of success of litigation;

(2)      the complexity and likely duration of the litigation, any attendant expense, inconvenience, or delay, and possible problems collecting a judgment;

(3)      the interest of creditors with proper deference to their reasonable views; and

(4)      the extent to which the settlement is truly the product of arm's-length negotiations.[19]

Ultimately, courts afford the Debtors some discretion in determining for themselves the appropriateness of granting plan releases of estate causes of action.[20]

52.      The Debtor/Estate Releases in the Plan meet this standard. They are fair and reasonable, supported by creditors, and in the best interests of the Estates. The Debtor/Estate Releases are based upon a substantial contribution to the Plan and the Debtors' chapter 11 case. The Debtor/Estate Releases are also limited in scope by the carve-out for willful misconduct, fraud, or gross negligence.

53.      The Debtor/Estate Releases are integral to facilitating the Plan. The Plan is predicated on the settlement with the Participating Lenders embodied in the Term Sheet, the

---

[17]    *In re Mirant Corp.*, 348 B.R. at 738; *see also In re Heritage Org.*, 375 B.R. at 259.

[18]    *In re Mirant Corp.*, 348 B.R. at 738.

[19]    *In re Mirant Corp.*, 348 B.R. at 739–40 (citing *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355–56 (5th Cir. 1997)).

[20]    *See In re Gen. Homes Corp.*, 134 B.R. at 861 ("The court concludes that such a release is within the discretion of the Debtor.").

transfer of the majority of the Debtors' assets, including significant Causes of Action, to the Liquidating Trust for the benefit of the Debtors' unsecured creditors, and the consensual and orderly liquidation of the Debtors. Thus, there is an identity of interests between the Debtors and the Released Parties based on their "common goal of confirming the [] Plan." *In re Tribune Co.*, 464 B.R. 126, 187 (Bankr. D. Del.), *modified*, 464 B.R. 208 (Bankr. D. Del. 2011); *Zenith*, 241 B.R. at 110 (concluding that certain released parties who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed and the company reorganize").

54.     For these reasons, the Debtor/Estate Releases are justified, are in the best interests of creditors, are an integral part of the Plan, and satisfy the key factors considered by courts in determining whether a debtor release is proper.

55.     The Plan does not contain third-party releases.

### iii.     The Injunction Provision Is Appropriate and Complies With the Bankruptcy Code.

56.     The injunction provision set forth in Section XVI.C of the Plan, as amended (the "Injunction Provision"), implements the Plan's release and exculpation provisions, in part, and allows for and facilitates the implementation of the Plan and its specified treatment of Claims and Interests by permanently enjoining all entities from commencing or maintaining any action against the Liquidating Trust or the Liquidating Trust Assets. The Injunction Provision is thus a key provision of the Plan because it provides a mechanism to enforce the terms of the Plan and to prevent third parties from commencing litigation against the protected parties simply to launch a

collateral attack on the Plan in another forum. As such, the Court should approve the Injunction Provision.[21]

## C.    The Debtors Have Satisfied Section 1129(a)(2) of the Bankruptcy Code

57.    Section 1129(a)(2) of the Bankruptcy Code requires the proponent of a plan to comply with "applicable provisions of the Bankruptcy Code." 11 U.S.C. § 1129(a)(2). The principal purpose of section 1129(a)(2) of Bankruptcy Code is to ensure that a debtor has complied with the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code.[22]

### i.    The Debtors Have Complied With the Requirements of Section 1125 of the Bankruptcy Code

58.    Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a chapter 11 plan from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b). In this case, the Court entered the Solicitation Procedures Order, conditionally approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

---

[21]    *See also In re Camp Arrowhead, Ltd.*, 451 B.R. 678, 701–02 (Bankr. W.D. Tex. 2011) ("[T]he Fifth Circuit does allow permanent injunctions so long as there is consent. Without an objection, this court was entitled to rely on . . . silence to infer consent at the confirmation hearing . . . ." (citing *Pac. Lumber*, 584 F.3d at 253)).

[22]    *See In re PWS Holdings Corp.*, 228 F.3d 224, 248 (3d Cir. 2000) (stating that section 1129(a)(2) requires debtors to comply with the adequate disclosure requirements of section 1125); *see also In re Lapworth*, No. 97-34529, 1998 Bankr. LEXIS 1383, at *10 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *Official Comm. v. Michelson (In re Michelson)*, 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992) ("Compliance with the disclosure and solicitation requirements is the paradigmatic example of what the Congress had in mind when it enacted section 1129(a)(2)."); *In re Texaco Inc.*, 84 B.R. 893, 906–07 (Bankr. S.D.N.Y. 1988) (stating that the "principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of section 1125 in the solicitation of acceptances to the plan"); Senate Report at 126 ("Paragraph (2) of [section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); House Report at 412.

59.     Pursuant to the Solicitation Procedures Order, the Debtors—through their claims, noticing, balloting, and solicitation agent, Stretto—transmitted the approved Solicitation Package notices in accordance with the instructions of the Court in the Solicitation Procedures Order. *See* Stretto Affidavits [Docket Nos. 847, 880, 910]. In addition, in compliance with the Solicitation Procedures Order, copies of the Solicitation Procedures Order, the Plan, and the Disclosure Statement have been available upon request from the Debtors' counsel and free of charge at https://cases.stretto.com/KALFreight/.

60.     The Solicitation Package was served in accordance with the requirements of Bankruptcy Rules 2002(b) and 3017(d)–(f) and the Solicitation Procedures Order. The Solicitation Package clearly stated that, consistent with the Solicitation Procedures Order and section 105(d)(2)(B)(vi) of the Bankruptcy Code, final approval of the Disclosure Statement and any objections thereto would be heard at the Confirmation Hearing.

61.     Accordingly and as described above, approval of the Disclosure Statement on a final basis as part of the Confirmation Order is appropriate.

> **ii.     The Debtors Have Complied With the Requirements of Bankruptcy Rules 3017(d) and 3018(c)**

62.     Bankruptcy Rules 3017 and 3018 require, in relevant part, that a debtor transmit its plan and disclosure statement to all affected creditors and equity security holders, that it adopt effective procedures for the transmission of its plan and disclosure statement to beneficial owners of securities, and that it afford creditors and equity security holders a reasonable period of time in which to accept or reject the proposed plan. FED. R. BANKR. P. 3017, 3018. The Debtors respectfully submit that they have met all such requirements.

