IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| KAL FREIGHT INC., *et al.*,[1] | Case No. 24-90614 (CML) |
| Debtors. | (Jointly Administered) |

**THE OFFICIAL UNSECURED CREDITORS' COMMITTEE'S REPLY TO OBJECTION OF MITSUBISHI HC CAPITAL CANADA INC., TRUIST EQUIPMENT FINANCE CORP., DE LAGE LANDEN FINANCIAL SERVICES, LLC AND FIFTH THIRD BANK, N.A. TO FINAL APPROVAL AND CONFIRMATION OF DEBTORS' THIRD AMENDED AND RESTATED COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION**

**[Relates to Docket No. 904]**

The Official Committee of Unsecured Creditors (the "Committee") of Kal Freight Inc. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") files this Reply to the Objection of Mitsubishi HC Capital Canada Inc. ("Mitsubishi"), Truist Equipment Finance Corp. ("Truist"), De Lage Landen Financial Services, LLC ("DLL") and Fifth Third Bank, N.A. ("Fifth Third") [Docket No. 904] (the "Objection") to final approval and confirmation of the Debtors' Third Amended and Restated Combined Disclosure Statement and Plan of Liquidation under Chapter 11 of the Bankruptcy Code [Docket No. 845] (as may be further amended or modified, the "Plan").[2]  In support hereof, the Committee respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840); and KVL Tires Inc. (0320). The location of the Debtors' service address in these Chapter 11 cases is 10156 Live Oak Ave., Fontana, CA 92335.

[2] Capitalized terms not defined herein have the meanings provided in the Objection or the Plan, as applicable, unless otherwise noted.

# I.
# PRELIMINARY STATEMENT

1. The Committee asserts that each objection raised by Mitsubishi, DLL, Fifth Third, and Truist (collectively, the "Objectors") is unfounded, and the Committee intends to address any remaining objections of these parties at the hearing on April 12, 2025. This Reply, however, specifically addresses the Objectors' asserted administrative expense claims.

2. As shown below, the Objectors, and any other similarly situated creditors in these cases, are not entitled to any administrative expense claims for the Debtors' post-petition use of their collateral and are not entitled to Plan treatment under 11 U.S.C. § 1129(a)(9).

# II.
# REPLY

*Secured Creditors Are Only Entitled to Administrative Expense Claims under 11 U.S.C. § 503(b)(1)(A) to the Extent of Unpaid Adequate Protection Obligations*

3. The Objectors are prepetition equipment lenders of the Debtors. DLL, Fifth Third, and Truist claim liens on at least 376 of the Debtors' dry van and reefer trailers under their respective *Loan and Security Agreements* with the Debtors (the "Loan Agreements"). As set forth each party's Motion for Relief from the Automatic Stay:[3]

    a. DLL claims a lien on 78 dry van trailers pursuant to that certain *Loan and Security Agreement No. 500-50405973* with Kal Freight, Inc. dated June 8, 2022, attached as Exhibit A to DLL's Stay Relief Motion [Docket No. 338-1];

    b. Fifth Third claims a lien on 38 reefer trailers, 5 pickup trucks, and 5 forklifts pursuant to (i) that certain *Master Loan and Security Agreement No. 001-0010940* with Kal Freight Inc. dated April 22, 2022, (ii) that certain *Master Loan and Security Agreement No. 001-0012521* with Kal Partz Inc. dated September 27, 2022, (iii) that certain *Master Loan and Security Agreement No. 001-0012754* with KVL Tires Inc. dated October 24, 2022, each of which is

---

[3] *See Motion of De Lage Landen Financial LLC for an Order Granting (I) Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and (II) Related Relief* [Docket No. 338]; *Motion of Fifth Third Bank, N.A. for an Order Granting (I) Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and (II) Related Relief* [Docket No. 354]; *Motion of Truist Equipment Finance Corp. for an Order Granting (I) Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and (II) Related Relief* [Docket No. 355] (the "Stay Relief Motions").

11350191 v2 (74987.00002.000)

    attached to Fifth Third's Stay Relief Motion as Exhibit A, and (iv) three different *Equipment Loan Schedules* attached to the Stay Relief Motion as Exhibit B [Docket No. 354-1]; and

  c. Truist claims a lien on 115 dry van trailers and 145 reefer trailers pursuant to the *Master Loan and Security Agreement* attached to its Stay Relief Motion as Exhibit A and (ii) eight different Equipment Security Notes attached to the Stay Relief Motion as Exhibit B [Docket No. 355-1].

