# Exhibit A

# KAL GUC LIQUIDATING TRUST

**KAL GUC LIQUIDATING TRUST AGREEMENT**

**Dated as of April 28, 2025**

*Pursuant to the*
*Modified Fourth Amended and Restated Combined Disclosure Statement and Plan of*
*Liquidation of KAL Freight Inc. and its Affiliated Debtors*
*under Chapter 11 of the Bankruptcy Code*
*Dated April 10, 2025*

# TABLE OF CONTENTS

**Page**

ARTICLE I AGREEMENT OF TRUST ....................................................................2

    1.1    Creation and Name ..............................................................................2

    1.2    Purposes..............................................................................................3

    1.3    Transfer of Assets...............................................................................3

    1.4    Acceptance of Assets and Assumption of Liabilities. ...................4

    1.5    Jurisdiction ........................................................................................4

    1.6    Nature of GUC Trust ........................................................................4

    1.7    Effectiveness .....................................................................................5

ARTICLE II POWERS, TRUST ADMINISTRATION, AND REPORTING ..............5

    2.1    Powers. ...............................................................................................5

    2.2    General Administration. ....................................................................8

    2.3    Reporting. ...........................................................................................8

    2.4    Trust Oversight Committee. ..............................................................9

ARTICLE III ACCOUNTS, INVESTMENTS, AND PAYMENTS .............................9

    3.1    Accounts. ............................................................................................9

    3.2    Investment Guidelines. ....................................................................10

    3.3    Payment of Operating Expenses......................................................10

    3.4    Distributions to Beneficiaries. .........................................................11

    3.5    Administrative Subaccount. .............................................................13

ARTICLE IV TRUSTEE; DELAWARE TRUSTEE....................................................13

    4.1    Number. .............................................................................................13

    4.2    Term of Service. ................................................................................13

    4.3    Compensation and Expenses of the Trustee.....................................14

    4.4    Standard of Care; Exculpation. ........................................................15

    4.5    Protective Provisions........................................................................16

i

| 4.6 | Indemnification. | 16 |
| 4.7 | Burden of Proof. | 17 |
| 4.8 | Reliance by the Trustee. | 18 |
| 4.9 | Books and Records. | 18 |
| 4.10 | Trustee Independence | 18 |
| 4.11 | No Bond | 18 |
| 4.12 | Books and Records | 18 |
| 4.13 | Delaware Trustee. | 19 |

**ARTICLE V TAX MATTERS** .................................................................................22

| 5.1 | Treatment of Settlement Consideration Transfer | 22 |
| 5.2 | Income Tax Status. | 23 |
| 5.3 | Tax Returns. | 23 |
| 5.4 | Withholding of Taxes and Reporting Related to GUC Trust Operations | 23 |
| 5.5 | Valuation | 24 |
| 5.6 | Expedited Determination of Taxes | 24 |

**ARTICLE VI GENERAL PROVISIONS** .................................................................24

| 6.1 | Irrevocability | 24 |
| 6.2 | Term; Termination. | 24 |
| 6.3 | Amendments | 25 |
| 6.4 | Notices. | 26 |
| 6.5 | Severability. | 27 |
| 6.6 | Successors and Assigns | 27 |
| 6.7 | Limitation on GUC Trust Interests for Securities Laws Purposes | 27 |
| 6.8 | Exemption from Registration | 28 |
| 6.9 | Entire Agreement; No Waiver | 28 |
| 6.10 | Headings. | 28 |
| 6.11 | Governing Law | 28 |
| 6.12 | Effectiveness | 29 |
| 6.13 | Counterpart Signatures | 29 |

EXHIBIT 1  CERTIFICATE OF TRUST OF THE KAL GUC LIQUIDATING TRUST

EXHIBIT 2  INVESTMENT GUIDELINES

# KAL GUC LIQUIDATING TRUST AGREEMENT

This KAL GUC Liquidating Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into pursuant to the *Modified Fourth Amended and Restated Combined Disclosure Statement and Plan of Liquidation of KAL Freight Inc. and its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* dated April 10, 2025 [Docket No. 982] (as may be further amended or modified, the "**Plan**"),[1] in Case No. 24-90614 (CML) in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("**Bankruptcy Court**") by the following parties (each a "**Party**" and, collectively, the "**Parties**"): (a) Wilmington Trust, National Association as the Delaware Trustee (together with any successor serving in such capacity, (the "**Delaware Trustee**");  (b) Province Fiduciary Services LLC, as the duly-appointed trustee of the GUC Trust created herein (together with any successor trustee serving in such capacity, the "**Trustee**"), with Mr. Paul Navid and Ms. Amanda (Demby) Swift as authorized by the Trustee to take all actions hereunder on the Trustee's behalf, and (c) the members of the Trust Oversight Committee (the "**TOC**") identified on the signature pages hereof.

## RECITALS

**WHEREAS**, on December 5, 2024 (the "**Petition Date**"), Kal Freight Inc. and its debtor affiliates (each a "**Debtor**" and, collectively, the "**Debtors**")[2] each filed a voluntary petition in the Bankruptcy Court under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), thereby initiating the Chapter 11 Cases;

**WHEREAS**, the Plan contemplates the creation of the KAL GUC Liquidating Trust (the "**GUC Trust**");

**WHEREAS**, on April 17, 2025, the Bankruptcy Court entered the Confirmation Order [Docket No. 1023] confirming the Plan;

**WHEREAS**, pursuant to the Plan, the GUC Trust is established to receive and liquidate the Liquidating Trust Assets, as set forth in the Plan, and to make distributions ("**GUC Trust Distributions**" or "**Distributions**") to the holders of Allowed Claims in Class 3 (the "**Beneficiaries**" and each, a "**Beneficiary**") on the interests in the GUC Trust held by such Beneficiaries (the "**GUC Trust Interests**") in accordance with the Plan, the Confirmation Order and this Trust Agreement (the "**Governing Documents**");

---

[1]    Capitalized terms that are used but not otherwise defined in this Trust Agreement shall have the meanings provided in the Plan unless otherwise noted herein.

[2]    The Debtors in the chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: KAL Freight Inc. (0249); KAL Aviation LLC (2600); KAL Partz Inc. (0139); KAL Trailers & Leasing Inc. (0840): and KVL Tires Inc. (0320).  The location of the Debtors' Service address in the Chapter 11 Cases is 10156 Live Oak Ave., Fontana, CA 92335.

**WHEREAS**, the Trustee shall administer the GUC Trust in accordance with the terms of the Governing Documents;

**WHEREAS**, the GUC Trust shall have no objective or authority to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with the purpose of the GUC Trust as set forth in this Trust Agreement, the Plan, and the Confirmation Order;

**WHEREAS**, pursuant to the Plan, the GUC Trust is intended to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, and a "grantor trust" for United States federal income tax purposes, pursuant to Sections 671-679 of the Internal Revenue Code (the "**IRC**"), with the Beneficiaries treated as the grantors of the GUC Trust, except with respect to any Disputed Ownership Fund pursuant to Section 5.3(c);

**WHEREAS**, the GUC Trust created pursuant to this Trust Agreement is intended to be exempt from the requirements of the Investment Company Act of 1940;

**WHEREAS**, pursuant to and in accordance with the Plan, the Committee has selected and appointed Province Fiduciary Services LLC, with Mr. Paul Navid and Ms. Amanda (Demby) Swift as authorized by the Trustee to take all actions hereunder on the Trustee's behalf, and such selection and appointment has been approved by the Bankruptcy Court pursuant to the Confirmation Order; and

**WHEREAS**, Paul Navid and Amanda (Demby) Swift are willing to serve in such capacity on the terms set forth herein and pursuant to the terms of the Plan and the Confirmation Order.