63.     Bankruptcy Rule 3017(d) requires that, unless a court orders otherwise, a debtor must transmit to all creditors, equity security holders, and the United States Trustee: the plan (or a

court-approved summary of the plan), the disclosure statement approved by the court, notice of the time within which acceptances and rejections of such plan may be filed, and such other information as the court may direct, including any opinion of the court approving the disclosure statement or a court approved summary of the opinion.

64.     Bankruptcy Rule 3017 also requires that the debtor give notice of the time fixed for filing objections to the proposed disclosure statement and for the hearing on confirmation to all creditors and equity security holders, and that a debtor mail a ballot to each creditor and equity security holder entitled to vote on the plan.

65.     Bankruptcy Rule 3018(c) governs the form of ballot for accepting or rejecting a plan, providing in relevant part that an "acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form." FED. R. BANKR. P. 3018(c). Pursuant to Bankruptcy Rule 3018(a), the Court established April 4, 2025 as the record date (the "Voting Record Date") for determining which holders of claims and interests were entitled to vote to accept or reject the Plan.

66.     Stretto completed solicitation of the Plan on March 14 2025, by causing the Solicitation Package (as defined and described in the Solicitation Procedures Order) to be transmitted to all known holders of claims in Classes 2 and 3 as of the Voting Record Date. All other creditors were unimpaired and therefore conclusively presumed to have accepted the Plan.[23] Holders of Intercompany Claims or Interests were not provided with a Solicitation Package because they are deemed to have rejected the Plan and not entitled to vote thereon. The nonvoting

---

[23]     *See* 11 U.S.C. §§ 1126(f), (g).

parties were served with the Confirmation Hearing Notice and the applicable Notice of Non-Voting Status.

67. As required by Bankruptcy Rule 3017(d), the Solicitation Package included, *inter alia*, the Combined Disclosure Statement and Plan. In addition, each Solicitation Package included the appropriate Ballot with voting instructions, the Confirmation Hearing Notice, and a pre-addressed return envelope each in the form approved by the Court in the Solicitation Procedures Order. The Disclosure Statement, Ballots, and Confirmation Hearing Notice provided clear notice of the voting deadline to submit the Ballots, which the Court established as April 4, 2025 at 4:00 p.m. (prevailing Central Time).

68. The Debtors and their professionals and agents followed the procedures set forth in the Solicitation Procedures Order for soliciting acceptances of the Plan as evidenced by the Voting Report and the certificates of service for the Solicitation Packages filed of record with the Court. In addition, the Debtors served the Confirmation Hearing Notice on the U.S. Trustee, counsel for the Committee, all creditors on the list of creditors maintained by the Debtors' Claims Agent, and those parties that requested notice pursuant to Bankruptcy Rule 2002. The Debtors did not solicit acceptances or rejection of the Plan from any creditor or equity interest holder before the conditional approval of the Disclosure Statement by this Court.

### iii. The Vote Tabulation Satisfied Section 1126(c) and Bankruptcy Rule 3018(a)

69. The Debtors submit that the voting and tabulation procedures followed by Stretto are in accordance with the Solicitation Procedures Order, Bankruptcy Code section 1126(c), and Bankruptcy Rule 3018(a).

70. Bankruptcy Code section 1126(c) provides:

A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at

least two-thirds in amount and more than one-half in number of the allowed claims
of such class held by creditors, other than any entity designated under subsection
(e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Section 1126 of the Bankruptcy Code provides in part that only holders of

allowed claims and interests in impaired classes that will receive or retain property under a plan

on account of such claims or interests may vote to accept or reject a plan. 11 U.S.C. § 1126(f)–(g).

Class 1 is unimpaired under the Plan. Accordingly, Class 1 is deemed to have accepted the Plan

and are not entitled to vote on the Plan. Holders of Participating Lender Claims in Class 4 are

deemed to have accepted the Plan pursuant to a settlement and not entitled to vote on the Plan.

Holders of Intercompany Claims in Class 5 are deemed to have rejected the Plan and not entitled

to vote on the Plan. Holders of Interests in Class 6 are impaired and will not receive any

distributions under the Plan. As a result, pursuant to section 1126(g) of the Bankruptcy Code,

Classes 5 and 6 are deemed to have rejected the Plan. Class 2 Other Secured Claims and Class 3

Unsecured Claims, are impaired and, to the extent any such claims exist, will receive distributions

under the Plan. Based on the foregoing, pursuant to section 1126 of the Bankruptcy Code, the

holders of claims in Classes 2 and 3 are the only parties entitled to vote on the Plan. As set forth

in the Voting Summary, in accordance with section 1126 of the Bankruptcy Code and the

Solicitation Procedures Order, the Debtors solicited acceptances and rejections of the Plan from

the holders of Claims in Classes 2 and 3. Class 3 Unsecured Claims voted to approve the Plan. 3

out of the 10 Class 2 (Other Secured Claims) voted to approve the Plan. Every validly cast Ballot

was counted and considered when tabulating votes for the acceptance or rejection of the Plan.[24]

---

[24]   *See* Voting Declaration and exhibits thereto.

71.     Based on the facts and arguments set forth above, the Debtors submit that the Plan-related solicitation efforts satisfied the requirements of Bankruptcy Code sections 1125 and 1126 and Bankruptcy Rules 3017(d), 3018(a), 3018(c), and 3018(e).

72.     Additionally, given the clear evidence of good faith on the part of the parties involved in the solicitation and the Debtors' compliance with Bankruptcy Code section 1125, the Debtors request that the Court grant the parties the protections provided under Bankruptcy Code section 1125(e).

## D.     The Plan Has Been Proposed in Good Faith (Section 1129(a)(3))

73.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). In assessing good faith, courts in the Fifth Circuit consider whether the plan was proposed with "the legitimate and honest purpose to reorganize and has a reasonable hope of success."[25] A plan must also achieve a result consistent with the Bankruptcy Code.[26] The fundamental purpose of chapter 11 is to enable a debtor to reorganize its affairs to prevent job losses and the adverse economic effects associated with disposing of assets at liquidation value.[27] To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development of the plan.[28] The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the proposal of a chapter 11 plan. *In re W.R. Grace & Co.*, 475 B.R.

---

[25]     *See In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985).

[26]     *See In re Block Shim Dev. Company-Irving*, 939 F.2d 289, 292 (5th Cir. 1991).

[27]     *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984); *B.D. Int'l Disc. Corp. v. Chase Manhattan Bank (In re B.D. Int'l Disc. Corp.)*, 701 F.2d 1071, 1075 n.8 (2d Cir. 1983) ("[T]he two major purposes of bankruptcy [are] achieving equality among creditors and giving the debtor a fresh start.").