Mitsubishi does not assert any liens on the Debtors' assets, because it was granted prepetition liens on 299 trailers that never existed.[4]

  4. The Objectors assert "substantial" administrative expense claims for post-petition obligations under their prepetition financing agreements, which they notably attempt to characterize as "post-petition rent."[5] Objectors do not specify what type of administrative claim they assert, nor do they cite any case law or other authority to support priority treatment of their claims, but the Committee presumes they assert claims under section 503(b)(1)(A) for "actual, necessary costs" of preserving the estates. *See* 11 U.S.C. § 503(b)(1)(A).

  5. Despite Objectors' unsupported allegations to the contrary, secured creditors are only entitled to administrative expense claims for unpaid adequate protection obligations. *Collier on Bankruptcy* ¶ 503.06[3][a] (Richard Levin & Henry J. Sommer eds., 16th ed.). Non-payment under prepetition loan agreements, even while continuing to use the creditors' collateral, is not sufficient. Absent the debtor's obligation to pay adequate protection, either by agreement or court

---

[4] *See Mitsubishi HC Capital Canada Inc.'s, Truist Equipment Finance Corp.'s, and Fifth Third Bank, N.A.'s Motion, Pursuant to Bankruptcy Code Sections 105(a), 1104(c), 1106(b), and 1107(a) and Federal Rule of Bankruptcy Procedure 2007, for Entry of an Order Appointing an Examiner with Duties to Prosecute* [Docket No. 386], ¶¶ 17-21. Mitsubishi was a floorplan financing lender to Big Rig Trailers & Leasing, an affiliate of the Debtors. *Id*. In May 2024, as part of a forbearance agreement with Big Rig, Mitsubishi accepted a lien on 299 trailers from Kal Freight, Inc., but according to Mitsubishi, those units never existed. *Id*.

[5] *Objection*, ¶ 12 ("[T]he Debtors have failed to remit any post-petition payments to the Objectors on account of Debtors' obligations related to the Objector Finance Agreements. Accordingly, the Objectors have substantial claims for **post-petition rent** and other amounts due under the Objector Finance Agreements (such claims, the "Objector Administrative Claims"), all of which are entitled to administrative priority under 11 U.S.C. § 503(b).") (emphasis added).

order, a secured creditor cannot have an administrative claim under section 503(b)(1)(A). *Id.* This is because "actual and necessary" administrative expenses can only arise from post-petition transactions with the bankruptcy estate. *Id.*; *Matter of Whistler Energy II, L.L.C.*, 931 F.3d 432, 441 (5th Cir. 2019) (citing *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001) ("In order to qualify as an "actual and necessary cost" under section 503(b)(1)(A), a claim against the estate must have arisen *post-petition* and *as a result of actions taken by the trustee* that benefitted the estate.") (emphasis added)); *In re Gasel Transp. Lines, Inc.*, 326 B.R. 683, 687 (B.A.P. 6th Cir. 2005) ("[A] debt qualifies as an 'actual, necessary' administrative expense only if (1) it arose from a *transaction with the bankruptcy estate* and (2) directly and substantially benefitted the estate.") (emphasis added) (quoting *In re Sunarhauserman, Inc.*, 126 F.3d 811, 816 (6th Cir.1997)).

6. For secured creditors, such as the Objectors, there is no post-petition transaction with the estate unless and until the debtor becomes obligated to pay them adequate protection.

> The requirement that administrative expenses arise from actions taken by the debtor in possession is also closely tied to the policy underlying section 503(b)(1)(a), namely, to induce third parties to provide goods and services to debtors-in possession. … **There is [] no inducement by a debtor in possession that uses property subject to a secured creditor's lien unless and until the debtor has agreed to pay, or has been ordered to pay, adequate protection**.

*Collier on Bankruptcy* ¶ 503.06[3][a] (emphasis added) (citing *In re Gasel Transp. Lines, Inc.*, 326 B.R. 683, 687-88 (B.A.P. 6th Cir. 2005) (denying administrative expense claim for post-petition use of trucks prior to entry of adequate protection order, because "merely continuing to possess equipment pursuant to a prepetition contract does not constitute inducement by the debtor-in-possession"); *In re Blankenship Farms, LP*, 612 B.R. 570 (Bankr. W.D. Tenn. 2019) (denying administrative expense claim for post-petition depreciation of collateral prior to entry of adequate protection order and noting that there is a material difference between equipment lessors who are

entitled to rent for post-petition use of their property and creditors with a lien on the debtor's property)).