**NOW, THEREFORE,** it is hereby agreed as follows:

## ARTICLE I
## AGREEMENT OF TRUST

**1.1**   **Creation and Name.**   There is hereby created a trust known as the "KAL GUC Liquidating Trust." The Trustee of the GUC Trust may transact the business and affairs of the GUC Trust in the name of the GUC Trust, and references herein to the GUC Trust shall include the Trustee acting on behalf of the GUC Trust. It is the intention of the parties hereto that the Trust created hereby constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. §§ 3801 et seq. (the "Act"). It is the intention of the Parties that the GUC Trust qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations and that this Trust Agreement constitute the governing instrument of the GUC Trust, except with respect to any Disputed Ownership Fund. The Trustee and the Delaware Trustee are hereby

authorized and directed to execute and file a Certificate of Trust with the Secretary of State of the State of Delaware in the form attached hereto as **Exhibit 1**.

**1.2**   **Purposes**.  The purposes of the GUC Trust are to:

(a)   receive the Liquidating Trust Assets pursuant to the terms of the Plan and the Confirmation Order;

(b)   hold, manage, protect and invest the Liquidating Trust Assets, together with any income or gain earned thereon and proceeds derived therefrom (collectively, the "**GUC Trust Assets**"), and monetize any non-liquid GUC Trust Assets, in accordance with the terms of the Plan, the Confirmation Order and this Trust Agreement for the benefit of the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the GUC Trust;

(c)   commence and pursue the Causes of Action, and manage and administer any proceeds thereof in accordance with the Plan;

(d)   pay the GUC Trust operating expenses, including professional fees and expenses, in accordance with this Trust Agreement;

(e)   qualify at all times as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund;

(f)   make distributions of GUC Trust Assets to Beneficiaries in accordance with and subject to the terms of this Trust Agreement and the Plan; and

(g)   engage in any lawful activity that is appropriate and in furtherance of the purposes of the GUC Trust to the extent consistent with the Governing Documents.

**1.3**   **Transfer of Assets.**(a)   Pursuant to, and in accordance with Article XIV of the Plan, the GUC Trust has received the Liquidating Trust Assets to fund the GUC Trust.[3] The Liquidating Trust Assets and any other assets to be transferred to the GUC Trust under the Plan will be transferred to the GUC Trust free and clear of any liens or other claims by the Debtors, any Released Party, any creditor or other entity, except that, to the extent provided in the Plan, real property transferred to the GUC Trust, if any, shall remain subject to valid and perfected liens existing on such property, if any.  The act of transferring the Liquidating Trust Assets to the GUC Trust shall not be construed to destroy or limit any such assets or rights or be construed as a waiver

---

[3]   To the extent that the Liquidating Trust Assets include the GUC Trust's entitlement to the proceeds of assets to be sold by the Debtors after the Effective Date, the individual serving as Trustee may also be designated as, and agree to serve as, an agent of the Debtors for the sole purpose of effecting the transfer of title by the Debtors of such assets.  In such role, the Trustee shall also be an "Indemnified Party" under Section 4.4 of this Trust Agreement.

of any right, and such rights may be asserted by the GUC Trust as if the asset or right was still held by the Debtors.

(b)     All attorney-client privileges, work product protections and other privileges, immunities or protections from disclosure (the "**LT Privileges**") held by any one or more of the Debtors (including any prepetition or postpetition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors) (the "**LT Privilege Transfer Parties**") related in any way to the Liquidating Trust Assets and the purpose of the GUC Trust (the "**LT Transferred Privileged Information**") are hereby transferred and assigned to the GUC Trust.  The LT Transferred Privileged Information shall include documents and information of all manner, whether oral, written, or digital, and whether or not previously disclosed or discussed.  For the avoidance of doubt, the LT Privileges shall include any right to preserve or enforce a privilege that arises from any joint defense, common interest, or similar agreement involving any of the LT Privilege Transfer Parties related in any way to the Liquidating Trust Assets and the purpose of the GUC Trust.

**1.4**     **Acceptance of Assets and Assumption of Liabilities.**

(a)     In furtherance of the purposes of the GUC Trust, the GUC Trust hereby expressly accepts the transfer to the GUC Trust of the Liquidating Trust Assets in the time and manner as, and subject to the terms, contemplated in the Plan.

(b)     In furtherance of the purposes of the GUC Trust, except as otherwise provided in this Trust Agreement or the Plan, the GUC Trust shall have and retain any and all rights, claims, counterclaims, and defenses the Debtors had with respect to any Claims of Beneficiaries ("**Beneficiary Claims**") immediately before the Effective Date to the extent necessary to administer such Claims in accordance with this Trust Agreement and the Plan.

(c)     Notwithstanding anything to the contrary herein, no provision herein shall be construed or implemented in a manner that would cause the GUC Trust to fail to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund.

(d)     In this Trust Agreement, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

**1.5**     **Jurisdiction**.  The Bankruptcy Court shall have continuing jurisdiction over the GUC Trust, provided, however, that the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the GUC Trust.

**1.6**     **Nature of GUC Trust**.  The GUC Trust is irrevocable, but this Trust Agreement is subject to amendment as set forth in Section 6.3 below. The GUC Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, limited liability partnership, joint venture, corporation, limited liability company, joint stock company or association, nor shall the GUC Trust, the Trustee, or the Beneficiaries, or any of them, for any

purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Beneficiaries, on the one hand, to the GUC Trust and the Trustee, on the other hand, shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them solely by this Trust Agreement, the Plan and the Confirmation Order.

1.7   **Effectiveness**.   The effectiveness of this Trust Agreement shall occur upon the Effective Date of the Plan and the receipt by the GUC Trust of the Liquidating Trust Assets as provided therein. Upon the Effective Date, this Trust Agreement shall conclusively be deemed binding upon and enforceable against each of the Beneficiaries, and the holders of Claims, without any further action by any Person or Entity.

## ARTICLE II
## POWERS, TRUST ADMINISTRATION, AND REPORTING

2.1   **Powers.**

(a)   The Trustee is and shall act as a fiduciary to the GUC Trust in accordance with the provisions of this Trust Agreement, the Plan and the Confirmation Order. The Trustee shall, at all times, administer the GUC Trust in accordance with the purposes set forth in Section 1.2 above and the Plan. Subject to the limitations set forth in this Trust Agreement and the Plan, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the GUC Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2 below, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)   Except as required by applicable law or as otherwise specified herein or in the Plan or the Confirmation Order, the Trustee need not (but may in the Trustee's discretion) obtain the order or approval of the Bankruptcy Court or any other court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court. Except as otherwise provided herein, the Trustee shall exercise his/her business judgment for the benefit of the in order to maximize the value of the GUC Trust Assets and GUC Trust Distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the GUC Trust and the Trustee shall have the right to submit to the Bankruptcy Court any question or questions, motions, applications or requests for instructions, regarding which the GUC Trust and/or the Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the GUC Trust with respect to any of the GUC Trust Assets or the Governing Documents, including the administration or distribution of any of the GUC Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion, request, application or otherwise, by the GUC Trust and/or the Trustee.