[28]     *E.g.*, *In re T-H New Orleans Ltd. P'ships*, 116 F.3d 790, 802 (5th Cir. 1997) (quoting *In re Sun Country Dev., Inc.*, 764 F.2d at 408); *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012); *In re Century Glove*, Nos. 90-400-SLR, 90-401-SLR, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993).

34, 87 (D. Del. 2012). In determining whether the plan will succeed and accomplish goals consistent with the Bankruptcy Code, courts look to the terms of the plan itself.[29]

74.     The Plan has been proposed in good faith, achieves an effective, orderly liquidation and distribution of the Debtors' remaining assets, and provides for meaningful distributions to creditors. The Plan only contains provisions that are consistent with the Bankruptcy Code. Furthermore, as discussed above, the Plan has received broad creditor support from the Debtors' largest creditors. In light of the foregoing, the Plan complies with section 1129(a)(3) of the Bankruptcy Code.

### E.     Payments for Services and Expenses (Section 1129(a)(4))

75.     Section 1129(a)(4) of the Bankruptcy Code requires that the Debtors not make any payment for services, costs, or expenses in connection with this case unless such payments are disclosed and subject to bankruptcy court approval as reasonable. Courts have construed this section as requiring the bankruptcy court's review and approval of the reasonableness of all professional fee payments made from estate assets.[30] The Fifth Circuit has held this is a "relatively open-ended standard" that involves a case-by-case inquiry and, under appropriate circumstances, does not necessarily require that a bankruptcy court review the amount charged.[31] As to routine

---

[29]   *See In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988) (concluding that the good-faith test provides courts with significant flexibility and is focused on examination of the plan itself, rather than external factors), *aff'd in part and remanded in part on other grounds*, 103 B.R. 521 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990).

[30]   *See In re Cajun Elec. Power Coop.*, 150 F.3d 503, 518 (5th Cir. 1998) (emphasis omitted) (citations omitted) ("Section 1129(a)(4) by its terms requires court approval of any payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case."); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

[31]   *Cajun Elec.*, 150 F.3d at 517 ("What constitutes a reasonable payment will clearly vary from case to case and, among other things, will hinge to some degree upon who makes the payments at issue, who receives those payments, and whether the payments are made from assets of the estate.").

legal fees and expenses that have been approved as reasonable in the first instance, "the court will ordinarily have little reason to inquire further with respect to the amount charged."[32]

76.     No payment for services or costs and expenses in connection with the Debtors' chapter 11 cases, or in connection with the Plan and incident to the chapter 11 cases, has been or will be made, other than payments that have been authorized by an order of the Court. The Court has previously authorized the interim payment of the fees and expenses incurred by estate professionals. Pursuant to Section VIII.C of the Plan, professionals shall file and serve applications for allowance of final compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. Such applications will be subject to review and approval by the Court. Accordingly, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

**F.     Directors and Officers (Section 1129(a)(5))**

77.     Section 1129(a)(5) of the Bankruptcy Code requires that the identity and affiliations of the individuals proposed to serve after confirmation as a director or officer, and the identity and nature of any insider compensation, be disclosed.[33] The Debtors have complied with section 1129(a)(5) by providing that the identity and proposed compensation of the Liquidating Trustee. The Debtors believe that the appointment of these representatives are "consistent with the interests of creditors and equity security holders and with public policy," and no party in interest has objected to the Plan on these grounds. Therefore, the requirements of section 1129(a)(5) are satisfied.

---

[32]     *Id.*

[33]     *See In re Landing Assocs.,* 157 B.R. 791, 817 (Bankr. W.D. Tex. 1993) ("In order to lodge a valid objection under § 1129(a)(5), a creditor must show that a debtor's management is unfit or that the continuance of this management post-confirmation will prejudice the creditors.").

G.   **Rate Changes (Section 1129(a)(6))**

78.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan. Section 1129(a)(6) of the Bankruptcy Code is inapplicable in this case.

H.   **The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7))**

79.     The "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain under the plan property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time. The best-interests-of-creditors test is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan.[34]

80.     Under section 1129(a)(7), the best-interests-of-creditors test applies only to non-accepting holders of impaired claims or interests.[35] For the reasons discussed in Section VI.H of the Plan, and as evidenced by the Liquidation Analysis, the best-interests-of-creditors test is satisfied in this case. The Plan is expected to provide a greater recovery than would a chapter 7

---

[34]   *See In re Neff*, 60 B.R. 448, 452 (Bankr. N.D. Tex. 1985), *aff'd,* 785 F.2d 1033 (5th Cir. 1986) (stating that "best interests" of creditors means "creditors must receive distributions under the Chapter 11 plan with a present value at least equal to what they would have received in a Chapter 7 liquidation of the Debtor as of the effective date of the Plan"); *In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) (citations omitted) ("Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'"); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

[35]   *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").

liquidation. Foremost, in a chapter 7 case, unsecured creditors would not have the benefit of the Liquidating Trust Assets. Further, a chapter 7 trustee would have no initial familiarity with the case and would likely have less capability to maximize the value of such matters as efficiently or effectively as the Liquidating Trustee.

81.     As explained in the Plan, in a chapter 7 case, the value available for satisfaction of Claims and Interests in the Debtors would be reduced by the costs, fees, and expenses of the liquidation under chapter 7, which would include disposition expenses, the sliding scale fees and compensation of a chapter 7 trustee, the fees of the trustee's counsel and other professionals, and certain other costs arising from conversion of the chapter 11 case to a case under chapter 7. Moreover, the monetization of the Debtors' assets and distributions to creditors likely would suffer additional delays while the chapter 7 trustee and the trustee's professionals take time to get up to speed on the myriad relevant matters to complete the administration of the Estates. Furthermore, a chapter 7 liquidation could further delay payments being made to creditors because, in addition to the reasons described above, Bankruptcy Rule 3002(c) provides that conversion of a chapter 11 case to chapter 7 will trigger a new bar date for filing claims against the Estates. Not only could a chapter 7 liquidation delay distribution to creditors, but it is possible that additional claims that were not asserted in the chapter 11 cases or that were filed late could be filed against the Estate.

82.     Accordingly, the Plan provides an equal or better potential recovery for creditors and interest holders as compared to a liquidation under chapter 7 of the Bankruptcy Code. Therefore, the Plan satisfies the "best interests" of creditors test under section 1129(a)(7) of the Bankruptcy Code.