7. To determine if there was a transaction with the bankruptcy estate, "the proper focus [is] on the inducement involved in causing the creditor to part with its goods or services." *Gasel Transp. Lines*, 326 B.R. at 687 (citations omitted). "A creditor provides consideration to the bankrupt estate only when the debtor-in-possession induces the creditor's performance and performance is then rendered to the estate. If the inducement came from a pre-petition debtor, then consideration was given to that entity rather than to the debtor-in-possession." *Id.* at 687-88 (quoting *Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir.1987)). Case law is clear that there is no inducement of secured creditors, and thus no post-petition transaction, unless and until the debtor is required to pay adequate protection.

8. On remarkably similar facts to this case, the Sixth Circuit in *In re Gasel Transp. Lines, Inc.* denied Volvo's requested administrative expense claim for the debtor's post-petition use of its trucks, because "merely continuing to possess equipment pursuant to a prepetition contract does not constitute inducement by the debtor-in-possession." 326 B.R. 683, 688 (B.A.P. 6th Cir. 2005). Like the Objectors in this case, Volvo moved for relief from the automatic stay soon after the debtor filed bankruptcy, which the court granted roughly four months into the case. Shortly thereafter, the court entered an agreed order between the parties requiring the debtor to begin paying Volvo adequate protection. Volvo then sought an administrative expense claim for the post-petition use of its trucks prior to commencement of the debtor's adequate protection obligations. *Id.* at 686.

9. The court held that Volvo, as a secured creditor, could not show that its claim arose from a post-petition transaction with the debtor. *Id.* at 687. Thus, like the Objectors in this case,

Volvo was not entitled to an administrative expense claim, because it had no post-petition transaction with the debtor prior to the court's entry of the parties' agreed adequate protection order.

> The problem for Volvo is that the Agreed Order, and its arguable inducement for Volvo to do new business with the Debtor's estate, occurred *after* the time period for which it sought an administrative expense claim. The debtor in possession was able to retain and use Volvo's collateral during the first fifteen weeks of the chapter 11 case solely by virtue of the automatic stay. Accordingly, the bankruptcy judge correctly denied Volvo's application for an administrative expense claim because there was no postpetition transaction with the bankruptcy estate that induced Volvo to allow the Debtor to retain the collateral during the period for which it sought such a claim.

*Id.* at 688.

10. Here, the Court has not awarded or approved any adequate protection payments for any of the Objectors, which ends the inquiry into their alleged administrative expense claims.

11. Moreover, the Objectors have not *asked* this Court to award adequate protection payments (at least not to the Committee's knowledge). DLL, Fifth Third, and Truist each filed Stay Relief Motions on or before January 16, 2025, but none of them sought adequate protection as an alternative to stay relief.[6] The Objectors have actively participated throughout this case, appearing at all relevant hearings and even seeking to appoint an examiner, but none have asked this Court to condition the Debtors' use of their collateral on adequate protection payments.[7] And rather than proceeding with their Stay Relief Motions at the March 12, 2025 hearing, the Objectors

---

[6] *See* Docket Nos. 338, 354, and 355; *see also* Docket No. 718, *Reply of De Lage Landen Financial Services, LLC, Fifth Third Bank, N.A., and Truist Equipment Finance Corp. in Support of Motions for Orders Granting (I) Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and (II) Related Relief.*

[7] See 11 U.S.C. § 363(e) ("*[O]n request of an entity that has an interest in property used*, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.") (emphasis added).

The Committee understands that the Objectors and Debtors were at one point negotiating terms of Stipulated Agreed Orders for the Debtors to pay adequate protection to the Objectors, but that no agreements were finalized and the Stipulations were not filed with the Court.

acquiesced to treatment under the Debtors' Omnibus Stay Relief Order [Docket No. 764]. The Objectors also consented to the global settlement approved by this Court on March 12,[8] which contemplated the Debtors' proposal of the Plan to which they now object.

12. The Objectors' "lay behind the log" strategy is further reason to deny any administrative expense that they, and any other similarly situated creditors, may ultimately request in this case.