(c)   Without limiting the generality of Section 2.1(a) above, and except as limited herein or by the Plan, the Trustee shall have the power to:

(i)      receive and hold the Liquidating Trust Assets and exercise all rights with respect thereto;

(ii)     invest the monies held from time to time by the GUC Trust in accordance with the Investment Guidelines pursuant to Section 3.2 below;

(iii)    incur expenses and other obligations of the GUC Trust necessary to carry out the purposes of the GUC Trust in accordance with the Plan, and pay or satisfy such obligations from the GUC Trust, including without limitation expenses the Trustee deems necessary or appropriate in his judgment to protect the Trust's interests in non-monetary Liquidating Trust Assets;

(iv)     establish such funds, reserves, and accounts within the GUC Trust, as the Trustee deems useful in carrying out the purposes of the GUC Trust;

(v)      sue and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding, as required to reconcile, administer, or defend against the Beneficiary Claims;

(vi)     establish, supervise, and administer the GUC Trust and make distributions to Beneficiaries pursuant to the terms of the Governing Documents;

(vii)    appoint such officers and retain or employ such consultants, advisors, independent contractors, experts, agents, or other professionals and engage in such legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the GUC Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(viii)   compensate any of the GUC Trust's consultants, advisors, independent contractors, experts, agents and any other professionals for legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the GUC Trust requires;

(ix)     compensate the Trustee, the Delaware Trustee, and their employees, consultants, advisors, independent contractors, experts and agents, and reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(x)      engage with the Debtors, as necessary or appropriate, to prosecute, settle and resolve Causes of Action, recover assets through enforcement, resolution, settlement, collection, or otherwise;

(xi)     enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the GUC Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement or the Plan;

(xii)    in accordance with Section 4.4 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 4.4 below), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, and representatives. No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below;

(xiii)   prosecute, settle, and resolve the Causes of Action, and manage and administer any proceeds thereof;

(xiv)    make or cause to be made distributions to holders of Allowed Claims; and

(xv)     object to and resolve all Disputed Claims (including, without limitation, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Unsecured Claims) and make or cause to be made distributions on account of Disputed Claims that are determined to be Allowed Claims;

(xvi)    exercise such other powers as may be vested in the GUC Trust by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the GUC Trustee to be necessary and proper to implement the provisions of the Plan and this Trust Agreement;

(xvii)   appear and be heard on all matters before the Bankruptcy Court on behalf of the GUC Trust as (A) a party in interest under Section 1109(b) of the Bankruptcy Code and (B) a designated representative of the Debtors pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code with respect to any matters involving the GUC Trust or the GUC Trust Assets and for purposes of carrying out the Trustee's duties under this Trust Agreement; and

(xviii)  exercise any and all other rights and take any and all other actions as are permitted of the Trustee in accordance with the terms of this Trust Agreement and the Plan.

(d)     The GUC Trust shall not have the power to guarantee any debt of other persons.

(e)     The Trustee shall endeavor to make timely distributions and not unduly prolong the duration of the GUC Trust.

(f)     The GUC Trust and the Trustee may, but shall not be required to, consult with and retain attorneys, accountants, a third-party disbursing agent, or any other parties deemed by the GUC Trust and/or the Trustee to have qualifications necessary to assist in the proper administration of the GUC Trust. The GUC Trust, through the Trustee, shall be responsible for

paying all expenses of the GUC Trust (including, without limitation, (i) reasonable compensation and expenses of such persons or entities retained by the GUC Trust and (ii) compensation to the Trustee, as set forth herein) from the GUC Trust Assets, including any interest or other income generated from the GUC Trust Assets. Nothing herein shall preclude the Trustee from retaining such professionals on a contingency fee basis.

(g)    If, in the Trustee's reasonable judgment, any GUC Trust Assets cannot be sold in a commercially reasonable manner or any GUC Trust Assets have inconsequential value to the GUC Trust or the Beneficiaries, the Trustee shall have the right to cause the GUC Trust to abandon or otherwise dispose of such property, including, but not limited to, by way of donation to a non-profit 501(c)(3) organization that the GUC Trustee may select in his sole discretion.

## 2.2    General Administration.

(a)    The Trustee shall act in accordance with the Governing Documents. In the event of a conflict between the terms of this Trust Agreement and the Plan or the Confirmation Order, the terms of the Plan or the Confirmation Order, as applicable, shall control. For the avoidance of doubt, this Trust Agreement shall be construed and implemented in accordance with the Plan, regardless of whether any provision herein explicitly references the Plan.

(b)    The Trustee shall (i) timely file such tax returns and pay any taxes imposed on the GUC Trust in accordance with Section 5.3, (ii) comply with all applicable reporting and withholding obligations in accordance with Section 5.4, (iii) satisfy all requirements necessary to qualify and maintain qualification of the GUC Trust as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund, and (iv) take no action that could cause the GUC Trust to fail to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund.

(c)    Other than the duties and obligations of the Trustee specifically set forth in this Trust Agreement, the Plan, or the Confirmation Order, the Trustee shall have no duties and obligations of any kind or nature with respect to his position as such.

## 2.3    Reporting.

(a)    The Trustee shall timely prepare, file and distribute such statements, reports and submissions to the extent required by applicable bankruptcy and/or Delaware state law.

(b)    The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event no later than one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing special-purpose financial statements of the GUC Trust (including, without limitation, a special-purpose statement of assets, liabilities and net claimants' equity, a special-purpose statement of changes in net claimants' equity and a special-purpose statement of cash flows). The Trustee shall not be required to obtain an audit of the Annual Report by a firm of independent certified public accountants. The

Trustee shall cause the Annual Report to be available to the Beneficiaries when it is filed with the Bankruptcy Court.

### 2.4 Trust Oversight Committee.

(a)     The TOC shall consist of not more than four (4) members. The members of the TOC shall serve in a fiduciary capacity and shall have no fiduciary obligations or duties to any party other than the Beneficiaries. The Trustee shall consult with the TOC on each matter that could have a material impact on GUC Trust Assets or the administration of the GUC Trust, in each case as determined by the Trustee is his or her sole judgment.

(b)     Each member of the TOC shall serve until the earlier of (i) his or her death, (ii) his or her resignation, (iii) his or her removal, or (iv) the termination of the GUC Trust. A member of the TOC may resign at any time by written notice to the other members of the TOC and the Trustee. Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable. A member of the TOC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, or for other good cause. Such removal may be made by the recommendation of the remaining members of the TOC with the approval of the Trustee.

(c)     If a member of the TOC dies, resigns or is removed, the vacancy shall be filled with an individual selected by the remaining TOC members with the approval of the Trustee.