## I.     Acceptance by Impaired Classes (Section 1129(a)(8))

83.     A plan is accepted by the holders of the allowed claims of each class that voted if (i) at least two-thirds in dollar amount (the "Amount Requirement") and (ii) more than one-half in

number (the "Creditor-Numerosity Requirement") have voted to accept the plan. *See* 11 U.S.C. § 1126(c). A class of interests accepts the plan if the plan is accepted by holders of interests that hold at least two-thirds in amount of the allowed interests in the class that actually vote on a plan (together with the Creditor-Numerosity Requirement, the "Numerosity Requirement"). *See* 11 U.S.C. § 1126(d).

84. As discussed above, whether a class has accepted the plan is determined by reference to section 1126 of the Bankruptcy Code. Under section 1126(f), any unimpaired class is conclusively presumed to have accepted the plan. Because the Plan does not impair Class 1, this Class is deemed to have accepted the Plan and was not entitled to vote. Class 3 Unsecured Claims voted 84.48% in number and 88.23% in amount to approve the Plan. Under the Plan, each Class 2 Other Secured Claim is treated as a separate subclass for voting purposes. In aggregate 56.71% of the amount of Class 2 Other Secured Claims voted to approve the Plan. 3 out of the 10 Class 2 (Other Secured Claims) voted to approve the Plan. Class 4 was deemed to accept the Plan pursuant to a settlement and not entitled to vote. Classes 5 and 6 were deemed to reject the Plan, but, as discussed herein, the Debtors seek confirmation of the Plan under the cramdown provisions of section 1129(b).

**J.      Treatment of Priority Claims (Section 1129(a)(9))**

85. Section 1129(a)(9) of the Bankruptcy Code contains a number of requirements concerning the payment of priority claims. 11 U.S.C. § 1129(a)(9). First, section 1129(a)(9)(A) requires that claims of a kind specified in section 507(a)(1), which gives first priority to certain administrative expenses, be paid in full in cash on the effective date of a plan. Second, section 1129(a)(9)(B) requires that claims of a kind specified in subsection 507(a)(3) through 507(a)(7) receive deferred cash payments equal to the allowed amount of such claims on the effective date. Finally, section 1129(a)(9)(C) requires that the holder of a claim of a kind specified in section

507(a)(8) of the Bankruptcy Code—priority tax claims—must receive regular installment payments in cash of the total value equal to the allowed amount of such claim over a period ending not later than five years after the petition date.

86.     The Plan satisfies these requirements. Under Section VIII.B of the Plan, except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive from Available Cash payable by the Debtors or the Liquidating Trust, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors or the Liquidating Trust, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

87.     Under Section VIII.D of the Plan, except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, the Debtors or Liquidating Trust shall pay each holder of an Allowed Priority Tax Claim, from Available Cash, the full unpaid amount of such Allowed Priority Tax Claim (as of the Effective Date) via either, at the Liquidating Trustee's sole discretion, (a) a single lump sum payment on or as soon as practicable after the later of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes an Allowed Claim,

and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law; or (b) regular cash installment payments over a period ending not later than 5 years after the Petition Date with interest at the rate determined under applicable nonbankruptcy law, pursuant to 11 U.S.C. §§ 1129(a)(9)(C) and 511.

88.     Thus, the treatment of priority claims under the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**K.      Acceptance by at Least One Impaired Class (Section 1129(a)(10))**

89.     Section 1129(a)(10) of the Bankruptcy Code requires as a condition of confirmation that if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider. *See* 11 U.S.C. § 1129(a)(10). The voting members of Classes 2 and 3 are impaired and entitled to vote. Class 3 voted in favor of the Plan. Each Holder of a Class 2 Other Secured Claim is treated as a separate subclass for voting purposes. 3 out of the 10 Class 2 (Other Secured Claims) voted to approve the Plan.  Additionally, Class 4 (Participating Lender Claims) are deemed to accept the Plan pursuant to the Settlement Order and Term Sheet. Therefore, the requirement of section 1129(a)(10) is satisfied.

**L.      The Plan Is Feasible (Section 1129(a)(11))**

90.     Section 1129(a)(11) of the Bankruptcy Code provides that a plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

91.     Courts generally have held that the determination of the feasibility requirement contemplates "'the probability of actual performance of the provisions of the plan.'"[36] Only a reasonable assurance of success is required.[37] Further, "a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility."[38]

92.     The completion of the Debtors' liquidation is proposed in the Plan and no further financial reorganization of the Debtors is contemplated. The Debtors anticipate having sufficient funds available as of the Effective Date to pay all claims and expenses that are required to be paid on the Effective Date under the Plan (including Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims). Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

**M.     Payment of Certain Fees (Section 1129(a)(12))**

93.     Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930, determined by the Court at the hearing on confirmation of a plan, be paid or that provision be made for their payment. *See* 11 U.S.C. § 1129(a)(12). All outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930 that have not been paid as of the Effective Date will be paid by the Debtors in Cash on the Effective Date (or when otherwise due

---

[36]    *Clarkson v. Cooke Sale & Serv. Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (quoting *Chase Manhattan Mortg. & Realty Tr. v. Bergman (In re Bergman)*, 585 F.2d 1171, 1179 (2d Cir. 1978)). "The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *Id.*; *see also In re Orlando Investors, L.P.*, 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989) ("Feasibility does not require that substantial consummation of the plan be guaranteed; rather the plan proponent must demonstrate that there be a reasonable assurance of compliance with plan terms.").

[37]    *In re T-H New Orleans Ltd P'ship*, 116 F.3d 790, 801 (5th Cir. 1997) (citations omitted) ("[T]he [bankruptcy] court need not require a guarantee of success . . . , [o]nly a reasonable assurance of commercial viability is required."); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Lakeside Glob. II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) (noting that the feasibility standard "has been slightly broadened and contemplates whether the debtor can realistically carry out its plan").

[38]    *In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005); *Tribune*, 464 B.R. at 185.

in the ordinary course). Plan, Section XIX.A. Consequently, section 1129(a)(12) of the Bankruptcy Code is satisfied.

**N.      Continuation of the Debtors' Obligations to Pay Retiree Benefits (Section 1129(a)(13))**[39]

94.      Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation of retiree benefits at levels established by agreement or by court order pursuant to section 1114 of the Bankruptcy Code, for the duration of the period that the debtor has obligated itself to provide such benefits. *See* 11 U.S.C. § 1129(a)(13). The Debtors have no retiree benefit plans within the meaning of section 1129(a)(13) of the Bankruptcy Code.