> Had the bank asserted its rights, the debtor would have had the option to surrender the collateral to First State and avoid providing adequate protection or the debtor would have had to comply with §§ 361, 362, etc., and protect the bank's interest in the collateral. The Bankruptcy Code nowhere puts the responsibility on the debtor to initiate consideration of adequate protection of a creditor's noncash collateral. There is nothing in § 503 remotely suggesting that administrative expense priority was intended as an optional remedy to adequate protection of a secured claimholder's interest in property of the estate.

*In re Blankenship Farms, LP*, 612 B.R. 570, 581-82 (Bankr. W.D. Tenn. 2019) (quoting *In re Advisory Info. & Mgmt. Sys., Inc.*, 50 B.R. 627, 629-30 (Bankr. M.D. Tenn. 1985)).

13. The Objectors also mischaracterize the Debtors' unpaid obligations under the Loan Agreements as "post-petition rent," blurring the distinctions between lessors and secured creditors and the different treatments to which they are entitled. As the *Blankenship* court notes:

> There is a fundamental difference between security agreements and lease agreements. In lease situations the lessor is the owner of the property and the lessee must compensate the lessor for the benefit to the estate of using the lessor's property. By contrast, the secured lender is not the owner of the collateral but instead merely has a lien for which it is entitled to adequate protection.

---

[8] *See Order (I) Approving Binding Settlement Term Sheet with Participating Lenders and Committee, (II) Authorizing Relief from Automatic Stay and/or Abandonment of Collateral, and (III) Granting Related Relief* [Docket No. 770]

11350191 v2 (74987.00002.000)

*Blankenship Farms, LP*, 612 B.R. at 587 (quoting *In re Advisory Info. & Mgmt. Sys., Inc.*, 50 B.R. at 630). Similarly, the concurring opinion in *Gasel Transportation Lines, Inc.* states as follows as to Volvo's request for administrative expense priority:

> As noted, Volvo is a creditor which holds a security interest in tractors owned by the Debtor. As such, its rights are fundamentally different from those of a lessor. Under § 363(c)(1), a debtor-in-possession may use non-cash collateral, such as the eleven tractors at issue in this case, in the ordinary course of its business operations without the permission of the bankruptcy court. Section 362 further assists reorganization efforts by automatically staying all collection efforts and foreclosure actions against property of the debtor's estate by creditors such as Volvo. Simply stated, Volvo is "not contributing anything to the estate by sitting back and 'allowing' [the] debtor-in-possession to use collateral which it already owns and has a statutory right to use."

*Gasel Transp. Lines, Inc.*, 326 B.R. at 691 (Judge Gregg concurring) (quoting *In re Advisory Info. & Mgmt. Sys., Inc.*, 50 B.R. at 630).

14. For the foregoing reasons, the Objectors, and any similarly situated secured lenders in these cases, are not entitled to administrative expense claims for the Debtors' post-petition use of their collateral.[9]

### III.
### RESERVATION

15. The Committee reserves all its rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Reply and to raise additional objections during the hearing on confirmation of the Plan.

---

[9] For the avoidance of doubt, section 507(b) likewise provides no support for the Objectors' claims, because, for that section to apply, a secured creditor must have been provided adequate protection which fails to protect the creditor's interests. *See* 11 U.S.C. § 507(b) ("If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, *such creditor has a claim allowable under subsection (a)(2)* of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.").

## IV.
## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court overrule the Objection and grant the Committee such other and further relief as is just and equitable.

Dated: April 9, 2025

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

 /s/ Kyle Woodard
Joseph M. Coleman (SBT 04566100)
Kyle Woodard (SBT 24102661)
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Email: jcoleman@krcl.com
Email: kwoodard@krcl.com

-and-

**BROWN RUDNICK LLP**

Robert J. Stark (admitted *pro hac vice*)
Bennett S. Silverberg (admitted *pro hac vice*)
Kenneth Aulet (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Email: rstark@brownrudnick.com
Email: bsilverberg@brownrudnick.com
Email: kaulet@brownrudnick.com

Steven B. Levine (admitted *pro hac vice*)
Shari I. Dwoskin (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Email: slevine@brownrudnick.com
Email: sdwoskin@brownrudnick.com

*Co-Counsel for the Official Committee of Unsecured Creditors*

11350191 v2 (74987.00002.000)

**Certificate of Service**

    The undersigned hereby certifies that on April 9, 2025, a true and correct copy of the foregoing document was filed with the Court and served via the Court's CM/ECF system for the United States Bankruptcy Court for the Southern District of Texas.

                                                  */s/ Kyle Woodard*
                                                    Kyle Woodard

11350191 v2 (74987.00002.000)