(d)     The members of the TOC shall not receive compensation from the GUC Trust for their services as TOC members, but shall be reimbursed for all reasonable out-of-pocket costs or expenses incurred in connection with the performance of such member's duties hereunder, provided that TOC members shall give the Trustee advanced written notice of any anticipated expenses.

### ARTICLE III
### ACCOUNTS, INVESTMENTS, AND PAYMENTS

### 3.1 Accounts.

(a)     The Trustee shall maintain one or more accounts (the "**Trust Accounts**") on behalf of the GUC Trust with one or more financial depository institutions (each a "**Financial Institution**").

(b)     Candidates for the positions of Financial Institution shall fully disclose to the Trustee any interest in or relationship with the Debtors, any Released Party or their affiliated persons. Any such interest or relationship shall not be an automatic disqualification for the position, but the Trustee shall take any such interest or relationship into account in selecting a Financial Institution.

(c)     The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time, and such successor shall be subject to the considerations set forth in Section 3.1(a) above.

(d)     The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for distributions to the Beneficiaries and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as GUC Trust Assets and, except as specifically designated as such in accordance with the provisions of Section 5.3(c) below, are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the IRC or Treasury Regulations.

### 3.2   Investment Guidelines.

(a)     The Trustee may invest the GUC Trust Assets in accordance with the Investment Guidelines, attached hereto as **Exhibit 2** (the "**Investment Guidelines**").  The GUC Trust and the Trustee shall be under no obligation to generate or produce, or have any liability for, interest or other income on any monies received by the GUC Trust and held for distribution or payment to the Beneficiaries, except as such interest or income shall be actually received by the GUC Trust.

(b)     In the event the GUC Trust holds any non-liquid assets, the Trustee shall own, protect, oversee, and monetize such non-liquid assets in accordance with the Governing Documents. This Section 3.2(b) is intended to modify the application to the GUC Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the GUC Trust Assets.

(c)     Cash proceeds received by the GUC Trust in connection with its monetization of the non-liquid GUC Trust Assets shall be invested in accordance with the Investment Guidelines until needed for the purposes of the GUC Trust as set forth in Section 1.2 above.

### 3.3       Payment of Operating Expenses.

All expenses of the GUC Trust shall be paid from the GUC Trust Assets, including any interest or other income generated therefrom. None of the Trustee, Delaware Trustee, the TOC, or the Beneficiaries, nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any operating expense or other liability of the GUC Trust.

**3.4**      <u>Distributions to Beneficiaries.</u>

(a)      The Trustee will make distributions to Beneficiaries in a fair, consistent and equitable manner in accordance with this Trust Agreement, the Plan and the Confirmation Order.

(b)      Distributions to Beneficiaries shall be made, as determined by the Trustee in his or her sole discretion, subject to the terms of the Plan, provided, however, the GUC Trust must distribute at least annually (beginning with the first full calendar year following the Effective Date of the Plan) to the Beneficiaries its net income plus all net proceeds from the sale of assets, except that the GUC Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its assets or to meet claims and contingent liabilities (including Disputed Claims). The Trustee shall determine, in his or her business judgment, the appropriate time at which to issue a Distribution or Distributions, and the appropriate manner in which to issue such Distribution or Distributions, in accordance with the Plan. The Trustee shall only make Distributions to Beneficiaries if the GUC Trust has sufficient funds, net of reasonable reserves (including, without limitation, reserves to cover expenses of the GUC Trust), as determined in the Trustee's sole discretion, to make such Distributions in accordance with the Governing Documents. Notwithstanding the foregoing, to the extent the Trustee determines that a distribution is impractical or uneconomical in any given year, the Trustee may defer such distribution. In the event the Trustee, in his sole discretion, deems it appropriate, the Trustee may make a motion to the Bankruptcy Court for approval of proposed distributions to any Beneficiary.

(c)      The GUC Trust may withhold or deduct from amounts distributable to any Person any and all amounts, determined in the Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement (including, without limitation, tax withholding in accordance with Section 5.4 below). Any GUC Trust Assets which are undistributable in accordance with this Section 3.4 as of the termination of the GUC Trust shall (i) revert to the GUC Trust (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary); (ii) the Beneficiary Claim with respect to such undistributable amount shall be released, settled, compromised and forever barred, and (iii) the undistributable amount shall be reallocated to the other Beneficiary Claims, in accordance with provisions of the Plan and this Trust Agreement.

(d)      The Trustee may retain a third-party distribution agent for the effective administration and distribution of amounts payable to Beneficiaries; provided, however, that such distribution agent shall have no greater authority than, and shall be subject to the same restrictions as, the Trustee under this Trust Agreement.

(e)      Subject to Bankruptcy Rule 9010, any distribution to a GUC Trust Beneficiary shall be made: (1) at the addresses set forth on the respective proofs of Claim filed by such holders; (2) at the address set forth in any written notices of address changes received by the Trustee after the date of any related proof of Claim; or (3) at the address reflected in the schedules if no proof of Claim is filed with the Trustee (solely as to Beneficiary Claims administered by the GUC Trust) and the Trustee has not received a written notice of a change of address. The Trustee may rely upon such Beneficiary addresses (as set forth in the preceding sentence) for service of all notices or other communications to the Beneficiaries in connection

with the GUC Trust.  Except as set forth in the Plan, if any GUC Trust Distribution or other communication from the GUC Trust is returned as undeliverable, no further GUC Trust Distribution shall be made to such holder unless the Trustee is notified in writing of such holder's then current address within 90 days of the communication.  Undeliverable GUC Trust Distributions shall remain in the possession of the Trustee until the earlier of (i) such time as a GUC Trust Distribution becomes deliverable as set forth in the preceding sentence, or (ii) such undeliverable GUC Trust Distribution becomes an Unclaimed Distribution pursuant to the provisions of the Plan and this Trust Agreement.  The Trustee (or its duly authorized agent) shall have no obligation to locate any GUC Trust Beneficiary.

(f)     After final GUC Trust Distributions have been made in accordance with the Plan, the Confirmation Order and this Trust Agreement, and adequate provision has been made for all final obligations of the GUC Trust, the Trustee shall have the authority to direct the remaining GUC Trust Assets to a non-profit 501(c)(3) organization that the Trustee may select in his or her sole discretion.

(g)     Checks issued to Beneficiaries shall be null and void if not negotiated within ninety (90) calendar days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Trustee by the GUC Trust Beneficiary to whom such check was originally issued.  Any Beneficiary Claim in respect of such a voided check shall be made within one hundred eighty (180) calendar days after the date of issuance of such check.  If no request is made as provided in the preceding sentence, the check shall be deemed undistributable and shall be subject to the provisions of Section 3.4(c).

(h)     Cash payments to foreign Beneficiaries may be made, at the option of the Trustee, in such funds and by such means as are necessary or customary in the foreign jurisdiction of such foreign holder.

(i)     The Trustee shall have the discretion to determine the timing of GUC Trust Distributions in the most efficient and cost-effective manner possible; provided, however, that the Trustee's discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

(j)     Notwithstanding any provision in the Trust Agreement, the Plan or the Confirmation Order to the contrary, the Trustee, in the Trustee's sole discretion, may decline to make any distribution of $100 or less, due to the economic inefficiency of making a distribution of such a *de minimis* amount.