**O.      The Plan Satisfies the "Cramdown" Requirements of Section 1129(b)(1)**

95.      Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) are met other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in section 1129(b) are satisfied. To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the debtor must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the nonaccepting impaired classes.[40]

96.      As discussed herein, Class 3 Unsecured Claims voted to approve the Plan. Under the Plan, each Class 2 Other Secured Claim is treated as a separate subclass for voting purposes. 3 out of the 10 Class 2 (Other Secured Claims) voted to approve the Plan. Class 4 has been deemed to accept the Plan pursuant to a settlement. Classes 5 (Intercompany Claims) and 6 (Interests) are

---

[39]   The remaining elements of section 1129(a)—namely, subsections (a)(14) (domestic obligations), (15) (individual debtors), and (16) (nonprofit entities)—are inapplicable to the Debtors and will not be discussed. *See* 11 U.S.C. § 1129(a)(14), (a)(15), and (a)(16).

[40]   11 U.S.C. § 1129(b); *see also John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 n.5 (3d Cir. 1993); *Zenith*, 241 B.R. at 105 (explaining that "[w]here a class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable.'").

not entitled to any recovery and thus are deemed to have rejected the Plan. To confirm the Plan, the Debtors must satisfy the Bankruptcy Code's "cramdown" requirements as to Classes 5 and 6 (the "<u>Deemed Rejecting Classes</u>").

### i.     The Plan Does Not Unfairly Discriminate

97.     The Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists.[41] Rather, courts typically examine the facts and circumstances of the particular case to determine whether unfair discrimination exists.[42] In general, courts have held that a plan unfairly discriminates in violation of section 1129(b)(1) of the Bankruptcy Code only if it provides materially different treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so.[43] A threshold inquiry to assessing whether a proposed plan of reorganization unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.[44]

---

[41]    *See In re 203 N. LaSalle St. P'ship*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established"), *rev'd on other grounds*, 526 U.S. 434 (1999).

[42]    *See Genesis Health Ventures,*.266 B.R. at 611 ("The hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination."); *see also In re 222 Liberty Assoc.*, 108 B.R. 971, 990-991 (Bankr. E.D. Pa. 1990); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) ("The language and legislative history of the statute provides little guidance in applying the 'unfair discrimination' standard . . . ."), *aff'd*, 843 F.2d 636 (2d Cir. 1988); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"); *In re Aztec Co.*, 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) (noting that courts "have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination").

[43]    *See In re Idearc Inc.*, 423 B.R. 138, 171 (Bankr. N.D. Tex. 2009) ("[T]he unfair discrimination standard prevents creditors and equity interest holders with similar legal rights from receiving materially different treatment under a proposed plan without compelling justifications for doing so."); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661–62 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination), *aff'd*, 308 B.R. 672 (D. Del. 2004).

[44]    *See In re Aleris Int'l*, No. 09-10478 (BLS), 2010 Bankr. LEXIS 2997, at *94–96 (Bankr. D. Del. May 13, 2010) (citing *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 121 (D. Del. 2006)).

98.     The Court should find that the Plan does not unfairly discriminate against the Deemed Rejecting Classes. There are no equally situated classes that are receiving more favorable treatment under the Plan, and consequently there is no discrimination against the Deemed Rejecting Classes.

### ii.     The Plan Is Fair and Equitable

99.     A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.[45] This requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.[46]

100.     No class junior to the Deemed Rejecting Classes is entitled to any distributions under the Plan. Further, as noted above, there is no other class equally situated to the Deemed Rejecting Classes that will receive more favorable treatment under the Plan. The foregoing treatment conforms to the absolute priority rule and is therefore fair and equitable within the meaning of section 1129(b).

101.     Accordingly, the Plan satisfies the cramdown requirements of section 1129(b) of the Bankruptcy Code and may be confirmed notwithstanding the rejection of the Plan by the Deemed Rejecting Classes.

---

[45]     *Bank of Am. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441–42 (1999) ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property.' That latter condition is the core of what is known as the 'absolute priority rule.'" (quoting 11 U.S.C. § 1129(b)(1), (b)(2)(B)).

[46]     *Id.*

**P.**     **The Plan's Purpose is Consistent with the Bankruptcy Code (Section 1129(d))**

102.     Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of section 5 of the Securities Act of 1933. 11 U.S.C. § 1129(d). The principal purpose of the Plan is to provide for an orderly liquidation of the estate's remaining assets and distribute the net proceeds thereof to the Debtors' creditors. The Plan's purpose is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, and there has been no filing by any governmental agency asserting such avoidance.

**V.**

**REPLY TO OBJECTIONS AND RESPONSES**

103.     The Debtors believe that the Plan Objections have been consensually resolved or should be overruled for the reasons set forth below.

**A.**     **Resolved Plan Objections.**

104.     **Tennessee Objection**. The Debtors resolved the Tennessee Objection by adding language to sections VIII.B. and VIII.D. of the Plan.

**B.**     **Unresolved Plan Objections**

      **i.**     **U.S. Bank Objection.**

105.     U.S. Bank objects to the Plan on two grounds. ***First***, U.S. Bank argues the Plan should be modified to allow Holders of Class 2 to amend their claims to assert deficiency claims in Class 3. ***Second***, U.S. Bank states the Debtors should be required to cooperate with the surrender of their Collateral following the Effective Date.

106.     The Debtors resolved U.S. Bank's first objection by adding language to 46 of the Confirmation Order, which clarified that Holders of Class 2 Other Secured Claims could amend their properly filed proofs of claim to assert a deficiency claim in Class 3 Unsecured Claims.

107.     There is no basis to grant U.S. Bank's second objection. The Debtors have worked diligently with U.S. Bank to transfer their Collateral, will continue to do so, and believe that, if U.S. Bank is diligent, sufficient time exists to conduct an orderly transfer of Collateral to U.S. Bank before the occurrence of the Effective Date. Further, pursuant to the Sale Order, the Debtors have sold all or substantially all of their assets to Noor and will have no employees or operations following the Effective Date. The Debtors will therefore have no ability to cooperate with the surrender of Collateral or even have access to such Collateral after the Effective Date. Nor do the Debtors have any obligation to cooperate post-Effective Date. Section 554 authorizes a debtor, after notice and a hearing, to abandon property that is burdensome to the estate; Section 554 does not allow a secured creditor to force a debtor to incur costs following abandonment that solely benefit the secured creditor. Regardless, Noor, as the purchaser of substantially all of the Debtors' assets, has agreed, pursuant to the Transition Services Agreement, to provide reasonable access to books and records for the Debtors' secured lenders (like U.S. Bank) with respect to the recovery of their Collateral after the Effective Date.