(k)     Solely to the extent provided in the Plan, the GUC Trust shall have the exclusive responsibility and authority for administering, disputing, compromising and settling or otherwise resolving and finalizing payments or other distributions with respect to Claims, all without Bankruptcy Court approval, and may object to any Claims until the Claims Objection Deadline (as defined in the Plan).  The GUC Trust shall be entitled to seek an extension of the Claims Objection Deadline from time to time by filling an appropriate motion with the Bankruptcy Court based upon the Trustee's sole determination that such extension is appropriate and reasonable under the circumstances.  It is anticipated that the GUC Trust may seek multiple

extensions of the Claims Objection Deadline, and that the Bankruptcy Court will grant the GUC Trust's requests. Nothing herein shall prejudice the GUC Trust's right to seek an extension of the Claims Objection Deadline at any time. The GUC Trust shall generally prosecute objections to Claims pending as of the Effective Date and any additional objections it determines to file from and after the Effective Date, but the Trustee shall be entitled to exercise any and all judgment and discretion with respect to the manner in which to defend against or settle any Claim. In addition, subject to the foregoing sentence, the GUC Trust may, at any time, request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether any party previously objected to or sought estimation of such Claim, for purposes of creating a reserve and/or distribution under the Plan and/or this GUC Trust Agreement.

### 3.5    Administrative Subaccount.

The GUC Trust may establish a separate subaccount of the GUC Trust ("**Administrative Subaccount**") to receive funds designated for the satisfaction of any Allowed Claims other than Beneficiary Claims, which subaccount shall be subject to separate administration exclusively in accordance with the terms of the Plan, *provided, however*, that it is acknowledged that the GUC Trust holds such funds for administrative convenience and the GUC Trust shall have no obligation to invest such funds nor any discretion to vary the use of the funds in the Administrative Subaccount from the administration specified in the Plan and Confirmation Order. In the event there are funds remaining in the Administrative Subaccount after satisfaction of all obligations thereof, the remaining funds shall be transferred to the Trust and shall become part of Liquidating Trust Assets.

### ARTICLE IV
### TRUSTEE; DELAWARE TRUSTEE

**4.1    Number**.  In addition to the Delaware Trustee appointed pursuant to Section 4.13 below, there shall be one (1) Trustee who shall be the person named on the signature pages hereof and who is referred to as the "Trustee" hereunder.

### 4.2    Term of Service.

(a)    The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to Section 4.2(c) below, or (iv) the termination of the GUC Trust pursuant to Section 6.2 below.

(b)    The Trustee may resign at any time upon written notice to the Bankruptcy Court. Such notice shall specify a date when such resignation shall take effect, which shall not be less than sixty (60) days after the date such notice is given, where practicable. All fees and expenses properly incurred by the Trustee prior to the resignation, incompetency or removal of the Trustee shall be paid from the GUC Trust.

(c)      The Trustee may be removed by the Bankruptcy Court in the event the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard. Other good cause shall mean (i) fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony, in each case whether or not connected to the GUC Trust, or (ii) a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder.

(d)      In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any Trustee, such vacancy shall be filled by the majority vote of the members of the TOC then serving in such capacity, provided, in the event the TOC is unable to obtain majority vote with respect to a successor Trustee for any reason, then the vacancy shall be filled by Bankruptcy Court..

(e)      Immediately upon the appointment of any successor Trustee pursuant to Section 4.2(d) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(f)      Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) above, (iii) his or her removal pursuant to Section 4.2(c) above, and (iv) the termination of the GUC Trust pursuant to Section 6.2 below.

(g)      The GUC Trust shall pay all compensation and expenses of the Trustee that accrue through the date of termination or resignation, as applicable.

**4.3    <u>Compensation and Expenses of the Trustee.</u>**

(a)      The Trustee shall be compensated for his or her service as Trustee in the amount of $20,000.00 per month (subject to adjustment based on the Trustee's practice in similar cases, and upon consultation with the TOC), paid monthly or as otherwise agreed by the Trustee, plus a contingency fee equal to three percent (3%) of GUC Trust Distributions made to holders of Allowed Claims other than Allowed Administrative Claims. For the avoidance of doubt, the Trustee is not entitled to a contingency fee for Distributions made to holders of Administrative Claims and shall not receive a contingency fee unless all Allowed Administrative Claims are paid under the Plan.

(b)      The GUC Trust will promptly reimburse the Trustee for all reasonable and documented out-of-pocket costs and expenses incurred by the Trustee in connection with the performance of his or her duties hereunder. The GUC Trust may reimburse the Trustee for fees and expenses incurred prior to the Effective Date in connection with this Trust Agreement and effectuating a timely, orderly, and efficient transition of duties and obligations to the Trustee as of the Effective Date, which shall be paid promptly after the Effective Date.

(c)     The Trustee shall be entitled to compensation, as described above for services rendered, as well as reimbursement of expenses he incurred (including legal fees and costs), prior to the Effective Date in connection with this Trust Agreement and effectuating a timely, orderly, and efficient transition of duties and obligations to the Trustee upon the Effective Date, all of which shall be paid on or after the Effective Date.

(d)     The GUC Trust shall include in the Annual Report a description of the amounts paid under this Section 4.3.

**4.4     Standard of Care; Exculpation.**

(a)     As used herein, the term "**Trust Indemnified Party**" shall mean each of (i) the Trustee, (ii) the Delaware Trustee, (iii) the TOC and each member thereof, and (iv) the officers, employees, consultants, advisors, and agents of each of the GUC Trust and the Trustee.

(b)     To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall not have or incur any liability for actions taken or omitted in their capacities as Trust Indemnified Parties, or on behalf of the GUC Trust, including any losses, claims, damages, liabilities, obligations settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalties, costs, and expenses, reasonable legal or other professional fees and disbursements, costs and expenses of investigating, analyzing and responding to claims, of any kind or nature (collectively, the "**Losses**") except those Losses found by a final order of a court of competent jurisdiction ("**Final Order**") to be arising out of their willful misconduct, bad faith, self-dealing, gross negligence or fraud (provided, however, that with respect to the Delaware Trustee, such Losses shall be found by a Final Order to be arising out of the Delaware Trustee's willful misconduct or gross negligence).  The Trust Indemnified Parties  shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of the Losses, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or this Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case except for any Losses found by Final Order to be arising out of their willful misconduct, bad faith, self-dealing, gross negligence or fraud (provided, however, that with respect to the Delaware Trustee, such Losses shall be found by a Final Order to be arising out of the Delaware Trustee's willful misconduct or gross negligence). The Trust Indemnified Parties shall not have any personal obligation to satisfy any such Losses, liability or other obligations.  Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the GUC Trust.

(c)     To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the GUC Trust or the Beneficiaries, it is hereby understood and agreed by the Parties that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties; provided, however, that with respect to the Trust Indemnified Parties other than the Delaware Trustee the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 4.4 and its subparts.

(d)     The GUC Trust will maintain appropriate insurance coverage for the protection of the Trust Indemnified Parties, as determined by the Trustee in his or her discretion.

**4.5    Protective Provisions.**

(a)     Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 4.5.