### ii.      UST Objection.

108.     The U.S. Trustee raises four objections to the Plan, none of which are well-founded. *First*, the U.S. Trustee argues the Exculpation Provision violates *Highland I* and Fifth Circuit precedent because it exculpates the Independent Directors and CRO. UST Obj. ¶¶ 16-18. Per the U.S. Trustee, this Court did not appoint the Independent Directors and CRO to act as bankruptcy trustees and the Debtors have, at all times, been the estate fiduciaries and debtors-in-possession. The U.S. Trustee ignores this Court's orders, which appointed the Independent Directors and CRO as the trustees under 11 U.S.C. § 1108 (n. 15, *supra*), and *Highland I*, which explicitly allows exculpation of the Independent Directors and CRO in these circumstances (n. 13, *supra*).

109. *Second*, the U.S. Trustee argues the Plan impermissibly provides a "post-confirmation exculpation" of the Liquidating Trustee in the indemnification provision in Section XVI.D of the Plan. Standard of care provisions—which is what this is—are standard in plans and liquidating trust agreements and simply protect the liquidating trustee from claims of simple negligence and allow the trustee to perform his or her obligations without under influence. *See, e.g., In re Athenex, Inc., et al.*, Case No. 23-09295 (DRJ), Docket No. 595-2, at 113-114 (Bankr. S.D. Tex. Sept. 12, 2023).

110. *Third*, the U.S. Trustee alleges the word "discharge" in the treatment of Class 5 Intercompany Claims creates confusion and could imply that the Debtors are entitled to a discharge under 11 U.S.C. § 1141(d)(3). The Debtors are not seeking a discharge under Section 1141(d)(3) and have added language in 8 of the Confirmation Order clarifying this point.

111. *Fourth*, the U.S. Trustee argues the injunction in Section XVI.C of the Plan (the "Plan Injunction") should be "no more than a temporary injunction" to avoid effectuating a discharge under 11 § 1141(d)(3). The Plan Injunction is not a *de facto* discharge in violation of section 1143(d)(3) of the Bankruptcy Code nor does it need to limited in time. It is a standard provision regularly approved in liquidating plans in this District and others and is necessary to effectuate the terms of the Plan and protect the Liquidating Trust from any potential (and potentially spurious) litigation from prepetition creditors and interest holders after the Effective Date. Any such litigation would hinder the efforts of the Liquidating Trustee to fulfill his responsibilities effectively as contemplated by the Plan and thereby undermine the Plan's distribution scheme to the detriment of all stakeholders. In other words, the Plan Injunction prohibits parties from pursuing Claims in an improper manner that would interfere with the liquidation and distribution of the Liquidating Trust Assets. Accordingly, the Plan Injunction

protects the best interests of the Holders of Allowed Claims who are the beneficiaries of the Liquidating Trust and promotes and facilitates the efficient administration of the Liquidating Trust in accordance with the terms of the Plan.

112. **_Finally_**, the U.S. Trustee objects to the waiver of the 14 day stay under the Bankruptcy Rules of the effectiveness of the Confirmation Order because it argues that the Debtors have not presented any exigencies that would justify departing from the Bankruptcy Rules imposition of such stay.  The U.S. Trustee is incorrect.  As the Court observed at the April 2, 2025 hearing in these Chapter 11 Cases when overruling the U.S. Trustee's similar objection to certain sale motions, there is ample reason to waive the stay of effectiveness of the Confirmation Order.  The longer these Debtors remain in Chapter 11, as would be caused by the stay of the effectiveness of the Confirmation Order, the more administrative liabilities will accrue, jeopardizing, and likely decreasing, creditor recoveries.  Moreover, and as the Court also observed at the at the April 2, 2025 hearing in these Cases, the material parties in interest, including the Committee, have been active in participating in the Chapter 11 Cases and have ample notice of the Debtors' requested relief and no other party has objected thereto.

### iii.      Objecting Lender Objection.

113. The Objecting Lender Objection was filed tactically and does not present an accurate or complete picture. It raises, essentially, four objections: (i) the Plan provides for disparate treatment of Administrative Claims because Professional Fee Claims are treated differently; (ii) the Plan is not feasible; (iii) no Debtor releases should not be given until the Liquidating Trust completes its investigation; and (iv) Plan Injunction violates 11 U.S.C. § 1141(d)(3). The Court should overrule the Objecting Lender Objection.

114. **_First_**, the Plan does not provide for disparate treatment of Administrative Claims. As is standard in chapter 11 plans, Section VIII.B of the Plan addresses Administrative Claims and

provides that—with certain exceptions—Administrative Claims will be paid in full on, or as soon as reasonably practicable after, the later of the Effective Date or the date an Administrative Claim is thereafter Allowed. The Plan provides that the Administrative Expense Bar Date is thirty days following the Effective Date and that—as amended—the Claims Objection Deadline is initially 180 days after the Effective Date. *See* Plan Section III. These provisions are standard and have been approved by this Court, and others, in numerous instances.

115.    The Plan does provide separate provisions regarding the allowance of Professional Fee Claims; however, it is hornbook law that Professional Claims are subject to additional and separate terms regarding their allowance under the Bankruptcy Code. *See, e.g.,* 11 U.S.C. §§ 327, 330, 503(b), 1103.  Additionally, the Professional Fees are subject to the applicable Carve-Out and other terms and requirements, as Ordered by the Court.  *See, e.g.,* Docket Nos. 760-763. The Plan merely implements these Bankruptcy Code provisions and Court Orders. That is not disparate treatment.

116.    The Objecting Lenders also allege the timing of the Claims Objection Deadline and deadline to file final fee applications under the Local Rules creates disparate treatment. However, the Objecting Lenders ignore the differences in these types of Claims, the rules that govern them, the terms of applicable Court Orders, and that valid Allowed Administrative Claims under the Plan will be paid in the ordinary course of business or as agreed between the parties on or as soon as reasonably practicable following the Effective Date. Only Administrative Claims that are not Allowed—*i.e.*, subject to dispute or inchoate—will not be paid on or around the Effective Date. That makes good sense—absent such treatment the Plan would not contemplate the later filing of

Administrative Claims or the ability to resolve or legitimate Disputed or unfiled Administrative Claims. There is no basis to pay Disputed or not yet filed claims on the Effective Date.[47]

117.    Regardless, there is no need to litigate these issues now because—as is standard for chapter 11 plans—the Plan contemplates that some Administrative Claims may be disputed and subsequently litigated and will be paid in full from the Debtors or Liquidating Trust as soon as Allowed by the Bankruptcy Court.

118.    **Second**, and as set forth above, the Plan is feasible. All Allowed Administrative Claims will be paid on or as soon as reasonably practicable on the Effective Date or the date on which the Administrative Claims become Allowed. Moreover, and as described above, the Plan provides that, to the extent unpaid on the Effective Date, an Administrative Claim will still be entitled to payment in full from the Liquidating Trust once it is Allowed. Substantially all of the Debtors' valuable Assets, including certain interests in real property and Causes of Action, will vest in the Liquidating Trust and will be available to satisfy all Claims, including Administrative Claims, in accordance with the Plan and Bankruptcy Code.