(b)     In the event the Trustee retains counsel (including at the expense of the GUC Trust), the Trustee and the TOC shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee or the TOC be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder. A successor Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Party or other person may raise any exception to the attorney-client privilege described herein as any such exceptions are hereby waived by all Parties.

(c)     No Trust Indemnified Party shall be personally liable under any circumstances, except for his or her own willful misconduct, bad faith, self-dealing, gross negligence or fraud as determined by a Final Order. Notwithstanding the preceding sentence, the Delaware Trustee shall not be personally liable under any circumstances, except for his or her own willful misconduct or gross negligence as determined by a Final Order.

(d)     No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties and powers hereunder.

(e)     In the exercise or administration of the GUC Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

**4.6    Indemnification.**

(a)     To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall be entitled to indemnification and reimbursement for reasonable fees and expenses (including attorneys' fees and costs but excluding taxes in the nature of income taxes imposed on compensation paid to the Trust Indemnified Parties) in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the GUC Trust, and for any

other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case, except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith, self-dealing, gross negligence or fraud (provided, however, that with respect to the Delaware Trustee, such actions or inactions shall be found by a Final Order to be arising out of the Delaware Trustee's willful misconduct or gross negligence). Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the GUC Trust Assets.

(b)      Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the GUC Trust shall be paid by the GUC Trust from the GUC Trust Assets in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by Final Order that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the GUC Trust. The Trustee may, in his or her discretion, authorize an advance of reasonable expenses, costs and fees (including attorneys' fees and costs) to be incurred by or on behalf of the Trust Indemnified Parties, as set forth herein.

(c)      The Trustee is authorized, but not required, to purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include insurance with respect to liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)      The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)      The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

**4.7      Burden of Proof.**  In any proceeding brought by person challenging any action, determination or failure to act of the Trustee in discharge of his or her duties under this Trust Agreement, the person bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act constituted gross negligence, willful misconduct, bad faith, self-dealing, or fraud. Notwithstanding anything to the contrary in this Trust Agreement or any duty otherwise existing at law or equity, each determination, action or failure to act of the

17

Trustee in the discharge of his or her duties under this Trust Agreement is, to the extent consistent with this Trust Agreement, hereby deemed to not constitute a breach of this Trust Agreement or any duty hereunder or existing at law, in equity or otherwise.

**4.8** **Reliance by the Trustee.** The Trustee and the TOC may absolutely rely, and shall be fully protected in acting or refraining from acting if he or she relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that he or she has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of gross negligence, bad faith, self-dealing, willful misconduct, or fraud in respect of the Trustee's duties as found by a final and non-appealable court of competent jurisdiction, or material breach of this Trust Agreement, the Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon. The Trustee shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Trust Agreement, the Plan or any other document executed in connection therewith, and the Trustee shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

**4.9** **Books and Records.** The Trustee shall be free, in his or her discretion to abandon, destroy or otherwise dispose of any books and records in his possession that the Trustee deems not necessary for the continued administration of the GUC Trust, subject to Section XII.J of the Plan and applicable law, without the need for any order of the Bankruptcy Court, and shall have no liability for same. This provision shall not create any right by any third party to access privileged or confidential information held by the GUC Trust.

**4.10** **Trustee Independence.** The Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as an officer or as any other professional for the Debtors. The Trustee shall not act as an attorney, agent, or other professional for any Beneficiary or any holder of any Beneficiary Claim. For the avoidance of doubt, this Section 4.7 shall not be applicable to the Delaware Trustee.

**4.11** **No Bond.** Neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**4.12** **Books and Records**. The Trustee shall be free, in his or her discretion to abandon, destroy or otherwise dispose of any books and records in his possession that the Trustee deems not necessary for the continued administration of the Plan and not required to be retained under applicable law, without the need for any order of the Bankruptcy Court, and shall have no liability

for same. This notice provision shall not create any right by any third party to access to privileged or confidential information held by the GUC Trust.

### 4.13 <u>Delaware Trustee.</u>

(a)    There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act. The Delaware Trustee shall either be (i) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to be eligible to serve as Delaware Trustee in accordance with the provisions of this Section 4.13, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.13(c) below. For the avoidance of doubt, the Delaware Trustee will only have such rights, duties and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Trustee shall have no liability for the acts or omissions of any Delaware Trustee.

(b)    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities of the Trustee set forth herein. The Delaware Trustee shall be a trustee of the GUC Trust for the sole and limited purpose of fulfilling the requirements of Section 3807(a) of Chapter 38 of title 12 of the Delaware Code, 12 Del. C. Section 3801 *et seq.* (the "**Act**") and for taking such actions as are required to be taken by a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to accepting legal process served on the GUC Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act. There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. These duties shall be deemed purely ministerial in nature, and the Delaware Trustee shall not be liable except for the performance of such duties, and no implied covenants or obligations shall be read into this Trust Agreement against the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the GUC Trust or the Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement. The Delaware Trustee shall have no liability for the acts or omissions of any Trustee. Any permissive rights of the Delaware Trustee to do things enumerated in this Trust Agreement shall not be construed as a duty and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, or gross negligence. The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Trust Agreement at the request or direction of the Trustee or any other person pursuant to the provisions of this Trust Agreement unless the Trustee or such other person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the costs, expenses and liabilities that may be incurred by it in compliance with such request or direction. The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken

19

by the Delaware Trustee in accordance with the written direction of the Trustee. The Delaware Trustee may, at the expense of the GUC Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(c)     The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 4.13(d) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.13(d) below; provided further that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee. If the Trustee does not act within such sixty (60) day period, the Delaware Trustee, at the expense of the GUC Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement. The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the GUC Trust in accordance with Section 3810 of the Act.

(e)     Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(f)     The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the GUC Trust and the Delaware Trustee, which compensation shall be paid by the GUC Trust. Such compensation is intended for the Delaware Trustee's services as contemplated by this Trust Agreement. The terms of this paragraph

shall survive termination of this Trust Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(g)     The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Delaware Trustee. The Delaware Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument or document, other than this Trust Agreement. Neither the Delaware Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the GUC Trust, the Trustee or any other person, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party. The Delaware Trustee may assume performance by all such persons of their respective obligations. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person. The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust Asset, written instructions, or any other documents in connection therewith, and will not be regarded as making, nor be required to make, any representations thereto.

(h)     The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

(i)     In no event shall the Delaware Trustee be responsible or liable for any action taken in good faith, errors in judgment or any special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Delaware Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

(j)     The Delaware Trustee is hereby authorized to take such action as the Trustee specifically directs in written instructions delivered to the Delaware Trustee and shall have no liability for acting in accordance therewith. The Delaware Trustee may conclusively rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties, not only as to due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein.

21

(k)     Notwithstanding anything herein to the contrary, the Delaware Trustee shall not be required to take any action that is in violation of applicable law.

(l)     The Corporate Transparency Act (31 U.S.C § 5336) and its implementing regulations (collectively, the "**CTA**"), may require the Trust to file reports with the Financial Crimes Enforcement Network ("**FinCEN**") from time to time.  It shall be the Trustee's duty and not the Delaware Trustee's duty to cause the Trust to make such filings, as applicable, and to cause the Trust to comply with its obligations under the CTA, if any.  The parties hereto acknowledge that the Delaware Trustee acts solely as a directed trustee at the direction of the Trustee hereunder and that the Trustee is and shall deemed to be the party with the power and authority to exercise substantial control over the Trust.