119.    **Third**, the Objecting Lender Objection objects to the scope of the releases and alleges they are not supported by adequate consideration or substantial contribution. The releases,

---

[47]    The Objecting Lenders claim to have Administrative Claims "for post-petition rent and other amounts due under [their respective finance agreements]." Obj. Lender Obj., ¶ 12. But, they provide no detail on these claims, and it is unclear what they are referring to. The Objecting Lenders also allege they are purchase money lenders, rather than lessors in their objection (*see id.*, ¶ 8) and respective proofs of claim. As lenders, if they hold valid and enforceable liens, they would only potentially be entitled to adequate protection (if any), which will never be more than the diminution in value of their collateral prior to relief from stay, rather than "rent". *See, e.g., United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626 (1988) (providing a secured creditor is entitled to "adequate protection" only against diminution in the value of the collateral securing an allowed secured claim). Any adequate protection claims would doubtlessly be subject to the Estate's competing claims and offsets under Section 506(c). Additionally, the agreed order modifying the stay as to, among others, the Objecting Lenders [Docket No. 764], which addressed the Objecting Lenders' motions for relief from the automatic stay, didn't condition the granting of relief on the provision of adequate protection payments and did not approve such payment of such amounts retroactively.  Accordingly, it is unclear what Administrative Claims the Objecting Lenders would be asserting.

and the Released Parties, are exceptionally limited and only include (a) the Independent Directors; (b) the Committee and the individual members thereof in their capacity as such; (c) the CRO; (d) any Professional; and (e) all Participating Lenders. Each of the Released Parties has provided substantial contributions to the Debtors' estates as described above. With respect to the Participating Lenders, the Plan merely reaffirms the releases provided to them in the Term Sheet and Settlement Order.

120.     To justify their unfounded attack on the releases, the Objecting Lenders assert the releases should not be approved because of "both pre-petition and post-petition" allegations of fraud. ***No one*** has alleged fraud has occurred after the Petition Date; the Objecting Lenders—of course—provide no specifics. ***No one*** has alleged the Released Parties—*i.e.*, the Debtors' Court-appointed, postpetition fiduciaries—have engaged in fraud either pre- or post-petition, and, again, the Objecting Lenders provide no specifics. Such allegations concerning the Debtors' fiduciaries are plainly spurious and unsupportable. However, even if there were validity to the objection (there is not), the releases do not apply to intentional misconduct, including fraud. Nor are any of the Debtors' prepetition officers, directors, or employees receiving a release under the Plan.  The Objecting Lenders are simply using the pre-petition allegations surrounding parties other than the Released Parties to cloud the propriety of the releases and bootstrap their argument.  The argument that the releases should not be approved until the Liquidating Trustee's investigation is complete is baseless.

121.     ***Fourth***, the Objecting Lender Objection alleges that the Plan Injunction is a *de facto* discharge in violation of Section 1143(d)(3). As set forth above (*see* ¶¶ 110-111 *supra*), there is no merit in this argument.

iv.    **The Chubb Objection.**

122.    In the Chubb Objection, the Chubb Companies (as defined therein) argue that (i) the Debtors' Estates and Liquidating Trustee should be fully liable for all obligations under the insurance policies issued by the Chubb Companies to the Debtors (the "Chubb Policies"); (ii) that the terms of the Insurance Program (as defined therein) should not be altered or by the Plan, and (iii) that the Plan should provide that workers' compensation claims, claims against non-Debtor-insured, and direct action claims against the Chubb Companies should continue in the ordinary course.[48]

123.    *First*, the Chubb Companies fail to cite any applicable legal authority for the proposition that the Debtors' Estates and Liquidating Trust should be liable on a postpetition or post-Effective Date basis for obligations under the Chubb Policies.  None of the Chubb Polices were the current insurance policy for any of the Debtors on or after the Petition Date, and are entirely prepetition insurance policies.  The majority of the cases cited by the Chubb Companies are not bankruptcy related cases, and thereby ignore the pre-petition nature of any obligations that the Debtors may have had under the Chubb Policies.  For those cases cited by the Chubb Companies that do address bankruptcy, those cases address the effects and requirements of assumption or assumption and assignment under section 365 of the Bankruptcy Code (or the Bankruptcy Act).  As is clear in the Plan, Debtors are not assuming or assuming and assigning the Chubb Policies.  Rather, to the extent that the Chubb Policies are executory, they are rejected under Section XIII.A. of the Plan.  To the extent the Chubb Policies are not executory, the Chubb Companies have whatever rights they have, the same as with any other prepetition creditor.  Simply

---

[48] The Chubb Companies also assert an objection to the adequacy of the disclosures in the Plan in footnote 5 to the Chubb Objection.  However, the Debtors assert that the Plan's definition of Insurance Policies in section III, the terms of section XIII regarding executory contracts (as applicable), and the treatment of Classes 2 and 3 in, *inter alia*, section X of the Plan provide adequate information.

stated, the Chubb Companies arguments that the Debtors' Estates or the Liquidating Trust should be burdened by converting all obligations under the Chubb Policies into post-petition or post-Effective Date obligations is without merit and should be overruled by the Court.

124.    ***Second***, the Chubb Companies argue that the Plan cannot alter any requirements of the Chubb Policies, but only identify the Chubb Companies' rights with respect to certain liens, as well as the vesting of assets in the Liquidating Trust and certain injunctions (which injunctive issues are also addressed by the Chubb Companies' third point, *infra*).  To the extent that the Chubb Companies are attempting to convert any pre-petition obligations into post-petition obligations, the Court should overrule the Chubb Objection for the reasons above.  However, the Debtors have conferred with the Committee and added paragraph 50 to the Confirmation Order, which makes clear that to the extent that the Chubb Companies have any rights with respect to any valid and enforceable liens on Collateral, the Chubb Companies retain such rights.  With this clarifying language in the Confirmation Order, the Court should overrule the balance of the Chubb Companies' arguments on this point.

125.    ***Third***, the Chubb Companies argue that that notwithstanding the Plan Injunction, the Plan should provide that workers' compensation claims, claims against non-Debtor-insured, and direct action claims against the Chubb Companies should continue in the ordinary course.  In consultation with the Committee, the Debtors have added paragraph 49 to the Confirmation Order, which makes clear that the Chubb Companies, as well as other insurers, have the ability to address such claims in the ordinary course, as requested by the Chubb Companies.