## ARTICLE V
## TAX MATTERS

**5.1**   **Treatment of Settlement Consideration Transfer.**

(a) For all United States federal income tax purposes, all Parties shall treat the transfer of the Liquidating Trust Assets to the GUC Trust as (i) a transfer of the Settlement Consideration (subject to any obligations related to those assets) directly to the Beneficiaries, followed by (ii) the transfer by such Beneficiaries of such Liquidating Trust Assets to the GUC Trust in exchange for GUC Trust Interests (other than the GUC Trust Assets allocable to a Disputed Claims Reserve and held as a "disputed ownership fund" within the meaning of Section 1.468B-9 of the Treasury Regulations. Accordingly, the Beneficiaries shall be treated for United States federal income tax purposes (and, to the extent permitted, for state and local income tax purposes) as the grantors and owners of their respective shares of the Liquidating Trust Assets (other than the GUC Trust Assets allocable to the Disputed Claims Reserve).

(b)     The Trustee shall treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections consistent with such tax treatment).  The Trustee shall be the administrator of the Disputed Claims Reserves within the meaning of Treasury Regulation section 1.468B-9(b)(2) and shall be responsible for all tax reporting and withholding required by the Disputed Claims Reserve. Pursuant to Treasury Regulation section 1.468B-9, no holder of a Claim will be treated as the grantor or deemed owner of any asset reserved for Disputed Claims until such holder receives or is allocated an interest in such asset.  The Trustee will file all Tax returns on a basis consistent with the treatment of the GUC Trust in part as a liquidating trust described in Treasury Regulation section 301.7701-4(d) (and grantor trust pursuant to Treasury Regulation section 1.671-l(a)) and in part as one or more Disputed Claims Reserves taxed as disputed ownership funds, and will pay all taxes imposed on the GUC Trust (including any taxes imposed on the Disputed Claims Reserve) from Trust Assets (although any taxes imposed on any Disputed Claims Reserve will be paid out of such Disputed Claims Reserve and not out of general assets held by the GUC Trust).

22

**5.2    Income Tax Status.**

(a)    For United States federal income tax purposes (and for purposes of all state, local and other jurisdictions to the extent applicable) and other than as provided pursuant to Section 5.3(c), this GUC Trust shall be treated as a liquidating trust pursuant to Section 301.7701-4(d) of the Treasury Regulations and as a grantor trust pursuant to Sections 671-679 of the IRC. To the extent consistent with Revenue Procedure 94-45 and not otherwise inconsistent with this Trust Agreement, this Trust Agreement shall be construed so as to satisfy the requirements for liquidating trust status.

(b)    The GUC Trust shall at all times to be administered so as to constitute a domestic trust for United States federal income tax purposes.

**5.3    Tax Returns.**

(a)    The Trustee shall file with the IRS annual tax returns for the GUC Trust on Form 1041 as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations. In addition, the Trustee shall file in a timely manner for the GUC Trust such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. The GUC Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items in respect of any assets allocable to, or retained on account of, the Disputed Ownership Fund) will be allocated to the Beneficiaries in accordance with their relative ownership of GUC Trust Interests.  Within a reasonable time following the end of the taxable year, the GUC Trust shall send to each GUC Trust Beneficiary a separate statement setting forth such GUC Trust Beneficiary's items of income, gain, loss, deduction or credit and will instruct each such GUC Trust Beneficiary to report such items on his/her applicable income tax return.

(b)    The GUC Trust shall be responsible for payment from the GUC Trust of any taxes imposed on the GUC Trust (including any taxes imposed on the Disputed Ownership Fund) or the GUC Trust Assets.

(c)    The Trustee may timely elect to treat any GUC Trust Assets allocable to a Disputed Claims Reserve as a disputed ownership fund, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes, all parties (including the Trustee and the holders of GUC Trust Interests) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.  The GUC Trust shall file all income tax returns with respect to any income attributable to the Disputed Claims Reserve and shall pay from the GUC Trust all U.S. federal, state and local income taxes attributable to such Disputed Claims Reserve based on the items of income, deduction, credit, or loss allocable thereto.

**5.4    Withholding of Taxes and Reporting Related to GUC Trust Operations.**    The GUC Trust shall comply with all withholding, deduction and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions made by the GUC Trust shall be subject to any applicable withholding, deduction and reporting requirements. The Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any such withholding, deduction, payment, and reporting requirements. All amounts properly

withheld or deducted from distributions to a Beneficiary as required by applicable law and paid over to the applicable taxing authority for the account of such Beneficiary shall be treated as part of the GUC Trust Distribution to such Beneficiary. To the extent that the operation of the GUC Trust or the liquidation of the GUC Trust Assets creates a tax liability imposed on the GUC Trust, the GUC Trust shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the GUC Trust payable without Bankruptcy Court order. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Beneficiaries shall be required to provide any information necessary to effect the withholding and reporting of such taxes. The Trustee may require each Beneficiary to furnish to the GUC Trust (or its designee) its social security number or employer or taxpayer identification number as assigned by the IRS and complete any related documentation (including but not limited to a Form W-8BEN, Form W-8BENE-E, or Form W-9) (the "**Tax Documents**"). The Trustee may condition any and all distributions to any Beneficiary upon the timely receipt of properly executed Tax Documents and receipt of such other documents as the Trustee reasonably requests, and in accordance with the Plan.  If any GUC Trust Distribution would be attributable to wages, all payroll taxes or other charges, as well as any withholding and reporting requirements with respect thereto, shall be administered by the Debtors and any employer obligations shall be retained by Debtors.

5.5   **Valuation.**  Within 180 days after the Effective Date, the Trustee shall make a good faith valuation of the GUC Trust Assets.  Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties for all United States federal income tax purposes. The Trustee also shall file (or cause to be filed) any other statements, returns or disclosures relating to the GUC Trust that are required by any governmental unit.

5.6   **Expedited Determination of Taxes**.  The Trustee may request an expedited determination of taxes of the GUC Trust, under Section 505 of the Bankruptcy Code for all returns filed for, or on behalf of, the GUC Trust for all taxable periods through the termination of the GUC Trust.

# ARTICLE VI
# GENERAL PROVISIONS

6.1   **Irrevocability**.  To the fullest extent permitted by applicable law, the GUC Trust is irrevocable.

6.2   **Term; Termination.**

(a)     The term for which the GUC Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of this Section 6.2.

(b)     The Trustee shall make continuing efforts to monetize any non-liquid GUC Trust Assets.

(c)     The Trustee and the GUC Trust shall be discharged or dissolved, as the case may be, at such time as (i) all Liquidating Trust Assets have been liquidated and (ii) all distributions required to be made by the Trustee under the Plan have been made, but in no event shall the GUC Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary of the Effective Date (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, absent a favorable letter ruling from the IRS providing that any further extension would not adversely affect the status of the GUC Trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the assets of the GUC Trust. To the extent there are GUC Trust Assets remaining that are not capable of distribution to Beneficiaries at the time the GUC Trust is dissolved, such excess GUC Trust Assets shall be transferred to a non-profit 501(c)(3) organization that the Trustee may select in his sole discretion.