### v.    The FRIND Objection.

126.    The Debtors entered into a stipulation with landlord FRIND-Aerotropolis, LLC ("FRIND"), which was approved by the Court at Docket No. 929 (the "FRIND Stipulation") and

which resolves the majority of the FRIND Objection. Additionally, FRIND asserts that even with Court approval of the FRIND Stipulation, the Effective Date should not occur until after the Debtors' agreed April 30, 2025 surrender date for the applicable premises and the payment of certain amounts (the "FRIND Winddown Claims") for any property damages incurred between March 11, 2025 and the date the Debtors exit the premises (agreed as April 30, 2025) as well as for any indemnity claims arising during that same period. However, the Court should overrule the remaining basis of the FRIND Objection. As set forth above, and although the FRIND Winddown Claims would arise only after the Debtors' anticipated Effective Date on April 14, 2025, the Plan provides for the payment of Allowed Administrative Claims in full on the Effective Date or as soon as reasonably practicable thereafter as well as in the ordinary course of business, not only by the Debtors' estates but also by the Liquidating Trust after the Effective Date. Accordingly, there is no reason to delay the Effective Date or condition its occurrence until such time as FRIND liquidates and asserts any FRIND Winddown Claim, which could add weeks (or longer) to the occurrence of the Effective Date.

  **vi.**  **The Daimler Objection and TBK Objection**

  127.  The Daimler Objection and the TBK Objection assert substantially similar objections to the confirmation of the Plan. As a threshold matter, both TBK Bank, SSB ("TBK") and Daimler Truck Financial Services USA LLC ("Daimler") are deemed to accept the plan pursuant to the Term Sheet and Settlement Order. Progress towards a resolution has been made through revisions incorporated into the Fourth Amended Plan, and the Debtors, the Committee, TBK, and Daimler, continue to work to resolve the remaining open issues among them.

  128.  However, both the Daimler Objection and the TBK Objection assert their belief that the Debtors' return of collateral under the Term Sheet may not be substantially complete on

or prior to an Effective Date of the Plan.  This prophylactic objection is an insufficient basis to delay an Effective Date of the Plan, particularly under the circumstances of these Chapter 11 Cases. TBK and Daimler assert that they should be given what is an unfettered veto right to delay the occurrence of the Effective Date by requiring 2 business days' advance notice to assert an objection to the occurrence thereof in their respective discretion, based on their belief of the Debtors' compliance with the terms of the Term Sheet.  Moreover, the two business days' objection deadline requirement is likely to delay any Effective Date well beyond just two days, causing substantial uncertainty for the Debtors and other parties in interest.  Daimler's and TBK's proposal to have a unilateral right to delay the Effective Date without consequence, should not be countenanced by the Court. TBK and Daimler are not without remedy to the extent they believe they can assert Claims against the Estates under the Term Sheet.  To the extent Daimler or TBK assert a right to any refund under the Term Sheet and/or Settlement Order, such Claims may be asserted against the Estates following any Effective Date in accordance with the terms of the Plan and the Debtors' Estates reserve all rights and defenses to such Claims.  Accordingly, the TBK Objection and the Daimler Objection should be overruled.

> **vi.      The Personal Injury Claimant Objections.**

129.     The Debtors have negotiated certain language in paragraph 49 of the Confirmation Order with the Committee, which addresses the issues raised in the Personal Injury Claimant Objections. The Debtors believe the language address such objections, but as of the time of filing hereof, these objections are not fully resolved.

> **vii.     The Texas Objection.**

130.     The Debtors have addressed the Texas Objection through (i) amendments to the duration of the Claims Objection Deadline, as defined in section III of the Plan; (ii) amendments

to section VIII.D. regarding the accrual of interest; and (iii) section VIII.B. regarding the filing of Administrative Claims by the Texas Taxing Authorities (as defined in the Texas Objection). The Debtors have included paragraph 51 of the Confirmation Order to address the remaining of the Texas Objection; however, such language remains subject to further negotiation and review by the Texas Taxing Authorities and Committee as of the date hereof. To the extent that the Debtors, Committee, and the Texas Taxing Authorities cannot reach agreement regarding such language prior to the Confirmation Hearing, the Debtors will submit further briefing and/or argument on these issues as appropriate.

## VI.

## REPLY TO INFORMAL OBJECTIONS AND RESPONSES

131.    The Debtors received several informal responses to the Plan, which the Debtors believe have been resolved as set forth below.

132.    **Department of Justice/Environmental Protection Agency**. The Debtors have agreed to add paragraph 10 of the Proposed Confirmation Order at the request of the Department of Justice/Environmental Protection Agency.

133.    **MODE Transportation**. The Debtors entered into a stipulation with MODE Transportation, LLC [Docket No. 912] that resolves MODE Transportation, LLC's informal objection to the Plan.

134.    **JPMorgan Chase Bank, N.A.** The Debtors entered into a stipulation with JPMorgan Chase Bank, N.A., which the Court approved at Docket No. 950, that resolves JPMorgan Chase Bank, N.A.'s informal objection to the Plan. Per the stipulation, JPMorgan Chase Bank, N.A., will vote its Class 2 Other Secured Claim in favor of the Plan.

## VII.

### WAIVER OF THE STAY OF THE CONFIRMATION ORDER

135.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise." Fed. R. Bankr. P. 3020(e). Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code. Each rule also permits modification of the imposed stay upon court order.

136.    The Debtors submit that good cause exists for waiving and eliminating any stay of the Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the Confirmation Order will be effective immediately upon its entry. The Debtors submit that, based on the circumstances of this case discussed above (including the global settlement reflected therein and the overall broad creditor support for the Plan), it is reasonable and amply justified for the Debtors and interested parties to proceed with implementing the Plan and to provide, as promptly as possible, distributions to the Debtors' creditors.

## VIII.

### CONCLUSION

**WHEREFORE**, for the reasons set forth in this Memorandum, the Debtors respectfully submit that the Plan fully satisfies all applicable requirements of the Bankruptcy Code and requests that the Court enter an order confirming the Plan substantially in the form attached hereto.

Dated: April 8, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Teddy M. Kapur*

Teddy M. Kapur (SBT 24046186)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
tkapur@pszjlaw.com
mlitvak@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Jeffrey W. Dulberg (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
rpachulski@pszjlaw.com
jdulberg@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2025, a true and correct copy of the above and foregoing has been served on all parties that are registered to receive electronic transmission through this Court's CM/ECF filing system in these cases.

*/s/ Teddy M. Kapur*

Teddy M. Kapur