(d)     Following the dissolution and distribution of the assets of the GUC Trust, the GUC Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the GUC Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the GUC Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation. A certified copy of the Certificate of Cancellation shall be given to the Delaware Trustee for its records promptly following such filing.

**6.3** **Amendments**.  Any amendment to or modification of this Trust Agreement may be made in writing and only pursuant to an order of the Bankruptcy Court; provided, however, the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make: (i) minor modifications or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement; or (ii) modifications to satisfy any requirements, conditions or guidelines contained in any opinion, directive, order, statute, ruling or regulation of any federal, state or foreign governmental entity. Notwithstanding the foregoing, no amendment or modification of this Trust Agreement shall modify this Trust Agreement in a manner that is inconsistent with the Plan or the Confirmation Order other than to make minor modifications or clarifying amendments as necessary to enable the Trustee to effectuate the provisions of this Trust Agreement. Notwithstanding the foregoing, neither this Trust Agreement, nor any Exhibit to this Trust Agreement, shall be modified or amended in any way that could jeopardize, impair, or modify the GUC Trust's "liquidating trust" status. Any amendment affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent. Severability. Should any provision in this Trust Agreement be determined to be unenforceable,

such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

**6.4** **Notices.**

(a)     Notices to Beneficiaries shall be given in accordance with such person's claims form submitted in the to the GUC Trust.

(b)     Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the GUC Trust:

> KAL GUC Liquidating Trust
> c/o Paul Navid, Amanda (Demby) Swift
> 11111 Santa Monica Blvd Ste 525
> Los Angeles, CA 90025
> Email: PNavid@provincefirm.com; ademby@provincefirm.com

With a copy (which shall not constitute notice) to:

> Joseph M. Coleman
> Kyle Woodard
> Kane Russell Coleman Logan PC
> 901 Main Street, Suite 5200
> Dallas, TX 75202
> Email: jcoleman@krcl.com
> Email: kwoodard@krcl.com

To the Delaware Trustee:

> Wilmington Trust, National Association
> Attention: Joseph M. Gribaudo
> Address: 1100 N. Market Street, Wilmington, Delaware 19801
> Email: JGRIBAUDO1@WilmingtonTrust.com
> Phone: (984) 209-8652
> Fax: (302) 636-4145

With a copy (which shall not constitute notice) to:

> Morris James LLP
> Ross Antonacci | Partner
> 500 Delaware Avenue, Suite 1500
> Wilmington, DE 19801-1494

Phone: 302.888.6914 | Fax: 302.888.6989
morrisjames.com | rantonacci@morrisjames.com

To the Trust Oversight Committee:

Scott Woitas
Donaldson Company, Inc.
1400 West 94th Street
Bloomington, MN 55431
E-mail: scott.woitas@donaldson.com

Todd Currier
Continental Tire the Americas, LLC
1830 MacMillan Park Dr.
Fort Mill, SC 29707
E-mail: todd.currier@conti-na.com

Jon Gergen
3G Sillect Partners LP
3401 N. Sillect Avenue
Bakersfield, CA 93308
Email: jgergen714@gmail.com

(c)      All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses.

**6.5      Severability.** Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

**6.6      Successors and Assigns**. The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the GUC Trust, the Delaware Trustee, the Trustee, and their respective successors and assigns, except that neither the GUC Trust, the Delaware Trustee, nor the Trustee, may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except in the case of the Delaware Trustee in accordance with Section 4.13(d), and in the case of the Trustee in accordance with Section 4.2(d) above.

**6.7      Limitation on GUC Trust Interests for Securities Laws Purposes**. GUC Trust Interest (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will, under the laws of descent and distribution or otherwise by operation of law; (b) shall not be evidenced by a certificate or other

27

instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

**6.8** **Exemption from Registration**. The Parties hereto intend that the interests of the Beneficiaries under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the GUC Trust Interests will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

**6.9** **Entire Agreement; No Waiver**. The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein, and in the documents referred to herein (including the Plan), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

**6.10** **Headings.** The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

**6.11** **Governing Law**. The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the GUC Trust, the Trustee, the Delaware Trustee, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for the Trustee, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustee, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee

or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee or the Delaware Trustee set forth or referenced in this Trust Agreement. Section 3540 of the Act shall not apply to the GUC Trust.

**6.12  Effectiveness**. This Trust Agreement shall become effective on the Effective Date.

**6.13  Counterpart Signatures**. This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

**6.13  WAIVER OF JURY TRIAL**. Each party hereto and each Beneficiary hereof hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this Trust Agreement.

IN WITNESS WHEREOF, the Parties have executed this Trust Agreement this 28th day of April, 2025.

**TRUSTEE**

Signed by:

*Amanda Swift*

35F85BDA72A64E4...

_____

Province Fiduciary Services LLC
   By: Amanda Swift
   Its: Partner

**TRUST OVERSIGHT COMMITTEE MEMBERS**

_Scott Woitas_
—————————————————
Scott Woitas

_Todd Currier_
—————————————————
Todd Currier

_Jon Gergen_
—————————————————
Jon Gergen

**DELAWARE TRUSTEE**

**Wilmington Trust, National Association**

By: _____
    Name: Joseph M. Gribaudo
    Title:   Assistant Vice President

**EXHIBIT 1**

**CERTIFICATE OF TRUST OF THE KAL GUC LIQUIDATING TRUST**

Exhibit 1-1

# CERTIFICATE OF TRUST

## OF

## KAL GUC LIQUIDATING TRUST

This Certificate of Trust of KAL GUC Liquidating Trust (the "Trust"), is being duly executed and filed by Province Fiduciary Services LLC, solely as Trustee, and Wilmington Trust, National Association, a national banking association, not in its individual capacity, but solely as Delaware Trustee, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. Code, § 3801 et seq.) (the "Act").

      1.      <u>Name</u>.  The name of the statutory trust formed hereby is KAL GUC Liquidating Trust.

      2.      <u>Delaware Trustee</u>.  The name and business address of a trustee of the Trust having its principal place of business in the State of Delaware are Wilmington Trust, National Association, Rodney Square North, 1100 North Market Street, Wilmington, Delaware  19890-1605, Attention: Corporate Trust Administration.

      3.      <u>Effective Date</u>.  This Certificate of Trust shall be effective upon filing.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Exhibit 1-2

IN WITNESS WHEREOF, the undersigned, being all of the trustees of the Trust, have executed this Certificate of Trust in accordance with Section 3811 of the Act.

Wilmington Trust, National Association,
not in its individual capacity but solely as Delaware
Trustee

By: _____
    Name:
    Title:

Trustee:

_____
Province Fiduciary Services LLC
By: Amanda Swift
Its: Partner

Exhibit 1-3

**EXHIBIT 2**

**INVESTMENT GUIDELINES**

Consistent with the provisions of Rev. Proc. 94-45 and notwithstanding any other provision of the Trust Agreement, the investment powers of the Trustee, other than those reasonably necessary to maintain the value of the assets and to further the liquidating purpose of the trust, must be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

Exhibit 2-1